UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V, | ) | Hon. Mary K. Vyskocil |
| | ) | 20-cr-160-7 |
| | ) | |
| SETH FISHMAN, DVM | ) | **REQUEST FOR HEARING** |

MOTION FOR BILL OF PARTICULARS

SETH FISHMAN, DVM, by and through undersigned counsel, pursuant to Federal Rule of Criminal Procedure 7(f) and the Fifth and Sixth Amendments of the U.S. Constitution, files this Motion requesting that this Honorable Court order the government to provide a bill of particulars with respect to Counts One and Two of the Indictment. Absent such a bill of particulars, Counts One and Two should be dismissed for failure to adequately allege an offense. Fed. R. Crim. P. 12(b)(3). Incorporated herein in support of this Motion is a Memorandum of law.

s/Andrew S. Feldman_____
Feldman Firm PLLC
Southeast Financial Center
200 S. Biscayne Blvd, Suite 2770
Miami, Florida 33131
Office:              305.714.9474
Facsimile:      305.714.9555
Email:          afeldman@feldmanpllc.com
FBN:          60325

*Attorney for Seth Fishman, DVM*

1

## TABLE OF CONTENTS

IINTRODUCTION & FACTUAL BACKGROUND ................................................3

APPLICABLE STANDARDS ..........................................................................6

   Motion to Dismiss..........................................................................................6

   Bill of Particulars .........................................................................................7

ARGUMENT. ..............................................................................................9

   A.  Nature of the Offenses Alleged in Counts 1-2 ..............................9

   B.  Count One.......................................................................................11

      1.  Identities of Animal Drugs Allegedly Misbranded by Fishman .................11

      2.  Indictment's Allegations in Count 1 Relating to the alleged communications amongst Fishman, Oakes and Navarro are confusing and misleading........................................................................................13

      3.  Indictment Fails to State Persons or Agencies Allegedly Mislead or Defrauded and Laws allegedly Violated forming basis for Misbranding Conspiracies in Counts 1-2................................................................14

   C.  Count Two, which alleges a 6-year conspiracy, fails to provide sufficient information absent a bill of particulars to meaningfully prepare a defense ........20

   D.  District Courts and the Second Circuit have consistently rejected the government's position concerning a bill of particulars ........................................23

## MEMORANDUM OF LAW

### IINTRODUCTION & FACTUAL BACKGROUND

In March, the government's muscular 19-defendant indictment in this case leapt off the front pages of national newspapers[1] drawing the attention of sports fans, horse racing aficionados, PETA, the Paulick Report,[2] Jeff Gural,[3] and former prosecutors. The Indictment also purposefully includes salacious details designed to inflame the passions of its readers going so far as to include excerpts of supposed conversations which involve disposing of (and concealing the disposal of) dead horses.

Yet, at its core, the Indictment is a confusing (sometimes non-sequential) constellation of events which alleges four (4) separate misbranding conspiracies in violation of the Food Drug and Cosmetic Act (FDCA). The FDCA's intended purpose though was to protect the consuming public from the manufacturing and interstate distribution of dangerous and unsafe drugs, food, and cosmetics, not to

---

[1] https://www.nytimes.com/2020/03/09/sports/horse-racing-doping.html

[2] https://www.paulickreport.com/news/the-biz/navarro-servis-among-27-indicted-on-federal-charges-related-to-performance-enhancing-drugs/

[3] https://www.horsesforlife.org/news-blog/category/horseracing ("Meadowlands owner Jeff Gural, who operates a harness racing meet at the New Jersey racetrack, said he also employed 5 Stones and that information from 5 Stones played a role in the federal indictments of 29 people that were announced March 9-11 by the United States District Attorney, Southern District of New York. 'We participated with The Jockey Club in retaining (5 Stones) to help lead the FBI in the right direction,' Gural said.")

protect horse owners or *bettors* and/or to ensure fair competition in horse racing. Those are duties, responsibilities, and powers traditionally delegated to the states and administered by state administrative agencies, not federal prosecutors.

Beyond this, Counts 1-4 also involve four different time periods (January 2017-January 2020, Aug 2013-October 2019, April 2019-September 2019, and October 2017-February 2019). Count 1 of the Indictment makes passing references to supposed performance enhancing drugs (PEDs) that were distributed as part of the alleged Navarro doping conspiracy, but it fails to specify the dates when such performance enhancing drugs (PEDs)[4] were distributed or manufactured or where or when they were supposedly distributed. Counts 1-2 of the Indictment fail to identify the person or agency or commission that was allegedly defrauded or mislead as the *object of the conspiracy*. The Indictment also references state regulations, regulators, and testing regimes but fails to identify a single state law regulating horse racing or how any of the defendants violated or agreed to violate any of those laws in furtherance of a misbranding conspiracy in violation of the FDCA as alleged in Counts 1-2. Lastly, Counts 1-2 also reference unindicted co-conspirators or individuals that remain unknown to Fishman.

---

[4] We note that although PEDs is now a common term, in and of itself, the term is misleading. Coffee and nicotine are performance enhancing, but simply by virtue of their performance enhancing traits, they are not (i) misbranded or adulterated with (ii) the intent to defraud or mislead.

Complicating matters further, the discovery provided by the prosecutors thus far has been voluminous spanning several years, occupying several Terabytes, and consisting of, among other things, Thousands of pages of draft line sheets relating to the intercepted communications, seized data from I-Phones, photos, lab reports, and search warrant applications.  All defendants, however, are still waiting on the *audio recordings,* emails, expert reports (which presumably the government intends to produce), additional lab reports, if any, and other forensically imaged data. The prosecutors have also represented that they foresee 4 separate trials each of which could last up to 3-4 weeks per trial. And, the Government has advised this Court they *may* supersede the Indictment with additional charges of wire fraud[5] and money laundering.

In sum, the lack of specificity in Counts 1-2 coupled with the voluminous discovery prevents Dr. Fishman from properly preparing for trial, invites surprise at

---

[5] The Government should not be permitted to delay any Superseding Indictment indefinitely given the 19-defendant nature of this case. Furthermore, if the government is going to move forward with wire fraud on the theory that bettors (including some compulsive gamblers) or competitors were "defrauded", such a theory poses constitutional vagueness and rule of lenity concerns. In fact, under such a theory, presumably the Government could potentially indict the entire Houston Astros 2017 World Series roster based on the supposed signal stealing scheme for wire fraud since presumably lots of bettors gambled on the World Series and the winning team (Astros and its players) were entitled to money by reason of winning the Series. *See* https://www.cnbc.com/2018/10/29/the-red-sox-won-the-world-series-heres-how-much-money-theyll-earn.html (noting that players received tens of Millions of post-season bonuses). Better yet, if a starting pitcher on the same roster were using PEDs before his start in violation of MLB rules, the Government's sweeping wire fraud theory also seems to potentially encapsulate such conduct.

trial, and/or prevents Dr. Fishman from interposing a double jeopardy defense, and therefore, a bill of particulars as to Counts 1-2 is warranted.

## APPLICABLE STANDARDS

### A. Motion to Dismiss

Although Federal Rule of Criminal Procedure 7(c)(1) provides that an indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged, an indictment must be accompanied by a statement of facts and circumstances that will adequately inform the defendant of the charges against him. *Russell v. United States,* 369 U.S. 749, 765 (1962). The Supreme Court in *Russell* noted that an indictment that simply repeats the "generic terms" taken from the statute is not sufficient - "it must state the species, it must descent to particulars." *Russell,* 369 U.S. at 765 (citing *United States v. Cruikshank*, 92 U.S. 542 (1875); *United States v. Williams*, 152 F.3d 294, 299 (4th Cir. 1998); *accord United States v. ReSendiz-Ponce*, 548 U.S. 102, 108 (2007); *Hamling v. United States*, 418 U.S. 87, 117 (1974). It must also enable the defendant to agree to a factual basis in connection with a guilty plea under Rule 11 which will bar future prosecution for a similar offense under the Double Jeopardy Clause of the U.S. Constitution. *Russell*, 369 U.S. at 764.

**B. Bill of Particulars**

A bill of particulars is necessary then when an Indictment is "insufficient to permit the preparation of an adequate defense." *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007).

The decision of whether to grant a bill of particulars under Rule 7(f) of the Federal Rules of Criminal Procedure is one which rests within the sound discretion of the trial court. *See, e.g., United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir.1987). In exercising that discretion, a trial court is guided by the limited function that a bill of particulars is designed to achieve, namely, to allow a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *Id..*

"The Government [does] not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided" as to which documents are relevant to the charged conduct. *Bortnovsky,* 820 F.2d at 575. Indeed, "[a large volume of discovery warrants a bill of particulars if it obfuscates the allegedly unlawful conduct and unfairly inhibits the defendant's preparation for trial." *United States v. Mahaffy,* 446 F. Supp. 2d 115, 119-20 (E.D.N.Y.2006); *see also United States v. Bin Laden,* 92 F.Supp.2d 225, 234 (S.D.N.Y.2000) ("It is no solution to rely solely on the quantity of information disclosed by the government;

sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars" and noting that "[w]e believe that a bill of particulars is necessary in this case to permit the Defendants to prepare a defense and to prevent prejudicial surprise at trial."); *United States v. . Nachamie,* 2000 WL 37993 at *5 (S.D.N.Y.) (applying *Bortnovsky* and ordering filing of bill of particulars when government had produced "200,000 pieces of paper in hundreds of boxes and files"); *United States v. Davidoff,* 845 F.2d 1151, 1155 (2d Cir.1988) (fact that Government produced 6,000 pages of discovery did not obviate need for bill of particulars in complex prosecution); *United States v. Nekritin*, 2011 WL 1674799 at *8 (E.D.N.Y. May 3, 2011) (ordering a bill of particulars and noting that, "[t]o the extent that the health care fraud conspiracy count is based on alleged false claims or on the solicitation of Medicare and Medicaid beneficiaries independent from the claims and beneficiaries specified in counts two through eight of the Superseding Indictment, the court orders that the government provide defendants with a bill of particulars containing this information."); *United v. Kanekar,* 2020 WL 730353 at *7 (E.D.N.Y. Feb. 12, 2020) (granting bill of particular in health care fraud conspiracy).

Courts have also granted a bill of particulars when there are numerous unindicted co-conspirators and the case involves multiple defendants. *See United States v. Feola,* 651 F. Supp. 1068, 1131–34 (S.D.N.Y.1987) (granting demand for bill of particulars specifying "the names of all persons whom the Government will

8

claim at trial were co-conspirators"). In fact, in complex multi-defendant cases, district courts in this district have granted bills of particulars obligating government to produce this information regarding unnamed co-conspirators when there is no risk of violence. *See, e.g., United States v. Feldman,* 731 F.Supp. 1189, 1191 (S.D.N.Y.1990) (multi-year tax evasion conspiracy); *United States v. Chovanec,* 467 F.Supp. 41, 43 (S.D.N.Y.1979)(identifying at least 27 counts in racketeering indictment); *United States v. Kole,* 442 F.Supp. 852, 854 (S.D.N.Y.1977) (five-year conspiracy involving multiple bribes); *United States v. Pilnick,* 267 F.Supp. 791, 794 (S.D.N.Y.1967) (57–count indictment).

## ARGUMENT.

### A. Nature of the Offenses Alleged in Counts 1-2

Counts 1-2 allege conspiracies to violate the FDCA. The FDCA provides two tiers of liability for misbranding violations under § 331(a). The misdemeanor provision imposes criminal liability in the form of imprisonment, fines, or both. *See* 21 U.S.C. § 333(a)(1) ("Any person who violates [§ 331(a)(1)] shall be imprisoned for not more than one year or fined not more than $1,000, or both."). An article may be misbranded pursuant to the misdemeanor provision "without any conscious fraud at all," thus creating a form of strict criminal liability. *United States v. Dotterweich,* 320 U.S. 277, 281 (1943) (quoting *United States v. Johnson,* 221 U.S. 488, 497, 31 S.Ct. 627, 55 L.Ed. 823 (1911)). Felony misbranding, on the other

hand, requires a showing that the defendant acted "with intent to defraud or mislead":

> Notwithstanding the provisions of paragraph (1), if any person commits such a violation after a conviction of him under this section has become final, or commits such a violation *with the intent to defraud or mislead,* such person shall be imprisoned for not more than three years or fined not more than $10,000 or both.

21 U.S.C. § 333(a)(2) (emphasis added). Thus, felony liability for misbranding requires an additional mens rea element that is absent from the broader-reaching misdemeanor provision. *See United States v. Mitcheltree,* 940 F.2d 1329, 1347 (10th Cir.1991) (reversing conviction and pronouncing that felony liability under § 333(a)(2) requires proof that defendant "consciously sought to mislead" authorities); *United States v. Watkins*, 278 F.3d 961, 966 (9th Cir. 2002) (analyzing whether the defraud or mislead provisions of the FDCA contain a materiality requirement and noting "we must *presume* that Congress intended to incorporate materiality unless the statute otherwise dictates.") *United States v. Goldberg*, 538 F.3d 280, 290 (3d Cir. 2008) ("our own independent review of the record has not yielded any trace of an intent on Goldberg's part to avoid detection or misrepresent what he was up to. Instead, the evidence demonstrates that Goldberg conducted his admittedly illegal ventures in the open, and (at least as far as the drugs that led to the misbranding counts with which he was charged) in accordance with

all the agreements he made. As a result, we vacate his felony misbranding convictions, making these convictions instead misdemeanors.")

### B. Count One

#### 1. Identities of Animal Drugs Allegedly Misbranded by Fishman

The Indictment alleges that the conspiracy in Count 1 involved the distribution and administration of PEDs. Count One alleges a three-year period (2017-2020), but the Indictment itself refers to Fishman's activities spanning as far back as 2013. But, in the opening paragraphs of the Indictment, the Government alleges that "**since at least 2014,** SETH FISHMAN, the defendant, has manufactured and shipped illegally misbranded and adulterated PEDs." *See* Indictment at page 5, ¶ 8.

As it pertains to Fishman, the Indictment alleges at page 11-12 at ¶17 that Fishman manufactured and distributed **BB3, customized analgesics, VO2 Max, Frozen Pain Shot, and ITP Plus and/or ITTP.** The Indictment, however, provides no facts about the manufacturing or distribution of any of the above "PEDs" that Fishman supposedly manufactured or distributed or which he agreed to distribute or manufacture other than its reference to V02 Max which was seized from co-defendant Oakes' barn on March 14, 2019. *See* Indictment at pages 12-13.

This is significant because the Government alleges a conspiracy from 2017-2020. The earliest alleged in Count 1 is **December 11, 2018.** That leaves a 2-year

gap unfilled. Dr. Fishman, along with the other defendants, are therefore left to hazard guesses as to what other possible conduct (January 2017-December 2018) the Government alleges is part of a 3-year conspiracy. *Nekritin,* 2011 WL 1674799 at *8 ("Without it, the defendants are left to determine which claims for which beneficiaries are alleged to form the basis of the health care fraud conspiracy, and to defend legitimate claims unrelated to the conspiracy charge, which would impermissibly shift the burden of proof to the defendants.")

And, the specific conduct alleged in the Indictment relating to Fishman is narrowly circumscribed to the time period of **April of 2019** which is insufficient to adequately apprise Dr. Fishman of the charged conduct in Count One and/or to assist Dr. Fishman in preparing a meaningful defense at trial. *Bin Laden,* at 235 ("Specifically, for the reasons set forth below, we conclude that several of the allegations contained in the "Overt Acts" section of the Indictment are cast in terms that are too general, in the context of this particular case, to permit the Defendants to conduct a meaningfully directed investigation of the relevant facts and circumstances and be prepared to respond to the charges.")

Accordingly, Dr. Fishman requests that your Honor order the Government to provide a bill of particulars which includes the information.

- The animal drugs the Government alleges that Fishman misbranded or adulterated as set forth in Count One.

- The names of any alleged PEDs other than **VO2 Max, BB3, customized analgesics, Frozen Pain Shot, and ITP Plus and/or ITTP** not identified in Count 1, that Fishman allegedly manufactured, sold, *or* distributed or agreed to manufacture, sell, or distribute with any other person as part of the alleged *3 year* conduct in Count 1 **and** the dates that Fishman allegedly manufactured or distributed such drugs as alleged in Count 1

- The identities of any of the "**customized analgesics**" the Government claims were manufactured or distributed by Fishman or which Fishman allegedly agreed to manufacture of distribute as alleged in Count 1. Indictment, page 11-12 at ¶17.

## 2. Indictment's Allegations in Count 1 Relating to the alleged communications amongst Fishman, Oakes and Navarro are confusing and misleading

Count One of the Indictment alleges that Fishman distributed PED's to Oakes and "other trainers." Indictment at 12, ¶15. Count One further alleges that Fishman received "Tens of Thousands of dollars" from Navarro. Indictment at 13. Nonetheless, the Government fails to adequately describe:

- The names of the PED's Dr. Fishman allegedly sold, directly or indirectly, to Navarro as set forth in Count 1.
- The identities of the "**other trainers**" as alleged in Indictment at 12 at ¶15. [6]
- The supposed PEDs that Fishman sold to Oakes which were resold to Navarro as alleged in Indictment at 12 at ¶15.

---

[6] Several district courts in complex multi-defendant cases have granted bills of particulars obligating government to produce this information regarding unnamed co-conspirators when there is no risk of violence. *See, e.g.,* cases cited at pages 8-9 at *supra*.

- The supposed PEDs that Fishman sold to Oakes which Oakes then resold to "**other trainers**" as alleged in Count One and the identities of those "other trainers." Indictment at 12 at ¶15.

This information is necessary to properly respond to Count One in the Indictment and to prevent unfair surprise at trial. Thus, Dr. Fishman requests that your Honor order the Government to provide a bill of particulars which includes the information above.

### 3. Indictment Fails to State Persons or Agencies Allegedly Mislead or Defrauded and Laws allegedly Violated forming basis for Misbranding Conspiracies in Counts 1-2

The Indictment specifically states that the horse racing industry is subject to an array of "state regulations aimed at protecting participating horses and ensuring fair competition" and that "[t]hese regulations include proscription of the use of performance enhancing drugs and testing regimes designed to ensure racehorses are not under the influence." *See* Indictment at page 2. Page 8 of the Indictment also includes a section titled "Legal Framework." Indictment at 8. In addition, in Count 1 of the Indictment, the Government has alleged that the misbranding conspiracy was designed to defraud or mislead *state and federal regulators* **and** *racing officials*. *See* Indictment at pages 2, 3, 5, and 11.

In the instant case, "if the government proceeds on this theory, there must be a demonstrated link between the § 331 violation and an intent to mislead or defraud an *identifiable* drug regulatory agency involved in consumer protection. Distributing

drugs in knowing violation of federal and state regulatory systems and rules is too general." *Mitcheltree,* 940 F.2d at 1349 (reversing a misbranding with intent to mislead or defraud conviction under FDCA where the alleged victims were local police departments).

Nowhere in the Indictment though is there a single reference to a specific state or federal regulator or race official. *United States v. Johnson, 21* F. Supp. 2d 329, 340 (S.D.N.Y. 1998) (to satisfy Fifth and Sixth Amendment, defendant is entitled to a bill of particulars identifying the alleged victims of his scheme, citing *Bortnovsky); see also United States v. Staff*, 816 F,2d 94 (2d Cir. 1987) (reversing fraud conviction because customers got the benefit of their bargain, and victimized post office was not alleged to be victim).

Nor is there a single reference or citation to any of these supposed "state regulations" or any law that governs these "testing regimes." Of supreme importance here, the Indictment also alleges that the conspiracy involved "Ohio Florida,[7] New York, Pennsyvlania, New Jersey, Kentucky, and even the United Arab Emirates. Indictment at page 2. Thus, placing defendants on notice of what *state laws* were allegedly violated is critical to preparation of any defense.

---

[7] Florida is also without a racing commission. The state's Division of Pari-Mutuel Wagering, a bureaucracy in Tallahassee, conducts drug testing and assigns a steward to Gulfstream Park and Tampa Bay Downs.

By way of illustration, depending on the state in which the horse race were to occur, different state laws govern the rules of the road, how close to the race a drug can be administered to a horse, how they test horses outside of competition, etc. In other words, a conspiracy cannot have, as its object, a conspiracy to defraud a New York race commission official when the race occurs in Florida.[8]

A recent district court decision in *United States v. Kanekar,* 2020 WL 730353 at *7 (E.D.N.Y. Feb. 12, 2020) further illustrates this point. In *Kanekar,* the defendant in a four (4) defendant health care fraud conspiracy sought a bill of particulars identifying the specific Medicare and Medicaid laws that formed the basis for the health care fraud counts. In granting this Motion, Judge Sterling Johnson reinforced:

> the Court grants the Defendant's motion to **identify the specific Medicare and Medicaid provisions that Kanekar is alleged to have violated with regards to the provision of medical services**. The Indictment alleges that Kanekar submitted claims that "were not supervised by licensed professionals as required and not performed by professionals trained and authorized to perform those medical services." (Dkt. No. 95 at 9) However, the Indictment does not indicate any laws or regulations that govern such services....

---

[8] Adding to this multi-jurisdictional puzzle, the Government here has also alleged extraterritorial conduct involving XY Jet and a race in the United Arab Emirates. *See* Indictment at 14-15. How is the overt act or any race involving XY Jet relevant if the act does not in some way pertain to an agreement to defraud or mislead? What person or regulator or race commission official did the defendants agree to mislead or defrauded in connection with a race in Dubai?

The court further noted that "the laws surrounding Medicaid and Medicare are extraordinarily complex and without additional information, Kanekar may not fully understand the charges against her" and that "this information is necessary to "clarif[y] the charges against the defendant," so that she may adequately prepare her defense." (other citations omitted)

*Kanekar,* at *6. (emphasis ours).

As further support for this request, Dr. Fishman notes that the federal prosecutors in the Western District of Louisiana in, *United States v. Kyle Hebert,* 17-cr-00039-DEW-KK, (W.D. La.) (Dkt.1, filed 2/9/17) a far less complex case with **one individual defendant** and two corporate defendants**,** were more than capable of setting forth the legal basis for the misbranding conspiracy alleged in that case against Dr. Kyle Hebbert. **Exhibit B.** In it, the Indictment alleged a conspiracy to provide PED's to a horse in violation of Louisiana state laws regulating horseracing all in violation of Section 371. Count 1 of the Indictment in Hebbert also specifically identified the persons or agencies that were allegedly mislead or defraud as part of the conspiracy stating:

> … all with the intent to ***defraud and mislead the U.S. Food and Drug Administration*** of its regulatory authority over animal drugs, the ***Louisiana Racing Commission*** of its regulatory authority over horse racing, and the  ***Louisiana State police*** of its lawful enforcement authority over matters involving horse racing in violation of [provisions of FDCA]

Exhibit B at 8-9 (emphasis ours).

To survive dismissal of Count 1, the prosecutors in this 19-defendant case must provide the defendants with the identities of the regulators and race officials that were allegedly mislead or defrauded and they must apprise the defendants of the legal basis for the charges in Counts 1-2 of the Indictment. *Hamling* 418 U.S. at 117.[9]

For these reasons, Dr. Fishman requests the following information:

- The state regulators, federal regulators, and/or race officials referenced on pages 2, 3, 5, and 11 of the Indictment.

- The "*state regulators"* Dr. Fishman and/or his alleged co-conspirators intended to defraud or mislead as alleged in Count 1

- The *state* laws, if any, Fishman and/or his alleged co-conspirators intended to violate in order to defraud or mislead these "state regulators" as alleged in Count 1. **Please identify any state law by citation.**

- The dates when such state laws, if any, were allegedly violated by Fishman and any other person named in Count 1 as alleged in Count One.

---

[9] *See also United States v. Bobo,* 344 F.3d 1076 (11th Cir. 2003) (dismissing health care fraud count and emphasizing *"*[n]ot only does the indictment fail to mention a fraud in connection with the delivery or payment of health care benefits, items, or services in Counts I and II, but it also ***fails to specify of what precisely Dr. Bobo was allegedly trying to defraud*** the MWP program: benefits, items, services, or money. The benefits, items, or services *could have been* the difference in the bids from the prior round of bids between AHN and NHS, as the government contended at trial. Alternatively, the benefits, items, or services *could have been* the money that Dr. Bobo proposed he would get from the legislature for Capstone. However, the indictment makes only a broad allegation of fraud in a health care benefit program without the required specificity.")

- The identities of the "federal regulators" Dr. Fishman and/or his alleged co-conspirators intended to defraud or mislead as alleged in Count 1

- The "racing officials" (by name) Dr. Fishman and/or his alleged co-conspirators intended to defraud or mislead as alleged in Count 1

- The *state* laws, if any, Fishman and/or his alleged co-conspirators intended to violate in order to defraud or mislead these racing officials as alleged in Count One. **Please identify any state law by citation**

- Any other state laws or administrative rules which you believe Dr. Fishman and/or his alleged co-conspirators violated as alleged in Count 1. **Please identify any state law by citation**

- The dates when such laws were allegedly violated by Fishman and any other person in Count 1 as alleged in Count One.

- Each state regulation "aimed at protecting participating horses and ensuring fair competition" that was violated as set forth in Count 1. **Please identify any state law by citation**

- Each state regulation "aimed at protecting participating horses and ensuring fair competition" that was violated as set forth in Count 2. **Please identify any state law by citation**

- Any law or rule promulgated or established by "testing regimes designed to ensure racehorses are not under the influence" that was allegedly violated as set forth in Count 1. **Please identify any state law by citation**

- Any law or rule promulgated or established by "testing regimes designed to ensure racehorses are not under the influence" that was allegedly violated as set forth in Count 2. **Please identify any state law by citation**

- The *specific horse race(s)* for which Fishman sold, distributed or manufactured alleged PEDs or allegedly agreed to do so during the 3 year period alleged in Count 1 with the intent to mislead or defraud racing officials, state regulators, or federal regulators as alleged in Count 1. [10]

### C. Count Two, which alleges a 6-year conspiracy, fails to provide sufficient information absent a bill of particulars to meaningfully prepare a defense

**Count 2** alleges that Dr. Fishman distributes and manufactures misbranded animal drugs with Giannelli, Jordan, and Dane, with the intent to defraud or mislead. The Indictment further alleges that Fishman's activities have **spanned from August 2013 until October of 2019** and included the distribution of adulterated and misbranded drugs to "racehorse-trainers." Indictment at ¶27 at page 22.

Yet, the dates included in Count Two are limited to an extraordinarily narrow time frame of less than 65 days (*February 21, 2019- April 26, 2019*) and a sampling of conclusory statements in the Indictment cannot place Fishman, Dane, Giannelli, or Jordan Fishman on notice of 6 years of potential conduct pre-dating February 21, 2019 as alleged in Count 2 of the Indictment. *Russell*, 369 U.S. at 768 (ill -defined

---

[10] The Indictment alleges a diverse compilation of isolated facts relating to XY Jet and 2 races in Florida and Dubai in or around 2019. It is unclear, on its face, whether the Government is alleging that Fishman provided Navarro, directly or indirectly, with the drugs Navarro supposedly used at the Gulf Stream race or the Dubai race. Accordingly, without the requested information, Dr. Fishman (and presumably other defendants) cannot properly formulate a meaningful defense.

charges leave "the prosecution free to roam at large to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal.")

The Indictment further alleges that "Fishman's products were created and labeled to evade detection by state racing regulators with ***labels that contained misleading statements*** designed to lower the likelihood of scrutiny by regulators." Indictment, ¶28 at page 23. Who are these racing regulators? And, what did these labels say that was misleading in any material way? Were these labels affixed to specific containers containing specific drugs and if so which drugs? *See United States. v. Scully,* 108 F. Supp 2d 59, 126 (E.D.N.Y. 2015) (granting bill of particulars requesting specific fraudulent statements related to misbranding conspiracy involving use of non-English labels and ordering government to provide a bill of particulars addressing "(1) the specific fraud alleged in each count, including the false statements alleged to have been made; and (2) the "misbranding" alleged in each count.").

At a minimum, the Government must provide this information to place Fishman on notice of the alleged criminal conduct set forth in Count 2 to enable Fishman to establish a meaningful defense.

And, the Indictment alleges that Giannelli and Dane worked with Fishman to distribute misbranded and adulterated PEDs developed by Fishman to racehorse trainers and others seeking to dope their racehorses, including providing Fishman's

PEDs to racehorse trainers in New York. *See* Indictment, ¶29 at page 23. Nevertheless, Count 2 of the Indictment fails to identify any of these supposed trainers or allege any factual information whatsoever about these persons. *See* Indictment, at pages 22-23. Consequently, these conclusory statements fail to provide Fishman with sufficient information about a 6-year period alleged in Count 2 and thus fail to provide Fishman with sufficient notice with which to properly and meaningfully prepare for trial.

Thus, to survive dismissal, the government should be required to provide a bill of particulars with respect to Count Two which includes:

- The identities of the persons or agencies or government officials that Lisa, Seth, Jordan, and Dane allegedly ***intended to defraud or mislead*** as alleged in Count 2
- The specific horse race(s) for which Fishman sold, distributed or manufactured alleged PEDs or allegedly agreed to do so during the 6 year period alleged in Count 2 with the intent to mislead or defraud racing officials, state regulators, or federal regulators as alleged in Count 2.
- The names of any misbranded and/or adulterated animal drugs that the Government alleges were manufactured or distributed by Fishman as part of the ***alleged 6-year conspiracy*** to mislead or defraud as alleged in Count 2.
- The names of the alleged "**State racing regulators**" - Indictment, ¶28 at page 23.
- The identities of the "**state regulators**" referenced in Indictment, ¶28 at pages 22-23.
- The identities of the "**racing officials**" referenced in Indictment, ¶28 at pages 22-23.
- The alleged misleading statements contained in the labels - Indictment, ¶28 at page 23.

- **Names of "racehorse trainers"** referenced in the Indictment at ¶27 at page 22.
- The "**racehorse trainers in New York**" referenced in Indictment, ¶29 at page 23.
- The names of the "**blood building PEDs"** referenced in Indictment, ¶28 at page 23.
- The "**racehorse trainer**" referenced in Indictment, ¶34(c) at page 26
- The identity of "**Individual 1"** referenced in Indictment, ¶34(e) at page 26 in connection with an April 5, 2019 phone conversation
- The identity of the "**co-conspirator**" referenced in Indictment, ¶34c at page 26.
- The identity of the person to whom Dane allegedly distributed the misbranded/adulterated animal drug as part of the conspiracy to mislead or defraud as alleged in Count 2.

### D. District Courts and the Second Circuit have consistently rejected the government's position concerning a bill of particulars

When defense counsel sought a bill of particulars and included the letter request attached herein as **Exhibit A** the Government's response was telling:

> There is no basis for a bill of particulars in this case, particularly in light of the complaint, the lengthy indictment, and the multiple T-3 affidavits, among other things.

This amounts to an invitation to "go fetch." The Second Circuit and district judges in this District and the Eastern District have consistently rejected "go fetch" as a basis for not providing a bill of particulars. *Mahaffy,* 446 F. Supp. 2d at 119-20; *Bin Laden,* 92 F.Supp.2d at 234; *Nachamie,* 2000 WL 37993 at *5; *Davidoff,* 845 F.2d at 1155; *Nekritin*, 2011 WL 1674799 at *8; *Kanekar,* at *6.

In fact, this Circuit in *Bortnowsky*[11] specifically held that the Government's production of documents prior to trial did not provide the required adequate notice:

> The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged.... In sum, we find that the district court erred by failing to grant a bill of particulars which was vital to [defendants'] understanding of the charges pending and to the preparation of a defense....

*Id.* at 575.

*Bortnovsky* is particularly instructive here. *Id.* The Government in this case has produced more than 1 TB of data to defense counsel and plans to produce more including emails, audio recordings, etc. But it has not yet informed the defendants which person or agency or commission or regulator defendants supposedly agreed to mislead or defraud and/or as set forth herein there is a multitude of information that has not been provided by the Government and is very necessary to mount a defense. *See United States v. Milstein*, 401 F.3d 53, 65 (2d Cir. 2005) (vacating conviction for distribution of misbranded drugs because Government failed to place

---

[11] The indictment in *Bortnovsky* charged that the defendants submitted false claims for burglary losses, but failed to identify which of the burglaries the Government intended to prove were phony. In addition to the indictment, the Government provided the defense with 4,000 documents, which undoubtedly included materials concerning the four burglaries the Government ultimately proved were fake. Reviewing these facts, the Second Circuit held that, by failing to identify these burglaries prior to trial, the Government impermissibly had shifted the burden of proof to the defense, which was forced to prove to the jury that all of the remaining burglaries actually had occurred. *Bortnowsky,* at 574-75.

defendant on notice as to which of the twenty different methods of misbranding has the basis for the charge).

As such, providing Fishman and others with hundreds of thousands of pages of discovery and "T-3 affidavits" is insufficient and the prosecutors must provide Dr. Fishman with a bill of particulars.

<u>CONCLUSION</u>

Absent a bill of particulars, Counts 1-2 must dismissed because the Indictment lacks the specificity required to enable Dr. Fishman to formulate a defense, it encourages surprise at trial, and it prevents Dr. Fishman from interposing a double jeopardy defense. Accordingly, Dr. Fishman respectfully moves this court to grant this Motion and to enter an order requiring the government to provide a bill of particulars as set forth herein.

<u>CERTIFICATE OF COMPLIANCE WITH L.R. 16.1</u>

On or about May 9, 2020 the undersigned sent the letter attached as **Exhibit A** requesting the information in this Motion and requesting the Government's position concerning a bill of particulars. On May 11, 2020, AUSA Andrew Adams emailed the undersigned that "there is no basis for a bill of particulars."

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that this Motion was filed via CM/ECF and served on all counsel of record authorized to receive service.

By:   <u>s/  Andrew S. Feldman</u>