UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                                            :
   UNITED STATES OF AMERICA                                 :
                                                            :
        - *v.* -                                            :
                                                            :
   JORGE NAVARRO,                                           :          20 Cr. 160 (MKV)
   ERICA GARCIA,                                            :
   MARCOS ZULUETA,                                          :
   MICHAEL TANNUZZO,                                        :
   GREGORY SKELTON,                                         :
   ROSS COHEN,                                              :
   SETH FISHMAN,                                            :
   LISA GIANNELLI,                                          :
   JORDAN FISHMAN,                                          :
   RICK DANE, JR.,                                          :
   CHRISTOPHER OAKES,                                       :
   JASON SERVIS,                                            :
   KRISTIAN RHEIN,                                          :
   MICHAEL KEGLEY, JR.,                                     :
   ALEXANDER CHAN,                                          :
   HENRY ARGUETA,                                           :
   NICHOLAS SURICK,                                         :
   REBECCA LINKE, and                                       :
   CHRISTOPHER MARINO,                                      :
                                                            :
              Defendants.                                   :
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

## GOVERNMENT'S MEMORANDUM OF LAW
### IN OPPOSITION TO SETH FISHMAN'S MOTION FOR A BILL OF PARTICULARS
### AND TO DISMISS THE INDICTMENT

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

Andrew Adams
Benet Kearney
Sarah Mortazavi
Assistant United States Attorneys
   - Of Counsel -

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 2

   I.  The Charging Instruments ..................................................................................... 2

   II.  Discovery Materials Produced to Date................................................................. 6

ARGUMENT ................................................................................................................ 8

THE DEFENDANT IS NOT ENTITLED TO A BILL OF PARTICULARS ............................. 8

   I.       Applicable Law ................................................................................... 10

   II.      Discussion ........................................................................................... 15

      a.  The Government Has Provided Ample Information Regarding the  Case Against Fishman ............................................................................................................. 16

      b.  The Volume of Evidence Against Fishman Does Not Warrant a Bill of Particulars..... 19

      c.  The Defendant's Various Requests for Itemization are Unavailing,  Particularly in the Context of Long-Running Conspiracy Charges................................................... 24

         1.  The Defendant Is Not Entitled to The Information He Requested With Regards to Count One ...................................................................................................... 28

         2.  The Defendant Is Not Entitled to A Bill of Particulars Identifying the Persons or Agencies Misled or Defrauded, Applicable Racing Rules and Regulations, Dates of Specific Events or Specific Races, Or the Identities of Specific Individuals Referenced in the Indictment ................................................................................................ 31

THE MOTION, IN THE ALTERNATIVE, TO DISMISS IS MERITLESS............................. 37

CONCLUSION............................................................................................................. 41

# **TABLE OF AUTHORITIES**

**Cases**

*Dzinchveladze v. United States*, 2007 WL 549439, at *11 (S.D.N.Y. Feb. 21, 2007) ................. 40

*Hamling v. United States*, 418 U.S. 87 (1974)........................................................................... 38

*Hemphill v. United States*, 392 F.2d 45 (8th Cir. 1968) ...................................................... 12, 29

*Russell v. United States*, 369 U.S. 749 (1962) .......................................................................... 40

*United States v. Alfonso*, 143 F.3d 772 (2d Cir. 1998) .............................................................. 39

*United States v. Amrep Corp.*, 560 F.2d 539 (2d Cir. 1977) ...................................................... 27

*United States v. Bellomo*, 263 F. Supp. 2d 561 (E.D.N.Y. 2003)............................................... 13

*United States v. Bin Laden*, 92 F. Supp. 2d 225 (S.D.N.Y. 2000)...................... 14, 20, 21, 26, 34,

*United States v. Bobo*, 344 F.3d 1076 (11th Cir. 2003)............................................................. 40

*United States v. Bonventre*, No. 10 Cr. 228 (LTS), 2013 WL 2303726 (S.D.N.Y. 2013) .......... 26

*United States v. Bortnick*, 2005 WL 1693924 (E.D. Pa. July 20, 2005)..................................... 27

*United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) ........................................ 10, 11, 24, 27

*United States v. Cephas*, 937 F.2d 816 (2d Cir. 1991) .............................................................. 10

*United States v. Chalmers*, 410 F. Supp. 2d 278 (S.D.N.Y. 2006)............................................. 30

*United States v. Chen*, 378 F.3d 151 (2d Cir. 2004) .................................................................. 10

*United States v. Connolly*, 2017 WL 2537808 (S.D.N.Y. May 24, 2017)................................... 10

*United States v. Cuti*, 2009 WL 3154310 (S.D.N.Y. 2009)........................................................ 11

*United States v. D'Amico*, 734 F. Supp. 2d 321 (S.D.N.Y. 2010)........................................ 11, 12

*United States v. Earls*, 2004 WL 350725 (S.D.N.Y. Feb. 25, 2004) ......................................... 20

*United States v. Gall*, No. 95 Cr. 98 (AHN), 1996 WL 684404 (D. Conn. Aug. 12, 1996)........ 34

*United States v. Gibson*, 175 F. Supp. 2d 532 (S.D.N.Y. 2001)................................................. 13

*United States v. Henry*, 861 F. Supp. 1190 (S.D.N.Y. 1994) ........................................ 11, 13, 14

*United States v. Johnson*, 21 F. Supp. 2d 329 (S.D.N.Y. 1998)........................................... 20, 35

*United States v. Kanekar*, No. 17 CR 353, 2020 WL 730353 (E.D.N.Y.     Feb.    12,    2020)
................................................................................................................................. 20, 22-23

*United States v. Kazarian*, No. 10 Cr. 895, 2012 WL 1810214 (S.D.N.Y. May 18, 2012) ... 13, 19

*United States v. Leonelli*, 428 F. Supp. 880 (S.D.N.Y. 1977) ................................................... 12

*United States v. Levy*, No. 11 Cr. 62 (PAC), 2013 WL 664712 (S.D.N.Y. 2013)........... 20, 22, 26

*United States v. Mahabub*, 2014 WL 4243657 (S.D.N.Y. Aug. 26, 2014) ........................... 12, 14

*United States v. Mahaffy*, 446 F. Supp. 2d 115 (E.D.N.Y. 2006).............................................. 14

*United States v. McClean*, 528 F.2d 1250 (2d Cir. 1976).......................................................... 40

*United States v. Milstein*, 401 F.3d 53 (2d Cir. 2005) .............................................................. 16

*United States v. Mitcheltree*, 940 F.2d 1329 (10th Cir. 1991)................................................... 34

*United States v. Mitlof*, 165 F. Supp. 2d 558 (S.D.N.Y. 2001)....................................... 12, 13, 14

*United States v. Monserrate*, 2011 WL 3480957 (S.D.N.Y. 2011)...................................... 11, 19

*United States v. Morales*, 280 F. Supp. 2d 262 (S.D.N.Y. 2003).............................................. 10

*United States v. Panza*, 750 F.2d 1141 (2d Cir. 1984) ............................................................. 10

*United States v. Payden*, 613 F. Supp. 800 (S.D.N.Y. 1985) .................................................... 12

*United States v. Persico*, 621 F. Supp. 842 (S.D.N.Y. 1985) ................................................... 25

*United States v. Post*, 950 F. Supp. 2d 519 (S.D.N.Y. 2013) ................................................... 38

*United States v. Rigas*, 258 F. Supp. 2d 299 (S.D.N.Y. 2003) .............................................. 9, 13

*United States v. Russo*, 483 F. Supp. 2d 301 (S.D.N.Y. 2007)............................................. 34, 37

*United States v. Samsonov*, 2009 WL 176721 (S.D.N.Y. 2009) ............................... 11, 13, 14, 19

*United States v. Shulaya, et al.*, 17 Cr. 350 (S.D.N.Y.)............................................................... 9

*United States v. Strawberry*, 892 F. Supp. 519 (S.D.N.Y. 1995) .............................................. 12

*United States v. Torres*, 901 F.2d 205 (2d Cir. 1990) .................................... 10, 11, 12, 13, 23, 29

*United States v. Triana-Mateus*, No. 98 Cr. 958 (SWK), 2002 WL 562649 (S.D.N.Y. Apr. 15, 2002) ...................................................................................................................... 13

*United States v. Trippe*, 171 F. Supp. 2d 230 (S.D.N.Y. 2001) ........................................ 11, 14, 24

*United States v. Usher*, No. 17 Cr. 19 (RMB), 2017 WL 5633315 (S.D.N.Y. Oct. 12, 2017)10, 14

*United States v. Walsh*, 194 F.3d 37 (2d Cir. 1999) .................................................... 10

*United States v. Wey*, No. 15 Cr. 611 (AJN), 2017 WL 237651 (S.D.N.Y. Jan. 18, 2017) ......... 20

## INTRODUCTION

Defendant Seth Fishman ("Fishman" or the "defendant") moves for an order requiring the Government to provide additional information in the form of a bill of particulars or, if denied, to dismiss Counts One and Two of the Indictment for failure to allege an offense (Def. Seth Fishman's Mem. of Law in Support of Mot. for Bill of Particulars or to Dismiss, filed May 14, 2020 (hereinafter the "Motion" or "Mot.")).  (*See* Dkt. No. 202).  The Motion should be denied in full.

The Motion for a bill of particulars is both unfounded in light of the extensive information provided in the Government's complaint, the Indictment, and discovery produced to date. To the extent that this information were not enough to satisfy the Government's obligations (and it is), the Motion is premature insofar as Fishman has not reviewed the discovery produced to date, and the Government's productions are not yet complete. The Motion is an attempt to sidestep the diligence required to review discovery and understand its relevance to Fishman's defense, without demonstrating necessity for a bill of particulars, as required by law.

As discussed in more detail below, notwithstanding the timing of the Motion, the defendant has more than enough notice of the specific acts of which he is accused from, among other things, (1) the Complaint charging him with violations of 21 U.S.C. §§ 331(a), 333(a)(2), 353(b); (2) the 44-page Indictment—which sets forth in detail Fishman's participation in two conspiracies linked to his manufacture, marketing, and distribution of adulterated and misbranded performance-enhancing drugs ("PEDs") through a company that has *never* been registered to produce drugs during the relevant time period; and (3), already extensive Rule 16 discovery, including multiple applications in support of Title III wiretaps of Fishman's phone, each of which includes a detailed affidavit identifying relevant communications, providing interpretations of

those communications, and summarizing details regarding the Government's broader investigation.

Fishman's proposed alternative, dismissal of the charges against him, is similarly baseless. The Indictment well exceeds the detail and notice required of charging instruments in this Circuit, going far beyond the required "tracking" of the relevant statutory language and providing ample detail concerning the particulars of Fishman's long-running illegal enterprise.

## BACKGROUND

### I.  The Charging Instruments

As set forth in the Indictment and in letters and statements to the Court, this case relates to a widespread, corrupt scheme by racehorse trainers, veterinarians, PED distributors, and others to create, manufacture, distribute, and receive adulterated and misbranded PEDs and to administer those PEDs to racehorses in order to improve their race performance for the purpose of collecting prize money from racetracks, all while avoiding detection of the practice by racing authorities and drug enforcement officials. In particular, Seth Fishman, a veterinarian, for years conspired with others to misbrand and adulterated PEDs by illegally creating and manufacturing PEDs using his status as a licensed veterinarian and through his enterprise ("Equestology," which has existed in various corporate forms, including "Equestology LLC" and "Equestology, Inc.") that is not *and has never been* registered with the Food and Drug Administration ("FDA") for that purpose during the relevant time period, by further marketing, selling, and distributing these drugs to racehorse trainers nationally and internationally.  (Indictment ¶¶ 2, 6, 8).[1]

---

[1] Equestology, Inc., the current formally incorporated version of Equestology, operated prior to and following the period specifically referenced in the Indictment. The investigation of Fishman's activities prior to the indicted period remains ongoing. However, and as described in more detail below, at no point in its history has Equestology been registered to produce and distribute drugs, including the PEDs that form the focus of the Indictment.

On October 28, 2019, Seth Fishman was charged by Complaint with one count of introducing misbranded drugs into interstate commerce with the intent to defraud or mislead, in violation of 21 U.S.C. §§ 331(a), 331(a)(2), 352(o), and 18 U.S.C. § 2. ("Compl."; Dkt. No. 1). The Complaint alleges that Fishman operated a Florida-based company that is not registered with the FDA to manufacture drugs, yet Fishman created and distributed custom-made drugs, such as VO2 Max, which are not approved by the FDA. (*Id.* ¶¶ 4-5, 6.b.). The Complaint also quoted the dates and substance of specific communications made by Fishman and certain co-conspirators in furtherance of this offense. (*Id.* ¶ 6.a. (enumerating a text message exchange between Fishman and a co-conspirator); *id.* ¶ 6.b. (setting forth a text message sent to Fishman by a separate co-conspirator); *id.* ¶ 6.c. (detailing a text message exchange between Fishman and a customer wherein the customer orders products from Fishman). The Complaint further sets forth certain provisions of the Food, Drug, and Cosmetic Act ("FDCA") that apply to Fishman's conduct. Fishman systemically violated those prohibitions through the manner in which he operated his illegal drug manufacturing business.

In February 2020, a grand jury sitting in this District returned the Indictment charging Fishman and eighteen others with multiple crimes, each relating to schemes to violate the misbranding and adulteration laws in furtherance of doping racehorses. As relevant here, Fishman was charged with two counts of conspiring to violate the drug adulteration and misbranding laws, in violation of 18 U.S.C. § 371 and 21 U.S.C. §§ 331 and 333. The Indictment details multiple specific drugs and classes of drugs, transactions, and communications involved in Fishman's offenses. Fishman's conspiracies spanned multiple years, jurisdictions, drugs, and transactions, and involved multiple charged and uncharged co-conspirators, including, with respect to Count One, Jorge Navarro, Christopher Oakes, and others; and with respect to Count Two, Fishman's

3

chemist and distributors, Lisa Giannelli, Jordan Fishman, and Rick Dane, Jr. (Indictment ¶¶ 8, 27-29, 34).

The Indictment first alleges that Fishman participated in a doping scheme wherein Jorge Navarro and others "concealed the purchase and administration of adulterated and misbranded PEDs from federal and state government agencies, racing officials, the betting public, and others" (the "Navarro Conspiracy"). (Indictment ¶ 5). In the context of his support for the Navarro Conspiracy, Fishman was specifically responsible for "illegally manufacturing PEDs," (*id.* ¶ 7), some of which Fishman sold to Navarro directly and others of which were re-sold to Navarro by Christopher Oakes, (*id.* at pg. 12-13).[2] Fishman is also alleged to have separately participated in a conspiracy of which he was the principal organizer, "[f]rom at least in or about August 2013 through at least in or about October 2019," to "create, manufacture, and distribute misbranded and adulterated PEDs," (*id.* ¶ 27), and to market those drugs to racehorse trainers, (*id.* ¶¶ 8, 14, 27). In the context of Count Two (the "Fishman Conspiracy"), the Indictment identifies Fishman's principal co-conspirators: Jordan Fishman, who assisted in illegally manufacturing those drugs, and Giannelli and Dane, who assisted in distributing those drugs. (*Id.* ¶¶ 6, 8). As discussed in more detail below, Fishman's illegal distribution scheme centered around the operation of Fishman's veterinary practice and the operation of his firm, Equestology. All drugs manufactured by Equestology and sold in the United States were misbranded and adulterated; every client causing the distribution of such drugs is relevant to the charges against Fishman as head of Equestology; and every client for whom Fishman administered drugs without providing any valid

---

[2] The Government notes that a typographical error exists in the number of the paragraphs of the Indictment, beginning at page 12, such that there are two paragraphs numbered 15, 16, and 17, respectively. Citations herein will refer to page numbers where necessary to avoid ambiguity. The Government will correct the error in any subsequent charging instrument.

prescription (by, for example, lending his name to Giannelli for use in ordering drugs for Giannelli's subsequent distribution) provides a relevant example of illegal behavior benefiting Fishman and his co-conspirators.

Relevant to both Counts One and Two are the common methods Fishman used to deceive various regulators. Fishman affixed false information on the labels of the PEDs Fishman sold (for example, by providing misleading directions for a drug's use to reduce the likelihood of scrutiny by racing officials), and designed drugs so that they would be untestable on tests administered by state regulators and racing officials. (*Id.* ¶¶ 27-29). The Indictment also sets forth various ways in which the drugs Fishman "created, marketed, and distributed" are adulterated or misbranded, including because they were "developed in a facility that is not registered with the FDA to manufacture or compound new animal drugs," "mislabeled, and/or administered with no valid prescription." (*Id.* ¶¶ 8, 28). The Indictment explains that these drugs were administered without a valid prescription because Fishman, even in his capacity as a veterinarian, "did not perform medical examinations, provide a diagnosis, or otherwise evaluate the medical necessity of providing PEDs in advance of selling PEDs," and the purpose of administering those PEDs was "to increase the chances of winning horse races[.]" (*Id.* ¶ 28). Fishman's labels "contained misleading statements designed to lower the likelihood of scrutiny by regulators," even providing an illustrative example by including a picture of one of Fishman's adulterated and misbranded products, VO2 Max, with a visible label that clearly does not comply with the FDA's labeling requirements. (*Id.* Page 13, ¶¶ 15, 28).

The Indictment also specifically enumerates the dates and descriptions of certain overt acts Fishman undertook in furtherance of each conspiracy, including: placing a phone call on April 5, 2019 from the Southern District of New York to begin processing orders for misbranded and

adulterated PEDs destined for Oakes in Pennsylvania and Navarro in Florida, (*id.* ¶ 25.h)[3]; providing drugs intended to be administered to a particular racehorse to Fishman's co-conspirator, Dane, in or about February 2018, (*id.* ¶ 34.a); advising a racehorse trainer on the use of one of Fishman's blood-building PEDs on March 7, 2019, (*id.* ¶ 34.c); discussing with another co-conspirator, Jordan Fishman, the "creation of a misbranded and adulterated PED" on an April 3, 2019 phone call, (*id.* ¶ 34.d); and discussing with a prospective customer various of the misbranded and adulterated PEDs that Fishman marketed on an April 5, 2019 phone call, (*id.* ¶ 34.e).[4]

## II. Discovery Materials Produced to Date

On or about April 2, 2020, the Government made an initial production of discovery, which included, among other records discussed below, records from 32 search warrant affidavits and warrants executed by the Government, including (as relevant to the Motion) affidavits setting forth probable cause to search: (1) cellphones associated with Seth Fishman; (2) a Dropbox account associated with Seth Fishman and Equestology; (3) the contents of two email accounts associated with Seth Fishman; (4) premises associated with Giannelli; (5) premises associated with Jordan Fishman and Seth Fishman's business; (6) premises associated with Seth Fishman and Equestology; and (7) premises associated with Oakes. The production also included a list of products marketed and offered for sale by Fishman's business, (*see* Exhibit A),[5] and a list of

---

[3] The Indictment also states that, on that same day, Fishman received a text message from Navarro requesting "1000 pills asap." (Indictment ¶ 25.g).

[4] Portions of Fishman's March 7 and April 5 phone calls are quoted, providing further direction on the portions of these calls relevant to the charged conduct. (Indictment ¶¶ 34.c, e).

[5] Given that the Government's investigation is ongoing and given that the exhibits attached to this filing contain non-public information, the Government has filed these exhibits under seal and respectfully requests that the Court maintain these exhibits under seal. The exhibits attached to this filing were produced to all defense counsel in this matter pursuant to the Court's Protective Order.

customers who have purchased Seth Fishman's products, (*see* Exhibit B),[6] photographs taken from the execution of search warrants for properties associated with Seth Fishman and Equestology, as well as photographs of certain of the items seized.

This initial production also included the Title III applications for interception of the phones used by several of the defendants in this matter, including Fishman, Oakes, and Giannelli.  The Title III applications contain detailed agent affidavits that include excerpted draft transcripts of multiple intercepted calls, intercepted text messages, and a section devoted to the Government's contemplation of investigative steps, and which of those steps were in fact executed.[7] Correspondingly, the Government has also produced searchable PDF documents, identified by the name of the intercepted individual, which contain details regarding intercepted calls and text messages (such as the date, time, duration, and direction of the call, the name of the counterparty to the call (if known), and summaries or draft transcriptions of the substance of the intercepted calls).  This format permits defendants to search for calls or text messages cited in any of the Government's papers, affidavits, or in the Indictment, and, with respect to voice calls, to search for the recordings themselves.

On April 21, 2020, the Government produced to counsel for Fishman "individual" discovery, consisting of documents or files to which the defendant has or had access, including the

---

[6] The Government does not intend to use in its case in chief this version of the defendant's customer list, but has produced it to the defendants to provide notice as to the customers associated with Fishman's business, and produces it now to the Court in direct response to the defendant's claimed confusion regarding the scope and nature of the charges.  Because the customer list for Seth Fishman and his company contains personally identifiable information for a significant number of individuals, and for the reasons noted above, the Government has filed this exhibit under seal and respectfully requests that the Court maintain this exhibit under seal.

[7] The Title III affidavits in support of interceptions over Fishman's phones are particularly detailed.  A copy of one such affidavit in support of interceptions over Fishman's phones from in or about April 2019 through in or about May 2019, is attached as Exhibit C hereto and filed under seal, as noted above.

contents of two of the defendant's own email accounts, the contents of a Dropbox account used by the defendant and others in connection with Fishman and Equestology's operations, and images of electronic devices used by (and seized from) the defendant, including two cell phones and an iPad, among other records.

On April 22, 2020, the Government produced (as relevant to the Motion) additional documents pertinent to Seth Fishman, including invoices detailing the items seized from the searches of premises associated with the defendant.  On May 28, 2020, the Government produced to defense counsel another production of group discovery which included (as relevant to the Motion) audio recordings of intercepted phone calls, location mapping showing Fishman's presence in the Southern District of New York on particular dates, and re-produced the portions of Seth Fishman's email accounts, Dropbox account, and electronic devices that the Government had deemed responsive to the corresponding search warrants (these consist of a subset of the files previously produced to the defendant in individual discovery).  That same day, the Government also produced to defense counsel for Fishman statements of Fishman contained in various reports and a prior sworn declaration.

In the coming weeks and months, the Government anticipates producing to the defendants, among other things, additional electronic discovery as devices are imaged and searched, and as the Government finalizes the collection and organization of seized materials from various physical searches.

## ARGUMENT

## THE DEFENDANT IS NOT ENTITLED TO A BILL OF PARTICULARS

The defendant's motion for a bill of particulars is meritless.  The defendant has not demonstrated that he requires a bill of particulars, particularly given that his Motion reveals he has

yet to review the discovery he has already received. The Indictment, the Complaint, and the easily-reviewable contents of Rule 16 discovery make plain the Government's case against the defendant. Moreover, additional discovery, future briefing as to the scope of the Government's view of admissible Rule 404(b) material, as well as the disclosures the Government will make in advance of any trial (including § 3500 material which the Government routinely makes available to defense counsel in advance of the statutorily mandated deadline, and pre-trial letters disclosing charged and uncharged conduct, which the Government intends to provide and tailor for specific trial groupings),[8] will provide still further information about the particulars of the Government's already detailed case. Far from establishing a lack of notice—the foundational prerequisite for granting a bill of particulars—the Motion only confirms that the defendant's demand is driven by the improper twin purposes of stymying the Government's continued development of proof as its investigation continues, and acting as a general investigative tool and means to compel improper disclosure of the Government's witnesses and litigation strategy well in advance of trial.  The

---

[8] By way of example, the Government refers to a standard pre-trial disclosure provided to defense counsel in *United States v. Shulaya, et al.*, 17 Cr. 350 (Dkt. No. 689) (S.D.N.Y. Apr. 16, 2018), a racketeering case charging thirty-three defendants with various aspects of participation in a multi-year organized criminal group. Disclosures of this kind are tailored to trial evidence at a time following the production of discovery and reasonably in advance of trial, focusing on relevant details of defendants who are, in fact, proceeding to trial. They are regularly provided to defense counsel and/or the Court in complex cases involving organized criminal groups, and are among the kinds of pre-trial disclosures that provide for additional notice and clarification (mooting the need for a bill of particulars), without hampering the Government's ability to develop its case. *See also Shulaya*, 17 Cr. 350 (Dkt No. 446) (S.D.N.Y. Dec. 12, 2017) (denying, *inter alia*, requests for bills of particulars largely on the grounds set forth below and in light of an indictment and substantial pre-trial discovery, including affidavits pertaining to, and transcripts of, Title III wiretap interceptions); *see also United States v. Rigas*, 258 F. Supp. 2d 299, 304 (S.D.N.Y. 2003) (rejecting attempt to use a bill of particulars demand to "lock the government into its proof").

Court should reject such attempts and deny the Motion in its entirety.

## I.  Applicable Law

The proper purpose of a bill of particulars under Federal Rule of Criminal Procedure 7(f) is "to provide a defendant with information about the details of the charge against him if this is *necessary* to the preparation of his defense, and to avoid prejudicial surprise at trial." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (emphasis added); *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam).   Accordingly, "[a] bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (internal citation omitted); *see also Torres*, 901 F.2d at 234 (citation omitted); *United States* v. *Cephas*, 937 F.2d 816, 823 (2d Cir. 1991) (the Government is not required to "particularize all its evidence"); *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984).

A "bill of particulars is not necessary where the government [makes] sufficient disclosures concerning its evidence and witnesses by other means." *United States v. Usher*, No. 17 Cr. 19 (RMB), 2017 WL 5633315, at *2 (S.D.N.Y. Oct. 12, 2017) (quoting *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004)).   "If the information [a] defendant seeks 'is provided in the indictment or in some acceptable alternate form,' such as discovery or other correspondence, no bill of particulars is required." *Id.* (quoting *United States v. Connolly*, 2017 WL 2537808, at *1 (S.D.N.Y. May 24, 2017)); *see also Bortnovsky*, 820 F.2d at 574; *United States v. Morales*, 280 F. Supp. 2d 262, 274 (S.D.N.Y. 2003).

In exercising its broad discretion to determine whether the charges are "so general" that they require supplementing, the Court considers not just the text of the Indictment, but also

discovery and other information that has been, or will be, supplied to the defense in advance of trial.  *See Bortnovsky*, 820 F.2d at 574; *see also, e.g.*, *Torres*, 901 F.2d at 234 (affirming denial of request for bill of particulars where defendants had "been provided with a wealth of evidentiary detail from the discovery to date, including electronic intercepts, search evidence and exhaustive supporting affidavits") (internal citation omitted); *United States v. Monserrate*, No. 10 Cr. 965 (CM), 2011 WL 3480957, at *4 (S.D.N.Y. 2011) (denying, in case charging mail fraud and conspiracy to commit mail fraud, request for bill of particulars where discovery materials and indictment were "sufficient to apprise the defendant of the charge against him" and to allow him to prepare for trial); *United States v. D'Amico*, 734 F. Supp. 2d 321, 335 (S.D.N.Y. 2010) (denying bill of particulars request where supplementary facts were supplied to defense by way of letter); *United States v. Cuti*, No. 08 Cr. 972 (DAB), 2009 WL 3154310, at *3-4 (S.D.N.Y. 2009) (in accounting fraud case, denying request for particulars identifying all fraudulent transactions, payments, and statements made in furtherance of charged scheme where Government had furnished more than a million pages of discovery and, by letter, identified a series of fraudulent transactions and payments); *United States v. Samsonov*, No. 07 Cr. 1198 (CM), 2009 WL 176721, at *4 (S.D.N.Y. 2009) (denying bill of particulars request in mortgage and bank fraud case where indictment, discovery letters, and discovery materials gave defendant adequate information to prepare for trial); *United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001) (denying bill of particulars request in stock fraud case where indictment was 15 pages long and substantial discovery had been provided); *United States v. Henry*, 861 F. Supp. 1190, 1198 (S.D.N.Y. 1994) ("In determining whether to grant a motion requesting a bill of particulars, the Court must ascertain whether the information sought has been provided elsewhere, such as through pre-trial discovery, voluntary disclosure by the government, or the indictment itself.").

Bills of particulars would undoubtedly be helpful to the defense in any case. But because "the law does not impose upon the Government an obligation to preview its case or expose its legal theories," *United States v. Leonelli,* 428 F. Supp. at 880 (S.D.N.Y. 1977), "[t]he ultimate test must be whether the information sought is *necessary*, not whether it is helpful." *United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001) (emphasis added); *United States v. Mahabub*, No. 13 Cr. 908 (AJN), 2014 WL 4243657, at *2 (S.D.N.Y. Aug. 26, 2014) ("The purpose of a bill of particulars is to ensure that a defendant has the information necessary to prepare a defense, not to turn over all information that would aid the defendant."); *United States* v. *Strawberry*, 892 F. Supp. 519, 526 (S.D.N.Y. 1995) ("The proper scope and function of a bill of particulars is not to obtain disclosure of evidence or witnesses to be offered by the Government at trial."); *United States v. Rittweger*, 259 F. Supp. 2d 275, 292-93 (S.D.N.Y. 2003) (denying bill of particulars request as "an impermissible attempt to compel the Government to provide the evidentiary details of its case") (citation and quotation marks omitted). In other words, the standard is not whether "the information would be useful to the defendant; if the defendant has been given adequate notice of the charges against him, the government is not required to disclose additional details about its case." *United States* v. *Payden*, 613 F. Supp. 800, 816 (S.D.N.Y. 1985).

A bill of particulars is misused when it serves to compel the Government to disclose "the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crime charged, or a preview of the Government's evidence or legal theories." *Mitlof*, 165 F. Supp. 2d at 569; *see also Torres*, 901 F.2d at 234 ("'Acquisition of evidentiary detail is not the function of the bill of particulars.'" (quoting *Hemphill v. United States*, 392 F.2d 45, 49 (8th Cir. 1968)); *D'Amico*, 734 F. Supp. 2d at 335 ("'A bill of particulars is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence

12

or witnesses to be offered prior to trial.'") (quoting *United States v. Gibson*, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001)); *United States v. Triana-Mateus*, No. 98 Cr. 958 (SWK), 2002 WL 562649, at *5 (S.D.N.Y. Apr. 15, 2002) ("The Government is not required to disclose the manner in which it will attempt to prove the charges, nor the means by which the crimes charged were committed."); *United States v. Bellomo*, 263 F. Supp. 2d 561, 580 (E.D.N.Y. 2003) ("A bill of particulars is not designed to: obtain the government's evidence; restrict the government's evidence prior to trial; assist the defendant's investigation; obtain the precise way in which the government intends to prove its case; interpret its evidence for the defendant, or disclose its legal theory."). The "'wheres, whens and with whoms'" are "beyond the scope of a bill of particulars." *Mitlof*, 165 F. Supp. 2d at 569 (citing *Torres*, 901 F.2d at 233-34); *see also, e.g.*, *Henry*, 861 F. Supp. at 1197 ("This instrument should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense."); *United States* v. *Zemlyansky*, 945 F. Supp. 2d 438, 484-85 (S.D.N.Y. 2013) (citation omitted) ("It is improper to use a bill of particulars to compel the Government to disclose the manner in which it will prove the charges or preview its evidence or legal theory."); *United States* v. *Kazarian*, No. 10 Cr. 895, 2012 WL 1810214, at *24-26 (S.D.N.Y. May 18, 2012) (A bill of particulars "is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial." (quoting *Gibson*, 175 F.Supp.2d at 537)).

Nor should a bill of particulars be employed in an attempt to "lock the government into its proof." *United States v. Rigas*, 258 F. Supp. 2d 299, 304 (S.D.N.Y. 2003); *Samsonov*, 2009 WL 176721, at *3 (bill of particulars "must not be misused to compel disclosure of how much the Government can prove, nor to foreclose the Government from using proof it may develop as the trial approaches"). There are good reasons why bills of particulars are warranted only where the

allegations in the indictment, as supplemented by discovery and elsewise, are so general as to render it impossible to prepare a defense. Because "a bill of particulars confines the Government's proof to particulars furnished," it can "restrict unduly the Government's ability to present its case." *Henry*, 861 F. Supp. at 1197; *see also Mahabub*, 2014 WL 4243657, at *2 (recognizing that "care must be taken" in deciding whether to order a bill of particulars because "[t]he government's presentation of evidence at trial is limited to the particulars contained in the bill"); *Samsonov*, 2009 WL 176721, at *3 ("The vehicle of a bill of particulars serves to inform a defendant of the nature of the charge, when he is otherwise insufficiently informed, and must not be misused to compel disclosure of how much the Government can prove, nor to foreclose the Government from using proof it may develop as the trial approaches.").

"In light of [Second Circuit precedent], bills of particulars are not routinely granted." *Usher*, 2017 WL 5633315, at *2 (quoting *United States v. Mahaffy*, 446 F. Supp. 2d 115, 119 (E.D.N.Y. 2006)). Rather, courts routinely deny motions for bills of particulars that are, at bottom, demands for additional details of the manner in which the offense was committed, as discussed above, and is the case here. *See Mitlof*, 165 F. Supp. 2d at 569 (noting that the Government may not be compelled to provide a bill of particulars disclosing the manner in which it will prove charges, the manner in which defendant committed the crime charged, or a preview of the Government's evidence or legal theories). Courts also "routinely den[y]" demands for bills of particulars setting forth the identities of co-conspirators. *Trippe*, 171 F. Supp. 2d at 240; *see also United States v. Bin Laden*, 92 F. Supp. 2d 225, 242 (S.D.N.Y. 2000), , *aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93 (2d Cir. 2008) ("[R]equests, such as those made by the Defendants here, for particulars as to when, where, how, and with whom

each individual defendant joined an alleged conspiracy have 'almost uniformly been denied.'" (citation omitted)).

## II. Discussion

The clarity that Fishman claims to seek is found in ample volume in the Complaint, the Indictment, and the discovery produced to date (and that will be produced hereafter).  In his Motion, Fishman willfully ignores information included in the Complaint, the Indictment and the discovery, and fundamentally misapprehends the function of a bill of particulars and what the law requires in regards thereto.  The Motion should be denied.

At heart, the case against Fishman is straightforward:  the charges arise from Fishman's years-long business of creating, manufacturing, marketing, and distributing various PEDs intended for racehorses that were not approved by the FDA, manufactured in a facility that was not duly registered with the FDA for that purpose, that were mislabeled, and that were sold without a valid prescription, and that either contained misleading labels, or were designed to be undetectable on drug tests, or both. In Count One, Fishman is accused of applying his skills and products toward the success of the Navarro Conspiracy; while Count Two focuses on Fishman's agreement with other participants in his veterinary practice and Equestology to use that enterprise in furtherance of illegal drug sales to members of the horseracing industry more widely.

Although it is true that the relevant conduct spans years, and involves a large number of adulterated and misbranded drugs distributed by Fishman and his co-conspirators, the conduct itself is neither convoluted nor complex, and requires no more notice than that already provided, and that which will be provided through the Government's continued production of Rule 16 discovery. In short, Fishman's entire business was illegally engaged in the manufacture and

distribution of drugs for the purpose of doping racehorses. The Complaint, Indictment, and discovery make this abundantly clear.

    **a.**       **The Government Has Provided Ample Information Regarding the  Case Against Fishman**

The 44-page Indictment in this case sets forth the relevant provisions of the FDCA pertaining to Fishman's offenses, (Indictment ¶¶ 4, 11, 12); provides specific reference to particular adulterated and misbranded drugs distributed by Fishman, including BB3, SGF-1000, ITP Plus or ITPP, VO2 Max, and a Frozen Pain shot, (*id.* ¶¶ 13.a, 13.b; *id.* Pages 11-12, ¶ 17); lists several ways in which those drugs are adulterated and misbranded, (*id.* ¶¶ 8, 28);[9] lists the ways in which Fishman sought to mislead and defraud others through the design and labeling of those products, (*id.* Page 13, ¶ 15; *id.* ¶¶ 27-29); and refers to certain of the entities Fishman sought to mislead and defraud, (*id.* ¶¶ 27-29).   As stated above, the Indictment provides dates and descriptions of certain relevant communications and acts in furtherance of the conspiracy, even quoting from intercepted communications.  (*Id.* ¶¶ 25.h, 34.a, 34.c, 34.d, 34.e).  These details allow the defendant to make use of the documents disclosed in discovery and to sort and prioritize discovery, in order to focus on those documents most relevant to his defense.

Moreover, the substance of the Government's discovery produced to date (and setting aside the discovery that will be produced in the coming weeks and months) also provides the defendant

---

[9] The Motion's reliance on *United States v. Milstein* in support of its argument is misplaced. In *Milstein*, the Second Circuit vacated one of several counts of conviction on the basis that the Government had constructively amended the Indictment by presenting at trial a theory of misbranding that was not set forth or otherwise encapsulated in the Indictment.  *See United States v. Milstein*, 401 F.3d 53, 65 (2d Cir. 2005).  Here, the Indictment identifies a discrete list of ways in which the defendant's adulterated and misbranded drugs are adulterated and misbranded under the FDCA.

with clear guidance in reviewing discovery and preparing his defense. A significant portion of discovery consists of the fruits of the Government's wiretap of several defendants' phones. Those wiretaps were obtained through approval of multiple wiretap affidavits that contain, among other things, agent affidavits, some of which are over 100 pages long, setting forth probable cause to intercept Fishman's telephone, examples of certain intercepted calls and text messages (including draft transcriptions of portions of intercepted calls), and investigative steps the Government had taken and had planned to take at the time of the application. This is further bolstered by periodic Title III reports submitted to the Court twice in a thirty-day period of interception, which similarly include a recitation of certain relevant intercepted communications and a brief synopsis of investigative steps that were recently completed, and that were planned, at the time of submission.

The Government has also produced search warrant affidavits submitted for the purpose of conducting searches of premises and electronic devices, including: (1) a search warrant affidavit for the surreptitious search of Fishman's cell phone, obtained in or about March 2019; (2) a search warrant affidavit for the search of two email accounts used by Fishman, obtained in or about June 2019; (3) a search warrant affidavit for a Dropbox account used by Fishman, obtained in or about June 2019; (4) a search warrant affidavit for the surreptitious search of premises associated with Oakes, obtained in or about March 2019; (5) a search warrant affidavit for a search of multiple premises associated with Seth Fishman, obtained in or about October 2019; (6) a search warrant affidavit for the search of premises associated with Oakes, obtained in or about May 2020; (7) a search warrant affidavit for the search of premises associated with Giannelli, obtained in or about May 2020; (8) a search warrant affidavit for the search of the facility used by the defendant and Jordan Fishman to manufacture adulterated and misbranded drugs, obtained in or about May 2020; (9) a search warrant affidavit for the searches of multiple premises associated with Jorge Navarro,

obtained in or about March 2020; (10) a search warrant affidavit for the search of a vehicle associated with Erica Garcia, obtained in or about March 2020; and (11) a search warrant affidavit for the searches of cellular phones seized incident to the arrests of Erica Garcia and Marcos Zulueta, obtained in or about March 2020.

These affidavits distil key communications and provide detail and explanation regarding the offenses. By way of example, the Government attaches as Exhibit D a copy of the affidavit submitted in support of a warrant obtained to search several of Fishman's electronic devices. Among other things, the affidavits make plain the conduct of Fishman and his co-conspirators relevant to the Government's investigation, even up to the date of the arrest of Lisa Giannelli on March 9, 2020, at which time the premises search warrant executed on premises associated with Lisa Giannelli resulted in the seizure of drugs manufactured by Equestology and/or obtained through the use of Fishman's veterinary license.

The Government has also provided to the defendant intercepted communications and text messages, in the form of audio recordings of the intercepted calls, and searchable PDF documents ("Linesheets") that list the date, telephone number, call duration, call direction, counterparty (where known), and, of course, the summary or transcription of each intercepted call and text message.  The defendant may thus easily review, search, and identify communications in preparation for his defense, using the Complaint, the Indictment, the Title III wiretap applications, the Title III periodic reports, the search warrant affidavits, and the defendant's knowledge of his own conduct to guide his review.

Much of the discovery the Government has provided (as pertinent to Seth Fishman) consists of his own records and devices, including smartphones, email accounts, and a cloud storage account, with which he is familiar.  This includes multiple lists of misbranded and/or

adulterated products that Fishman and Equestology offered for sale, categorizing them based on their purported function and, in some instances, describing in more detail their intended effect on a racehorse.  (*See* Exhibit A).  The defendant has also received  a separate Excel spreadsheet, stored in the defendant's Dropbox account, which includes the names of certain of Fishman's customers (including Navarro and Oakes) and details of the orders associated with those customers, such as the products they purchased, the amount they paid, and the date of the purchase.  (*See* Exhibit E).

> **b.      The Volume of Evidence Against Fishman Does Not Warrant a Bill of Particulars**

Records of the type in Exhibits A and E, coupled with the Government's Complaint, Indictment, and multiple Title III and search warrant affidavits and Title III periodic reports, go far beyond what would be merely "sufficient" for the defendant to avoid undue surprise. Faced with a litany of documents detailing his crimes, Fishman instead turns to a different tack: to argue that he is overwhelmed by the volume of evidence.   The defendant's argument that the Government's "voluminous" discovery requires a bill of particulars is backwards.  (Mot. at 5). The comprehensive and comprehensible discovery in this case *undermines* Fishman's motion. Indeed, comprehensive discovery has often been cited by courts in denying motions for a bill of particulars.  *See Kazarian*, 2012 WL 1810214, at *25; *Monserrate*, 2011 WL 3480957, at *4; *Samsonov*, 2009 WL 176721, at *4; *United States v. Mandell*, 710 F. Supp. 2d 368, 385 (S.D.N.Y. 2010) (the "mere existence of a 'mountain of documents' does not entitle" a defendant to a bill of particulars); *see also United States* v. *Earls*, 2004 WL 350725, at *4-5 (S.D.N.Y. Feb. 25, 2004) (denying defendant's request for a bill of particulars when the Government had "furnished . . . voluminous discovery").   In no event should  volume of discovery  alone  warrant  a bill of

particulars; "[w]hile [a] [c]ourt may sympathize with counsel's task of reviewing a large quantity of materials that continue to be produced," that concern is addressed by granting the defense sufficient time in which to conduct the review in advance of trial, *see United States v. Levy*, No. 11 Cr. 62 (PAC), 2013 WL 664712, at *13 (S.D.N.Y. 2013), not by requiring the Government to prematurely preview its case before a trial has even been scheduled, and unnecessarily restrict its ability to present its case at trial.[10]

Courts in this Circuit routinely deny motions for a bill of particulars based on the mere fact that discovery is voluminous, especially in situations where defendants have had—or, in this case, will have—many months to review said discovery before trial. *See United States v. Wey*, No. 15 Cr. 611 (AJN), 2017 WL 237651, at *21 (S.D.N.Y. Jan. 18, 2017) ("[T]he discovery volume alone simply does not necessitate a bill of particulars."); *Levy*, 2013 WL 664712, at *13 (denying request for bill of particulars based on amount of discovery and noting that "[w]hile the Court may sympathize with counsel's task of reviewing a large quantity of materials that continue to be produced by the Government, the applicable Indictment was filed almost eight months ago, and counsel has had the opportunity to review discovery materials as the Government has produced them").

---

[10] As discussed herein, the Motion relies on a number of cases where courts have granted a bill of particulars, but those motions were granted when the defendants were mere months away from trial, and had limited time to prepare. *See, e.g.*, *United States v. Kanekar*, No. 17 CR 353, 2020 WL 730353, at *1 (E.D.N.Y. Feb. 12, 2020) (motion for bill of particulars granted approximately two months before scheduled trial); *Bin Laden*, 92 F. Supp. 2d at 243 (motion for bill of particulars granted in part and denied in part six months before trial); *United States v. Nekritin*, No. 10 Cr. 491 S-1, 2011 WL 1674799, at *7 (E.D.N.Y. May 3, 2011) (motion for bill of particulars granted in part and denied in part one month before trial); *United States v. Nachamie*, 91 F. Supp. 2d 565, 575 (S.D.N.Y. 2000) (motion for bill of particulars granted in part and denied in part three months before trial); *United States v. Johnson*, No. 98 Cr. 45 (JSR) (S.D.N.Y.) (motion for bill of particulars granted two months before trial).

Another case addressing a prosecution involving voluminous discovery, *United States v. Bin Laden*, cited by the defendant, is readily distinguishable based on the complexity and relative seriousness of the charges (which included hundreds of counts, some of which were eligible for capital punishment), the timing of the Court's order (six months before trial was scheduled), and the defendants' strict conditions of pre-trial detention (impacting their ability to assist in trial preparation). *Bin Laden*, 92 F. Supp. 2d at 226-27. The Court in *Bin Laden* denied in part, and granted in part, a motion for a bill of particulars six months before trial even though eleven defendants in that case, including two of four who moved for a bill of particulars, were charged with hundreds of counts of criminal conduct including 229 counts of murder, nine substantive offenses, and five distinct criminal conspiracies, some of which could result in capital punishment, in connection with their terrorist acts in support of Al Qaeda.[11] *Id.* In addition to including overt acts in the Indictment that were clearly criminal by virtue of having violence as their aim, "many of the overt acts alleged consist of seemingly non-criminal conduct—such as writing letters, traveling, and engaging in business transactions[.]" *Id.* at 229.[12] The Court noted the unique "complexity of the charges" given the allegations, including "the voluminous discovery," "the location of many relevant documents and witnesses in various countries around the world, special

---

[11] The eleven defendants were charged with 229 counts of murder, nine substantive offenses, and participation in at least five distinct criminal conspiracies, all related to their commission of terrorist acts in support of al Qaeda and Usama Bin Laden, including plotting embassy bombings and killings of United States nationals and military personnel. *Bin Laden*, 92 F. Supp. 2d at 226-27.  A twelfth defendant, who also moved for a bill of particulars, was charged with 20 counts of perjury before a federal grand jury and three counts of lying to FBI agents, and participating in six distinct criminal conspiracies. *Id.*

[12] The Court noted that the criminal conduct alleged was "widespread," "occurring over a period of nearly ten years, that ranges from detonating explosives, to training Somali rebels, to transporting weapons, to establishing businesses, to lecturing on Islamic law, to writing letters, and to traveling, as overt acts in furtherance of the charged conspiracies." *Id.* at 234-35. The Court noted that the charges in that case presented a burden that was "seemingly unprecedented and unique" in preparing a defense. *Id.*

procedures for handling classified material, the need to translate literally thousands of documents, the potential availability of capital punishment for some of the Defendants," the estimated trial length of six months, *id.*, and the fact that the defendants were under particularly restrictive conditions of pre-trial confinement and were thereby limited in their ability to review discovery and assist defense counsel in preparing a defense, *id.* at 235.  Nonetheless, and despite the fact that defendants were less than six months away from trial, where the Government would present proof regarding 267 distinct criminal charges, the Court denied in part the motion for a bill of particulars, granting it only insofar as it required the Government to specify information regarding "some of the allegations—those which are described in general terms that refer to so broad a class of activity that they would require an exceedingly extensive investigation by defense counsel," directing the Government to provide a bill of particulars regarding limited categories of information.  *Id.* at 236.[13]

Likewise, in *United States v. Kanekar*, the defendant filed a motion seeking a bill of particulars in the months prior to trial.  *United States v. Kanekar*, No. 17 CR 353 (4), 2020 WL 730353, at *5 (E.D.N.Y. Feb. 12, 2020). The Court denied the defendant's motion in part, finding that the Government's offer to make certain pre-trial disclosures was satisfactory and obviated the need for a bill of particulars, and otherwise found that the defendant's "request for 'each specific misrepresentation and omission alleged is simply a request to compel the production of the very type of evidentiary minutiae that is not appropriate in a bill of particulars.'" *Id.* (quoting *Levy*, 2013 WL 664712, *13 (denying a similar request in a securities fraud case)).  While the Court granted the motion in part, compelling the Government to identify the Medicare and Medicaid

---

[13] In partially granting the motion for a bill of particulars, the Court denied the majority of the 150 requests for information defense counsel requested, including information as to the precise dates and locations of certain meetings mentioned in the Indictment.  *Id.* at 238.

provisions that had been violated, and the names of any unindicted co-conspirators, there was no indication that this information could easily be gleaned from the discovery provided in that case. By contrast, here the defendant has been provided with Rule 16 discovery containing lengthy and detailed affidavits and Title III periodic reports that identify pertinent information, including—as relevant to the Motion—specific state laws that prohibit doping racehorses, with relevant citations to applicable prohibitions. *See id.* at *4-5. Significantly, the *Kanekar* Court issued its decision when the parties were only approximately two months from trial,[14] where the need for this information was heightened given that discovery had been produced on a rolling basis for over two years, and given the short amount of time before the commencement of trial. *Id.* at *4. *Kanekar*, consequently, counsels against granting the Motion.

In this matter, the detailed Title III and search warrant affidavits, periodic Title III reports, the Indictment, the Complaint, and Linesheets provide a veritable roadmap to the defendant, both to search and analyze discovery efficiently, and to understand the nature and circumstances of the charged conduct, the Government's interpretation of this conduct, and the roles of the defendant and his charged co-conspirators, among other matters germane to Fishman's preparation for trial. *See Torres*, 901 F.2d at 234. That alone is a reason for the defendant's Motion to be denied. *See, e.g.*, *Mandell*, 710 F. Supp. 2d at 385 (denying request for particularization of alleged misrepresentations where the indictment was 34 pages long and Government had provided voluminous, organized discovery); *Trippe*, 171 F. Supp. 2d at 240 (no bill of particulars required where defendant had benefit of 15-page indictment and discovery).

---

[14] The trial in *Kanekar* was ultimately postponed due to the COVID-19 pandemic after the Court had issued its ruling denying in part and granting in part the motion for a bill of particulars.

Fishman's argument on this point is also factually unfounded.  The Government has not produced "several Terabytes" of data to the defendant, as argued in the Motion.  (Mot. at 5, 24).  The Government has produced approximately 220 gigabytes of group and individual discovery to the defendant to date, much of which consists of the contents of the defendant's own emails and electronic devices, and not all of which pertains to Counts One and Two of the Indictment (*e.g.*, discovery to date has included records relating to the manufacture of SGF-1000 by a firm essentially in competition with Fishman's Equestology). It is not the case that the Government has merely "provid[ed] mountains of documents to defense counsel," or that defense counsel is "unguided" as to how to review those documents, or which documents to review.  (Mot. at 7 (citing *Bortnovsky*, 820 F.2d at 575)). Particularly given that discovery is ongoing, it is premature for the defendant to argue—before even receiving and reviewing future discovery—that he will be unable to review those materials.  Indeed, several of the defendant's requests for information in the Motion are answered by reference to certain key portions of discovery that Fishman received prior to applying to the Court for relief, as discussed further below.[15]

### c.        The Defendant's Various Requests for Itemization are Unavailing,  Particularly in the Context of Long-Running Conspiracy Charges

The defendant is correct that the Indictment does not allege every detail that the Government intends to present at trial relevant to the two charged conspiracies.  (*See* Mot. at 4, 11).  The defendant is incorrect in implying, however, that the Indictment is deficient for omitting those details, or that discovery does not otherwise inform the defendant of these facts.  For

---

[15] For example, the Motion requests the identities of individuals whose communications with Fishman are mentioned in the Indictment.  (*See* Mot. at 23).  This information is apparent from the searchable Linesheets the Government produced to the defendant on or about April 2, 2020, six weeks before the Motion was filed.

example, the defendant claims that because the Government has not alleged specific conduct indicating the beginning of the time period of each conspiracy, he "along with the other defendants . . . [are] left to hazard guesses" as to what the relevant conduct could be. (Mot. at 11-12). In fact, there is no mystery in this regard: the nature of the conspiracies charged in each count extended throughout the time period charged.[16] Fishman operated his drug manufacturing and distribution business through the time period of each Count, distributing adulterated and misbranded performance-enhancing drugs for the purpose of doping racehorses.

The notion that the Government must itemize each relevant act, transaction, or communication relevant to Fishman's conspiracies in a bill of particulars is legally incorrect. "Details as to how and when the conspiracy was formed, or when each participant entered it, need not be revealed before trial." *United States v. Persico*, 621 F. Supp. 842, 868 (S.D.N.Y. 1985). That is because "it is not the Government's burden at trial to establish a precise chronology as to when each defendant, as well as other unindicted co-conspirators, joined the conspiracies. Nor need the Government present evidence at trial as to the way in which a Defendant's acts furthered the conspiracies' overall objectives." *Bin Laden*, 92 F. Supp. 2d at 243 .

---

[16] The defendant mentions, in passing, that the Indictment "provides no facts about the manufacturing or distribution of any of the" adulterated and misbranded PEDs Fishman created and distributed. (Mot. at 11). In making this argument, the defendant has overlooked the information in the Indictment, and that produced in discovery, as discussed above. The Indictment states that Jordan Fishman "manufactured PEDs to Seth Fishman's specifications," (Indictment ¶ 8), and that the drugs were manufactured in "a facility that is not registered with the FDA for manufacturing animal drugs," (*id.* ¶¶ 28, 29). The existence of that facility is no surprise to the defendant given his conduct and his relationship with Jordan Fishman; nonetheless, the Government has already produced an affidavit and search warrant authorizing the search of that facility, which is available for Fishman's review. Likewise, the Indictment states that Oakes, Giannelli, and Dane distributed Fishman's drugs (even specifying that Giannelli did so "in and around New York State"). (*Id.* ¶ 8). The Title III affidavits, Linesheets, search warrant affidavits, customer list, and records from the defendant's phone and Dropbox accounts supply sufficient particulars as to their distribution of Fishman's products. (*See* Exs. A & E hereto).

The Government has charged and intends to prove an overarching conspiracy – in which the defendant knowingly participated – that consisted of running a business that was intended to create, manufacture, market, sell, and distribute unapproved drugs, manufactured in an unregistered facility, for the purpose of doping racehorses.  The Government is not required to furnish an inventory of every act it plans to prove furthered that fraudulent conspiracy, much less every drug transaction involved in a long-running drug distribution conspiracy, even in cases where the Government offers some specific examples as illustrative of criminal conduct.[17]  *See, e.g.*, *United States v. Bonventre*, No. 10 Cr. 228 (LTS), 2013 WL 2303726, at *5-7 (S.D.N.Y. 2013) (in case involving largest Ponzi scheme in U.S. history arising out of Bernard L. Madoff Securities LLC, which spanned decades, denying request for bill of particulars identifying, among other things, "the specific arbitrage trades in which [a defendant] was involved that the Government alleges are fraudulent," the "dates and stock names for all alleged backdated transactions," "all unnamed clients and allegedly fake trades referred to in" a particular count, and all allegedly false documents and records); *Levy*, 2013 WL 664712, at *4, 13 (in case charging stock manipulation through false representations by corrupt brokers, request for bill of particulars recounting "each specific misrepresentation and omission alleged" denied as "simply a request to compel the production of the very type of evidentiary minutiae that is not appropriate in a bill of particulars") (citation and quotation marks omitted); *United States* v. *Guttenberg*, No. 07 Cr. 141 (DAB), 2007 WL 4115810, at *4-5 (S.D.N.Y. 2007) (in insider trading case, denying request for bill of particulars itemizing trades alleged to have been based on material nonpublic information).

---

[17] Indeed, had Fishman utterly failed to consummate any illegal drug sales, the conspiracy charge would still lie – the essence of the conspiracy charge is the agreement, rather than a finished act. Of course, Fishman did sell misbranded and adulterated PEDs, prolifically, and to purchasers across the United States and abroad.

Even at trial, the Government need not prove each criminal transaction in which the defendant engaged in order to prove the charged offenses. "Courts have consistently held that, in fraud cases, the government is not required to prove every allegation of fraudulent activity that appears in the indictment. The government must prove a sufficient number of fraudulent activities to support a jury inference that there was an overall fraudulent scheme." *United States v. Bortnick*, 2005 WL 1693924, at *21 (E.D. Pa. July 20, 2005) (*citing United States v. Amrep Corp.*, 560 F.2d 539, 546 (2d Cir. 1977)).

The cases relied on by the defendant are distinguishable because they involved instances in which the Government apparently intended to prove that only certain discrete transactions were fraudulent, but failed to identify such transactions, creating a "needle-in-a-haystack" problem for the defendants. For example, *United States v. Bortnovsky*, 820 F.2d at 575the Second Circuit case on which Fishman primarily relies for this argument—was a RICO insurance fraud case in which the Government did not identify before trial which of fifteen burglaries and over 4,000 documents were alleged to have been fabricated, even though the Government intended to prove that only a handful were actually illegal. The Second Circuit noted that "[t]he relevance of key events was shrouded in mystery at the commencement of and throughout the trial." *Id.* at 575. Ultimately, at trial the Government alleged that only four out of fifteen burglaries and three out of thousands of documents were false. The Court also noted that one of the defendant's counsel "had only four days within which to prepare a defense" by sifting through the Government's discovery and identify the fraudulent documents. *Id.* The court found that under these circumstances, the burden had impermissibly shifted to the defendants, who were "hindered in preparing their defense," by being "forced to explain the events surrounding eight actual burglaries and to confront numerous documents unrelated to the charges pending," *Id*. at 574-75. No such burden-shifting is occurring

here, where the Government intends to prove the existence of overarching conspiracies, involving a firm dedicated to the distribution of illegal PEDs in furtherance of the Navarro Conspiracy and the Fishman Conspiracy, and there is ample notice of the nature of these conspiracies that has been, and will be, provided.

The defendant's specific outstanding demands are further addressed below.

### 1.      The Defendant Is Not Entitled to The Information He Requested With Regards to Count One

The defendant asks this Court to "order the Government to provide a bill of particulars which includes" the following information: (1) "The animal drugs the Government alleges that Fishman misbranded or adulterated as set forth in Count One"; (2) "The names of any alleged PEDs . . . not identified in Count 1, that Fishman allegedly manufactured, sold, *or* distributed or agreed to manufacture, sell, or distribute with any other person as part of the alleged *3 year* conduct in Count 1 and the dates that Fishman allegedly manufactured or distributed such drugs as alleged in Count 1"; (3) "The identities of any of the 'customized analgesics' the Government claims were manufactured or distributed by Fishman or which Fishman allegedly agreed to manufacture [or] distribute as alleged in Count 1;" (4) "The names of the PED's Dr. Fishman allegedly sold, directly or indirectly, to Navarro as set forth in Count 1"; (5) "The identities of the 'other trainers' as alleged in Indictment at 12"; (6) "The supposed PEDs that Fishman sold to Oakes which were resold to Navarro as alleged in Indictment at 12";  (7) "The supposed PEDs that Fishman sold to Oakes which Oakes then resold to 'other trainers' as alleged in Count One and the identities of those 'other trainers.'" (Mot. at 12-14).  The answers to those questions are found in the Complaint, the Indictment, and the discovery, and will be further elucidated through additional pre-trial briefing and disclosures. The substance of these demands make apparent that the Motion is merely

"an impermissible attempt to compel the Government to provide the evidentiary details of its case."
*Rittweger*, 259 F. Supp. 2d at 292-93 (citation and quotation marks omitted); *Torres*, 901 F.2d at
234 ("'Acquisition of evidentiary detail is not the function of the bill of particulars.'" (*quoting*
*Hemphill*, 392 F.2d at 49).

With respect to questions regarding the adulterated and misbranded PEDs Fishman
distributed to those involved in the Navarro conspiracy, this information is set forth in the
Indictment and in discovery.  The defendant has already received various versions of his product
list, which enumerate the adulterated and misbranded products he offered for sale, categorizing
them based on their function.  (*See, e.g.*, Exhibit A).  The list classifies the drugs offered for sale
based on their purported function, including the category "anti-inflamatory[sic]-relax-pain," which
lists approximately 60 different drugs.  (*Id.*).  A separate product list includes more thorough
descriptions of certain products and their intended purpose, listing multiple analgesics. (*Id.*).  The
Government has also produced to Fishman records from a Dropbox account used by the defendant;
among those records is an Excel spreadsheet that also lists the adulterated and misbranded drugs
that Fishman offered for sale.

As to which of these products Fishman sold to Oakes and Navarro directly, the defendant
has also received in discovery a separate Excel spreadsheet which includes the names of certain of
Fishman's customers (including Navarro and Oakes) and details of the orders associated with those
customers, including the products they purchased, the amount they paid, and the date of purchase.
The information in those spreadsheets is further supplanted by pictures from the March 2019
search of Oakes's barn, which includes drugs Fishman manufactured, such as VO2 Max, that
appear on Fishman's product lists and otherwise contain one of the logos used by Fishman's
company, (*see, e.g.*, Indictment ¶ 15).  The Government has also separately produced Linesheets

29

that contain *only* communications between Navarro and Fishman, and *only* Fishman and Oakes, permitting defense counsel to view Fishman's communications with each of these individuals in isolation, further focusing the review of discovery. As stated above, the defendant may also review the Title III affidavits and Title III periodic reports for the names of the products he sold to Oakes or Navarro, the dates of certain sales, or any other terms that would permit the defendant to identify relevant communications associated with sales to Oakes and Navarro. Moreover, the defendant has also received copied images of his cell phone, Navarro's cell phone, and two email accounts, which defense counsel may further search for communications with Navarro or Oakes.

With respect to the defendant's demand that the Government list all relevant dates of manufacture and distribution, that request is based on a misconception of what is required to sustain a conviction on this charge. As stated above, the defendant was involved in a long-running enterprise dedicated to the illegal objects described in the Indictment; the Government need not prove with particularity every illegal act of that enterprise in order to prove the existence of the charged conspiracies, nor does the Government need to prove these details in order to establish that the defendant conspired with another person to distribute the adulterated or misbranded drugs. In any event, particulars as to which transactions the Government intends to prove will be provided in the form of exhibits and 3500 material for the witnesses relevant to this issue reasonably in advance of trial. In light of these facts, no bill of particulars is warranted. *See United States v. Chalmers*, 410 F. Supp. 2d 278, 285 (S.D.N.Y. 2006) (denying motion for disclosure of all wire transmissions to be relied on at trial because "given the volume of documents in this case, it would be premature to require the Government to limit itself now to the specified acts of the Superseding Indictment or any additional acts it might be able to specify in a bill of particulars.").

With respect to the defendant's demand for information as to which PEDs Fishman sold to Oakes, and that Oakes then resold to Navarro and to other trainers, that information, likewise, is aimed merely at elucidating the evidentiary details of the Government's case, and not to avoid undue surprise at trial.  Oakes's resale of Fishman's drugs has little to do with Fishman's ability to prepare his defense regarding the legality of Fishman's original sale of adulterated and misbranded drugs to Oakes. In any event, as with virtually all of the defendant's requests, he will find the relevant evidence by reviewing the Government's discovery, in particular, the affidavits setting forth calls demonstrating that Oakes provided Navarro with Fishman's products, (*see* Exhibit D at 9-12), and will otherwise receive notice as to specific resales of his products through pre-trial disclosures of exhibits and any relevant 3500 material.

> **2.      The Defendant Is Not Entitled to A Bill of Particulars Identifying the Persons or Agencies Misled or Defrauded, Applicable Racing Rules and Regulations, Dates of Specific Events or Specific Races, Or the Identities of Specific Individuals Referenced in the Indictment**

The defendant next seeks a bill of particulars responsive to a laundry list of overlapping questions related to Counts One and Two of the Indictment, including: (1) "The state regulators, federal regulators, and/or race officials referenced" between pages 2 through 11 of the Indictment; (2) "The 'state regulators' Dr. Fishman . . . intended to defraud or mislead as alleged in Count 1"; (3) "The 'federal regulators' Dr. Fishman . . . intended to defraud or mislead" as relevant to Count One; (4) "The state laws, if any, Fishman . . . intended to violate in order to defraud or mislead" state regulators as alleged in Count One; (5) "The dates when such state laws, if any, were allegedly violated" as alleged in Count One;  (6) "The identities of the 'federal regulators' Dr. Fishman and/or his alleged co-conspirators intended to defraud or mislead as alleged in Count 1"; (7) The

'racing officials' (by name) Dr. Fishman and/or his alleged co-conspirators intended to defraud or mislead as alleged in Count 1"; (8) "The state laws, if any, Fishman . . . intended to violate in order to defraud or mislead these racing officials" as alleged in Count One; (9) "Any other state laws or administrative rules" the defendant or his co-conspirators violated as relevant to Count One; (10) "The dates when such laws were allegedly violated . . . as alleged in Count One"; (11) "Each state regulation 'aimed at protecting participating horses and ensuring fair competition' that was violated as set forth in Count 1"; (12) "Any law or rule promulgated or established by 'testing regimes designed to ensure racehorses are not under the influence'" as relevant to Count One; (13) "Any law or rule promulgated or established by 'testing regimes designed to ensure racehorses are not under the influence'" as relevant to Count One; (14) "The specific horse race(s) for which Fishman sold, distributed or manufactured alleged PEDs or allegedly agreed to do so during the 3 year period alleged in Count 1"; (15) "Any law or rule promulgated or established by 'testing regimes designed to ensure racehorses are not under the influence'" as relevant to Count Two; (16) "The identities of the persons or agencies or government officials" the defendants "allegedly intended to defraud or mislead as alleged in Count 2"; (17) "The specific horse race(s) for which Fishman sold, distributed or manufactured alleged PEDs or allegedly agreed to do so during the 6 year period alleged in Count 2" with the intent to defraud or mislead; (18) "The names of any misbranded and/or adulterated animal drugs that the Government alleges were manufactured or distributed by Fishman" as alleged in Count 2; (19) "The names of the alleged 'State racing regulators'" referenced on page 23 of the Indictment; (20) "The identities of the 'state regulators'" referenced on pages 22-23 of the Indictment; (21) "The identities of the 'racing officials,'" referenced on pages 22-23 of the Indictment; (22) "The alleged misleading statements contained in the labels" referenced on page 23 of the Indictment; (23) "Names of 'racehorse trainers'"

referenced on page 22 of the Indictment; (24) "The 'racehorse trainers in New York'" referenced on page 23 of the Indictment; (25) "The names of the 'blood building PEDs' referenced" on page 23 of the Indictment; (26) "The identity of 'Individual 1'" referenced on page 26 of the Indictment; (27) "The identity of the 'co-conspirator'" referenced on page 26 of the Indictment; (28) "The identity of the person to whom Dane allegedly distributed the misbranded/adulterated animal drug as part of the conspiracy to mislead or defraud" as relevant to Count Two. (Mot. at 18-20, 22-23).

These requests regarding Counts One and Two of the Indictment fall into one of four categories: the identification of specific racing entities or individuals; the identification of applicable racing rules and regulations; the identification of particular races or dates relevant to the conspiracies charged; and the identities of specific individuals referenced in the Indictment. These requests, too, are either legally irrelevant in the context of a conspiracy to violate the rules and regulations of *any* state in which Fishman's clients might wish to race using his illegal drugs (thereby unnecessary to preparing a defense), mooted by the Government's production of discovery, or will otherwise be satisfied through pre-trial disclosures (including, for example, the necessary disclosure of source identities).

First, with respect to which persons or agencies were misled, the gravamen of the defendant's deceptive conduct is laid out in the Indictment, which is to "put[] false information on the labels of the PEDs Fishman sold" and to "design[] PEDs so that they would be untestable on drug tests administered by state regulators and racing officials." (Indictment ¶ 28). Further identifying precise individuals and/or agencies is not required to adequately prepare for trial. *See United States v. Russo*, 483 F. Supp. 2d 301, 311 (S.D.N.Y. 2007) (identification of particular "investors" referenced in the indictment was beyond the scope of a bill of particulars, as was the "exact words allegedly used by the Defendants, the places used to commit the alleged crimes, [and]

dates and places of the overt acts in furtherance of the alleged conspiracies"); *United States v. Gall*, No. 95 Cr. 98 (AHN), 1996 WL 684404, at *7 (D. Conn. Aug. 12, 1996) (denying bill of particulars request demanding identities of insurance fraud victims and "the manner in which the financial statements [the defendant] submitted to insurance companies and state agencies were false").  The defendant's requests for the identities of individual regulators and racing officials is merely a request to preview "a list of witnesses who will testify at trial," a request which "clearly extends beyond what is required for the Defendants to be able to prepare a defense."  *Bin Laden*, 92 F. Supp. 2d at 244.  The defendant will receive a witness list, *Giglio*, and 3500 material reasonably in advance of trial; any identification of witnesses is unnecessary for the defendant's preparation at this stage.

The defendant's reliance on *Mitcheltree* is entirely misplaced and merely sets up a strawman.  (Mot. at 14-15).  At issue in *Mitcheltree* was the sufficiency of the Government's evidence *at trial* of the defendant's intent to defraud or mislead; *Mitcheltree* did not address whether the Government was required to provide a bill of particulars to the defendant in advance of trial identifying with specificity those government agencies, or any named individuals specifically defrauded.  *See United States v. Mitcheltree*, 940 F.2d 1329, 1345 (10th Cir. 1991). At most, *Mitcheltree* stands for the proposition that the Government will have to prove at trial that the defendant intended to defraud or mislead a government agency through his adulteration and misbranding of drugs.  *See id.* ("[N]ot a scintilla of evidence links the defendants' misbranding activities with a specific intent . . . to violate or defeat agency enforcement of the actual federal drug regulatory provisions" alleged in the Indictment).  Here, the Indictment makes specific reference to multiple racing jurisdictions, and the discovery, including the Exhibits attached hereto, refer to Fishman clients operating and racing across the United States. The defendant has sufficient

notice from the Indictment and discovery as to the jurisdictions, and the racing and/or drug regulators therein, whom the defendant, and others, sought to defraud or mislead, the methods the defendant used to attempt to defraud and mislead those entities, and the motivations for doing so.[18]

*United States v. Johnson*, also cited by the defendant, is distinguishable based on the timing of the defendant's motion for a bill of particulars, and the nature of the charges.  In *Johnson*, multiple defendants were charged with conspiring to commit extortion and to obstruct, delay, and affect commerce in violation of 18 U.S.C. §§ 1951(b)(2) and (b)(3), the district court denied in part the defendants' request for a bill of particulars, and granted it in part with respect to the "names of the individual corporations that were the alleged victims of the extortions, and the construction sites or projects related to the alleged extortions" to avoid undue surprise at trial.  *United States v. Johnson*, 21 F. Supp. 2d 329, 340 (S.D.N.Y. 1998).  The Court granted in part the motion for a bill of particulars on August 27, 1998, approximately two months before the commencement of trial on November 2, 1998.  *See United States v. Johnson*, No. 98 Cr. 45 (JSR) (S.D.N.Y.).  A defendant's need for information in the weeks preceding a trial is markedly different than that of Fishman here, where no trial date has been set, and Fishman has evidently not reviewed the entirety of the Government's discovery, which is still being produced.

Second, the defendant's requests for answers that are "helpful" rather than "necessary" extend to the defendant's requests for the regulations or laws that govern various states' drug

---

[18] Moreover, insofar as the Indictment charges Fishman with two counts of conspiracy, even assuming that Fishman's illegal activity did not in fact result in drugs affecting, for example, the state of Alaska, Fishman's intent in conducting his business was to create products that would effectively deceive regulators in any jurisdiction in which they happened to be used. Indeed, the great promise of Fishman's illegal enterprise was that his products would not be "testable," regardless of jurisdiction. *See, e.g.*, Indictment ¶¶ 28, 34.c, 34.e ("*[A]ny time* you give something to a horse, that's doping. Whether or not they test for it is another story. . . . [D]on't kid yourself: if you're giving something to a horse to make it better, and you're not supposed to do that. . . That's doping. You know, whether or not *it's testable*, that's a different story." (emphasis added)).

testing and racehorse regimes.  (Mot. at 15, 18). The Indictment identifies certain states relevant to Fishman's conspiracy, including Florida, New York, and Pennsylvania. (Indictment ¶¶ 15, 25.g, 25.h).   Additional relevant states that were specifically affected by Fishman and his clients' activities are readily discernible from discovery, (*see, e.g.*, Exhibit B), and will otherwise be addressed in pre-trial disclosures provided reasonably in advance of trial.  Virtually all of the Title III affidavits contain brief summaries of certain state racing regulations that prohibited a variety of racehorse doping practices, which include citations to the applicable state statutes, regulations, or rules for each identified state.  (*See, e.g.*, Exhibit C at 21-23). Many of the descriptions of particular calls or text messages contained within the Title III affidavits and the Title III periodic reports explain with respect to particular drugs precisely why that drug would violate particular states' racing rules. Again, these specific examples are examples only – Fishman's intent in conducting the conspiracy was universal and his client list, versions of which have already been discussed above, reflect the states in which his products were most likely to be abused.

Third, and as discussed in more detail above, the defendant's request for particular dates when state laws were violated or when certain races took place extends beyond what is required in a bill of particulars, particularly for a charge such as this where the defendant's conduct consists of two ongoing conspiracies that involve a multitude of sales of adulterated and misbranded PEDs over the course of years, rather than discrete, unlawful events.  The precise dates that the purchasers of Fishman's drugs in fact administered drugs, or raced horses after administering Fishman's drugs, is not necessary for the preparation of Fishman's defense. *See, e.g.*, *Russo*, 483 F. Supp. 2d at 311. In any event, Fishman may search the discovery for discussions that explicitly mention particular races, and will receive exhibits and relevant 3500 material reasonably in

advance of trial that will provide further information regarding any specific event that the Government intends to prove at trial.

Fourth, the defendant's request for the identities of specific individuals referenced in the Indictment plainly lacks merit, and is illustrative of the defendant's unwillingness to rely upon the discovery he has already received.  In referencing particular communications or events, the Indictment sets forth the dates of those communications, and at times quotes those communications.  The defendant may easily search the Linesheets with that information to determine the identities of the speakers.  The defendant's reluctance to utilize the information at his disposal is no reason to grant a bill of particulars. The Court should repel any "impermissible attempt to compel the Government to provide the evidentiary details of its case." *Rittweger*, 259 F. Supp. 2d at 292-93.

## THE MOTION, IN THE ALTERNATIVE, TO DISMISS IS MERITLESS

Fishman argues that, absent a bill of particulars, the Indictment as against him should be dismissed. As set forth above, the Indictment as drafted, and even without the additional information provided through the Government's productions to date, adequately sets forth Fishman's offenses. Indeed, the Indictment goes well beyond what is required to survive a motion to dismiss under Federal Rule of Criminal Procedure 12(b)(3):

> [A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished. Undoubtedly the language of the

statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.

*Hamling v. United States*, 418 U.S. 87, 117-18 (1974); *see also United States v. Post*, 950 F. Supp. 2d 519, 527 (S.D.N.Y. 2013) ("A defendant faces a high standard in seeking to dismiss an indictment, because an indictment need provide the defendant only a plain, concise, and definite written statement of the essential facts constituting the offense charged." (internal quotation marks and citations omitted)).

Fishman does not contest that the Indictment tracks the language of the applicable criminal statutes. That proper pleading receives further specification through the time frames, named co-conspirators, quoted communications, and ample additional information provided in the Indictment. That information includes details of specific products, customers, and distribution channels, as well as specific conversations that Fishman personally undertook in furtherance of the offenses, and Fishman's location during those conversations. Count One ties Fishman to the Navarro operation, centered largely around the operations of Jorge Navarro's racing stable and the individuals involved in supplying misbranded and adulterated PEDs to Navarro. Navarro, of course, raced in multiple jurisdictions and at multiple times throughout the course of the conspiracy, as Fishman and his defense team well know, and the Indictment notes that Fishman was involved in that conspiracy at least during the period for which he was paid "tens of thousands of dollars," *i.e.*, January 2017 through April 2019. Count Two focuses on Fishman's enterprise, through which Fishman and the co-conspirators named in Count Two operated throughout the lengthy period of Fishman's criminal activity. Fishman, too, operated in a wide array of

jurisdictions insofar as his company's clientele purchased and received misbranded and adulterated PEDs throughout the United States and abroad.

The breadth of Navarro and Fishman's criminal activities does not render the Indictment insufficiently specific. In this case, the counts charging Fishman, as well as the remaining counts of the Indictment, "meet[] the[] basic pleading requirements by accurately stating the elements of the offense charged and the approximate time and place [of the charged conspiracies]." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998). In addition to tracking the language of the applicable statutes, the Indictment guards against surprise and enables a defense from future re-prosecution: upon conviction of the charges in the Indictment, Fishman may easily obtain protection under the Double Jeopardy clause for each offense, namely the criminal agreement reached between Fishman and Navarro to further the success of Navarro's operation, described in Count One, and the criminal agreement reached between Fishman and his chemist and distributors to distribute Fishman's company's various misbranded and adulterated PEDs, described in Count Two. The Indictment provides details regarding the identity of his various co-conspirators, their whereabouts, certain of the most prominent drugs used by these co-conspirators, the whereabouts of certain of the drugs manufactured by Fishman and possessed by those co-conspirators, allegations regarding the fundamental illegality of Fishman's drug manufacturing business (*i.e.*, that it was never registered, that it manufactured and distributed drugs that were not approved by the FDA, and that the drugs contained intentionally misleading labeling information, among other things), and details regarding Fishman's fraudulent intent in peddling those drugs.

Fishman cites *Russell v. United States*, 369 U.S. 749 (1962), in arguing for greater charging specificity than the law actually requires. "The Second Circuit and other Circuit Courts of Appeals have repeatedly distinguished the holding in *Russell* based upon the unique circumstances of the

case, the critical nature of the fact omitted from the charge [2 U.S.C. § 192, criminalizing the refusal by a person summoned to testify before Congress to answer any 'question pertinent to [the] question under inquiry], and the history of 'unfairness and uncertainty' in prosecutions under the specific statutory provision charged in the indictment in *Russell*." *Dzinchveladze v. United States*, 2007 WL 549439, at *11 (S.D.N.Y. Feb. 21, 2007) (citing, *inter alia*, *United States v. McClean*, 528 F.2d 1250, 1257 (2d Cir. 1976) ("In this case, appellants point to no comparable history of confusion, prejudice, or unfairness generated under the" statute charged in the indictment.). *Russell* does not disturb the settled law as to sufficiency of a charge, set forth above.

Fishman also cites the Eleventh Circuit's decision in *United States v. Bobo*, 344 F.3d 1076 (11th Cir. 2003), in support of his motion to dismiss, but that decision is inapposite. "In *Bobo*, the Eleventh Circuit deemed a count in an Indictment to be deficient where it completely *omitted a necessary element* of the charged offense." *Dzinchveladze*, 2007 WL 549439, at *11 (emphasis added). Unlike the charge in Bobo, the Indictment tracks the language of the statute charged in both Count One and Count Two, which is what is required for sufficiency of the charge.

[Continued]

40

**CONCLUSION**

The defendant's arguments fail to establish a genuine necessity for further particulars in light of the Complaint, Indictment, and ongoing productions of Rule 16 discovery. Fishman likewise fails to describe any infirmity in the current Indictment that would warrant dismissal, even absent his improperly demanded bill of particulars. For the foregoing reasons, the Government respectfully submits that the Court should deny the Motion in its entirety.

Dated: New York, New York
      June 10, 2020

                                    Respectfully submitted,

                                    GEOFFREY S. BERMAN
                                    United States Attorney
                                    Southern District of New York

By:    /s/ Sarah Mortazavi
          Andrew Adams
          Benet Kearney
          Sarah Mortazavi
          Assistant United States Attorneys