UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| V, | ) Hon. Mary K. Vyskocil |
| | ) 20-cr-160-7 |
| | ) |
| SETH FISHMAN, DVM | ) **REQUEST FOR HEARING** |

REPLY TO GOVERNMENT'S OPPOSITION TO DR. FISHMAN'S
MOTION FOR BILL OF PARTICULARS

SETH FISHMAN, DVM, by and through undersigned counsel, files this Reply to the Government's Opposition. Dr. Fishman maintains and renews each of the prior arguments raised in his Motion.

A. <u>This Court maintains the discretion to grant Dr. Fishman's request for a Bill of Particulars or to Dismiss Counts 1-2 of the Indictment</u>

The decision of whether to grant a bill of particulars under Rule 7(f) of the Federal Rules of Criminal Procedure is one which rests within the sound discretion of the trial court. *See, e.g See, e.g., United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir.1987); *United States v. Mahaffy,* 446 F. Supp. 2d 115, 119-20 (E.D.N.Y.2006); *see also United States v. Bin Laden,* 92 F.Supp.2d 225, 234 (S.D.N.Y.2000) ("It is no solution to rely solely on the quantity of information disclosed by the government; sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars" and noting that "[w]e believe that a

bill of particulars is necessary in this case to permit the Defendants to prepare a defense and to prevent prejudicial surprise at trial."); *United States v. . Nachamie,* 2000 WL 37993 at *5 (S.D.N.Y.) (applying *Bortnovsky* and ordering filing of bill of particulars when government had produced "200,000 pieces of paper in hundreds of boxes and files"); *United States v. Davidoff,* 845 F.2d 1151, 1155 (2d Cir.1988) (fact that Government produced 6,000 pages of discovery did not obviate need for bill of particulars in complex prosecution); *United States v. Nekritin*, 2011 WL 1674799 at *8 (E.D.N.Y. May 3, 2011) (ordering a bill of particulars and noting that, "[t]o the extent that the health care fraud conspiracy count is based on alleged false claims or on the solicitation of Medicare and Medicaid beneficiaries independent from the claims and beneficiaries specified in counts two through eight of the Superseding Indictment, the court orders that the government provide defendants with a bill of particulars containing this information."); *United v. Kanekar,* 2020 WL 730353 at *7 (E.D.N.Y. Feb. 12, 2020) (granting bill of particular in health care fraud conspiracy).[1]

---

[1] Courts have also granted a bill of particulars when there are numerous unindicted co-conspirators and the case involves multiple defendants. *See United States v. Feola,* 651 F. Supp. 1068, 1131–34 (S.D.N.Y.1987) (granting demand for bill of particulars specifying "the names of all persons whom the Government will claim at trial were co-conspirators"). In fact, in complex multi-defendant cases, district courts in this district have granted bills of particulars obligating government to produce this information regarding unnamed co-conspirators when there is no risk of violence. *See, e.g., United States v. Feldman,* 731 F.Supp. 1189, 1191 (S.D.N.Y.1990) (multi-year tax evasion conspiracy); *United States v. Chovanec,* 467 F.Supp. 41, 43 (S.D.N.Y.1979)(identifying at least 27 counts in racketeering indictment); *United States v. Kole,* 442 F.Supp. 852, 854 (S.D.N.Y.1977) (five-year conspiracy involving multiple bribes;

This court may and should grant the relief requested by Dr. Fishman.

B. <u>Counts 1-2 in the Indictment Must be Dismissed because the Government's Indictment, on its face, fails to provide the particulars about a necessary element of the offense which is the only element of the offense which elevates Counts 1-2 from misdemeanors to felonies</u>

The Government insists that they are not required to allege, let alone furnish the defendants with, the name or identify of the supposed government agency, or state regulators that were defrauded or mislead to survive a dismissal of Counts 1-2.[2] Yet, the 371 conspiracy to distribute misbranded or adulterated animal drugs in interstate commerce in violation of the Food Drug and Cosmetic Act (FDCA) is no more than a simple *misdemeanor* conspiracy[3] without the *with the intent to defraud or mislead* element of the offense. See 18 U.S.C. Section 371 ("If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor."). Pleading the intent to defraud or mislead is

---

*United States v. Pilnick,* 267 F.Supp. 791, 794 (S.D.N.Y.1967) (57–count indictment

[2] Cases cited by the Government in its Opposition are unavailing. *See* Govt Opposition at 33-34, citing *United States v. Gall*, No. 95 Cr. 98 (AHN), 1996 WL 684404, at *7 (D. Conn. Aug. 12, 1996); *United States v. Russo*, 483 F. Supp. 2d 301, 311 (S.D.N.Y. 2007. Neither *Gall* nor *Russo* addressed the FDCA and *Gall* specifically addressed the defrauded insurance agencies. Agencies, unlike horse racing commissions do not have distinct state laws.

[3] The misdemeanor provision of the FDCA imposes criminal liability in the form of imprisonment, fines, or both. *See* 21 U.S.C. § 333(a)(1) ("Any person who violates [§ 331(a)(1)] shall be imprisoned for not more than one year or fined not more than $1,000, or both.").

precisely what converts a misdemeanor FDCA conspiracy under Section 371 into a felony conspiracy under Section 371. Therefore, without placing Dr. Fishman and the other 11 defendants in Counts 1-2 on notice of the precise conduct which forms the basis of the *felony* Indictment, Counts 1-2 must be dismissed. *Russell v. United States,* 369 U.S. 749, 765 (1962). The Supreme Court in *Russell* noted that an indictment that simply repeats the "generic terms" taken from the statute is not sufficient - "it must state the species, it must descent to particulars." *Russell,* 369 U.S. at 765 (citing *United States v. Cruikshank*, 92 U.S. 542 (1875); *United States v. Williams*, 152 F.3d 294, 299 (4th Cir. 1998); *accord United States v. ReSendiz-Ponce*, 548 U.S. 102, 108 (2007); *Hamling v. United States*, 418 U.S. 87, 117 (1974).

C. <u>Absent of Bill of Particulars which Places Dr. Fishman on Notice of the Specific Identifiable Federal or State Government Agencies he allegedly agreed to defraud or mislead as part of the broad misbranding conspiracies alleged in Counts 1-2, those Counts must be dismissed.</u>

Absent a bill of particulars, which specifically identifies the state agency, government agency, or other entity, that was allegedly defrauded or mislead as part of the misbranding conspiracies alleged in Counts 1-2, Counts 1-2 must be dismissed because, other than conjecture, there is no way to determine the theory upon which the grand jurors returned the Indictment when they returned an indictment alleging two multi-year conspiracies (Count 1, 2017-2020 and Count 2 2013-2019).

Consider this: if the Indictment were constitutionally adequate to place the defendants on notice of the precise nature of the indictment that the grand jurors

4

returned against the defendants in Counts 1-2, then wouldn't the Indictment be capable of placing the defendants and Dr. Fishman on notice regarding whether:

- Dr. Fishman and others defrauded or mislead the Food and Drug Administration (FDA) and how

- Dr. Fishman and others defrauded or mislead a specific, identifiable state racehorse commission and how; and/or

- Dr. Fishman and others defrauded or mislead U.S. Customs and Border Protection[4] and how

The Indictment fails to specifically allege *any of these theories*. In fact, the Indictment fails to allege that any of these agencies (or any agency at all) was the agency that the defendants agreed to defraud or mislead as part of the FDCA conspiracy.

Beyond this, if a racehorse commission were the object of the offense each racehorse commission is governed by separate state laws and regulations. Because the Indictment does not contain such information, the Government has failed to place defendants on notice of any of the specific *state* laws they allegedly violated (and when or how) any members of the supposed conspiracies in Counts 1-2 violated state

---

[4] No court in the United States has come close to adopting this as a viable theory of prosecution under the FDCA. It borders on the absurd to allege that a misbranding offense under the FDCA had, as its object, an intent to defraud or mislead a federal agency tasked with protecting our borders when the chief purpose of the FDCA is consumer protection.

specific racing commission laws or regulations with the intent to defraud or mislead an unspecified race horse commission.

It bears noting, once again, that the prosecutors in the Western District of Louisiana were more than capable of adequately alleging this element of the FDCA felony conspiracy. *United States v. Kyle Hebert,* 17-cr-00039-DEW-KK, (W.D. La.) (Dkt.1, filed 2/9/17). In *Hebbert,* the prosecutors' theory was not subject to conjecture. Mr. Hebbert knew, based on the Indictment returned by the grand jurors, that felony element of the misbranding conspiracy included an intent to defraud or mislead the FDA and/or the Louisiana State Racing Commission. *United States v. Kyle Hebert,* 17-cr-00039-DEW-KK, (W.D. La.) (Dkt.1, filed 2/9/17).[5]

This *19-person* Indictment is a far cry from the clarity of the Indictments in *Rojas* and *Hebbert*. Indeed, by omitting these constitutionally required particulars from the Indictment relating to the felony provision of the FDCA it is impossible to determine upon what theory the grand jurors returned the Indictment.

Dr. Fishman and the Eleven defendants in Counts 1-2 should not be forced to hazard a guess or reference the mountains of discovery (now exceeding 220GB) to

---

[5] *See also United States v. Murray Rojas,* 15-cr-00169-SHR (M.D. Pa. 2015) (Dkt. 78 filed 2/8/17) which involved another supposed horse doping prosecution for which Mrs. Rojas was acquitted on the major count of wire fraud. Although *Rojas* did not specifically allege a misbranding conspiracy under FDCA with intent to defraud or mislead, the Indictment returned by the grand jurors left no doubt that they considered specific Pennsylvania laws governing race horse competition and testing of horses prior to returning the Indictment.

determine the actual nature of this prosecution when Dr. Fishman has a constitutional right to be placed on notice of the specific nature of the charges against him. So, regardless of whether the defendants could ferret out the government's theories[6] by reviewing the voluminous discovery, that misses the point. It is axiomatic that an Indictment must place a defendant on notice of the specific theory upon which the grand jurors returned Counts 1-2 of the Indictment to survive dismissal as a violation of the Fifth and Sixth amendments. *see Russell,* 369 U.S. at 770; *United States v. Walsh,* 194 F.3d 37, 44 (2d Cir. 1999), or that the grand jury acted properly in indicting him. *See Russell,* 369 U.S. at 768-69 (An important corollary purpose of requirement that indictment state elements of offense is to allow court to evaluate whether facts alleged could support conviction.) *See generally United States v. Wydermyer,* 51 F.3d 319, 324 (2d Cir.1995) (pleading requirement at common law was "security against the arbitrary multiplication of

---

[6] The undersigned has certainly been diligent about discovery review. The discovery is a mess according to the former DOJ IT representative who regularly assists the undersigned in large discovery cases. That is, in part, because of the outdated McCaffee encryption software used by DOJ making review of discovery much slower. There are also more than 690 hours of WAV files (recordings) from the intercepts. It would take a month of continuous non-stop listening to get through those recordings. Yet, not a single one of those files or their correspondent sub-folders has a specific date or time leaving the defense to play trial and error as to the dates and times of each individual folder and we are talking about *thousands of folders.* Fundamentally, this type of production is at odds with the mandates of Federal Rule of Criminal Procedure 2 which states that "These rules" including Rule 16 and the government's discovery obligations are "*to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay.*" This massive discovery dump certainly encourages unjustifiable expense and delay.

offenses"); 2 Wayne R. LaFave and Jerold H. Israel, *Criminal Procedure §* 19.2 at 436, 448-49 (1984) ("[T]he requirement that the offense be stated ... specifying in detail each element of the crime, was seen as providing assurance both that the grand jury understood what was necessary to establish an offense and that the courts did not engage in unanticipated extensions of the substance of the offense."). "The Indictment Clause of the Fifth Amendment requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *Walsh,* 194 F.3d at 44; *see also United States v. Milstein*, 401 F.3d 53, 65 (2d Cir. 2005) (vacating conviction for distribution of misbranded drugs because Government failed to place defendant on notice as to which of the twenty different methods of misbranding has the basis for the charge);

Accordingly, absent such constitutionally required information, Counts 1-2 should be dismissed.

### D. Absent a Bill of Particulars, Dr. Fishman and the other Defendants have no notice of a potentially invalid legal theory of prosecution under the FDCA

Absent a bill of particulars, Dr Fishman and the other defendants have no notice of a potentially invalid legal theory of the prosecution under the FDCA – that Dr. Fishman willfully agreed to join a misbranding/adulteration conspiracy in violation of the FDCA with the intent to defraud or mislead a *state race horse*

*commission.* Notice of this theory is critical since the prosecution cannot move forward when a legally invalid theory was placed before the grand jurors to return an indictment. *See, e.g., United States v. Bowling*, 108 F. Supp. 3d 343, 352-53 (E.D.N.C. 2015) (dismissing multiple counts because of "the government's erroneous legal instruction to the grand jury"); *United States v. Stevens*, 771 F. Supp. 2d 556, 567-68 (D. Md. 2011) (dismissing indictment where the prosecutor gave erroneous advice to the grand jury); *United States v. Cerullo*, No. 05-cr-1190 (S.D. Cal. Aug. 28, 2007) (dismissing indictment where the prosecutor's failure to accurately and fairly explain an important legal issue "misled the grand jury" and "prejudiced the Defendant"); *United States v. Breslin*, 916 F. Supp.438 (E.D. Pa. 1996)

The Supreme Court observed more than a century ago that the FDCA is a consumer protection act. *McDermott v. Wisconsin,* 228 U.S. 115, 128, (1913) (describing the predecessor 1906 act "to exclude from interstate commerce impure and adulterated food and drugs and to prevent the facilities of such commerce to be used to enable such articles to be transported throughout the country from their place of manufacture to the people who consume and use them."); *See also United States v. Lexington Mill Co.,* 232 U.S. 399, 409 (1914) (identifying the primary purpose of misbranding and adulteration provisions concerning food as consumer protection); *United States v. Park,* 421 U.S. 658, 673 (1975) ( describing the FDCA as protecting

the consuming public by allowing the government to regulate the conditions under which drugs are manufactured and distributed and it requires those responsible to comply with its provisions).

Courts have consistently held that the government may allege a felony misbranding/adulteration conspiracy under the FDCA which had, as its object, the intent to defraud or mislead the FDA. *Arlen v. United States,* 947 F.2d 139, 143 (5th Cir. 1991) (upholding conviction based on theory that defendant defrauded and or mislead *the FDA* reasoning holding that government's evidence was sufficient to make out a violation of this section where it shows that the defendant intentionally violated 331 with the specific intent to defraud or mislead an *identifiable* government agency which in this case was the FDA); *United States v. Cambra,* 933 F. 3d 752, 755 (9th Cir. 1991) [7]("finding, in the context of applying the sentencing guidelines and the deceit and fraud language that the "intent to defraud or mislead" language in 21 U.S.C. § 333 may encompass both fraud on the ultimate consumer and fraud on government enforcement agencies).[8]

---

[7] Notably, in *Cambra,* the defendant sold products counterfeited to represent different products made by reputable manufacturers and he agreed at sentencing that he "had at least the intent that the FDA not realize what he was doing, and he certainly was trying to hide his activities from the FDA because he was worried that they certainly wouldn't approve of what he was doing."

[8] *United States v. Haga,* 821 F.2d 1036 (5th Cir.1987) is the potential outlier.  In a case involving the distribution of anabolic steroids without a prescription the Fifth Circuit recognized that felony misbranding is generally premised on an intent to defraud or mislead a purchaser and not on the theory that a defendant defrauded or mislead the government by evading or violating its regulatory systems. *Haga,* at 1041. Indeed, in a prosecution under 18 U.S.C. § 371

Equally as uncontroversial, a felony misbranding conspiracy may lie when it had, as its object, the intent to defraud consumers or purchasers. *United States v. Goldberg*, 538 F.3d 280, 290 (3d Cir. 2008) (vacating felony misbranding conviction for failure to prove intent but affirming that felony misbranding conspiracy can be based on theory that ultimate consumer or end user of article or drug was mislead or defrauded); *see also United States v. Industrial Laboratories Co.,* 456 F.2d 908 (10th Cir.1972) (upholding a felony misbranding conviction based on the theory that the defendants introduced adulterated drug into interstate commerce with intent to mislead and defraud Canadian government and Canadian firm (consignee) which had requested defendants to perform more tests in compliance with new standards set by the Canadian government).

Nonetheless, there is a paucity of opinions discussing the extent to which the government can invoke the intent to defraud or mislead provision, to prosecute persons for FDCA misbranding and adulteration conspiracies where the intent to defraud or mislead is not directed at a specific identifiable government agency whose purpose is to safeguard consumers and/or public health.

---

(conspiracy statute) and 21 U.S.C. § 333, *Haga* rejected the notion that a defendant could be convicted of a felony 371 misbranding conspiracy simply because a defendant was "distributing prescription drugs in knowing violation of federal and state regulatory systems and rules," 21 U.S.C. § 333(a)(2), for the offense. *Haga,* at 1044. Ultimately though, *Haga* was a "variance" case holding that the district court committed reversible error by convicting the defendant of a prong of the federal conspiracy statute for which he had not been indicted. *Id.* at 1044-46

*United States v. Bradshaw,* 840 F. 2d 871, 874 n. 4 (11th Cir. 1998) is instructive and likely represents the outer limits of the intent to defraud or mislead language in the felony provision of the FDCA. In *Bradshaw,* defendant distributed steroids to his clients – many of whom were athletes-- without valid prescriptions and the clients claimed they were defrauded or mislead because defendant failed to apprise them of the side effects of the drugs. The Government's alternative theory was that Bradshaw defrauded or misled the FDA and ***state enforcement authorities*** tasked with consumer protection. More specifically, as it related to the state enforcement agency, the government proceeded on the theory that Bradshaw defrauded or mislead ***Florida state drug authorities*** when he applied for a Florida drug wholesaler's permit and made affirmative misrepresentations to Florida state drug authorities leading them to believe he was an established drug wholesaler in Alabama, and the Florida authorities issued him a permit on that basis. *Bradshaw,* at 873.

In holding that the government could proceed on this theory the court reinforced that "[t]he state enforcement authorities work closely with federal authorities in the common goal of protecting the consumer. We do not believe that Congress could have intended to include the FDA and exclude the state drug enforcement authorities. At a minimum, we believe that Congress would have made such an odd intention explicit." *Id.* at 875, n.9; *see also United States v. Mitcheltree,*

940 F.2d 1329, 1349 (10th Cir. 1991) ( "[F]elony criminal responsibility requires a knowing violation with the specific intent "to defraud or mislead," 21 U.S.C. § 333(a)(2); that this may be proved with facts indicating knowledge of the misbranding activity and a concomitant intent to defraud or mislead the FDA *or its state counterpart* seems consistent with the statute's purpose as interpreted by the courts.") (emphasis ours).

In stark contrast to *Bradshaw,* there is not a single U.S. district court decision or courts of appeals decision holding that the Government may allege a conspiracy to violate the FDCA and its misbranding and/or adulteration provisions found in 21 U.S.C. §331(a) in violation of 21 U.S.C. §331(b) when the government's theory of prosecution is that defendants willfully participated in that FDCA conspiracy *with the intent to defraud or mislead* a state agency regulating the rules governing horse racing.[9] *See also United States v. Grissom,* 645 F. 2d 461 (5th Cir. 1981) (intent to defraud in statute prohibiting unauthorized disposal of FHA mortgaged property did *not* extend to sharecroppers' landlord as well as government).

Indeed, language from *Bradshaw* validating the fraud on the FDA theory of envisioned by the FDCA illustrates why such a theory is not legally viable:

> We see no indication in the language of the statute or its legislative history that Congress meant to limit the felony penalty

---

[9] Notably there were several pre-trial motions to dismiss and challenges in *Rojas* and *Hebbert* but defendants never attacked the FDCA felony conspiracies on this specific basis.

to conduct intended to defraud the ultimate consumer to the exclusion of the government enforcement agencies.

[T]he structure of the statutory scheme, the purpose of the statute, and the case law persuade us that Congress meant to encompass conduct intended to *defraud government enforcement agencies.*

As noted at the outset, 21 U.S.C. § 331 lists the acts which constitute criminal violations of the Act. Section 333(a) provides that anyone who violates a provision of § 331 commits a misdemeanor. Section 333(b) provides that "[n]otwithstanding the provisions of subsection (a) of this section, if any person commits ... such a violation [i.e., a violation of § 331] with intent to defraud or mislead ...," he commits a felony.

Several of the acts § 331 prohibits concern only the government. For example, § 331(p) prohibits the failure to register with the FDA. Other examples include § 331(e) (failure to permit FDA access to records and failure to make reports to the FDA) and § 331(f) (refusal to permit FDA inspection). *After reading these sections with § 333, it is clear that the FDA is the entity most likely to be defrauded under these provisions*. Thus, we conclude that Congress intended the "intent to defraud or mislead" language of § 333(b) to extend to the FDA.

The purpose of the statute also supports our conclusion. The general scheme of the Act and its legislative history indicate that the overriding congressional purpose was consumer protection — the protection of the public against any misbranded or adulterated food, drug, device, or cosmetic. When Bradshaw misled the governmental agencies, thereby frustrating their efforts to protect the public, he indirectly misled and defrauded the public. Thus, Bradshaw's actions fell squarely within the congressional purpose. Bradshaw's arguments that the Act's goal of consumer protection somehow limits the felony penalty to conduct intended to defraud the consumer are unpersuasive. Our result is entirely consistent with that goal.

*Bradshaw,* at 874-75.

Thus, as *Bradshaw* amply demonstrates, the legislative history and purpose of the FDCA was to protect consumers. The purpose of a racehorse commission such as the New Jersey Racing Commission[10] is not to protect consumers – let alone humans – but is instead to ensure fair competition in horse racing. Nothing more. The "About Us" page for the N.J. Racing Commission states:

> The New Jersey Racing Commission is responsible for regulating the safety and integrity of the horse racing industry through the conduct of investigations, prosecutions and via regular monitoring. The Division of the New Jersey Racing Commission has jurisdiction over New Jersey's thoroughbred and standardbred permit holders and the authority to regulate racing at the state's three racetracks.
>
> Activities included in the regulation of racing activities are the oversight of pari-mutuel wagering, supervising pari-mutuel operations at all the tracks and granting permits for the conduct of running the thoroughbred and standardbred race meetings in the state where pari-mutuel wagering is allowed. In 2016, the three operating racetracks in New Jersey scheduled 271 live racing dates. The Commission also has jurisdiction over the simulcasting of horse racing activities at these racetracks as well as casino simulcasting facilities, the Account Wagering System and six Off-track wagering facilities.[11]

Racehorse commissions are concerned with regulation and oversight of wagering, pari-mutuel operations, and fair competition. They are not, however, concerned with consumer protection. Nor are they concerned with regulating interstate flow of drugs, regulating permit holders of specific drugs, approving drugs,

---

[10] This is but one of many racehorse commissions governed by distinct laws and regulations.

[11] https://www.nj.gov/oag/racing/about.html

regulating and monitoring the efficacy and safety of drugs. And, candidly, the commissions are *not* concerned with the protection or the treatment of animals. If they were, why else would they permit trainers to inject *arsenic* in a horse prior to a race?

It simply strains credulity to compare an agency like the FDA, and its mission, or the Florida drug agencies in *Bradshaw* and their mission as stewards of public health, to a state horse racing commission primarily concerned with ensuring fair competition and regulating different forms of gambling to protect the betting public.

As such, the above cases, the history of the FDCA and its overall purpose support the conclusion that Dr. Fishman and the other defendants in Counts 1-2 (and respectively Counts 3-4 too) may not be placed on trial for an FDCA misbranding conspiracy where the prosecutions theory of the offense is that conspiracy included an intent to defraud or mislead a state race horse commission. For these reasons, to survive a complete dismissal of Counts 1-2, the Government must submit a bill of particulars identifying the specific government agency that the conspirators allegedly agreed to mislead or defraud as part of the misbranding/adulteration conspiracies alleged in Counts 1-2.

### E. Failure to Submit a Bill of Particulars Will Cause Significant Issues at Trial and for Trial Preparation

The failure to produce a bill of particulars will cause confusion and chaos at trial.

None of the defendants will know the precise theory upon which the government intends to proceed until the opening statement at trial.

Counsel will not be positioned to appropriately evaluate possible experts for the defense. An FDA expert, for example, is much different than an expert on race commission rules governing horse racing. And, it is unreasonable to simply assume that all counsel should retain both experts, in an abundance of caution, and then wait for the government to reveal its theory at trial to determine which expert is necessary at trial.

Likewise, jury instructions will be hotly disputed because of the absence of any details in the Indictment related to the specific identifiable government agency that the conspiracy allegedly intended to defraud or mislead. Without such details, it is impossible to instruct a jury concerning the applicable state laws (Racehorse commission) or federal laws (FDA) that they must consider prior to rendering a verdict.

Accordingly, these concerns militate in favor of a bill of particulars for another reason -- to encourage simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay in this proceeding. See Fed. R. Crim. P. 2

Respectfully submitted,

s/Andrew S. Feldman\_\_\_\_
Feldman Firm PLLC
Southeast Financial Center
200 S. Biscayne Blvd, Suite 2770
Miami, Florida 33131
Office:	305.714.9474
Facsimile:	305.714.9555
Email:	afeldman@feldmanpllc.com
FBN:	60325
*Attorney for Seth Fishman, DVM*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was served via CM/ECF on all counsel of record authorized to receive service.

s/Andrew S. Feldman