Case 1:20-cr-00160-MKV   Document 276   Filed 10/23/20   Page 1 of 9



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 23, 2020

**VIA ECF**

The Honorable Mary Kay Vyskocil
United States District Court
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

    Re: *United States v. Seth Fishman*, 20 Cr. 160 (MKV)

Dear Judge Vyskocil:

    The Government writes to oppose defendant Seth Fishman's ("Fishman's" or the "defendant's") application for a bail modification seeking the return of his passport and permission to travel to the United Arab Emirates for a 21-day period (the "Motion"). The purported basis for the Motion is for Fishman to travel to the UAE in his capacity as "Chief Research Officer with Presidential Camels, Sector of Scientific Centers & Presidential Camels," in which role he claims to have "worked on research and [sic] involving zoonotic diseases and African sleeping sickness and breeding." Mot. at 1-2. In fact, "Presidential Camel" has been a customer of Fishman's illegal performance enhancing drug ███████████████████████████████████████████

    No change in Fishman's circumstances warrants review of his bail conditions, and in any event, the proposed conditions create a serious risk of both flight and continued commission of the



charged offenses. International travel is especially unwarranted here, where 1) the defendant seeks to travel to a country where the defendant has significant ties to business partners who previously funded at least a portion of the charged offenses; 2) the defendant and those foreign partners have made misrepresentations to judicial officers regarding their dealings; and 3) the United States has no mechanism or ability to seek extradition from the country to which Fishman purportedly seeks to travel. The Motion should be denied.

I.  **Factual Background**

    a.  **Denial of Original Travel Motion**

Much of the procedural history and background regarding the defendant's criminal conduct has been enumerated in the Government's opposition to the defendant's motion for a bill of particulars, and is not repeated in full herein. *See* Gov. Opp'n Mot. Bill of Particulars (ECF No. 210). However, particular facts pertinent to the present motion and prior filings by the defendant and his foreign business partners reflect the likelihood of continued criminal activity or flight were Fishman to be permitted leave to travel to the UAE, and are discussed briefly below.

Soon after his arrest in October 2019, Fishman made a similar travel request to the Honorable Katharine H. Parker, U.S. Magistrate Judge for the U.S. District Court for the Southern District of New York, which the Court denied. *United States v. Fishman*, 19 Mag. 10120, Dkt. No. 9 (Dec. 10, 2019) (Parker, M.J.). In that motion, as in the present Motion, Fishman sought to travel internationally, and to the UAE in particular. The Government's response described the steps that Fishman had, to that date, taken to set up a life abroad in the United Arab Emirates, including through his establishment of a bank account and appointment to "Presidential Camel." The Government noted that, prior to his arrest, the defendant had taken substantial steps to establish a life abroad in the UAE, and over the last several years had spent an increasing amount of time in that country.

Fishman was approached, interviewed, and subsequently arrested at Miami International Airport when he was returning from a weeks-long trip to the UAE in October of 2019. In a voluntary interview with agents involved in this investigation, the defendant stated that he had suspected he was under investigation and knew he could be arrested. With that knowledge, and in the months prior to his arrest, the defendant obtained residency status in the UAE, opened a foreign bank account in the UAE, and obtained an official position in the government of the UAE as Chief Research Officer for the Presidential Camels and Camel Racing Affairs Centre, an agency that the defendant himself describes as an official government entity in his initial bail application motion to Judge Parker. Moreover, the defendant had spent increasing amounts of time in the UAE leading up to his arrest. In 2018, the defendant took 8 trips to the UAE over the course of the year, spending a total of 99 days overseas. Between January 2019 and the time of the defendant's arrest in October 2019, the defendant had taken 6 multi-week trips to the UAE, spending approximately 117 days abroad.

In connection with his original request for international travel, Fishman offered to submit a purportedly "irrevocable" waiver of extradition from the UAE. However, the UAE has no

extradition treaty with the United States. Consequently, there is currently no mechanism to seek extradition or removal once a defendant is within the UAE, irrespective of that individual's citizenship, and irrespective of whether a fugitive has previously represented to a Court in this country that he or she will prospectively "waive" that non-existent procedure.

Ultimately, Judge Parker denied the original motion for international travel. *United States v. Fishman*, 19 Mag. 10120, Dkt. No. 9 (Dec. 10, 2019) (Parker, M.J.).





c. **The Present Motion for International Travel**

Fishman's current motion is again premised solely on the notion that his livelihood depends on traveling to the UAE to meet in person to discuss "how to manufacture nutritional supplements to enhance feed production for a variety of animals: camels, horses, chickens, and cows." Mot. at 2. In his motion, Fishman asserts that he has no "significant assets" in the UAE (although he simultaneously claims that his sole source of income depends on being in the UAE and that he is an officer with an enterprise with purported links to the UAE's government). He claims that he has no "criminal history." And he claims that his family (with whom he does not live, and apart from which he spent considerable amounts of time prior to his arrest) are based in

the northeast of the United States. Fishman has offered an "irrevocable" waiver of extradition, and proposed to travel with a paid chaperone.

## II. Legal Standard

Title 18, United States Code, Section 3142(g) requires the Court to consider whether conditions of release would "reasonably assure" the defendant's appearance in Court and the safety of the community. In setting the terms of pretrial release that will "reasonably assure" the defendant's appearance, the Court must consider (1) the nature and circumstances of the offenses charged, (2) the weight of the evidence, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

The Court may also consider the defendant's danger to the community based upon his propensity to commit further crimes, including those that cause solely economic harm. *See United States v. Provenzano,* 605 F.2d 85, 95 (3d Cir. 1979) (denying bail pending appeal and noting that "a defendant's propensity to commit crime generally, even if the resulting harm would be not solely physical, may constitute a sufficient risk of danger to come within the contemplation of the Act.").

## III. Discussion

The defendant's proposal to allow for international travel to a country with no extradition treaty does not remotely approach "reasonabl[e] assur[ance]" of his appearance in Court. Fishman proposes to travel so that he may reconnect with an entity that has already submitted false and misleading claims to a federal court in order that it and Fishman might mutually benefit from their continued business together. Fishman proposed to travel to a country where he was, at the time of his arrest, already in the process of establishing bank accounts and residency. Fishman proposes to do this under the watchful eye of a paid chaperone with absolutely no power to ensure Fishman's return should he decide that he would prefer to stay in the UAE or depart from the UAE to yet another country. The proposal should be denied.

*First*, each of the 3142(g) factors weigh heavily against the proposed modification. Fishman has a strong incentive to remain in the country where he enjoys a high income and low likelihood of prosecution, namely the UAE, in light of the charges and evidence marshalled against him. Fishman is accused of leading a sophisticated operation to develop and market PEDs to competitive horse trainers across the United States.

Certain of the evidence of Fishman's offense is detailed in the Indictment, and further described in the Government's opposition to Fishman's motion for a bill of particulars. The evidence developed in this case establishes that the defendant has engaged in the charged conspiracy for almost two decades, staking his livelihood on the illegal distribution of his custom-made drugs, both domestically and overseas. The charges carry a collective statutory maximum sentence of 10 years in prison, and are likely to result in the defendant's loss of his veterinary license. *See United States v. Berkun*, 392 F. App'x 901, 903 (2d Cir. 2010); *United States v. Bellomo,* 944 F. Supp. 1160, 1164 (S.D.N.Y. 1996) ( "[A] defendant facing serious

potential penalties in the event of conviction is more likely to disappear if the government's case is strong than if an acquittal appears likely"). Among other evidence, the Government's case includes:[2]

- Months of wiretap recordings of Fishman's phone, as well as wiretap recordings from the phones of Fishman's associates or customers, including Lisa Giannelli, Christopher Oakes, and Jorge Navarro.  In these recordings, Fishman explicitly discusses the products he sells, including the products that he sold to customers in the UAE for the purpose of doping horses and/or camels.

- Investigative files, including sworn statements and recorded interviews with Fishman from 2011 in which Fishman and co-defendant Lisa Giannelli falsely claimed to state licensing officials investigating PED sales by Giannelli, as Fishman's sales representative, that "Lisa  Ranger [*i.e.*, Giannelli] does not sell drugs for Dr. Fishman." Recorded telephone calls, seized electronic communications, and other evidence firmly establish that this was a lie at the time and that Giannelli was then, and continued until even after Fishman's arrest in October 2019, to distribute Fishman's drugs and to act as Fishman's primary sales representative in the northeast United States.

- Emails and other records obtained from Fishman's various email accounts, and the email accounts of his UAE customers, reflecting his long-standing operation to create and distribute misbranded and adulterated drugs for the purpose of improving the performance of racing animals, including emails from Fishman referring to his work from as early as at least 2007. For example, these communications include but are not remotely limited to: a May 13, 2017 email from Seth Fishman to Mansour Saad Alhbabi (a UAE-based client), referring to production of particular performance enhancing drug "years ago" and to Alhbabi being the first to "really play with this stuff in over 10 years."; an April 6, 2017 email from Seth Fishman to another UAE-based client associated with Presidential Camel, referring to Fishman's work on equine ulcer medications for 10 years; and a January 9, 2017 email from Seth Fishman to Alhbabi, referring to Fishman's "network" being built over the course of twenty years.

- Records seized from an online Dropbox account that contain the defendant's chemical formulations for certain of the drugs he designed, manufactured, and sold; labels for the same; records of customer purchases (including purchases arranged by Giannelli and purchases by co-defendants such as Jorge Navarro).

---

[2] The evidence summarized below is not exhaustive of the categories of evidence against Fishman or others. Certain examples of emails reflecting Fishman's doping activities (including doping of animals for UAE customers), wiretap intercepts, and text message communications, are included as attachments to the Government's Surreply in Opposition to the Rule 41 Action, previously submitted to the Court, and are representative examples of many additional communications reflecting the same course of conduct

- Upon the defendant's arrest, the Government executed premises search warrants of the defendant's home, office, and storage unit and found large quantities of bottles, packaging and shipping equipment, and electronic devices, which are currently being imaged.  In short, the physical evidence recovered from these searches has further strengthened the already-substantial evidence of the defendant's guilt, strengthened further by the consciousness-of-guilt evidence inherent in the false Rule 41 Action filed by Presidential Camel and supported by Fishman.

- Fishman's statements to law enforcement in which he admitted that he was not duly registered to manufacture the drugs that he created and compounded; that he sold a pain killer many times more powerful than morphine to customers in the UAE; and that he knew that he could be arrested for his activities and that he had expected to be arrested earlier.

In short, the evidence against Fishman is overwhelming, and the penalties are stiff. Together, they create a clear incentive to flee prosecution absent adequate safeguards. Those safeguards include, at a minimum, that Fishman not be allowed to travel internationally, particularly to the very country to which he was attempting to shift his illicit enterprise.

*Second,* Fishman's proposed conditions are plainly inadequate to mitigate the risk of flight or dangerousness. The UAE has no extradition treaty with the United States; an "irrevocable" waiver of extradition has no effect where there is no process to waive or central authority to which an extradition request might be forwarded. Indeed, even in countries with an extradition treaty, the sending (extraditing) nation's laws require that the sending nation conform with its own legal processes and substantive laws, including, for example, the requirement of dual-criminality, before granting extradition – a purported waiver, even if not renounced by the waiving party, is simply not binding on a foreign sovereign.

Many courts have found that such purported waivers are unenforceable and effectively meaningless.  *See, e.g., United States v. Morrison*, No. 16-MR-118, 2016 WL 7421924, at *4 (W.D.N.Y. Dec. 23, 2016); *United States v. Kazeem*, No. 15 Cr. 172, 2015 WL 4645357, at *3 (D. Or. Aug. 3, 2015); *United States v. Young*, Nos. 12 Cr. 502, 12 Cr. 645, 2013 WL 12131300, at *7 (D. Utah Aug. 27, 2013); *United States v. Cohen*, No. C 10-00547, 2010 WL 5387757, at *9 n.11 (N.D. Cal. Dec. 20, 2010); *United States v. Bohn*, 330 F. Supp. 2d 960, 961 (W.D. Tenn. 2004); *United States v. Stroh*, No. 396 Cr. 139, 2000 WL 1832956, at *5 (D. Conn. Nov. 3, 2000); *United States v. Botero*, 604 F. Supp. 1028, 1035 (S.D. Fla. 1985).  For very good reason: Any defendant who signs such a purported waiver and then flees will assuredly contest the validity and/or voluntariness of the waiver, and will get to do so in the jurisdiction of his choosing (i.e., the one to which he chose to flee).

Fishman cites two cases in support of its offer of his purported "waiver." The Court in *United States v. Melgen*, No. 15-cr-80049 (S.D.Fl. 2015), granted a defendant's request to travel to the Dominican Republic once the defendant executed an affidavit waiving extradition.  *See id.* (ECF No. 69) (setting bail conditions that included a $3 million corporate surety bond, and a $15 million personal surety bond co-signed by 16 individuals and secured by checking and savings account balances, uncashed checks, an aircraft, jewelry, watches, artwork, and motor vehicles,

among other conditions). However, an extradition treaty exists between the United States and the Dominican Republic. *See* Extradition Treaty between the United States of America and the Dominican Republic of June 19, 1909, 36 Stat. 2468. Although the Court in that case appears not to have considered the possibility that the waiver was irrelevant to the sending nation, the defendant's waiver in *Melgen* at least explicitly acknowledged "that there is an applicable extradition treaty, that the treaty covers the offenses with which" the defendant is charged, that the defendant has "been fully informed" of the "terms of the extradition treaty in force," and that the defendant "waive[s] [his] rights under the extradition treaty and the applicable sections" of the United States Code. *See id.* (ECF No. 59-1). Seth Fishman has not – and cannot – make any such representations as to the UAE.[3]

The court in the second case cited by Fishman, *United States v. Myers*, 19 Cr. 20739 (S.D. Fl.) (Dkt. 8) did, indeed, require that the defendant include a waiver of extradition as a condition precedent for his release on bond. But that court did not allow the defendant to travel internationally. Rather, Myers' passport was confiscated at the same time that he was required to provide, as a *disincentive* to leaving the country, a purported "waiver" of extradition. *Id.* Indeed, as a review of the *Myers* docket reveals, when Myers later petitioned for the return of his passport prior to sentencing (ostensibly for the purpose of renewing his Chilean residency), that application was justifiably denied. *Id.* (Dkt. 36).

---

[3] The defendant's reliance on other out-of-district cases is unfounded. Reliance on any such cases is limited without a complete view of the Section 3142(g) factors considered by the presiding judges in each of those cases prior to granting those defendants' foreign travel requests. Nonetheless, in virtually all of those cases, the defendant did not face opposition from the Government, or did not otherwise have the breadth and extent of the connections to a foreign jurisdiction that Fishman has with the UAE *See* Mot. at 3-4 n.6 . In *United States v. Arthur*, No. 10-cr-20753 (S.D. Fla. 2010) (ECF Nos. 109, 141), the defendant's foreign travel applications were uncontested, and there was no indication of significant foreign ties, or that the purpose of the trip was to deepen foreign ties. In *United States v. Snipes*, 06-cr-00022 (M.D. Fla. 2006) (ECF Nos. 20, 509, 512, 520), the Government initially took the position that no bail conditions were required and that the defendant could be released on his own recognizance because he posed no risk of flight. Against that backdrop, the Government consented to the defendant's requests to travel abroad for work purposes on multiple prior occasions, before finally opposing the defendant's request. *See id.* (ECF Nos. 139, 140, 181, 182, 429, 430, 431, 509). Notably, and unlike *Snipes*, the Government has, at the outset of this matter, established bail conditions to mitigate Fishman's risk of flight given his foreign ties and the Government's view that the defendant is a flight risk, and has consistently opposed Fishman's requests for international travel. In *United States v. Brimberg*, No. 13-cr-20570 (S.D. Fla. 2013) (ECF Nos. 33, 34, 35, 36), the defendant sought leave to "visit her terminally ill mother" and the foreign travel application was uncontested; the Court denied the application without prejudice so long as the defendant could strengthen the bail package by "identifying additional sureties and pledging additional property for consideration by the Court"; defendant re-filed a second unopposed application, which was granted. These cases—and the Government's position on each score—is easily distinguishable from the instant case.

Fishman also proposes to travel with a paid chaperone. This is not a realistic solution to or mitigation of the problem of Fishman's flight risk. It is incredible to suggest that a chaperone, irrespective of his background or employment, would risk criminal liability under UAE law by forcibly subduing Fishman – a purported employee of a government agency – and conveying him from the UAE to the United States against his will. Forcible return of Fishman to the united States would require a diplomatic channel that does not exist; his proposed chaperone is irrelevant.

Fishman proposes additional financial sureties in support of his motion. However, Fishman's financial livelihood ostensibly depends on his working not in the United States, but in the UAE and abroad. His lucrative business in the UAE, conducted alongside partners who have been willing to make misleading statements to United States Courts, offsets any financial downside that he might incur in the short term by fleeing this prosecution.

\* \* \*

In light of the overwhelming evidence establishing Fishman's participation, over the course of the better part of two decades, in a sophisticated and successful criminal drug manufacturing operation, Fishman's proposed travel to the UAE poses an unreasonable risk of flight and continued commission of the charged offenses. The defendant and his business partners' prior attempts to mislead the courts regarding the nature of his work undermine any confidence that one might otherwise place in Fishman's representations. Based on this combination of the defendant's ties to the UAE, the lack of any U.S.-UAE extradition treaty were Fishman to become a fugitive, and his strong incentive to both flee and continue the charged offenses, the Government requests that the Court deny the defendant's second motion requesting permission for foreign travel.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

by: _____
Andrew C. Adams
Assistant United States Attorney
(212) 637-2340

cc: Andrew Feldman, Esq. (via ECF)