

**Andrew S. Feldman**
Feldman Firm, PLLC
Southeast Financial Center
200 S. Biscayne Blvd, Suite 2770
Miami, Florida 33131
Phone: 305.714.9474
Mobile: 202.320.7705
Email: afeldman@feldmanpllc.com
Website: www.feldmanpllc.com
Florida Bar No. 60325
NY Bar Reg No: 4864799

October 28, 2020

**VIA CM/ECF**

**Re:    REPLY TO OPPOSITION TO MOTION TO MODIFY CONDITIONS OF
RELEASE AND TO TRAVEL TO UAE**

Dear Judge Vyskocil:

The Government devotes a considerable amount of time to discussing their interpretation of the criminal discovery in this case and to discussing the Rule 41 litigation, and to demonizing the relationship between Dr. Fishman and specific UAE clients. It then spends the remainder of its Response opposing the proposed conditions for Dr. Fishman's travel contending that they are insufficient to prevent Dr. Fishman's flight.

**The Proposed Draconian Conditions Eliminate any Perceived Risk of Flight**

The only determination this Court is required to make to decide this Motion is whether the proposed safeguards or conditions are sufficient to assure that Dr. Fishman returns from the UAE to the U.S. The defense maintains that the proposed conditions of release are a draconian combination of conditions which will assure Dr. Fishman's appearance at all future proceedings and that such conditions more than satisfy any concerning regarding Dr. Fishman's ability to flee or escape.

The proposed conditions are the most stringent conditions the undersigned can envision. That said, Dr. Fishman is ready and willing to consent to additional conditions if your Honor deems any such conditions to be appropriate and necessary.

Dr. Fishman is a U.S. citizen that resides in Florida, has no criminal history, and has significant ties to this country, including his entire family. Dr Fishman's mother and father live in Great Neck, New York where Dr. Fishman grew up. Dr. Fishman has visited with them constantly over the last 2 decades after his move to Florida. He has sisters in New York and Newton Massachusetts and is close with both sisters and their children (each sister has 2 nephews). In fact, he has traveled to Florida recently with one of his sisters and her children. Indeed, Magistrate Judge Parker granted a motion dated January 6, 2020 to travel to Orlando with his sister and her children. During his time abroad in 2019, his mother and father joined him for several weeks. Dr. Fishman is very close with his family. Thus, it is wrong to insinuate otherwise and to suggest that, because Dr. Fishman spends time abroad or lives in a different state, he would abandon his entire

Hon. Mary K. Vyskocil

Page 2

family – his mom, his dad, his sisters, and their children – during his proposed trip to the UAE. He has no family there and he has no assets or real property in the UAE. When he has traveled there in the past, he has stayed at hotels and would do so again under the close supervision of Mr. Freeman.

Candidly, the notion that Dr. Fishman would turn fugitive in the UAE defies common sense. It is especially so when you consider that he would forfeit $3 Million in property, some of which belongs to his family, under the defense proposal. The practical limitations posed by COVID on international travel to and from other countries are also not very conducive to becoming a fugitive. And, Dr. Fishman would have to escape from his chaperone or overpower his chaperone.

To that end, if the Government is concerned about the relevance of Mr. Freeman as an international chaperone for Dr. Fishman, attached herein is **Exhibit A** for this court's additional consideration which is a letter authorizing Mr. Freeman to use reasonable force and to temporarily detain Dr. Fishman and/or to surrender Dr. Fishman to any foreign law enforcement authority if there are any efforts to flee. An almost identical letter was accepted as part of a comprehensive bail package in Mark Dreier's case. *See U.S. v. Dreier*, 596 F. Supp. 2d 831, 834 (S.D.N.Y. 2009) ( expressly authorizing a use of force provision by a private security guard as part of bail package and stating "that the defendant expressly consent in writing to the use, by the armed security guards, of "temporary preventive detention and the use of reasonable force" to thwart any attempt to flee.."); *see also U.S. v. Mark Dreier*, 09-cr-085-JSR (S.D.N.Y.)(Feb. 5, 2009) (ECF 17 at 10) (Exhibit B) (attaching a similar letter permitting such force). Mr. Dreier perpetrated a multi-Million Dollar securities fraud.

Beyond this, the United States and UAE are on extremely good terms. It defies common sense to believe that the UAE would undermine or compromise its diplomatic relationship with the U.S. because of Dr. Fishman. UAE has in fact signed treaties with Israel and Sudan recently and it is expected that the UAE will sign additional extradition treaties with countries like France, Germany, and Australia.[1] Furthermore, the absence of an extradition treaty in no way *prevents* the U.S. government from seeking the return of a fugitive and there in fact are numerous diplomatic channels to effectuate other methods of lawful return:

> If the fugitive is not a national or lawful resident of the country in which he or she is located, the Criminal Division's Office of International Affairs (OIA), through the Department of State or other channels, may ask that country to deport, expel, or otherwise effectuate the lawful return of the fugitive to the United States.

*See* Justice Manual, Section 9.15-610 (Deportations, Expulsion, or other Lawful Methods of Return).

---

[1] https://gulfnews.com/uae/extradition-pacts-with-eight-states-soon-1.389547

Hon. Mary K. Vyskocil

Page 3

Further, UAE law permits it. UAE Federal Law No. 39 (Oct. 31, 2006) Articles 6-32, which operates as part of the UAE Federal Constitution, plainly contemplates surrender of foreign persons to countries like the United States even in the absence of an extradition treaty. *See* **Ex. B.** Indeed, Article 6 states that surrender of the accused to a foreign judicial authority shall comply with the Federal Law. **Ex. B.** at 4. Likewise, Article 9 delineates the circumstances under which surrender to a foreign country is prohibited. None of those provisions would apply to Dr. Fishman or impede any request by the U.S. to request his surrender even absent an extradition treaty. **Ex. B.** at 5-6.

### Weight of the Government's Criminal Discovery is the Weakest Factor in Evaluating this Motion because there is still a Presumption of Innocence in the United States

As a preliminary matter, the weight of the criminal discovery cited by the Government is the weakest factor in evaluating whether to allow someone to travel and, similarly, whether to modify conditions of release under the Bail Reform Act. *U.S. v. Jones*, 566 F. Supp. 2d 288, 292 (S.D.N.Y. 2008) ("Courts generally consider the Weight Factor as the "least important" of the Factors"); *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) (other citations omitted) ("the weight of the evidence is the least important of the various factors. Although the statute permits the court to consider the nature of the offense and the evidence of guilt, the statute neither requires nor permits a pretrial determination that the person is guilty."); *U.S. v. Friedman*, 837 F.2d 48, 50 (2d Cir. 1988) ("In other cases concerning risk of flight, we have required more than evidence of the commission of a serious crime and the fact of a potentially long sentence to support a finding of risk of flight. ").

Accordingly, there is still a presumption of innocence in the United States. *United States v. Mendez*, 1:19-CR-00245 EAW, at *10 (W.D.N.Y. June 17, 2020) (other citations omitted) ("In assessing the weight of the evidence against Defendant, it is important to note that Defendant is presumed innocent, and "it is not the Court's role at this stage of the proceedings to assess [a defendant's] guilt or innocence."). Yet, in its Opposition, the Government seeks to pronounce Dr. Fishman's guilt prior to a pre-trial motions schedule, prior to a trial date, and prior to a single piece of evidence ever coming into evidence at any hearing let alone any trial for the jurors' consideration. That presumption of innocence is the backbone of our criminal justice system. Dr. Fishman is cloaked with that presumption and it remains with Dr. Fishman from the time he is arrested until the time of any disposition in his case.

That presumption of innocence has steadily eroded in this case. It started with Dr. Fishman's arrest exactly *a year ago today,* (October 28, 2019). After arriving at Miami Airport, Dr. Fishman was escorted to a private room by armed law enforcement and questioned by law enforcement after having requested the presence of an attorney. Contemporaneous with the questioning, law enforcement executed a multi-hour search warrant at his home and seized hundreds and hundreds of products. To this date, a full, accurate, and complete inventory of precisely what seized has not been provided to Dr. Fishman or counsel. Following his arrest and after his failed attempts at a pre-indictment resolution of this matter, all former customer-vendors/trainers and pharmacies in the U.S. severed their relationships with Dr. Fishman because of the Scarlet Letter I of the Indictment. American Express also suddenly cancelled his credit cards,

Hon. Mary K. Vyskocil

Page 4

his Centurion status which he has had for decades, and then forfeited 1 Million points (with no refunds).[2]

### <u>The Weight of the Criminal Discovery Argument also Assumes that the Indictment is valid as a Matter of Law and that the Government's Discovery is Admissible and/or Relevant</u>

One of the major problems with relying on the supposed weight of any criminal discovery produced to Dr. Fishman at this posture in any federal criminal case to deny pre-trial release, or travel, is that doing so is also entirely premature.

There is no question that the Government has accumulated lots of discovery in this case. That discovery – whether it be intercepted calls, electronic data, post-arrest statements, video, laboratory tests, or other records--- becomes essentially irrelevant however if the legal theory under which the Government has brought this Indictment is invalid as a matter of law *or* if the discovery never graduates into evidence because it was obtained unlawfully or fails to satisfy threshold Rules of Evidence.

Here, in opposing Dr. Fishman's Motion and reinforcing the *weight* of its criminal discovery, the Government assumes that its legal theory of the misbranding conspiracy under the Food Drug and Cosmetic Act (FDCA) in Counts 1-2 is legally valid and/or that such a theory does not pose insurmountable Due Process concerns entitling Dr. Fishman to a dismissal. No federal court in the United States has ever decided whether a person may defraud or mislead a state racing commission under the felony provisions of the FDCA. Nor has any U.S. Court held that this theory is a legally valid theory. Not one. As future briefing will illustrate very soon, the defense believes the grand jurors stretched the felony provisions of the FDCA too far when they returned the Indictment and that Counts 1-2 should be dismissed.

Likewise, in its opposition, the Government assumes that the criminal discovery it lists is in fact admissible and/or relevant evidence. Again, this is premature. We dispute that much of it is and plan to challenge the: (i) the admission of Dr. Fishman's *unrecorded* post-arrest statements, (ii) the legality of the wiretap interceptions and the adequacy and veracity of the statements supporting those interceptions, (iii) the admissibility of any of the supposed "test results" from the Hong Kong Jockey Club, (iv) the admissibility of certain expert witnesses, portions of their testimony, and/or the sufficiency of the expert reports provided under Rule 16(a)(1)(G), and (v) the relevance of certain pieces of criminal discovery that we surmise (at this time) the Government might seek to introduce at trial.

---

[2] The defense surmises that the sudden forfeiture was due to the service of a grand jury subpoena on AMEX.

Hon. Mary K. Vyskocil

Page 5

As just one example, the Government cites to a recording of an interview with Dr. Fishman which was made by Dr. Fishman's then-attorney, not the Delaware investigator, during the interview.[3] The recording was made almost a decade ago in 2011 during an administrative investigation by the State of Delaware Division of Professional Regulation into violations of certain Delaware laws governing the practice of veterinary medicine. That entire investigation was closed, no administrative complaint was brought, and the Delaware Attorney General's Office formally *declined* prosecution. It is unclear how the Government would seek to admit this recording as evidence, which is outside the time frame of the alleged conduct in Counts 1-2, other than Rule 404(b), and no such Notice has been filed in this case. *See* Fed. R. Evid. 404(b)(2)(A).

### Dr. Fishman's Work in UAE & Rule 41 Litigation

Since the Indictment, Dr. Fishman's veterinary business is entirely based on exportation of certain veterinary products, almost exclusively to the UAE. Prior to the Indictment, a large segment of his veterinary business was abroad. Dr. Fishman has customized many products for his UAE clients, including breeding products. **Ex. C.** Dr. Fishman was also requested by Dr. Rahsoul to work on on research related to various zoonotic diseases. Dr. Rahsoul retains the title of Director, Camel Biotechnology Center. **Ex. D.**

Many of the Government's other arguments regarding the Rule 41 litigation were already litigated in that proceeding. The Government in fact previously lodged an identical attack to which Dr. Fishman and Presidential Camels responded. *See* Reply of Presidential Camels; *see also* Dr. Fishman Motion to Intervene.[4] Ultimately, the Southern District of Florida decided that

---

[3] After realizing that the State of Delaware no longer had the recording made by the Delaware investigator who left that post years ago, the government served a grand jury subpoena on Dr. Fishman's attorney to produce the recording which he voluntarily produced.

[4] Petitioners Presidential Camels sought the return of certain products (approximately 62 drugs), including breeding medications. *See* Exhibit 3 to Motion to Return Property.  That list also included drugs with names which were identical to some of the drugs (approximately 4 drugs) listed in the Indictment. *See* Exhibit 3 to Motion to Return Property. A central argument throughout the Rule 41 litigation in support of their return was that the court should apply the export exemption to the FDCA found at 21 U.S.C. Section 831(e).  Under that exemption, a drug – regardless of its supposed use or purpose – is given a form of statutory immunity from violations of the FDCA. Under it, a person in the U.S. may export a drug to a foreign country as long as the drug meets the customers specifications, it is "intended for export," the importation of the drug is not a violation of any law in that country, and as long as the drug is not also offered at that time to consumers in the U.S. Drugs are distinct, for FDA purposes, if they vary in quantity, ingredients (inactive or active), or the formulation differentiates.  This exemption was so critical to Congress that it has been around for *more than 114 years* in the United States. A similar exemption existed as part of the predecessor Food and Drugs Act (1906) which was then included almost verbatim as part of the FDCA (1938). Thus, whether such drugs are supposedly "performance enhancing," or not, it is entirely *legal* to export those drugs if the exportation meets the requirements of the statutory exemption. This was (and still is) a mixed factual and legal issue never decided by the court in the Southern District of Florida.

Hon. Mary K. Vyskocil

Page 6

matter on a very narrow basis denying the Motion without prejudice to reconsider it after a trial in this case and concluding that the evidence Presidential Camels sought to obtain pursuant to Rule 41 was necessary for any trial in this case.

     For these reasons, Dr. Fishman requests that your Honor grant the Motion to travel under the conditions previously proposed and under any other additional conditions your Honor deems appropriate.

Sincerely,

FELDMAN FIRM, PLLC

Andrew S. Feldman

**Attachments:**
**Exhibits A-D**

October 28, 2020

Dear Judge Vyskocil:

I hereby consent to temporary preventative detention and the use of reasonable force by Keith Freeman in this case to secure the conditions of my pre-trial release and/or to thwart any attempt to flee. Keith Freeman is specifically authorized to surrender me to any foreign law enforcement authority.

Sincerely,

10/28/20

Seth Fishman



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

UNITED STATES OF AMERICA,        :

   - v -        :

MARC DREIER,        :

          Defendant.        :

--------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _2-9-09_

09 Cr. 085 (JSR)

**ORDER**

Further to the Order of February 5, 2009, and after having received a proposed

order from counsel for the parties and having further conferred with counsel on February 6,

2009,

IT IS HEREBY ORDERED THAT the defendant Marc Drier be released from

custody upon the satisfaction of the following conditions, pursuant to Title 18 of the United

States Code, Section 3142:

    1)    The defendant will sign a $10 million personal recognizance bond that is
co-signed by the defendant's son, Spencer Dreier, and by his mother,
Mildred Dreier.

    2)    Contemporaneous with his release from jail, the defendant will be
transported to his Manhattan apartment[1] by two federal agents designated
by the U.S. Attorney's Office and by two private security guards (see
condition 5, below).

    3)    Defendant will remain in his Manhattan apartment at all times of day and
night, with no exceptions other than those authorized by this Court, in
writing, in advance.

    4)    As soon as Pre-trial Services can promptly arrange, defendant will wear an
electronic monitoring device, and will follow electronic monitoring
procedures, as specified by Pre-Trial Services, and will pay the cost of the
electronic monitoring.

---

[1]    For security reasons, the address of the apartment is not included in this Order.

5)    From the very moment of his arrival at his apartment, defendant's home detention will be secured by on-premises armed security guards, supplied by a company acceptable to the Government and paid for by the defendant's relatives[2].

6)    The costs of supplying the armed security guards for three months (estimated at approximately $210,000) will be paid in advance into an escrow account maintained by the United States Attorney's Office for the Southern District of New York. If defendant remains at large for more than three months, the costs of the armed guards for such further months will likewise have to be paid in advance into the escrow account, on terms satisfactory to the Court, failing which the defendant will be returned to custody.

7)    Defendant will give his express consent in writing to "temporary preventive detention and the use of reasonable force" by the armed security guards, to thwart any attempt to flee[3].

8)    Contemporaneous with defendant's return to his apartment, Government agents, with defendant's consent and assistance, will remove from the premises any and all computers, cell phones, modems, and any other means by which the defendant may communicate electronically except by land-line telephone, as well as anything that might serve as a weapon.

9)    Defendant will maintain at his residence throughout the period of pretrial release a land-line telephone that has no call forwarding, modem, caller ID, call waiting, or portable cordless telephone connection.

10)   Any visitors to defendant's apartment will be screened and searched, and must be pre-approved, expressly and in writing, by Pre-Trial Services, after consultation with the United States Attorney's Office for the Southern District of New York.

11)   Defendant will possess no travel documents and will surrender any travel documents still in his possession (if any).

12)   Promptly upon defendant's return to his apartment, if not sooner, the armed guards, or a service employed by them at defendant's expense, will arrange to have an alarm placed at the entry to the balcony at defendant's

---

2    The security company to be employed in this case, Pathfinder Consultants International, Inc., has already been approved by the defendant and the Government. A written protocol for the work to be performed in connection with this Order is attached hereto as Exhibit A.

3    Defendant's written consent is attached hereto as Exhibit B.

apartment, so that he cannot enter the balcony without the alarm sounding. However, the guards will have access to a device for disarming the alarm, and are permitted to disarm the alarm and permit the defendant, at his request, to enter the balcony, provided that at least one armed guard is with the defendant on the balcony at all times that the defendant is on the balcony.

13)     Defendant will be subject to strict supervision by Pre-Trial Services.

14)     Defendant will provide ongoing cooperation with the court appointed Receiver, the Chapter 11 Trustee in the case *In re Dreier LLP*, Case No. 08-15051 (SMB), and any Trustee appointed in the case *In re Marc S. Dreier*, Case No. 08-15051, in identifying and preserving all assets held directly or indirectly by the defendant and/or Dreier LLP.

Dated: New York, New York
       February 8, 2009

**SO ORDERED:**

_____
Hon. Jed S. Rakoff
U.S. District Judge



# EXHIBIT A





**February 6, 2009**

Memorandum – Draft
CONFIDENTIAL

To: Gerard L. Shargel, Esq.

From: Philip Scala, CEO

Re: Court ordered monitoring of Marc Dreier Dated February 5, 2009
    Protocol Plan

---

### Background

The purpose of this memo is to offer a documented protocol established by Pathfinder Consultants International, LLC. (PCI) that could be used to carry out the terms and conditions of the order by the United States District Court for the Southern District of New York dated February 5, 2009.

PCI will continuously assess the threat level for this assignment, which may require modifications to the security arrangements or protocol. This protocol accommodates the possibility that the Court may order Mr. Dreier to travel to the Courthouse or other government offices under supervision.

### Scope of Assignment

PCI's assignment would be to:

    I.    Safeguard Marc Dreier (Mr. Dreier) and prevent flight while confined to his New York residence ███████████████████ (hereinafter referred to as "Monitoring of Residence").

    II.    Safeguard Mr. Dreier and prevent flight during court approved travel (referred to herein as "Mobile Monitoring ").

    III.    Examine and record incoming and outgoing mail and deliveries (including envelopes, packages, food, and overnight carriers etc.) to the New York residence occupied by Mr. Dreier.





*Pathfinder Consultants International, LLC*

### Staffing

The individuals selected to carry out this assignment are Philip P. Scala, Robert Hart and Richard DeFilippo of PCI. In addition, PCI will engage retired Federal Agents or local police officers as monitors who are licensed or otherwise authorized to carry firearms in the City of New York. A list of these Monitors along with their pedigrees will be provided. PCI may amend this list from time to time.

### PCI Protocol Details

1. **Monitoring of Residence**

   a. PCI will provide Mr. Dreier with a copy of the accepted protocol.
   b. PCI will provide monitoring of Mr. Dreier at his New York residence, seven days a week, 24 hours per day, for as many days as such monitoring is authorized. Per Mr. Dreier's counsel, PCI will station one monitor in the interior of the New York residence with a PCI supervisor making 5 to 6 random visits per 24 hour period to insure Mr. Dreier does not exit the residence except for authorized purposes.

      (i.) PCI will instruct building staff to notify Monitors of persons seeking to visit the Dreier apartment, prior to communicating with Mr. Dreier.
      (ii.) Monitors will log and question all persons seeking to visit the Dreier apartment.
      (iii.) Monitors will confirm with the list of pre-approved visitors that the visitor is approved to enter the apartment.

   c. PCI Monitors would use only reasonable and necessary force, if necessary with Mr. Dreier and others, to prevent violations of the orders of the Court.
   d. PCI will establish acceptable communication channels with local law enforcement that could be used in the event that Mr. Dreier were in danger or attempting to flee.

      (i.) In the event of an emergency, Monitor will take the appropriate action and will notify the following case agents: Robert Marchak                    and/or Jordan Goodman



*Pathfinder Consultants International, LLC*

      (ii.)    Thereafter, Monitor will telephonically notify the above-mentioned case agents and PCI supervisory personnel, as soon as is practical.

- In case of medical emergency, Monitor will have the discretion to seek medical assistance by calling for emergency services (911).
- Monitor may use reasonable and necessary force against Mr. Dreier and others, in case of an attempt by Mr. Dreier to flee or prevent harm to Mr. Dreier, and will make the notifications detailed immediately above, as soon as practical.

    e.   PCI will station a Monitor within the Dreier apartment to insure against any unauthorized attempt to enter or leave the Dreier residence including, but not limited to an audible security alarm on exit door.

## 2. Monitoring Mail and Package Delivery

a.)PCI will examine and record incoming and outgoing mail and package deliveries to the New York residence. PCI will prepare a log reflecting the date, sender, recipient and type of all incoming and outgoing mail and packages.

## 3. Monitoring Household Members or Visitors

a.) PCI will prepare and maintain a list of all authorized residents or visitors to the New York residence.

b.) PCI will make a record of resident or other authorized persons entering or exiting the New York residence apartment of Mr. Dreier. Specifically, PCI's record will include the date, time, name, contact information, stated purpose, and devices secured (if any) of persons entering or leaving the New York residence.

c.) Monitors will carry firearms, in accordance with state and local laws, and are authorized to use such firearms to protect life.

d.) Monitors will be equipped with either metal handcuffs or flex cuffs and are authorized to use reasonable force to restrain Mr. Dreier from fleeing.

e.) Monitors will immediately notify the appropriate law enforcement authorities of suspicious activity or their use of force.

f.) Monitors will take temporary custody of cellphones, blackberries, computers, and any other portable communication device in the possession of visitors to the





*Pathfinder Consultants International, LLC*

New York residence. These items will be returned when the visitor exits the residence.

### 4. Mobile Monitoring

a.) PCI will provide Mr. Dreier with a copy of the current protocol.

b.) PCI will need to be notified at least 12 hours in advance of any anticipated authorized travel in order to arrange for additional monitoring personnel whose cost will be borne by Mr. Dreier's relatives, including destination(s), time limitation(s), purpose, etc.

c.) PCI will verify that The Court or Pre-Trial Services has authorized travel of Mr. Dreier, who will be wearing an electronic bracelet at all times.

d.) PCI will provide Monitors to transport Mr. Dreier to the authorized destination(s). Mr. Dreier's relatives will pay the cost of a suitable vehicle to be used for the authorized travel, and be responsible for all reasonable travel costs.

e.) PCI will notify the parties before authorized travel begins and upon the return of Mr. Dreier to his residence. These parties include Pre-Trial Services and the United States Attorneys Office for the Southern District of New York.

f.) PCI will notify The Court, Pre-Trial Services, Counsel, and others as may be required, of any violation of the authorized travel by Mr. Dreier, as soon as practical.

### 5. Press

a.) PCI Monitors will not comment or otherwise provide information to the press (media) that may be encountered in carrying out their duties under this protocol.

b.) PCI will utilize Non-Disclosure agreements (NDA's) with each participant in the assignment.

### 6. In-House Monitor Duties and Responsibilities

a) The Monitor will:

(i) Record all visitors entering or exiting the residence, as described above.

(ii) Record all incoming and outgoing mail and deliveries, as described above.

b.) The Monitor may perform a reasonable search of those entering the residence for weapons and for portable communications devices.



# EXHIBIT B

February 5, 2009

Hon. Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

**Re: United States v. Dreier, 09 Cr. 85**

Dear Judge Rakoff:

I hereby consent to temporary preventive detention and the use of reasonable force by the security guards employed in this case to secure the conditions of my home confinement, to thwart any attempt to flee.

Respectfully yours,

Marc S. Dreier


US v Fishman

B

20cr160-MKV

## FEDERAL LAW NO . 39

## Issued on 31/10/2006

## Corresponding to 8 Shawwal 1427 H

## ON INTERNATIONAL JUDICIAL CO - OPERATION IN CRIMINAL MATTERS

We , Khalifah Bin Zayed Al Nahyan , President of the United Arab Emirates State

Pursuant to the perusal of the Constitution ; and

Federal Law no . 1 of 1972 regarding the Jurisdiction of the Ministries and the Powers of the Ministers and the amending Laws thereof ; and

Federal Law no . 10 of 1973 regarding the Supreme Federal Court and the amending Laws thereof ; and

Federal Law no . 11 of 1973 regarding the Regulation of Judicial Relations between the Emirates members of the Union ; and

Federal Law no . 6 of 1978 regarding the Establishment of Federal Courts and the Transferal of the Jurisdiction of Local Judicial Authorities in some Emirates to them and the amending Laws thereof ; and

Federal Law no . 3 of 1983 regarding the Judicial Authority and the amending Laws thereof ; and

The Penal Code issued by Federal Law no . 3 of 1987 and the amending Laws thereof ; and

The Penal Procedures Code issued by Federal Law no . 35 of 1992 and the amending Laws thereof ; and

Federal Law no . 43 of 1992 regarding the Regulation of Punitive Facilities and the amending Laws thereof ; and

Federal Law no . 4 of 2000 regarding the Crimination of Money Laundering ; and

Federal Law no . 1 of 2004 regarding the Combating of Terrorist Crimes ; and

Acting upon the Proposal of the Minister of Justice and the approval of the Council of Ministers and the ratification of the Federal Supreme Council

Have promulgated the following Law,

## PART ONE

## DEFINITIONS AND GENERAL PROVISIONS

### Article 1

In implementing the provisions of this Law , the following terms and phrases shall have the meanings assigned opposite to each unless the context indicates otherwise.

**The State** : The United Arab Emirates State,

**The Ministry** : The Ministry of Justice,

**The Minister** : The Minister of Justice,

**The competent Court** : The competent Court of Appeal,

**The competent Department** : The competent Department in the Ministry,

**The competent Judicial Authority** : The competent court in examining any of the international judicial co - operative procedures or the Public Prosecution,

**The Foreign judicial authority** : The competent judicial authority associated to a foreign State or the international judicial party established pursuant to an applicable convention to which the State is a party or according to an obligatory international decision,

**The Requesting State** : The foreign State requesting any of the judicial co - operation aspects from the State authorities,

**The Requested State** : The State requested to execute any of the judicial co - operation aspects,

**The requested persons** : Every person sought for surrender or provisional arrest for an accusation or criminal judgment rendered against him from any of the foreign judicial parties

**The extradited person** : Every person sought to be extradited from abroad as a result of an accusation or criminal judgment rendered against him from the State courts

**The convict requested for transfer** : Every person who is sentenced to imprisonment by an irrevocable and enforceable judgment rendered by the State Courts or the courts of a foreign judicial authority

**State of Conviction** : The State which has rendered the sentence and from which the convicted person is requested to be transferred

**State of Enforcement** : The State to which the convicted person is transferred for the execution of the rendered sentence or any remaining period.

**Article 2**

Without prejudice to the provisions of international conventions to which the State is a party , and on the basis of reciprocity , the judicial parties in the State shall cooperate with the foreign judicial parties in criminal matters in compliance with the provisions of this Law.

**Article 3**

This Law shall not entitle any State to directly request any of the procedures of the international judicial co - operation in criminal matters.

**Article 4**

The provisions mentioned in the Penal Procedures Code and the relevant Laws shall apply to any matter not governed by a text in this Law.

**Article 5**

Without prejudice to the provisions of Article 2 of this Law , the Laws in force in the State shall be applicable when initiating the procedures of international judicial co - operation in criminal matters.

**PART TWO**

**SURRENDER OF PERSONS AND THINGS**

**CHAPTER ONE**

**SURRENDER OF PERSONS TO A FOREIGN STATE**

Article 6 -

Surrender of accused or convicted persons to the foreign judicial authority for investigation or partial trial or for the enforcement of criminal judgments rendered against them shall be in compliance with the provisions mentioned in this Part .

Article 7 -

The surrender of requested persons is conditional upon :

1 - The crime for which the surrender is requested must be penalized by the Law of the requesting State to an imprisonment of at least one year or any other greater penalty .

2 - The act for which the surrender is requested must constitute ; in the territories of the State , a crime penalized by an imprisonment of at least one year or any other greater penalty .

3 - If the request for surrender is related to the service of a sentence of imprisonment rendered in any of the crimes for which the surrender is requested , the remaining period of the sentence to be served must not be less than six months in order for the surrender to be performed .

4 - Shall have no effect on the determination whether the act for which the surrender of a person is requested constitutes a penalized crime in the Laws of the two States , that the

crime be mentioned under a different name or description or should their elements differ from each other .

### Article 8 -

If the request for surrender of persons includes several crimes penalized by the Laws of both States , the request for surrender for all crimes may be approved even if any of them does not satisfy the conditions provided for in subparagraphs 1 and 3 of the preceding Article should these conditions are satisfied in at least one of the crimes for which the surrender is requested .

### Article 9 -

Surrender of persons is not allowed in any of the following instances :

1 - If the requested person is a State citizen .

2 - If the Law in the State specify for the jurisdiction of the competent judicial authorities regarding the crime for which the surrender of persons is requested .

3 - If the crime object of the request is a political crime or correlated to a political crime , shall not be deemed of this type the terrorist crimes , war crimes , genocides , crimes of aggression against the President of the State or any of his family members , deputy , or any of the Supreme Council members or his family members , or the Prime Minister or other persons enjoying international protection in addition to crimes of aggression against the State facilities and its basic interests .

4 - If the crime object of the request is limited to offenses against military obligations .

5 - If significant grounds contributed to believe that the request for surrender aim for the prosecution or penalizing of a person for reasons related to his ethnic or religious affiliation , or his nationality or political opinions or if the existence of any of these grounds shall damage the position of this person .

6 - If the requested person was subjected to investigation or trial procedures in the State for the same crime for which the crime is requested .

7 - If the requested person was previously tried for the crime for which the surrender is requested and a judgment of acquittal or conviction is rendered and that he has fully served the adjudged sentence

8 - If an irrevocable judgment is rendered by the courts of the State regarding the crime for which the surrender is requested .

9 - If the criminal lawsuit is terminated or if the sentence is forfeited by time limitation when submitting the request for surrender .

10 - If the requested person was subjected or may be subjected within the requesting State to torture , inhuman or insulting treatment or a severe sentence not appropriate to the crime or if the minimum standard of guarantees determined in the Penal Procedures Code are not available .

Article 10 -

If the requested person is subject of an ongoing investigation or trial inside the State concerning different crime , his surrender shall be postponed until the termination of investigation or until his trial is terminated by an irrevocable judgment ; if he is convicted , his surrender shall be carried out after the service of the adjudged penalty .

The State may temporarily surrender the requested person if the requesting State commits itself to return him as soon as possible promptly after the issuance of a decision in his regard or during the period determined by the State provided that it shall not exceed six months from the date of surrender .

Article 11 -

Request for surrender shall be submitted in writing through diplomatic channel and referred to the competent Department , associated with the following information and deeds translated to Arabic language and officially ratified by the competent authorities :

1 - Name and descriptions of the requested person , his photos ; if exist , with any other information of use in the specification of his identity , nationality and place of domicile .

2 - Copy of the legal text which applies to the crime and the prescribed penalty in the requesting State .

3 - An official copy of the investigation statement of offense and the warrant of arrest issued from the competent foreign judicial authority in which is indicated the type of crime , the acts attributed to the requested person , date and place of its commitment if the request concerning a person subject of an ongoing investigation .

4 - An official copy of the judgment of conviction in which is indicated the type of crime , the acts attributed to the requested person and the rendered penalty and whatever indicates that the judgment is enforceable if the request is related to a convicted person .

Article 12 -

The competent Department must refer the request for surrender to the Public Prosecutor after verification from the fulfillment of its requirements in form . If it deems that the submitted information and documents supporting the request are insufficient for determination , it may request from the requesting State any complementary clarifications or additional information of documents within a fixed period .

Article 13 -

It is not allowed to surrender the requested person unless after the issuance of a decision for his possible surrender from the competent court ; nevertheless , the surrender may be carried out by a decision from the Minister upon the proposal of the public prosecutor if the surrender is for one State and if the requested person consent to surrender in writing .

Article 14 -

The written consent of the requested person must include all his personal information and the information of the case for which the surrender is requested and that the surrender has been performed with his complete choice and knowledge of its results .

Article 15 -

The Public Prosecutor or his delegate in case of urgency , and upon a warrant of arrest issued from a foreign judicial authority , may order the provisional arrest of the requested person pending receiving the request for surrender .

In this instance , the imprisonment of the person shall not preclude from his release for personal or financial guarantee .

The release of the requested person shall not preclude from re - arresting him or his imprisonment for another time when receiving the request for surrender .

Article 16 -

The Public Prosecutor or his delegate immediately after receiving the request for surrender may order the arrest of the requested person for fear of his escape unless he is imprisoned pursuant to the procedures in Article 15 of this Law .

The Public Prosecutor or his delegate whether spontaneously or at the request of the requested person may order his release for a personal or financial guarantee .

Article 17 -

The requested person shall be submitted to the competent Public Prosecution within forty eight hours from the date of his arrest , and the Public prosecution must inform him of the reason for arrest , the content of the request for surrender , the existing evidences , documents related to the request . His statements shall be proven in a statement of offense ; and he shall have the right to attend with an attorney when hearing his statements .

Article 18 -

The Public Prosecutor shall refer the request for surrender to the competent court within fifteen days from date of its examination associated with a written memorandum to be deposited at the clerks' office of the competent court with all the documents supporting the request .

The public prosecution shall commission the person requested to be extradited to attend the session set for the examination of the application

Article 19 -

The competent court shall examine the request for surrender in a closed session in the presence of the Public Prosecution , the requested person and his attorney ; if exists . It shall decide on the request after hearing the public prosecution and the defense .

If the requested person acknowledges to appearing before the court by his consent to surrender , the court must ascertain from his capacity and awareness of the results of his consent to surrender provided that his consent is explicit and written , then it shall return the papers to the Public Prosecutor in implementing the provision of Article 13 of this Law .

Article 20 -

The competent Court shall determine the possibility of the surrender in compliance with Law ; its decision shall be justified .

Article 21 -

Denial of surrender shall lead to immediate release of the requested person even if there is no indication in this regard in the decision .

Article 22 -

The Public Prosecutor and the requested person may challenge the decision issued from the competent Court before the competent Court of appeal .

Term of challenge shall be thirty days from the date of the issuance of the court's decision if it is rendered in the presence of its parties and from the date of notification of the requested person if the decision is rendered in his absence .

Article 23 -

Challenge to the decision mentioned in the preceding Article shall be carried out by a report to be deposited at the clerks' office of the competent court of appeal , and a session shall be decided for its examination at time of its submission provided that it shall not be more than ten days from the deposit date of the report ; this shall be considered a notification of the date of session even if the report is submitted by his proxy .

Article 24 -

It is not allowed to execute the decision of possible surrender unless after it becomes irrevocable .

Article 25 -

The decision of denial of surrender shall not preclude from the issuance of another decision of possible surrender upon another request from the same State and regarding the same crimes in case of appearance of new grounds which were not previously brought up before the competent court .

Article 26 -

The decision of possible surrender must not be executed unless after the approval of the Minister .

In the instance of denial of surrender , the Public Prosecutor shall issue an order for the release of the requested person if he has been arrested .

## Article 27 -

In the instance of multiple requests concerning the same person , the Minister may determine the State to which the surrender shall be performed , considering the obligations emanating from bilateral or multilateral conventions and taking into account the circumstances related to each case in separate and in specific :

1 - Seriousness of crime and the extent of damage to the interests or security of a certain State .

2 - Date and Place of crime .

3 - The nationality of the requested person .

If all or some of these conditions afflict several countries , surrender shall be to the State which has first submitted the request for surrender , taking into account the extent of co - operation of the requesting State in same instances .

## Article 28 -

If the requesting State has not received the person subject to decision of surrender within thirty days from its notification , he shall be released and it is not allowed to surrender him to it unless after the issuance of a new decision .

If exceptional circumstances preclude from the surrender or receipt of the requested person within the previously mentioned period , the requesting State shall be notified for the determination of a final date of surrender to be decided by the competent judicial authority . The person shall be released after the elapse of this period , and it shall not be allowed to request his surrender for the same act or acts for which the surrender is requested .

In all instances , the period of detention of the requested person may be increased to sixty days .

## Article 29 -

The execution of surrender is conditional upon the commitment of requesting State not to surrender the requested person to a third State , or to address any accusation to him , try him or impose any penalty or imprison him for a crime and correlated crimes previous to the date

of request for surrender other than those for which he is requested except for the following instances :

1 - If the requested person remains voluntarily in the territories of the State to which he is surrendered for more than thirty days from the date of his notification of the termination of procedures which required his presence in this State or if he returns to it voluntarily after having left it .

2 - If the Minister approves so , on condition that the requesting State submits a new request in the manner provided for in Article 11 of this Law and provided that it shall be supported with a judicial verbal process including the testimonies and defense of the requested person .

Article 30 -

The competent Court shall examine the request submitted from the requesting State to surrender the person who has been surrendered to a third State , the Court shall issue its decision pursuant to the provisions mentioned in this Law and the bilateral and multilateral conventions in force and not contradicting the constitutional principles of the State .

Article 31 -

The Public Prosecutor may approve on the transit through the territories of the State of the person subject to the regulation of extradition of criminals from a State which has authorized his surrender to another State at the request of the latter State should this transit not cause damage to the State's sovereignty , security or basic interests .

Article 32 -

The expenses of any procedures emanating from the request for surrender within the scope of its territorial jurisdiction shall be borne by that State . Expenses for the travel of the requested person and any extraordinary expenses that may emanate from the request for surrender shall be borne by the requesting State .

**CHAPTER TWO**

**EXTRADITION OF PERSONS**

Article 33 -

The Public Prosecutor or his delegate may request from the competent Department to address to the authorities in a Foreign State for the extradition of persons sentenced to imprisonment of at least six months or any greater penalty or the persons accused of the commitment of crimes penalized by the Law to imprisonment of at least one year or a greater penalty .

The request for extradition of the accused or convicted person shall be drawn up in writing by the Public Prosecution and must be dated ; signed and sealed as shall be all the other supporting papers .

Shall be indicated in the request the description and information of the person to be extradited in full , and the incidents for which the surrender is requested , the legal characterization of the crime object of surrender and the applicable legal texts - and the legal grounds of the request for surrender .

The request associated with the supporting documents and papers must be notified through the competent Department to the requesting State by diplomatic channel , provided that they are translated to the language of the foreign judicial authority or any other recognized language unless the conventions indicate otherwise .

Article 34 -

The Public Prosecutor or his delegate in urgent cases must notify the competent authorities in the requesting State of the judicial warrant of arrest issued pursuant to the conditions decided by Law to arrest and temporarily detain the requested person ; the warrant of arrest shall be notified through the communication section in the Ministry of Interior .

The Public Prosecution must complete the documents and papers supporting the request of extradition and send them to the requesting State on expedited basis through the competent Department and through the diplomatic channel .

### Article 35 -

Term of detention served abroad shall be considered as a term of protective detention concerning the implementation of the rules of the service of penalty .

### Article 36 -

If the legal characterization of the act object of crime has been amended during the proceedings against the extradited person , it is not allowed to address any accusation to him or subject him to trial or adopt any other procedure against him which may affect his freedom unless if the elements constituting the crime in its new characterization is based on the same incidents for which the extradition is carried out and constitutes a crime penalized with the same penalty determined for the crime for which he is surrendered or by a greater penalty .

### Article 37 -

Except for border crimes , it is allowed to submit a commitment for the requested State pursuant to the provisions of an applicable convention agreed upon by the State of non service of death penalty on the requested person .

Non submission of this commitment in crimes of retaliation is conditional upon waiver of the Shari'a right in this retaliation by the legal tutors .

The commitment shall be submitted by the Minister and in this instance the procedures shall be adopted to change the penalty .

**CHAPTER THREE**

**SURRENDER AND EXTRADITION OF THINGS**

Article 38 -

Without prejudice to the rights of third parties of good faith , the Public Prosecutor or his delegate may surrender to the requesting State whatever is existing in the possession of the person subject to decision of surrender regarding things derived from the crime attributed to him or used in its commitment or taken as an evidence which are in the possession of the requested person at time of arrest or which shall be discovered later on unless such possession constitutes a crime in the State .

The Public prosecutor or his delegate may postpone the surrender of these things whenever they are requested for judicial or administrative procedures to be adopted in the State .

Article 39 -

Any concerned person may submit a grievance against the decision mentioned in Article 38 before the competent court within fifteen days from the date of its issuance .

The court shall render its decision on grievance after hearing the Public Prosecution and the statements of the complainant .

Article 40 -

The Public Prosecutor or his delegate may request from the competent Department to address to the authorities of a foreign State to expatriate things in the possession of the persons subject to an extradition decision such as things derived from the crime attributed to him or used in its commitment or its revenues or which may be taken as an evidence .

## Article 41 -

Without prejudice to jurisdictional rules determined by Law , the Public Prosecutor may authorize the transit of things which their possession constitutes a crime or resultant from a crime or used in its commitment in compliance with the provisions of the Law to inside or outside the State without their seizure or replacement in whole or in part under the control of the competent authorities and at the request of a foreign judicial authority pursuant to the conditions agreed upon if this shall contribute to the identification of its destination or the arrest of its perpetrator .

The authorization mentioned in the preceding paragraph is not allowed to be given if its execution shall cause damage to State sovereignty , public order , public ethics or environment .

## Article 42 -

The competent parties in the State ; each within his concern , shall be entrusted with the execution of the authorization mentioned in the preceding Article ; a report of the performed procedures shall be drawn up .

The Public Prosecutor shall determine the manner of the controlled surrender of things to the requesting party and the method of its reclamation or compensation .

**PART THREE**

**MUTUAL JUDICIAL ASSISTANCE IN CRIMINAL MATTERS**

**CHAPTER ONE**

**REQUESTS OF JUDICIAL ASSISTANCE ADDRESSED FROM A FOREIGN JUDICIAL AUTHORITY TO THE STATE AUTHORITIES**

Article 43 -

In the event of receiving a request from a foreign judicial authority for assistance in carrying out a judicial procedure in the State regarding a penalized crime in the requesting State which is included within the jurisdiction of its judicial authorities , the competent judicial authority may render the requested assistance if essential for initiating judicial procedures in a criminal lawsuit examined before the foreign judicial authority .

The judicial assistance comprises in specific what follows :

1 - Determination of the identities and locations of persons .

2 - Hearing the testimonies of persons .

3 - Submission of the detained persons for testimony before the foreign judicial parties .

4 - Notification of judicial deeds .

5 - Seizure of things and search of persons and locations .

6 - Provision of information and evidences .

7 - Provision of original deeds and records or their certified copies .

### Article 44 -

The request of judicial assistance shall be submitted by the competent authority of the foreign judicial authority to the competent Department at the Ministry through diplomatic channel .

The competent Department after studying the request of judicial assistance and ascertainment from the fulfillment of its conditions in form shall refer it to the competent judicial authority to adopt the necessary decision in this regard .

### Article 45 -

The competent authority in the event of urgency and at a written request from a foreign judicial authority and before satisfying the conditions of the request of judicial assistance may order the adoption of precautionary procedures essential to protect threatened legal interests or to maintain evidentiary proofs or documents for fear of their loss or destruction .

The implementation of these procedures shall cease if the foreign judicial authority fails to satisfy the conditions for the enforcement of the request within the time limit fixed by the competent judicial party unless the foreign judicial authority requesting the assistance submits an acceptable reason .

### Article 46 -

The request of judicial assistance shall be drawn up in writing by the foreign judicial authority ; it must be dated , signed , and sealed with the seal of the requesting party with other attached documents .

It must comprise the type of the case , the requesting party and the requested party of enforcement and all the detailed information related to the incidents of the case , the enforceable legal texts and the procedures to be adopted and in specific :

1 - Names of witnesses , their places of domicile and the questions requested to be addressed to them .

2 - The questions requested to be addressed to the persons requested to be interrogated .

3 - Statement of properties , documents or papers requested to be inspected .

The request shall be supported with all the necessary papers and documents provided that they are translated to Arabic language and certified by the foreign judicial authority unless the conventions to which the State is a party indicate otherwise .

Article 47 -

The competent Department must request from the foreign judicial authority any additional information it deems necessary for the execution of the request .

Article 48 -

It is allowed at the request of the foreign judicial authority to maintain the secrecy of the request or the information included therein .

Article 49 -

Hearing the testimonies of witnesses or obtaining evidences from them shall be carried out with the knowledge of the competent judicial authorities in the State as a preliminary step for its forwarding to the foreign judicial authority .

Article 50 -

The witnesses requested to be heard in the State territory for the submission of certain evidences may abstain from this whenever the Law of the foreign judicial authority allows so in same instances .

Article 51 -

If the object of the judicial assistance is to request a witness , expert or defendant to attend before any of the foreign judicial authorities , this authority shall commit itself not to sue or detain him or limit his personal freedom regarding criminal acts or convictions previous to his

depart from the State territory , also not to sue , detain or penalize him for his testimony or the expertise report submitted by him or for his default to attend before these authorities .

Article 52 -

Without prejudice to the provisions of Article 63 of this Law , and in the event of receiving a request from a foreign judicial authority for the attendance of a person imprisoned in the State to hear his testimony or statements before its judicial authorities as a witness or expert on condition of his prior consent to this matter , the foreign judicial authority must be obligated to detain him and return him as soon as possible or in the time limit decided by the State .

The State may refuse to transfer the imprisoned person in any of the following instances :

1 - If response to this request is against the State sovereignty , security or the public order .

2 - If his presence is essential in the State for subsequent penal procedures to be adopted .

3 - If his transferal to the foreign judicial authority shall contribute to the extension of his term of imprisonment .

4 - If his transferal shall threaten his life or the life of his family members .

Article 53 -

The request of the judicial assistance may be denied in the following instances :

1 - If the act on which the request is based does not constitute a crime if it is committed in the State territory .

2 - If the enforcement of the request is against the State sovereignty , security or public order or any of its basic interests .

3 - If the request is related to a political crime or correlates to a political crime .

4 - If the request is related to an absolute financial crime ( such as taxation and customs crimes ).

5 - If significant grounds call to believe that the request of assistance is submitted for the purpose of subjecting the person for trial for his race , gender , religion , nationality , ethnic origin or his political opinions or if the situation of this person is at risk of harm for any of these reasons .

6 - If the request is related to a crime object of an ongoing investigation or judicial proceedings in the State or should the judicial proceedings in his regard in the foreign judicial

authority be inconsistent with the principle of non - permissibility of the trial of a person in the same crime more than once .

7 - If the criminal lawsuit emanating from the act is terminated by any of the reasons provided for in the State Law or the Law of the requesting State .

8 - If the requested judicial assistance requires the enforcement of severe compulsory measures which are inconsistent with the Laws in force in the State regarding the crime for which the assistance is requested .

9 - If the act on which the request is based is considered a crime in accordance with the Military Law only and not deemed so pursuant to other punitive laws .

### Article 54 -

The request of judicial assistance shall be enforced pursuant to the procedures in force in the State Laws .

It is allowed upon a clear request from the foreign judicial authority to enforce the request of judicial assistance in a certain form unless contradicting the Laws in effect .

### Article 55 -

If the enforcement of the request of judicial assistance requires the payment of a consignment to the account of expenses , expert fees and the fees decided on the papers submitted for its enforcement , the requesting State shall be so informed for the deposit of the consignment before the competent judicial authority .

### Article 56 -

The witness or expert is entitled to recuperate travel and accommodation expenses and the loss of reasonable wage or profit from the requesting State . The expert is also entitled to claim his fees for rendering his opinion .

The amounts payable to the witness or expert shall be indicated in the papers of the request or notification ; the requesting State may pay these amounts in advance at his request .

### Article 57 -

The State authorities may request the extradition of any properties , documents , records or deeds delivered to the foreign judicial authority in enforcement of the request of judicial assistance .

### Article 58 -

The revenues of crimes for which a judicial assistance is rendered may be divided with a foreign judicial authority .

The Minister , in coordination with the concerned parties shall determine the conditions and procedures to be adopted .

## CHAPTER TWO

## REQUESTS OF JUDICIAL ASSISTANCE ADDRESSED FROM THE STATE AUTHORITIES TO A FOREIGN JUDICIAL AUTHORITY

### Article 59 -

The competent judicial authority may request the judicial assistance mentioned in paragraph two of Article 43 of this Law from the foreign judicial authority through diplomatic channel .

The competent Department after studying the request of judicial assistance and verification of its fulfillment to the conditions in form may refer it to the competent judicial authority to adopt the necessary decision .

### Article 60 -

The request of judicial assistance shall be set down by the foreign judicial authority ; it must be dated , signed , and sealed with the seal of the requesting party with other attached documents , provided that they are translated to the language of the foreign judicial authority or any other language recognized by it .

The request must comprise the type of case , the requesting party , the requested party of enforcement , all the detailed information related to the incidents of the case , the applicable legal texts and the procedures to be adopted and in specific :

1 - Names of witnesses , their places of domicile and the questions requested to be addressed to them .

2 - The questions requested to be addressed to the persons requested to be interrogated .

3 - Statement of properties , documents or papers requested to be inspected or reviewed .

4 - Any other information necessary for obtaining evidences upon an oath or proof or any form required to be used or essential for the enforcement of the request .

Shall be indicated in the request whether there is a certain time limit for its enforcement .

### Article 61 -

The procedure carried out upon the enforcement of the request of judicial assistance shall be valid if it is performed pursuant to the Law of the foreign judicial authority which its authorities have initiated such procedure unless the competent judicial authority in the State has requested its enforcement in a certain form .

### Article 62 -

The procedure carried out through judicial assistance pursuant to the provisions of this Law shall have the same legal effect which it may have if it is performed before the competent judicial authority .

### Article 63 -

If the object of the judicial assistance is to request a witness , expert or defendant to attend before any of the judicial parties , it is not allowed to prosecute or detain him or limit his personal freedom regarding criminal acts or convictions previous to his departure from the territory of the requesting State .

It is also not allowed to litigate , detain or penalize him for his testimony or the expertise report submitted by him .

It is not allowed to subject the witness or expert who failed to attend despite of his notification of the obligation of attendance to any penalty or compulsory procedure even if this obligation includes a condition of penalty .

The immunity granted to the witness or expert provided for in the preceding two paragraphs shall terminate after the elapse of consecutive thirty days starting from the date of his notification in writing from the party which required his attendance of that his presence is no more required and he had the opportunity to leave the State territory , but remained therein or if he has returned to it voluntarily ; the period in which the witness or expert was unable to depart from the State territory for reasons beyond his will shall not be included .

## PART FOUR

## TRANSFER OF CONVICTS

## CHAPTER ONE

## TRANSFER OF CONVICTS TO A FOREIGN STATE

### Article 64 -

The Public Prosecutor in implementing the provisions of a convention to which the State is a party , may approve on the request submitted from the foreign judicial authority to transfer a convict detained at any of the State punitive facilities for the enforcement of a penal judgment rendered by the courts of the State , if the following conditions are satisfied :

1 - The crime for which the judgment is rendered must be penalized by the Law of the State of enforcement to an imprisonment penalty .

2 - The judgment of conviction must be irrevocable and enforceable .

3 - The convicted must be a citizen of the State of enforcement .

4 - The convicted must consent to the transfer , in the event of his non - capability to express his will in writing ; the consent shall be given by his legal representative , spouse or any of his relatives up to the fourth degree .

5 - The remaining period of the imprisonment penalty to be served must not be less than six months when submitting the request of transfer . Nevertheless , it is also allowed in exceptional instances at the discretion of the Minister in coordination with the Minister of Interior .

6 - Cost of transfer of the convicted shall be borne by the State of enforcement .

Article 65 -

The request of transfer of the convicted must be denied in the following instances :

1 - If the response to the request is against the State sovereignty , security or public order .

2 - If the crime for which he is convicted is a military crime .

3 - If the regulation for the service of penalty at the requesting State differs from its counterpart in the State .

4 - If the requesting State does not commit itself to the non - enforcement of its provisions of private amnesty on the convicted .

Article 66 -

The request for transfer of convicts may be denied in the following instances :

1 - If the convicted does not pay the amounts , fines , judicial expenses or indemnities or any other financial judgments rendered against him .

2 - If a judicial Lawsuit is filed before the courts of the State against the convicted to demand him of financial amounts .

3 - If the maximum limit of the imprisonment penalty provided for in the Law of the requesting State is inadequately less than the adjudged imprisonment penalty .

Article 67 -

The request of transfer of the convicted shall be submitted in writing from the State of enforcement in Arabic language or a translation to it , provided that shall be specified therein

the personal information of the convicted , evidentiary documents of nationality , place of domicile in the requesting State , place of imprisonment therein and a commitment not to apply of the provisions of private amnesty on him .

The request may be submitted by the State authorities to transfer a convict imprisoned therein to the State whose citizenship he carrie .

The convicted or his legal representative is entitled to demonstrate his will to be transferred for the enforcement of the judgment rendered against him from the courts of the State in the State of citizenship .

### Article 68 -

The request of transfer must be supported with the following information and documents translated to the language of enforcement , and officially ratified by the competent parties :

1 - A copy of the judgment of conviction ratified by the competent authority .

2 - Statement of the essential information on the remaining period to be served including the period of provisional custody served before the sentence was rendered , and any information on the personality of the convicted and his conduct before and after delivering the judgment of conviction .

3 - A written consent of the convicted on the request of transfer in the manner provided for in Article 64 of this Law .

### Article 69 -

The convicted shall be referred to the public prosecution for the ascertainment that his consent to the transfer is given by a free will and awareness of the results of the consent to the request of transfer .

### Article 70 -

Expenses of transfer and provision of guardianship to the convicted inside the State shall be borne by the State authorities .

### Article 71 -

The Public Prosecution shall inform the State of enforcement through the competent Department of the provisions of the private or general amnesty issued regarding the convicted in addition to any decisions or procedures carried out in the State territory which may terminate the service of some or all the penalty .

## CHAPTER TWO

## TRANSFER OF CONVICTED PERSONS FROM A FOREIGN STATE

### Article 72 -

Without prejudice to the provisions of Article 2 of this Law , the State authorities are entitled to request from the competent authorities in a foreign State to transfer any person holder of the nationality of the State who is sentenced and detained in any of its punitive facilities for the enforcement of a penal judgment issued by the courts of this State .

### Article 73 -

Request of transfer must be in writing wherein shall be specified the personal information of the convicted and evidentiary documents of nationality , place of imprisonment translated to the language of the convicting State or any other recognized language and officially ratified by the competent parties .

Article 74 -

The convict who shall be transferred to the State territory shall be detained in the punitive facility upon a written order issued from the Public Prosecutor or his delegate .

Article 75 -

The enforcement of penalty shall be carried out in compliance with the enforcement regulations in force in the State provided that the term of provisional custody and the served period of sentence shall be deducted . The State shall solely be competent to adopt all the decisions related to enforcement , and it is required to notify the convicting State ; at its request , whatever is carried out regarding the enforcement of the judgment of conviction .

Article 76 -

The public prosecution must notify the convicting State through the competent Department of all the performed procedures and the relevant documents submitted in the instance of medical release of the convicted .

Article 77 -

All penal procedures initiated by the judicial authorities of the State regarding the same crime against the convicted requested to be transferred , must be ceased immediately after the acceptance of request of transfer . It is not allowed to initiate the penal lawsuit or to subject him to re - trial regarding the same incidents object of the judgment of conviction .

Article 78 -

The provisions of general amnesty shall apply to the convicted ; the provisions of the private amnesty or the conditional release or any other amnesty shall not apply to him unless after obtaining the approval of the convicting State .

General and private amnesty issued from the convicting State shall apply to him .

**PART FIVE**

**GENERAL PROVISIONS**

Article 79 -

Without prejudice to the provisions of Article 2 of this Law , any inconsistent text or contradicting with its provisions shall be abrogated .

Article 80 -

This Law shall be published in the Official Gazette , and be put into force as of the publication date .

**Promulgated by Us at the Presidential**

**Palace in Abu Dhabi**

On 8 Shawwal 1427 H .

Corresponding to 31 October 2006

**Khalifah Bin Zayed Al Nahyan**

**President of the United Arab Emirates State**

**From:** Dr. Adel <wisdomvet@emirates.net.ae>
**Sent:** Wednesday, November 01, 2017 7:40 AM EDT
**To:** Seth Fishman <sethfishman@hotmail.com>
**CC:** wisdomvet@emirates.net.ae <wisdomvet@emirates.net.ae>
**Subject:** PMSG

Seth ,

There is a product called Folligon (also called PMSG)it is a hormone with wide usage in Camel breeding center , it is back order till 2019 end , it is very cheap Hormone if you could offer with competitive price just let me know to work out with our Customers .

Thanks
Adel



**From:** Thaha Rasool <tjrasool@gmail.com>
**Sent:** Sunday, July 01, 2018 1:11 AM EDT
**To:** sethfishman@hotmail.com <sethfishman@hotmail.com>; Binjo .. <bingbong10@hotmail.com>; msm_sms <uae.msm@gmail.com>
**Subject:** Re: Camel Trypano infections

US v Fishman

D

20cr160-MKV

Dear Dr Seth

Greetings from Al Ain, UAE!

Thank you very much for the mail and sorry for the delay in responding. I am really sorry for the inadvertent confusion created.

Coming straight to the topic and queries: We are dealing with *Trypanosoma evansi evansi (or Trypanosoma brucei evansi)* which is causing chronic parasitemia in single humped camels. Trypanosoma evansi has the widest host range and geographical distribution, worldwide.

The field veterinarians here are combatting the disease mainly using Triquine ( Quinapyramine sulphate and Cholride) as well as with Cymelarsan. They also treat with Isometamidium ocassionally. Berinil is highly toxic to camels and hence not used

I may add that this is the only Trypanosome parasite without any intermediate host that can develop resistance to drugs at a faster pace.

The field veterinarians used the above drugs as curative as well as prophylactic which has facilitated the development of resistance to these drugs. We sequenced the trypanosome genome and found the gene AQP ( Aquagylceroporin) of the parasite mutated in these isolates. This mutation apparently prevents uptake of drugs by the parasites making them resistant to the drug. Based on this we also developed a PCR for detecting resistant isolates.

Our strength in this area is that we are having a repository of T.evansi isolates in liquid nitrogen as well as maintaining Tryps infection in mice passage, apart from maintaining experimental lab animal house and experimental camel herd. We also have molecular expertise and cell culture proficiency handled by doctoral scientists in Veterinary Microbiology and Molecular Biology

Our weaknesses is that we are not able to source chemicals and drugs for our research in time

We are trying different chemotherapeutic agents acting on diverse pathways so as to control the resistant infection. As many of these are not readily available as veterinary preparations we are getting APIs and making trials. However still we are unable to get Surramin, Melarsoprol and Fexinidazole. It would be a great help if you can arrange to supply these drugs as finished products for parenteral application at the earliest.

With Kind regards


Dr.T.J.Rasool
Director, Camel Biotechnology Center, (CBC)
Management of Scientific Centers and Presidential Camels
Depart of Presidential Affairs, Al Ain
UAE, Post Box 17292
e.mail: tjrasool@gmail.com, tjrasool@rediffmail.com

President, Indian Society of Animal Genetics and Breeding (ISAGB)
Ex. Asst. Director General, Indian Council of Agricultural Research, Ministry of Agriculture, Government of India
Ex. Station In Charge, Indian Veterinary Research Institute , Mukteswar Campus, India


On Thu, Jun 28, 2018 at 4:05 AM Seth Fishman <sethfishman@hotmail.com> wrote:

Dr. Rasool,


How are you?  Sorry for the confusion as I thought you were going to contact me.  Can you please let me know what medicines you have used so far.  Can yo please let me know which specific Trypano infection you are dealing with.  There is literature on several medicines that were synthesized but not yet commercially available.  I also was curious to know your thought on the best approach.  I have the ability to custom synthesize medicine in pilot batches.   If there is ideas you have on what to manufacture please let me know.  I understand this will not be an easy task and offer my assistance.   Perhaps given the urgency of the problem you may want to reach out to Dr. Ahsaan at Dubai Camel for some ideas as well.  He knows me and my ability to have medicine made.


Thank you


Seth

Sent from Mail for Windows 10