Case 1:20cr160-MKV   Document 327-4   Filed 02/05/21   Page 1 of 20

1040                    PUBLIC LAWS—CHS. 649, 653, 675—JUNE 24, 25, 1938    [52 Stat.

and two-tenths feet; run thence northerly across the United States Hot Springs Reservation in a straight line to the place of beginning.

<small>Appropriation authorized for land acquisition.</small>

Sec. 3. There is hereby authorized to be appropriated for the acquisition of lands described in section 1 hereof such sums as the Congress may from time to time determine.

Approved, June 24, 1938.

---

[CHAPTER 653]

AN ACT

<small>June 25, 1938
[H. R. 9881]
[Public, No. 716]</small>

To amend section 23 of the Act to create the California Débris Commission, as amended.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That section 23 of the Act approved March 1, 1893, entitled "An Act to create the California Débris Commission and regulate hydraulic mining in the State of California", as amended by the Act approved June 19, 1934, is hereby further amended by adding at the end thereof the following: "The Secretary of War is authorized to enter into contracts to supply storage for water and use of outlet facilities from débris storage reservoirs, for domestic and irrigation purposes and power development upon such conditions of delivery, use, and payment as he may approve: *Provided,* That the moneys received from such contracts shall be deposited to the credit of the reservoir project from which the water is supplied, and the total capital cost of said reservoir, which is to be repaid by tax on mining operations as herein provided, shall be reduced in the amount so received".

<small>California Débris Commission.
27 Stat. 510; 48 Stat. 1118.
33 U. S. C. § 683.

Contracts to supply storage for water, etc., authorized.

*Proviso.*
Deposit of receipts from contracts.
Reduction of total capital cost.</small>

Approved, June 25, 1938.

---

[CHAPTER 675]

AN ACT

<small>June 25, 1938
[S. 5]
[Public, No. 717]</small>

To prohibit the movement in interstate commerce of adulterated and misbranded food, drugs, devices, and cosmetics, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

<small>Federal Food, Drug, and Cosmetic Act.</small>

## CHAPTER I—SHORT TITLE

<small>Chapter I—Short title.</small>

Section 1. This Act may be cited as the Federal Food, Drug, and Cosmetic Act.

## CHAPTER II—DEFINITIONS

<small>Chapter II—Definitions.</small>

Sec. 201. For the purposes of this Act—

<small>"Territory."</small>

(a) The term "Territory" means any Territory or possession of the United States, including the District of Columbia and excluding the Canal Zone.

<small>"Interstate commerce."</small>

(b) The term "interstate commerce" means (1) commerce between any State or Territory and any place outside thereof, and (2) commerce within the District of Columbia or within any other Territory not organized with a legislative body.

<small>"Department."</small>

(c) The term "Department" means the Department of Agriculture of the United States.

<small>"Secretary."</small>

(d) The term "Secretary" means the Secretary of Agriculture.

<small>"Person."</small>

(e) The term "person" includes individual, partnership, corporation, and association.

<small>"Food."</small>

(f) The term "food" means (1) articles used for food or drink for man or other animals, (2) chewing gum, and (3) articles used for components of any such article.

(g) The term "drug" means (1) articles recognized in the official United States Pharmacopœia, official Homœopathic Pharmacopœia of the United States, or official National Formulary, or any supplement to any of them; and (2) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (3) articles (other than food) intended to affect the structure or any function of the body of man or other animals; and (4) articles intended for use as a component of any article specified in clause (1), (2), or (3); but does not include devices or their components, parts, or accessories. — "Drug."

(h) The term "device" (except when used in paragraph (n) of this section and in sections 301 (i), 403 (f), 502 (c), and 602 (c)) means instruments, apparatus, and contrivances, including their components, parts, and accessories, intended (1) for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; or (2) to affect the structure or any function of the body of man or other animals. — "Device"; exceptions. *Post*, pp. 1042, 1047, 1050, 1054.

(i) The term "cosmetic" means (1) articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting attractiveness, or altering the appearance, and (2) articles intended for use as a component of any such articles; except that such term shall not include soap. — "Cosmetic."

(j) The term "official compendium" means the official United States Pharmacopœia, official Homœopathic Pharmacopœia of the United States, official National Formulary, or any supplement to any of them. — "Official compendium."

(k) The term "label" means a display of written, printed, or graphic matter upon the immediate container of any article; and a requirement made by or under authority of this Act that any word, statement, or other information appear on the label shall not be considered to be complied with unless such word, statement, or other information also appears on the outside container or wrapper, if any there be, of the retail package of such article, or is easily legible through the outside container or wrapper. — "Label."

(l) The term "immediate container" does not include package liners. — "Immediate container."

(m) The term "labeling" means all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article. — "Labeling."

(n) If an article is alleged to be misbranded because the labeling is misleading, then in determining whether the labeling is misleading there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the article to which the labeling relates under the conditions of use prescribed in the labeling thereof or under such conditions of use as are customary or usual. — Determination as to whether article is misbranded because labeling misleading.

(o) The representation of a drug, in its labeling, as an antiseptic shall be considered to be a representation that it is a germicide, except in the case of a drug purporting to be, or represented as, an antiseptic for inhibitory use as a wet dressing, ointment, dusting powder, or such other use as involves prolonged contact with the body. — Drug represented as an antiseptic.

(p) The term "new drug" means— — Term "new drug" construed.
   (1) Any drug the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety of drugs, as safe

36525°—38——66

34 Stat. 768.
21 U. S. C. §§ 1-15;
Supp. III, § 14a.

for use under the conditions prescribed, recommended, or suggested in the labeling thereof, except that such a drug not so recognized shall not be deemed to be a "new drug" if at any time prior to the enactment of this Act it was subject to the Food and Drugs Act of June 30, 1906, as amended, and if at such time its labeling contained the same representations concerning the conditions of its use; or

(2) Any drug the composition of which is such that such drug, as a result of investigations to determine its safety for use under such conditions, has become so recognized, but which has not, otherwise than in such investigations, been used to a material extent or for a material time under such conditions.

Chapter III—Prohibited acts and penalties.

## CHAPTER III—PROHIBITED ACTS AND PENALTIES

### PROHIBITED ACTS

Prohibited acts.

SEC. 301. The following acts and the causing thereof are hereby prohibited:

(a) The introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded.

(b) The adulteration or misbranding of any food, drug, device, or cosmetic in interstate commerce.

(c) The receipt in interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise.

*Post,* pp. 1048, 1052.

(d) The introduction or delivery for introduction into interstate commerce of any article in violation of section 404 or 505.

*Post,* p. 1057.

(e) The refusal to permit access to or copying of any record as required by section 703.

*Post,* p. 1057.

(f) The refusal to permit entry or inspection as authorized by section 704.

(g) The manufacture within any Territory of any food, drug, device, or cosmetic that is adulterated or misbranded.

*Post,* p. 1043.

(h) The giving of a guaranty or undertaking referred to in section 303 (c) (2), which guaranty or undertaking is false, except by a person who relied upon a guaranty or undertaking to the same effect signed by, and containing the name and address of, the person residing in the United States from whom he received in good faith the food, drug, device, or cosmetic; or the giving of a guaranty or undertaking referred to in section 303 (c) (3), which guaranty or undertaking is false.

*Post,* pp. 1048, 1049, 1052, 1055.

(i) Forging, counterfeiting, simulating, or falsely representing, or without proper authority using any mark, stamp, tag, label, or other identification device authorized or required by regulations promulgated under the provisions of section 404, 406 (b), 504, or 604.

*Post,* pp. 1048, 1052, 1057.

(j) The using by any person to his own advantage, or revealing, other than to the Secretary or officers or employees of the Department, or to the courts when relevant in any judicial proceeding under this Act, any information acquired under authority of section 404, 505, or 704 concerning any method or process which as a trade secret is entitled to protection.

(k) The alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of any other act with respect to, a food, drug, device, or cosmetic, if such act is done while such article is held for sale after shipment in interstate commerce and results in such article being misbranded.

(1) The using, on the labeling of any drug or in any advertising relating to such drug, of any representation or suggestion that an application with respect to such drug is effective under section 505, or that such drug complies with the provisions of such section.

*Post,* p. 1052.

### INJUNCTION PROCEEDINGS

Injunction proceedings.

Sec. 302. (a) The district courts of the United States and the United States courts of the Territories shall have jurisdiction, for cause shown, and subject to the provisions of section 17 (relating to notice to opposite party) of the Act entitled "An Act to supplement existing laws against unlawful restraints and monopolies, and for other purposes", approved October 15, 1914, as amended (U. S. C., 1934 ed., title 28, sec. 381), to restrain violations of section 301, except paragraphs (e), (f), (h), (i), and (j).

Jurisdiction.

38 Stat. 737.
28 U. S. C. § 381.

(b) In case of violation of an injunction or restraining order issued under this section, which also constitutes a violation of this Act, trial shall be by the court, or, upon demand of the accused, by a jury. Such trial shall be conducted in accordance with the practice and procedure applicable in the case of proceedings subject to the provisions of section 22 of such Act of October 15, 1914, as amended (U. S. C., 1934 ed., title 28, sec. 387).

Violations of injunctions or restraining orders, proceedings.

38 Stat. 738.
28 U. S. C. § 387.

### PENALTIES

Sec. 303. (a) Any person who violates any of the provisions of section 301 shall be guilty of a misdemeanor and shall on conviction thereof be subject to imprisonment for not more than one year, or a fine of not more than $1,000, or both such imprisonment and fine; but if the violation is committed after a conviction of such person under this section has become final such person shall be subject to imprisonment for not more than three years, or a fine of not more than $10,000, or both such imprisonment and fine.

Penalties.

(b) Notwithstanding the provisions of subsection (a) of this section, in case of a violation of any of the provisions of section 301, with intent to defraud or mislead, the penalty shall be imprisonment for not more than three years, or a fine of not more than $10,000, or both such imprisonment and fine.

Fraud.

(c) No person shall be subject to the penalties of subsection (a) of this section, (1) for having received in interstate commerce any article and delivered it or proffered delivery of it, if such delivery or proffer was made in good faith, unless he refuses to furnish on request of an officer or employee duly designated by the Secretary the name and address of the person from whom he purchased or received such article and copies of all documents, if any there be, pertaining to the delivery of the article to him; or (2) for having violated section 301 (a) or (d), if he establishes a guaranty or undertaking signed by, and containing the name and address of, the person residing in the United States from whom he received in good faith the article, to the effect, in case of an alleged violation of section 301 (a), that such article is not adulterated or misbranded, within the meaning of this Act, designating this Act, or to the effect, in case of an alleged violation of section 301 (d), that such article is not an article which may not, under the provisions of section 404 or 505, be introduced into interstate commerce; or (3) for having violated section 301 (a), where the violation exists because the article is adulterated by reason of containing a coal-tar color not from a batch certified in accordance with regulations promulgated by the Secretary under this Act, if such person establishes a guaranty or

Exceptions.

*Post,* pp. 1048, 1052.

undertaking signed by, and containing the name and address of, the manufacturer of the coal-tar color, to the effect that such color was from a batch certified in accordance with the applicable regulations promulgated by the Secretary under this Act.

## SEIZURE

Seizure of articles.

*Post,* pp. 1048, 1052.

SEC. 304. (a) Any article of food, drug, device, or cosmetic that is adulterated or misbranded when introduced into or while in interstate commerce, or which may not, under the provisions of section 404 or 505, be introduced into interstate commerce, shall be liable to be proceeded against while in interstate commerce, or at any time thereafter, on libel of information and condemned in any district court of the United States within the jurisdiction of which the article is found: *Provided, however,* That no libel for condemnation shall be instituted under this Act, for any alleged misbranding if there is pending in any court a libel for condemnation proceeding under this Act based upon the same alleged misbranding, and not more than one such proceeding shall be instituted if no such proceeding is so pending, except that such limitations shall not apply (1) when such misbranding has been the basis of a prior judgment in favor of the United States, in a criminal, injunction, or libel for condemnation proceeding under this Act, or (2) when the Secretary has probable cause to believe from facts found, without hearing, by him or any officer or employee of the Department that the misbranded article is dangerous to health, or that the labeling of the misbranded article is fraudulent, or would be in a material respect misleading to the injury or damage of the purchaser or consumer. In any case where the number of libel for condemnation proceedings is limited as above provided the proceeding pending or instituted shall, on application of the claimant, seasonably made, be removed for trial to any district agreed upon by stipulation between the parties, or, in case of failure to so stipulate within a reasonable time, the claimant may apply to the court of the district in which the seizure has been made, and such court (after giving the United States attorney for such district reasonable notice and opportunity to be heard) shall by order, unless good cause to the contrary is shown, specify a district of reasonable proximity to the claimant's principal place of business, to which the case shall be removed for trial.

Proviso.
If libel for condemnation proceeding pending.

Exceptions.

Change of venue.

Procedure.

When proceedings are pending in two or more jurisdictions.

Consolidation for trial.

(b) The article shall be liable to seizure by process pursuant to the libel, and the procedure in cases under this section shall conform, as nearly as may be, to the procedure in admiralty; except that on demand of either party any issue of fact joined in any such case shall be tried by jury. When libel for condemnation proceedings under this section, involving the same claimant and the same issues of adulteration or misbranding, are pending in two or more jurisdictions, such pending proceedings, upon application of the claimant seasonably made to the court of one such jurisdiction, shall be consolidated for trial by order of such court, and tried in (1) any district selected by the claimant where one of such proceedings is pending; or (2) a district agreed upon by stipulation between the parties. If no order for consolidation is so made within a reasonable time, the claimant may apply to the court of one such jurisdiction, and such court (after giving the United States attorney for such district reasonable notice and opportunity to be heard) shall by order, unless good cause to the contrary is shown, specify a district of reasonable proximity to the claimant's principal place of business, in which all such pending proceedings shall be consolidated for trial and tried. Such order of consolidation shall not apply so as to require the removal of any case the date for trial of which has been fixed. The court granting such

order shall give prompt notification thereof to the other courts having jurisdiction of the cases covered thereby.

(c) The court at any time after seizure up to a reasonable time before trial shall by order allow any party to a condemnation proceeding, his attorney or agent, to obtain a representative sample of the article seized, and as regards fresh fruits or fresh vegetables, a true copy of the analysis on which the proceeding is based and the identifying marks or numbers, if any, of the packages from which the samples analyzed were obtained. <span style="float:right">Party to condemnation proceeding allowed a representative sample of article seized, etc.</span>

(d) Any food, drug, device, or cosmetic condemned under this section shall, after entry of the decree, be disposed of by destruction or sale as the court may, in accordance with the provisions of this section, direct and the proceeds thereof, if sold, less the legal costs and charges, shall be paid into the Treasury of the United States; but such article shall not be sold under such decree contrary to the provisions of this Act or the laws of the jurisdiction in which sold: *Provided*, That after entry of the decree and upon the payment of the costs of such proceedings and the execution of a good and sufficient bond conditioned that such article shall not be sold or disposed of contrary to the provisions of this Act or the laws of any State or Territory in which sold, the court may by order direct that such article be delivered to the owner thereof to be destroyed or brought into compliance with the provisions of this Act under the supervision of an officer or employee duly designated by the Secretary, and the expenses of such supervision shall be paid by the person obtaining release of the article under bond. Any article condemned by reason of its being an article which may not, under section 404 or 505, be introduced into interstate commerce, shall be disposed of by destruction. <span style="float:right">Disposal of condemned articles after entry of decree.<br>*Proviso.*<br>Delivery to owner if not to be sold.<br>Destruction of designated articles. *Post*, pp. 1048, 1052.</span>

(e) When a decree of condemnation is entered against the article, court costs and fees, and storage and other proper expenses, shall be awarded against the person, if any, intervening as claimant of the article. <span style="float:right">Court costs, fees, etc.</span>

(f) In the case of removal for trial of any case as provided by subsection (a) or (b)— <span style="float:right">Powers and duties of court in cases of removal.</span>

(1) The clerk of the court from which removal is made shall promptly transmit to the court in which the case is to be tried all records in the case necessary in order that such court may exercise jurisdiction.

(2) The court to which such case was removed shall have the powers and be subject to the duties, for purposes of such case, which the court from which removal was made would have had, or to which such court would have been subject, if such case had not been removed.

### HEARING BEFORE REPORT OF CRIMINAL VIOLATION

Sec. 305. Before any violation of this Act is reported by the Secretary to any United States attorney for institution of a criminal proceeding, the person against whom such proceeding is contemplated shall be given appropriate notice and an opportunity to present his views, either orally or in writing, with regard to such contemplated proceeding. <span style="float:right">Hearing before report of criminal violation.</span>

### REPORT OF MINOR VIOLATIONS

Sec. 306. Nothing in this Act shall be construed as requiring the Secretary to report for prosecution, or for the institution of libel or injunction proceedings, minor violations of this Act whenever he believes that the public interest will be adequately served by a suitable written notice or warning. <span style="float:right">Report of minor violations.</span>

**PROCEEDINGS IN NAME OF UNITED STATES; PROVISION AS TO SUBPENAS**

Proceedings in name of United States; subpenas.
R. S. § 876.
28 U. S. C. § 654.

Sec. 307. All such proceedings for the enforcement, or to restrain violations, of this Act shall be by and in the name of the United States. Notwithstanding the provisions of section 876 of the Revised Statutes, subpenas for witnesses who are required to attend a court of the United States, in any district, may run into any other district in any such proceeding.

Chapter IV—Food.

# CHAPTER IV—FOOD

## DEFINITIONS AND STANDARDS FOR FOOD

Definitions and standards; regulations by Secretary.

Sec. 401. Whenever in the judgment of the Secretary such action will promote honesty and fair dealing in the interest of consumers, he shall promulgate regulations fixing and establishing for any food, under its common or usual name so far as practicable, a reasonable definition and standard of identity, a reasonable standard of quality, and/or reasonable standards of fill of container: *Provided*, That no definition and standard of identity and no standard of quality shall be established for fresh or dried fruits, fresh or dried vegetables, or butter, except that definitions and standards of identity may be established for avocadoes, cantaloupes, citrus fruits, and melons. In prescribing any standard of fill of container, the Secretary shall give due consideration to the natural shrinkage in storage and in transit of fresh natural food and to need for the necessary packing and protective material. In the prescribing of any standard of quality for any canned fruit or canned vegetable, consideration shall be given and due allowance made for the differing characteristics of the several varieties of such fruit or vegetable. In prescribing a definition and standard of identity for any food or class of food in which optional ingredients are permitted, the Secretary shall, for the purpose of promoting honesty and fair dealing in the interest of consumers, designate the optional ingredients which shall be named on the label. Any definition and standard of identity prescribed by the Secretary for avocadoes, cantaloupes, citrus fruits, or melons shall relate only to maturity and to the effects of freezing.

*Proviso.*
Fresh or dried fruits, etc.

Exceptions.

Standard of fill of container.

Standard of quality of canned fruit, etc.

Class in which optional ingredients are permitted.

Limitation on definition as to avocadoes, cantaloupes, etc.

## ADULTERATED FOOD

Adulterated food.
Added substances, etc.

Sec. 402. A food shall be deemed to be adulterated—

(a) (1) If it bears or contains any poisonous or deleterious substance which may render it injurious to health; but in case the substance is not an added substance such food shall not be considered adulterated under this clause if the quantity of such substance in such food does not ordinarily render it injurious to health; or (2) if it bears or contains any added poisonous or added deleterious substance which is unsafe within the meaning of section 406; or (3) if it consists in whole or in part of any filthy, putrid, or decomposed substance, or if it is otherwise unfit for food; or (4) if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health; or (5) if it is, in whole or in part, the product of a diseased animal or of an animal which has died otherwise than by slaughter; or (6) if its container is composed, in whole or in part, of any poisonous or deleterious substance which may render the contents injurious to health.

*Post,* p. 1049.

Omission, abstraction, substitution, etc., of any valuable constituent.

(b) (1) If any valuable constituent has been in whole or in part omitted or abstracted therefrom; or (2) if any substance has been substituted wholly or in part therefor; or (3) if damage or inferiority has been concealed in any manner; or (4) if any substance has been added thereto or mixed or packed therewith so as to increase its bulk

or weight, or reduce its quality or strength, or make it appear better or of greater value than it is.

(c) If it bears or contains a coal-tar color other than one from a batch that has been certified in accordance with regulations as provided by section 406: *Provided*, That this paragraph shall not apply to citrus fruit bearing or containing a coal-tar color if application for listing of such color has been made under this Act and such application has not been acted on by the Secretary, if such color was commonly used prior to the enactment of this Act for the purpose of coloring citrus fruit. *(Coal-tar color other than in accordance with regulations. Post, p. 1049. Proviso. Citrus fruits.)*

(d) If it is confectionery, and it bears or contains any alcohol or nonnutritive article or substance except harmless coloring, harmless flavoring, harmless resinous glaze not in excess of four-tenths of 1 per centum, natural gum, and pectin: *Provided*, That this paragraph shall not apply to any confectionery by reason of its containing less than one-half of 1 per centum by volume of alcohol derived solely from the use of flavoring extracts, or to any chewing gum by reason of its containing harmless nonnutritive masticatory substances. *(Confectionery, containing alcohol, etc. Proviso. Exemptions.)*

## MISBRANDED FOOD

*Misbranded food.*

Sec. 403. A food shall be deemed to be misbranded— *Definitions.*

(a) If its labeling is false or misleading in any particular. *False labeling.*

(b) If it is offered for sale under the name of another food. *Using name of another food.*

(c) If it is an imitation of another food, unless its label bears, in type of uniform size and prominence, the word "imitation" and, immediately thereafter, the name of the food imitated. *Imitations not properly indicated.*

(d) If its container is so made, formed, or filled as to be misleading. *Misleading containers.*

(e) If in package form unless it bears a label containing (1) the name and place of business of the manufacturer, packer, or distributor; and (2) an accurate statement of the quantity of the contents in terms of weight, measure, or numerical count: *Provided*, That under clause (2) of this paragraph reasonable variations shall be permitted, and exemptions as to small packages shall be established, by regulations prescribed by the Secretary. *(Package form provisions. Proviso. Variations.)*

(f) If any word, statement, or other information required by or under authority of this Act to appear on the label or labeling is not prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use. *Label or labeling.*

(g) If it purports to be or is represented as a food for which a definition and standard of identity has been prescribed by regulations as provided by section 401, unless (1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard, and, insofar as may be required by such regulations, the common names of optional ingredients (other than spices, flavoring, and coloring) present in such food. *(Representations as to identity; conformity provisions. Ante, p. 1046.)*

(h) If it purports to be or is represented as—

(1) a food for which a standard of quality has been prescribed by regulations as provided by section 401, and its quality falls below such standard, unless its label bears, in such manner and form as such regulations specify, a statement that it falls below such standard; or *(Below standard; exception.)*

(2) a food for which a standard or standards of fill of container have been prescribed by regulations as provided by section 401, and it falls below the standard of fill of container applicable thereto, unless its label bears, in such manner and form as such regulations specify, a statement that it falls below such standard. *(Below standard of fill of container; exception.)*

If not subject to foregoing provisions, without prescribed label, etc.

(i) If it is not subject to the provisions of paragraph (g) of this section unless its label bears (1) the common or usual name of the food, if any there be, and (2) in case it is fabricated from two or more ingredients, the common or usual name of each such ingredient; except that spices, flavorings, and colorings, other than those sold as such, may be designated as spices, flavorings, and colorings without naming each: *Proviso*, That, to the extent that compliance with the requirements of clause (2) of this paragraph is impracticable, or results in deception or unfair competition, exemptions shall be established by regulations promulgated by the Secretary.

*Proviso.*
Exemptions.

Represented to be for special dietary use; label requirements.

(j) If it purports to be or is represented for special dietary uses, unless its label bears such information concerning its vitamin, mineral, and other dietary properties as the Secretary determines to be, and by regulations prescribes as, necessary in order fully to inform purchasers as to its value for such uses.

Artificial flavoring, coloring, etc.; label requirements.
*Proviso.*
Exemptions.

(k) If it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless it bears labeling stating that fact: *Provided*, That to the extent that compliance with the requirements of this paragraph is impracticable, exemptions shall be established by regulations promulgated by the Secretary. The provisions of this paragraph and paragraphs (g) and (i) with respect to artificial coloring shall not apply in the case of butter, cheese, or ice cream.

EMERGENCY PERMIT CONTROL

Emergency permit control.

Sec. 404. (a) Whenever the Secretary finds after investigation that the distribution in interstate commerce of any class of food may, by reason of contamination with micro-organisms during the manufacture, processing, or packing thereof in any locality, be injurious to health, and that such injurious nature cannot be adequately determined after such articles have entered interstate commerce, he then, and in such case only, shall promulgate regulations providing for the issuance, to manufacturers, processors, or packers of such class of food in such locality, of permits to which shall be attached such conditions governing the manufacture, processing, or packing of such class of food, for such temporary period of time, as may be necessary to protect the public health; and after the effective date of such regulations, and during such temporary period, no person shall introduce or deliver for introduction into interstate commerce any such food manufactured, processed, or packed by any such manufacturer, processor, or packer unless such manufacturer, processor, or packer holds a permit issued by the Secretary as provided by such regulations.

Suspension upon finding of violation.

(b) The Secretary is authorized to suspend immediately upon notice any permit issued under authority of this section if it is found that any of the conditions of the permit have been violated. The holder of a permit so suspended shall be privileged at any time to apply for the reinstatement of such permit, and the Secretary shall, immediately after prompt hearing and an inspection of the establishment, reinstate such permit if it is found that adequate measures have been taken to comply with and maintain the conditions of the permit, as originally issued or as amended.

Reinstatement.

Access to factories, etc., by employees designated by Secretary.

(c) Any officer or employee duly designated by the Secretary shall have access to any factory or establishment, the operator of which holds a permit from the Secretary, for the purpose of ascertaining whether or not the conditions of the permit are being complied with, and denial of access for such inspection shall be ground for suspension of the permit until such access is freely given by the operator.

REGULATIONS MAKING EXEMPTIONS

Sec. 405. The Secretary shall promulgate regulations exempting from any labeling requirement of this Act (1) small open containers of fresh fruits and fresh vegetables and (2) food which is, in accordance with the practice of the trade, to be processed, labeled, or repacked in substantial quantities at establishments other than those where originally processed or packed, on condition that such food is not adulterated or misbranded under the provisions of this Act upon removal from such processing, labeling, or repacking establishment.   *Regulations making exemptions.*

TOLERANCES FOR POISONOUS INGREDIENTS IN FOOD AND CERTIFICATION OF COAL-TAR COLORS FOR FOOD

Sec. 406. (a) Any poisonous or deleterious substance added to any food, except where such substance is required in the production thereof or cannot be avoided by good manufacturing practice shall be deemed to be unsafe for purposes of the application of clause (2) of section 402 (a); but when such substance is so required or cannot be so avoided, the Secretary shall promulgate regulations limiting the quantity therein or thereon to such extent as he finds necessary for the protection of public health, and any quantity exceeding the limits so fixed shall also be deemed to be unsafe for purposes of the application of clause (2) of section 402 (a). While such a regulation is in effect limiting the quantity of any such substance in the case of any food, such food shall not, by reason of bearing or containing any added amount of such substance, be considered to be adulterated within the meaning of clause (1) of section 402 (a). In determining the quantity of such added substance to be tolerated in or on different articles of food the Secretary shall take into account the extent to which the use of such substance is required or cannot be avoided in the production of each such article, and the other ways in which the consumer may be affected by the same or other poisonous or deleterious substances.   *Tolerances for poisonous ingredients in food.*   *Ante,* p. 1046.

(b) The Secretary shall promulgate regulations providing for the listing of coal-tar colors which are harmless and suitable for use in food and for the certification of batches of such colors, with or without harmless diluents.   *Certification of coal-tar colors for food.*

## CHAPTER V—DRUGS AND DEVICES

*Chapter V—Drugs and devices.*

ADULTERATED DRUGS AND DEVICES

Sec. 501. A drug or device shall be deemed to be adulterated—
(a) (1) If it consists in whole or in part of any filthy, putrid, or decomposed substance; or (2) if it has been prepared, packed, or held under insanitary conditions whereby it may have been contaminated with filth, or whereby it may have been rendered injurious to health; or (3) if it is a drug and its container is composed, in whole or in part, of any poisonous or deleterious substance which may render the contents injurious to health; or (4) if it is a drug and it bears or contains, for purposes of coloring only, a coal-tar color other than one from a batch that has been certified in accordance with regulations as provided by section 504.   *Adulterated drugs and devices. Definition.*   *Post,* p. 1052.

(b) If it purports to be or is represented as a drug the name of which is recognized in an official compendium, and its strength differs from, or its quality or purity falls below, the standard set forth in such compendium. Such determination as to strength, quality, or purity shall be made in accordance with the tests or methods of

assay set forth in such compendium, except that whenever tests or methods of assay have not been prescribed in such compendium, or such tests or methods of assay as are prescribed are, in the judgment of the Secretary, insufficient for the making of such determination, the Secretary shall bring such fact to the attention of the appropriate body charged with the revision of such compendium, and if such body fails within a reasonable time to prescribe tests or methods of assay which, in the judgment of the Secretary, are sufficient for purposes of this paragraph, then the Secretary shall promulgate regulations prescribing appropriate tests or methods of assay in accordance with which such determination as to strength, quality, or purity shall be made. No drug defined in an official compendium shall be deemed to be adulterated under this paragraph because it differs from the standard of strength, quality, or purity therefor set forth in such compendium, if its difference in strength, quality, or purity from such standard is plainly stated on its label. Whenever a drug is recognized in both the United States Pharmacopœia and the Homœopathic Pharmacopœia of the United States it shall be subject to the requirements of the United States Pharmacopœia unless it is labeled and offered for sale as a homœopathic drug, in which case it shall be subject to the provisions of the Homœopathic Pharmacopœia of the United States and not to those of the United States Pharmacopœia.

(c) If it is not subject to the provisions of paragraph (b) of this section and its strength differs from, or its purity or quality falls below, that which it purports or is represented to possess.

(d) If it is a drug and any substance has been (1) mixed or packed therewith so as to reduce its quality or strength or (2) substituted wholly or in part therefor.

MISBRANDED DRUGS AND DEVICES

*Misbranded drugs and devices.*
Sec. 502. A drug or device shall be deemed to be misbranded—

*False, etc., labeling.*
(a) If its labeling is false or misleading in any particular.

*Labels, information required.*
(b) If in package form unless it bears a label containing (1) the name and place of business of the manufacturer, packer, or distributor; and (2) an accurate statement of the quantity of the contents in terms of weight, measure, or numerical count: *Provided*, That under clause (2) of this paragraph reasonable variations shall be permitted, and exemptions as to small packages shall be established, by regulations prescribed by the Secretary.

*Proviso.*
*Variations and exemptions.*

*Prominence of information required by Act.*
(c) If any word, statement, or other information required by or under authority of this Act to appear on the label or labeling is not prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

*Drugs which may be habit forming.*
(d) If it is for use by man and contains any quantity of the narcotic or hypnotic substance alpha eucaine, barbituric acid, beta-eucaine, bromal, cannabis, carbromal, chloral, coca, cocaine, codeine, heroin, marihuana, morphine, opium, paraldehyde, peyote, or sulphonmethane; or any chemical derivative of such substance, which derivative has been by the Secretary, after investigation, found to be, and by regulations designated as, habit forming; unless its label bears the name, quantity, and percentage of such substance or derivative and in juxtaposition therewith the statement "Warning—May be habit forming".

*Drug not designated solely by recognized name.*
(e) If it is a drug and is not designated solely by a name recognized in an official compendium unless its label bears (1) the common

or usual name of the drug, if such there be; and (2), in case it is fabricated from two or more ingredients, the common or usual name of each active ingredient, including the quantity, kind, and proportion of any alcohol, and also including, whether active or not, the name and quantity or proportion of any bromides, ether, chloroform, acetanilid, acetphenetidin, amidopyrine, antipyrine, atropine, hyoscine, hyoscyamine, arsenic, digitalis, digitalis glucosides, mercury, ouabain, strophanthin, strychnine, thyroid, or any derivative or preparation of any such substances, contained therein: *Provided*, That to the extent that compliance with the requirements of clause (2) of this paragraph is impracticable, exemptions shall be established by regulations promulgated by the Secretary. *[Proviso. Exemptions.]*

(f) Unless its labeling bears (1) adequate directions for use; and (2) such adequate warnings against use in those pathological conditions or by children where its use may be dangerous to health, or against unsafe dosage or methods or duration of administration or application, in such manner and form, as are necessary for the protection of users: *Provided*, That where any requirement of clause (1) of this paragraph, as applied to any drug or device, is not necessary for the protection of the public health, the Secretary shall promulgate regulations exempting such drug or device from such requirement. *[Directions for use; warnings, etc. Proviso. Exemptions.]*

(g) If it purports to be a drug the name of which is recognized in an official compendium, unless it is packaged and labeled as prescribed therein: *Provided*, That the method of packing may be modified with the consent of the Secretary. Whenever a drug is recognized in both the United States Pharmacopœia and the Homœopathic Pharmacopœia of the United States, it shall be subject to the requirements of the United States Pharmacopœia with respect to packaging and labeling unless it is labeled and offered for sale as a homœopathic drug, in which case it shall be subject to the provisions of the Homœopathic Pharmacopœia of the United States, and not to those of the United States Pharmacopœia. *[Purported to be recognized drug. Proviso. Modification in method of packing.]*

(h) If it has been found by the Secretary to be a drug liable to deterioration, unless it is packaged in such form and manner, and its label bears a statement of such precautions, as the Secretary shall by regulations require as necessary for the protection of the public health. No such regulation shall be established for any drug recognized in an official compendium until the Secretary shall have informed the appropriate body charged with the revision of such compendium of the need for such packaging or labeling requirements and such body shall have failed within a reasonable time to prescribe such requirements. *[Drug liable to deterioration.]*

(i) (1) If it is a drug and its container is so made, formed, or filled as to be misleading; or (2) if it is an imitation of another drug; or (3) if it is offered for sale under the name of another drug. *[Drug and container misleading, etc.]*

(j) If it is dangerous to health when used in the dosage, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof. *[Dangerous to health.]*

EXEMPTIONS IN CASE OF DRUGS AND DEVICES *[Exemptions in case of drugs and devices.]*

SEC. 503. (a) The Secretary is hereby directed to promulgate regulations exempting from any labeling or packaging requirement of this Act drugs and devices which are, in accordance with the practice of the trade, to be processed, labeled, or repacked in substantial quantities at establishments other than those where originally processed or packed, on condition that such drugs and devices are not adulterated or misbranded under the provisions of this Act upon removal from such processing, labeling, or repacking establishment. *[Processing, repacking, etc., at other than original establishment.]*

Drugs dispensed on written prescription.

(b) A drug dispensed on a written prescription signed by a physician, dentist, or veterinarian (except a drug dispensed in the course of the conduct of a business of dispensing drugs pursuant to diagnosis by mail), shall if—

(1) such physician, dentist, or veterinarian is licensed by law to administer such drug, and

(2) such drug bears a label containing the name and place of business of the dispenser, the serial number and date of such prescription, and the name of such physician, dentist, or veterinarian,

*Ante*, p. 1050.

be exempt from the requirements of section 502 (b) and (e), and (in case such prescription is marked by the writer thereof as not refillable or its refilling is prohibited by law) of section 502 (d).

CERTIFICATION OF COAL-TAR COLORS FOR DRUGS

Certification of coal-tar colors for drugs.

SEC. 504. The Secretary shall promulgate regulations providing for the listing of coal-tar colors which are harmless and suitable for use in drugs for purposes of coloring only and for the certification of batches of such colors, with or without harmless diluents.

New drugs.

NEW DRUGS

Application for introduction into interstate commerce.

SEC. 505. (a) No person shall introduce or deliver for introduction into interstate commerce any new drug, unless an application filed pursuant to subsection (b) is effective with respect to such drug.

Filing of application; requirements.

(b) Any person may file with the Secretary an application with respect to any drug subject to the provisions of subsection (a). Such person shall submit to the Secretary as a part of the application (1) full reports of investigations which have been made to show whether or not such drug is safe for use; (2) a full list of the articles used as components of such drug; (3) a full statement of the composition of such drug; (4) a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and packing of such drug; (5) such samples of such drug and of the articles used as components thereof as the Secretary may require; and (6) specimens of the labeling proposed to be used for such drug.

Effective date of application.

(c) An application provided for in subsection (b) shall become effective on the sixtieth day after the filing thereof unless prior to such day the Secretary by notice to the applicant in writing postpones the effective date of the application to such time (not more than one hundred and eighty days after the filing thereof) as the Secretary deems necessary to enable him to study and investigate the application.

Tests, etc.

(d) If the Secretary finds, after due notice to the applicant and giving him an opportunity for a hearing, that (1) the investigations, reports of which are required to be submitted to the Secretary pursuant to subsection (b), do not include adequate tests by all methods reasonably applicable to show whether or not such drug is safe for use under the conditions prescribed, recommended, or suggested in the proposed labeling thereof; (2) the results of such tests show that such drug is unsafe for use under such conditions or do not show that such drug is safe for use under such conditions; (3) the methods used in, and the facilities and controls used for, the manufacture, processing, and packing of such drug are inadequate to preserve its identity, strength, quality, and purity; or (4) upon the basis of the information submitted to him as part of the application, or upon the basis of any other information before him with respect to such drug, he has insufficient information to determine whether such drug is safe for use under such conditions, he shall, prior to the effective date of the application, issue an order refusing to permit the application to become effective.

Order refusing to permit application to become effective.

(e) The effectiveness of an application with respect to any drug shall, after due notice and opportunity for hearing to the applicant, by order of the Secretary be suspended if the Secretary finds (1) that clinical experience, tests by new methods, or tests by methods not deemed reasonably applicable when such application became effective show that such drug is unsafe for use under the conditions of use upon the basis of which the application became effective, or (2) that the application contains any untrue statement of a material fact. The order shall state the findings upon which it is based. *Suspension of application.*

(f) An order refusing to permit an application with respect to any drug to become effective shall be revoked whenever the Secretary finds that the facts so require. *Revocation of order of refusal.*

(g) Orders of the Secretary issued under this section shall be served (1) in person by any officer or employee of the department designated by the Secretary or (2) by mailing the order by registered mail addressed to the applicant or respondent at his last-known address in the records of the Secretary. *Service of Secretary's orders.*

(h) An appeal may be taken by the applicant from an order of the Secretary refusing to permit the application to become effective, or suspending the effectiveness of the application. Such appeal shall be taken by filing in the district court of the United States within any district wherein such applicant resides or has his principal place of business, or in the District Court of the United States for the District of Columbia, within sixty days after the entry of such order, a written petition praying that the order of the Secretary be set aside. A copy of such petition shall be forthwith served upon the Secretary, or upon any officer designated by him for that purpose, and thereupon the Secretary shall certify and file in the court a transcript of the record upon which the order complained of was entered. Upon the filing of such transcript such court shall have exclusive jurisdiction to affirm or set aside such order. No objection to the order of the Secretary shall be considered by the court unless such objection shall have been urged before the Secretary or unless there were reasonable grounds for failure so to do. The finding of the Secretary as to the facts, if supported by substantial evidence, shall be conclusive. If any person shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceeding before the Secretary, the court may order such additional evidence to be taken before the Secretary and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. The Secretary may modify his findings as to the facts by reason of the additional evidence so taken, and he shall file with the court such modified findings which, if supported by substantial evidence, shall be conclusive, and his recommendation, if any, for the setting aside of the original order. The judgment and decree of the court affirming or setting aside any such order of the Secretary shall be final, subject to review as provided in sections 128, 239, and 240 of the Judicial Code, as amended (U. S. C., 1934 ed., title 28, secs. 225, 346, and 347), and in section 7, as amended, of the Act entitled "An Act to establish a Court of Appeals for the District of Columbia", approved February 9, 1893 (D. C. Code, title 18, sec. 26). The commencement of proceedings under this subsection shall not, unless specifically ordered by the court to the contrary, operate as a stay of the Secretary's order. *Appeals.* *Finality of judgment and decree; review.* *28 U. S. C. §§ 225, 346, 347.* *18 D. C. Code § 26.*

(i) The Secretary shall promulgate regulations for exempting from the operation of this section drugs intended solely for investigational use by experts qualified by scientific training and experience to investigate the safety of drugs. *Drugs for investigational use, etc.*

| | |
|---|---|
| Chapter VI—Cosmetics. | CHAPTER VI—COSMETICS |

ADULTERATED COSMETICS

Adulterated cosmetics defined.

Sec. 601. A cosmetic shall be deemed to be adulterated—
(a) If it bears or contains any poisonous or deleterious substance which may render it injurious to users under the conditions of use prescribed in the labeling thereof, or under such conditions of use as are customary or usual: *Proviso*, That this provision shall not apply to coal-tar hair dye, the label of which bears the following legend conspicuously displayed thereon: "Caution—This product contains ingredients which may cause skin irritation on certain individuals and a preliminary test according to accompanying directions should first be made. This product must not be used for dyeing the eyelashes or eyebrows; to do so may cause blindness.", and the labeling of which bears adequate directions for such preliminary testing. For the purposes of this paragraph and paragraph (e) the term "hair dye" shall not include eyelash dyes or eyebrow dyes.

*Proviso.*
Coal-tar hair dye bearing informative legend.

(b) If it consists in whole or in part of any filthy, putrid, or decomposed substance.
(c) If it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health.
(d) If its container is composed, in whole or in part, of any poisonous or deleterious substance which may render the contents injurious to health.
(e) If it is not a hair dye and it bears or contains a coal-tar color other than one from a batch that has been certified in accordance with regulations as provided by section 604.

MISBRANDED COSMETICS

Misbranded cosmetics defined.
False, etc., labeling.
Labels, information required.

Sec. 602. A cosmetic shall be deemed to be misbranded—
(a) If its labeling is false or misleading in any particular.
(b) If in package form unless it bears a label containing (1) the name and place of business of the manufacturer, packer, or distributor; and (2) an accurate statement of the quantity of the contents in terms of weight, measure, or numerical count: *Provided*, That under clause (2) of this paragraph reasonable variations shall be permitted, and exemptions as to small packages shall be established, by regulations prescribed by the Secretary.

*Proviso.*
Variations and exemptions.

Prominence of information required by Act.

(c) If any word, statement, or other information required by or under authority of this Act to appear on the label or labeling is not prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

Containers.

(d) If its container is so made, formed, or filled as to be misleading.

REGULATIONS MAKING EXEMPTIONS

Regulations making exemptions.

Sec. 603. The Secretary shall promulgate regulations exempting from any labeling requirement of this Act cosmetics which are, in accordance with the practice of the trade, to be processed, labeled, or repacked in substantial quantities at establishments other than those where originally processed or packed, on condition that such cosmetics are not adulterated or misbranded under the provisions of this Act upon removal from such processing, labeling, or repacking establishment.

CERTIFICATION OF COAL-TAR COLORS FOR COSMETICS

Sec. 604. The Secretary shall promulgate regulations providing for the listing of coal-tar colors which are harmless and suitable for use in cosmetics and for the certification of batches of such colors, with or without harmless diluents.

<div style="margin-left: auto;">Certification of coal-tar colors for cosmetics.</div>

## CHAPTER VII—GENERAL ADMINISTRATIVE PROVISIONS

<div style="margin-left: auto;">Chapter VII—General administrative provisions.</div>

### REGULATIONS AND HEARINGS

Sec. 701. (a) The authority to promulgate regulations for the efficient enforcement of this Act, except as otherwise provided in this section, is hereby vested in the Secretary.

<div style="margin-left: auto;">Regulations.</div>

(b) The Secretary of the Treasury and the Secretary of Agriculture shall jointly prescribe regulations for the efficient enforcement of the provisions of section 801, except as otherwise provided therein. Such regulations shall be promulgated in such manner and take effect at such time, after due notice, as the Secretary of Agriculture shall determine.

<div style="margin-left: auto;">Post, p. 1058.</div>

(c) Hearings authorized or required by this Act shall be conducted by the Secretary or such officer or employee as he may designate for the purpose.

<div style="margin-left: auto;">Hearings.</div>

(d) The definitions and standards of identity promulgated in accordance with the provisions of this Act shall be effective for the purposes of the enforcement of this Act, notwithstanding such definitions and standards as may be contained in other laws of the United States and regulations promulgated thereunder.

<div style="margin-left: auto;">Definitions and standards of identity.</div>

(e) The Secretary, on his own initiative or upon an application of any interested industry or substantial portion thereof stating reasonable grounds therefor, shall hold a public hearing upon a proposal to issue, amend, or repeal any regulation contemplated by any of the following sections of this Act: 401, 403 (j), 404 (a), 406 (a) and (b), 501 (b), 502 (d), 502 (h), 504, and 604. The Secretary shall give appropriate notice of the hearing, and the notice shall set forth the proposal in general terms and specify the time and place for a public hearing to be held thereon not less than thirty days after the date of the notice, except that the public hearing on regulations under section 404 (a) may be held within a reasonable time, to be fixed by the Secretary, after notice thereof. At the hearing any interested person may be heard in person or by his representative. As soon as practicable after completion of the hearing, the Secretary shall by order make public his action in issuing, amending, or repealing the regulation or determining not to take such action. The Secretary shall base his order only on substantial evidence of record at the hearing and shall set forth as part of the order detailed findings of fact on which the order is based. No such order shall take effect prior to the ninetieth day after it is issued, except that if the Secretary finds that emergency conditions exist necessitating an earlier effective date, then the Secretary shall specify in the order his findings as to such conditions and the order shall take effect at such earlier date as the Secretary shall specify therein to meet the emergency.

<div style="margin-left: auto;">Public hearing upon proposal to issue, amend, or repeal any regulation.

Ante, pp. 1046, 1048, 1049, 1050, 1051, 1052.
Procedure.</div>

(f) (1) In a case of actual controversy as to the validity of any order under subsection (e), any person who will be adversely affected by such order if placed in effect may at any time prior to the ninetieth day after such order is issued file a petition with the Circuit Court of Appeals of the United States for the circuit wherein such

<div style="margin-left: auto;">Controversies over validity of orders.
Petition to proper Circuit Court of Appeals for review.</div>

person resides or has his principal place of business, for a judicial review of such order. The summons and petition may be served at any place in the United States. The Secretary, promptly upon service of the summons and petition, shall certify and file in the court the transcript of the proceedings and the record on which the Secretary based his order.

*Leave to adduce additional evidence.* (2) If the petitioner applies to the court for leave to adduce additional evidence, and shows to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the proceeding before the Secretary, the court may order such additional evidence (and evidence in rebuttal thereof) to be taken before the Secretary, and to be adduced upon the hearing, in such manner and upon such terms and conditions as to the court may seem proper. The Secretary may modify his findings as to the facts, or make new findings, by reason of the additional evidence so taken, and he shall file such modified or new findings, and his recommendation, if any, for the modification or setting aside of his original order, with the return of such additional evidence.

*Court jurisdiction to affirm or set aside order.* (3) The court shall have jurisdiction to affirm the order, or to set it aside in whole or in part, temporarily or permanently. If the order of the Secretary refuses to issue, amend, or repeal a regulation and such order is not in accordance with law the court shall by its judgment order the Secretary to take action, with respect to such regulation, in accordance with law. The findings of the Secretary as to the facts, if supported by substantial evidence, shall be conclusive.

*Finality of judgment; review.*
*28 U. S. C. §§ 346, 347.*
(4) The judgment of the court affirming or setting aside, in whole or in part, any such order of the Secretary shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in sections 239 and 240 of the Judicial Code, as amended.

*Survival of action.* (5) Any action instituted under this subsection shall survive notwithstanding any change in the person occupying the office of Secretary or any vacancy in such office.

*Remedies deemed additional.* (6) The remedies provided for in this subsection shall be in addition to and not in substitution for any other remedies provided by law.

*Certified copies of transcript of record and proceedings.* (g) A certified copy of the transcript of the record and proceedings under subsection (e) shall be furnished by the Secretary to any interested party at his request, and payment of the costs thereof, and *Admissibility.* shall be admissible in any criminal, libel for condemnation, exclusion of imports, or other proceeding arising under or in respect to this Act, irrespective of whether proceedings with respect to the order have previously been instituted or become final under subsection (f).

### EXAMINATIONS AND INVESTIGATIONS

*Examinations and investigations.* SEC. 702. (a) The Secretary is authorized to conduct examinations and investigations for the purposes of this Act through officers and employees of the Department or through any health, food, or drug officer or employee of any State, Territory, or political subdivision thereof, duly commissioned by the Secretary as an officer of the Department. In the case of food packed in a Territory the Secretary shall attempt to make inspection of such food at the first point of entry within the United States when, in his opinion and with due regard to the enforcement of all the provisions of this Act, the facilities at his disposal will permit of such inspection. For the purposes

of this subsection the term "United States" means the States and the District of Columbia.

(b) Where a sample of a food, drug, or cosmetic is collected for analysis under this Act the Secretary shall, upon request, provide a part of such official sample for examination or analysis by any person named on the label of the article, or the owner thereof, or his attorney or agent; except that the Secretary is authorized, by regulations, to make such reasonable exceptions from, and impose such reasonable terms and conditions relating to, the operation of this subsection as he finds necessary for the proper administration of the provisions of this Act.

(c) For purposes of enforcement of this Act, records of any department or independent establishment in the executive branch of the Government shall be open to inspection by any official of the Department of Agriculture duly authorized by the Secretary to make such inspection.

### RECORDS OF INTERSTATE SHIPMENT

*Records of interstate shipment.*

SEC. 703. For the purpose of enforcing the provisions of this Act, carriers engaged in interstate commerce, and persons receiving food, drugs, devices, or cosmetics in interstate commerce or holding such articles so received, shall, upon the request of an officer or employee duly designated by the Secretary, permit such officer or employee, at reasonable times, to have access to and to copy all records showing the movement in interstate commerce of any food, drug, device, or cosmetic, or the holding thereof during or after such movement, and the quantity, shipper, and consignee thereof; and it shall be unlawful for any such carrier or person to fail to permit such access to and copying of any such record so requested when such request is accompanied by a statement in writing specifying the nature or kind of food, drug, device, or cosmetic to which such request relates: *Provided*, That evidence obtained under this section shall not be used in a criminal prosecution of the person from whom obtained: *Provided further*, That carriers shall not be subject to the other provisions of this Act by reason of their receipt, carriage, holding, or delivery of food, drugs, devices, or cosmetics in the usual course of business as carriers.

*Access to carrier's, etc., records.*

*Provisos.*
*Use in certain criminal prosecutions forbidden.*
*Waiver of other provisions.*

### FACTORY INSPECTION

SEC. 704. For purposes of enforcement of this Act, officers or employees duly designated by the Secretary, after first making request and obtaining permission of the owner, operator, or custodian thereof, are authorized (1) to enter, at reasonable times, any factory, warehouse, or establishment in which food, drugs, devices, or cosmetics are manufactured, processed, packed, or held, for introduction into interstate commerce or are held after such introduction, or to enter any vehicle being used to transport or hold such food, drugs, devices, or cosmetics in interstate commerce; and (2) to inspect, at reasonable times, such factory, warehouse, establishment, or vehicle and all pertinent equipment, finished and unfinished materials, containers, and labeling therein.

*Factory inspection.*

### PUBLICITY

SEC. 705. (a) The Secretary shall cause to be published from time to time reports summarizing all judgments, decrees, and court orders which have been rendered under this Act, including the nature of the charge and the disposition thereof.

*Publicity.*

| | |
|---|---|
| Dissemination of information regarding food, drugs, etc. | (b) The Secretary may also cause to be disseminated information regarding food, drugs, devices, or cosmetics in situations involving, in the opinion of the Secretary, imminent danger to health or gross deception of the consumer. Nothing in this section shall be construed to prohibit the Secretary from collecting, reporting, and illustrating the results of the investigations of the Department. |

COST OF CERTIFICATION OF COAL-TAR COLORS

| | |
|---|---|
| Cost of certification of coal-tar colors. | SEC. 706. The admitting to listing and certification of coal-tar colors, in accordance with regulations prescribed under this Act, shall be performed only upon payment of such fees, which shall be specified in such regulations, as may be necessary to provide, maintain, and equip an adequate service for such purposes. |

CHAPTER VIII—IMPORTS AND EXPORTS

| | |
|---|---|
| Chapter VIII—Imports and exports. | |
| Examination of imported foods, etc. | SEC. 801. (a) The Secretary of the Treasury shall deliver to the Secretary of Agriculture, upon his request, samples of food, drugs, devices, and cosmetics which are being imported or offered for import into the United States, giving notice thereof to the owner or consignee, who may appear before the Secretary of Agriculture and have the right to introduce testimony. If it appears from the examination of such samples or otherwise that (1) such article has been manufactured, processed, or packed under insanitary conditions, or (2) such article is forbidden or restricted in sale in the country in which it was produced or from which it was exported, or (3) such article is adulterated, misbranded, or in violation of section 505, then such article shall be refused admission. This paragraph shall not be construed to prohibit the admission of narcotic drugs the importation of which is permitted under section 2 of the Act of May 26, 1922, as amended (U. S. C., 1934 edition, title 21, sec. 173). |
| Articles manufactured, etc., under insanitary conditions. | |
| Sale forbidden in exporting, etc., country. | |
| Adulterated, misbranded, etc. | |
| *Ante,* p. 1052. | |
| Admission of narcotic drugs. | |
| 42 Stat. 596. | |
| 21 U. S. C. § 173. | |
| Destruction of inadmissible articles; exception. | (b) The Secretary of the Treasury shall refuse delivery to the consignee and shall cause the destruction of any such article refused admission, unless such article is exported by the consignee within three months from the date of notice of such refusal, under such regulations as the Secretary of the Treasury may prescribe: *Provided,* That the Secretary of the Treasury may deliver to the consignee any such article pending examination and decision in the matter on execution of a bond as liquidated damages for the amount of the full invoice value thereof together with the duty thereon and on refusing for any cause to return such article or any part thereof to the custody of the Secretary of the Treasury when demanded for the purpose of excluding it from the country or for any other purpose, such consignee shall forfeit the full amount of the bond as liquidated damages. |
| *Provisos.* | |
| Delivery pending examination. | |
| Bond. | |
| Charges. | (c) All charges for storage, cartage, and labor on any article which is refused admission or delivery shall be paid by the owner or consignee and in default of such payment shall constitute a lien against any future importations made by such owner or consignee. |
| Food, etc., for export; when deemed not adulterated, etc. | (d) A food, drug, device, or cosmetic intended for export shall not be deemed to be adulterated or misbranded under this Act if it (1) accords to the specifications of the foreign purchaser, (2) is not in conflict with the laws of the country to which it is intended for export, and (3) is labeled on the outside of the shipping package to show that it is intended for export. But if such article is sold or offered for sale in domestic commerce, this subsection shall not exempt it from any of the provisions of this Act. |

## CHAPTER IX—MISCELLANEOUS

### SEPARABILITY CLAUSE

SEC. 901. If any provision of this Act is declared unconstitutional, or the applicability thereof to any person or circumstances is held invalid, the constitutionality of the remainder of the Act and the applicability thereof to other persons and circumstances shall not be affected thereby.

### EFFECTIVE DATE AND REPEALS

SEC. 902. (a) This Act shall take effect twelve months after the date of its enactment. The Federal Food and Drugs Act of June 30, 1906, as amended (U. S. C., 1934 ed., title 21, secs. 1–15), shall remain in force until such effective date, and, except as otherwise provided in this subsection, is hereby repealed effective upon such date: *Provided*, That the provisions of section 701 shall become effective on the enactment of this Act, and thereafter the Secretary is authorized hereby to (1) conduct hearings and to promulgate regulations which shall become effective on or after the effective date of this Act as the Secretary shall direct, and (2) designate prior to the effective date of this Act food having common or usual names and exempt such food from the requirements of clause (2) of section 403 (i) for a reasonable time to permit the formulation, promulgation, and effective application of definitions and standards of identity therefor as provided by section 401: *Provided further*, That sections 502 (j), 505, and 601 (a), and all other provisions of this Act to the extent that they may relate to the enforcement of such sections, shall take effect on the date of the enactment of this Act, except that in the case of a cosmetic to which the proviso of section 601 (a) relates, such cosmetic shall not, prior to the ninetieth day after such date of enactment, be deemed adulterated by reason of the failure of its label to bear the legend prescribed in such proviso: *Provided further*, That the Act of March 4, 1923 (U. S. C., 1934 ed., title 21, sec. 6; 42 Stat. 1500, ch. 268), defining butter and providing a standard therefor; the Act of July 24, 1919 (U. S. C., 1934 ed., title 21, sec. 10; 41 Stat. 271, ch. 26), defining wrapped meats as in package form; and the amendment to the Food and Drugs Act, section 10A, approved August 27, 1935 (U. S. C., 1934 ed., Sup. III, title 21, sec. 14a), shall remain in force and effect and be applicable to the provisions of this Act.

(b) Meats and meat food products shall be exempt from the provisions of this Act to the extent of the application or the extension thereto of the Meat Inspection Act, approved March 4, 1907, as amended (U. S. C., 1934 ed., title 21, secs. 71–91; 34 Stat. 1260 et seq.).

(c) Nothing contained in this Act shall be construed as in any way affecting, modifying, repealing, or superseding the provisions of the virus, serum, and toxin Act of July 1, 1902 (U. S. C., 1934 ed., title 42, chap. 4); the Filled Cheese Act of June 6, 1896 (U. S. C., 1934 ed., title 26, ch. 10), the Filled Milk Act of March 4, 1923 (U. S. C., 1934 ed., title 21, ch. 3, secs. 61–63); or the Import Milk Act of February 15, 1927 (U. S. C., 1934 ed., title 21, ch. 4, secs. 141–149).

(d) In order to carry out the provisions of this Act which take effect prior to the repeal of the Food and Drugs Act of June 30, 1906, as amended, appropriations available for the enforcement of such Act of June 30, 1906, are also authorized to be made available to carry out such provisions.

Approved, June 25, 1938.