

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

May 13, 2021

<u>VIA ECF</u>

The Honorable Mary Kay Vyskocil
United States District Court
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

Re:     ***United States v. Navarro et al.*, 20 Cr. 160 (MKV)**

Dear Judge Vyskocil:

        The Government respectfully writes in brief response to the defendants' motion to recuse the Court due to a claimed appearance of partiality (the "Motion"), (ECF No. 372), and requests an opportunity, if the Court finds it necessary, to submit a more detailed response following the status conference scheduled for tomorrow, May 14, 2021. This letter is intended to provide the Court with the Government's view, in advance of the upcoming conference, of certain pertinent legal principles that would appear to render the Motion meritless, subject to additional information of which the Court may be aware. Given the defendants' evolving theory of why recusal is necessary in this case, it is unsurprising that the defendants filed a motion rife with speculation about supposed contingencies that may one day create the appearance of bias, with little substance supporting their claims. As presented, the Motion should be denied.

**I.      Defendants' Recusal Motion**

        On May 6, 2021, the Government and a subset of defense counsel convened a conference call, at the Government's request, to discuss proposals for a briefing schedule regarding unresolved motions. At that call, and for the first time, defense counsel informed the Government that a number of defendants were contemplating filing a recusal motion on the basis of an April 29, 2021 news article published in The Washington Post, and supposed connections between Your Honor and a member of the Jockey Club, which organization was mentioned in the article cited by defense counsel.[1]  Later that day, defendants Seth Fishman, Christopher Oakes, Jorge Navarro, Jordan

---

[1] *See* Gus Garcia-Roberts, "With private eyes and political muscle, horse racing's elite pushed to punish dopers," The Washington Post, April 29, 2021, *available at* https://www.washingtonpost.com/sports/2021/04/29/horse-racing-doping-jockey-cub/.   During that call, defense counsel did not raise any of the other claimed bases for recusal presented in the Motion.

Fishman, Erica Garcia, Michael Tannuzzo, and Lisa Giannelli jointly filed a letter with the Court requesting that the Court "hold in abeyance any rulings" on a number of pending motions to dismiss the Indictment, on the basis that "Defendants are contemplating a Motion to Recuse your Honor." (*See* ECF No. 355). The Court directed that the defendants seeking recusal file any motions by May 13, 2021, and prepare to discuss the basis for such a motion during the parties' next status conference. (ECF No. 355).

Defendants' Motion, filed on May 13, 2021, appears to be based on the following: (1) Your Honor has, in the past, been affiliated with or employed by entities that have taken positions on issues within the racehorse industry;[2] (2) Your Honor was historically a breeder of racehorses for a number of years and, as such, is in the category of individuals that the defendants classify in their Motion as putative victims,[3] and in four races between 2006 and 2009, two horses bred and sold by Your Honor competed against horses trained by Servis or Navarro; (3) Your Honor's former business partner *may be* a putative victim due to his involvement in the racehorse industry and, in particular, due to his membership in the Jockey Club, whose leadership has opined on the Government's investigation, and whose employees have met with the Federal Bureau of Investigation ("FBI") agents on occasion during this investigation.

The Motion has been raised, and filed, over one year after this case was first indicted and assigned to Your Honor, and after: (1) this Court denied Seth Fishman's motion to dismiss or for a bill of particulars, (*see* Order (ECF No. 244)); (2) this Court issued an opinion supporting its denial of Seth Fishman's oral objection to excluding time under the Speedy Trial Act, (*see* Order (ECF No. 242)); (3) this Court denied Seth Fishman's bail application, (*see* Order (ECF No. 281)); and (4) the parties had fully briefed three separate motions to dismiss the Indictment, (ECF Nos. 327-335). The Motion predominantly cites facts pre-dating the date Your Honor took the bench as a Bankruptcy Judge in this District in 2016. These same facts were all ascertainable at the time this case was assigned to Your Honor over a year ago.

---

[2] The Motion enumerates the following affiliations in support of this argument: (A) that Your Honor was a member of the New York Thoroughbred Breeders Inc., an organization focused on representing those in the Thoroughbred industry, and which has taken certain positions in the past regarding the use of Clenbuterol on racehorse; and (B) Your Honor was a partner at the law firm Simpson Thacher & Bartlett at the same time the firm represented the Thoroughbred Retirement Foundation, a charity supporting injured and retired thoroughbred horses, in civil litigation against the New York State Attorney General.

[3] The defendants seemingly conflate the concept of ownership and breeding, implying in at least one instance that Your Honor owned horses that raced against Servis or Navarro in the four races cited in the Motion ("[W]e have identified at least four instances in which one of your horses competed directly against horses trained by defendants Jason Servis or Jorge Navarro." Mot. at 3.) It appears from a search of public databases that Your Honor was one of two people identified as the *breeder* of these horses, and not the owner or trainer.

## II.  Applicable Law

Title 28, United States Code, Section 455(a) requires a district judge to "disqualify himself [or herself] in any proceeding in which his [or her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Further, a judge must recuse herself when she has "a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1). The movant must "overcome a presumption of impartiality, and the burden for doing so is substantial." *Da Silva Moore v. Publicis Groupe*, 868 F.Supp.2d 137, 150 (S.D.N.Y. 2012) (quoting *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. Int'l Union*, 332 F.Supp.2d 667, 670 (S.D.N.Y 2004)). Recusal under § 455(a) is only required when "an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal." *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992). In order to show a substantial doubt about the Court's impartiality warranting recusal, the defendant must show that the Court has demonstrated "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Recusal is not appropriate where the circumstances giving rise to the purported appearance of impropriety are "remote, contingent, indirect or speculative." *Lovaglia*, 954 F.2d at 815.

"Section 455(a) does not require that [the district court] accept all allegations by the moving party as true." *Lamborn v. Dittmer*, 726 F. Supp. at 517. On the contrary, "the grounds asserted in a recusal motion must be scrutinized with care." *In re Aguinda*, 241 F.3d, 194, 201 (2d Cir. 2001). "The trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case." *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988). The Court must make its determination, "not by considering what a straw poll of the only partly informed man-in-the-street would show[,] but by examining the record facts and the law." *Drexel*, 861 F.2d at 1313.

"The decision whether a judge's impartiality can 'reasonably be questioned' is to be made in light of the facts as they existed, and not as they were surmised or reported." *Cheney v. U.S. Dist. Court for D.C.*, 541 U.S. 913, 914 (2004). Accordingly, "the appearance of partiality must have an objective basis beyond the fact that claims of partiality have been well publicized." *Aguinda*, 241 F.3d at 201.

A motion for recusal is committed to the sound discretion of the district court. *Drexel*, 861 F.2d at 1312. But the Court cannot recuse itself unless the defendant has satisfied his or her heavy burden. *See Thorpe v. Zimmer, Inc.*, 590 F. Supp. 2d 492, 494 (S.D.N.Y. 2008) (citing *Rosen v. Sugarman*, 357 F.2d 794, 797 (2d Cir. 1996); *see also Aguinda*, 241 F.3d at 201 ("Where the standards governing disqualification are not met, disqualification is not optional; rather, it is prohibited.") (citing *Drexel*, 861 F.2d at 1312 ("A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is.")); *Nat'l Auto Brokers Corp. v. Gen. Motors Corp.*, 572 F.2d 953, 958 (2d Cir. 1978) ("[A] judge has an affirmative duty . . . not to disqualify himself unnecessarily, particularly where the request for disqualification was not made at the threshold of the litigation and the judge has acquired a valuable background of experience.") (internal citations, quotation marks omitted). Recusal motions may not be used as strategic devices to judge shop. *Hoffenberg v. United States*, 333 F.

Supp. 2d 166, 173 (S.D.N.Y. 2004). Particularly when litigation has "advanced considerably before the judge in question," the court should be sensitive to such concerns. *United States v. Helmsley*, 760 F. Supp. 338, 342 (S.D.N.Y. 1991), aff'd, 963 F.2d 1522 (2d Cir. 1992); *accord United States v. Greenough*, 782 F.2d 1556 (11th Cir.1986).

A judge "may engage in extrajudicial activities, including law-related pursuits and civic, charitable, educational, religious, social, financial, fiduciary, and government activities, and may speak, write, lecture, and teach on both law-related and nonlegal subjects." Canon 4, CODE OF CONDUCT FOR UNITED STATES JUDGES. "[T]he presumption is that a judge will put personal beliefs aside and rule according to the laws as enacted, as required by his or her oath," and no appearance of impropriety is "created by the fact that every judge inevitably has opinions on the controversies of the day." *Aguinda*, 241 F.3d at 204; *see also In re Judicial Misconduct*, 632 F.3d 1289, 1289 (9th Cir. 2011) ("Engaging in such law-related activities—including speeches that comment on current events and legal developments—is permitted not only because judges are citizens, but because they are particularly knowledgeable on such topics."); *United States v. Pitera*, 5 F.3d 624, 626 (2d Cir. 1993) (affirming denial of recusal motion where district judge had given speeches to law enforcement agents and prosecutors about "steps they might take to increase the prospects for conviction in narcotics cases," and noting that the judge often lectured at trial seminars); *Da Silva Moore*, 868 F. Supp. 2d at 163, *objections overruled sub nom. Moore v. Publicis Groupe SA & MSL Grp.*, No. 11 Civ. 1279 (ALC), 2012 WL 12528637 (S.D.N.Y. Nov. 8, 2012) (denying recusal motion where magistrate judge had spoken and written publicly about the benefits of computer-assisted review in the context of civil discovery, an issue of dispute in the pending case).

Finally, a motion for recusal must be filed in a timely manner, *see* 28 U.S.C. § 144; *see also United States* v. *Wallach*, 788 F. Supp. 739, 742 (S.D.N.Y.), *aff'd*, 979 F.2d 912 (2d Cir. 1992), which requires that the motion be filed "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *Apple* v. *Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333-34 (2d Cir. 1987). A defendant's delay in bringing a motion for recusal on facts known to the defendant well prior to the motion demonstrates that such a motion is tactical or dilatory, rather than sincere and well-founded. "It is well-settled that a party must raise its claim of a district court's disqualification at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *Apple v. Jewish Hosp. & Mec. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987). "Recusal motions are often denied on the basis of untimeliness when there has been only a short delay." *Raghavendra v. Trustees of Columbia Univ.*, 2012 WL 2878123, at *5 (S.D.N.Y. July 13, 2012) (collecting cases). "Untimeliness in [the recusal] context can constitute a basis for finding an implied waiver." *United States v. Burke*, 756 F. App'x 93, 94 (2d Cir. 2019); *see also Polizzi* v. *United States*, 926 F.2d 1311, 1321 (2d Cir. 1991). Careful adherence to the requirement of a "prompt application avoids the risk that a party is holding back a recusal application as a fall-back position in the event of adverse rulings on pending matters." *In re Int'l Bus. Mach. Corp.*, 45 F.3d 641, 643 (2d Cir. 1995). "Timeliness [of a recusal motion] is to be strictly enforced as a safeguard against use of the procedure as a delaying tactic." *United States v. Int'l Bus. Machines Corp.*, 539 F.Supp. 473, 477 (S.D.N.Y. 1982).

In assessing whether a claim of apparent bias has been waived for untimeliness, the Second Circuit has instructed courts to consider a number of factors, including whether "(1) the movant has participated in a substantial manner in trial or pre-trial proceedings, (2) granting the motion would represent a waste of judicial resources, (3) the motion was made after the entry of judgment, and (4) the movant can demonstrate good cause for delay." *Apple*, 829 F.2d at 333-34. Moreover, even if a belatedly filed motion is considered on the merits, delay strongly cuts against the defendant's argument. *See, e.g., United States* v. *Durrani*, 835 F.2d 410, 427 (2d Cir. 1987) (delay of four months warranted denial of motion; discussing *In re Martin-Trigona*, 573 F.Supp. 1237, 1244 (D. Conn. 1983) (denying motion for recusal after delay of twelve days).

## III. Discussion

The defendants' Motion fails both as a matter of procedure and of merit. As a matter of procedure, the defendant's year-long delay in filing this motion warrants a finding that the Motion is pretextual and dilatory, and the dismissal of the defendant's motion as untimely, particularly in light of the substantial litigation that has already occurred, and the basis for the Motion, which consists of facts accessible in the public record at the time this case was indicted and assigned. As a matter of merit, even assuming the truth of the Motion's factual allegations (some of which the Government disputes), there is nothing in these facts that would suggest to an objective observer that Your Honor is unable to preside over this case fairly and impartially.

### a. The Defendants' Motion Is Untimely

Defendants have defaulted their claim by waiting for over a year after this case was assigned to file their motion, entirely on the basis of historical facts that pre-date all but one of the charged conspiracies. *See* S6 Indictment ¶ 16 (Navarro Misbranding Conspiracy beginning in at least 2016); ¶ 31 (Fishman Misbranding Conspiracy beginning in at least 2002); ¶ 40 (Servis Misbranding Conspiracy beginning in at least 2016); ¶ 54 (Mail and Wire Fraud Conspiracy beginning in at least 2016); ¶ 58 (Linke Misbranding Conspiracy beginning in at least 2016).

Far from raising the issue at the "earliest moment," the defendants have been dilatory in inquiring into the matters now raised in the Motion, and that alone warrants denial. *See, e.g.*, *Durrani*, 835 F.2d at 427 (delay of four months warranted denial of motion).

The other factors that the Court is to consider in evaluating the timeliness of the defendants' Motion similarly support denial of the motion. First, defendants and, particularly, defendant Seth Fishman, participated in pre-trial proceedings in a substantial way by filing: (a) an unprompted motion to dismiss the Indictment or, alternatively, for a bill of particulars, prompting oral argument and a 17-page opinion and order denying the motion; (b) a contested motion seeking bail modification; (c) an oral request that time not be excluded under the Speedy Trial Act, which resulted in a 15-page opinion and order supporting the Court's decision to exclude time under the Speedy Trial Act; and (d) a second round of fully briefed motions to dismiss the Indictment, which was due for argument at the upcoming conference prior to defendants seeking recusal.

Second, the Court has already expended substantial judicial resources presiding over this case, having reviewed a number of lengthy briefs and accompanying exhibits in connection with the motions enumerated above, and identified specific issues for consideration, conducting oral argument on the various motions at multiple points, and has already issued multiple detailed opinions, and was poised to rule on a second set of fully-briefed motions seeking to dismiss the Indictment.

Third, while no judgment has been entered, the absence of a judgment is not dispositive, and the defendants' Motion comes after the defendants have already sought rulings on a number of substantive issues. *See, e.g., Omega Eng'g, Inc.* v. *Omega, S.A.*, 432 F.3d 437, 448 (2d Cir. 2005) (denying motion for recusal where movant "waited until the middle of the evidentiary hearing . . . seven months later—to move for recusal"); *Weisshaus* v. *New York*, No. 08 Civ. 4053 (DLC), 2009 WL 4823932, at *4 (S.D.N.Y. Dec. 15, 2009), *aff'd sub nom. Weisshaus* v. *Fagan*, 456 F. App'x 32 (2d Cir. 2012) (denying motion when a litigant filed a motion to recuse "prior to final judgment, . . . [but only] after the Court ordered Weisshaus to submit to a deposition").

The fourth factor is whether the defendants can establish "good cause" for the delay. Simply put, the defendants cannot satisfy this burden because the very facts that the defendants now rely upon were a matter of public record long before the instant motion. As articulated to the Government, the recusal motion was prompted by a recent article in The Washington Post (the "Post Article") regarding the Government's investigation, which prompted the defendants to conduct additional inquiries. Yet none of the information recited in the Motion is the result of any new developments, and the Post Article largely repeated much of what was already reported in industry news media and elsewhere for roughly a year prior to the filing of the Motion. *See, e.g.*, The Jockey Club, *Statement from The Jockey Club on the Investigation by the FBI and Department of Justice*, March 9, 2020, http://www.jockeyclub.com/Default.asp?section=Resources&area=10&story=1182 (last visited May 13, 2021); Natalie Voss, '*We're Going to Make Some Things Happen': Harness Breeder Offers $250K in Matching Grants For Racing Investigators*, April 28, 2020, https://www.paulickreport.com/news/the-biz/were-going-to-make-some-things-happen-harness-breeder-offers-250k-in-matching-grants-for-racing-investigators/ (last visited May 13, 2021); Natalie Voss, '*Janney: "I Have No Doubt" More Arrests Coming in Connection with Federal Investigation*, Aug. 16, 2020, https://www.paulickreport.com/news/the-biz/janney-i-have-no-doubt-more-arrests-coming-in-connection-with-federal-investigation/ (last visited May 13, 2021).

It strains credulity to suggest that the facts upon which the defendants rely were not known to the defendants and their counsel well in advance of the Motion. Even were these facts not known to these defendants—who are themselves members of the racehorse industry and the subjects of the very reporting that had occurred over the course of a year prior to the instant Motion—the facts were certainly knowable.

b. <u>The Defendants' Motion Does Not Raise A Reasonable Question About the Court's Impartiality</u>

The defendants' Motion raises a number of different bases for recusal, in the hopes that one, or some combination, of these factors will meet the heavy burden of overcoming the presumption of impartiality. The Motion does no such thing.

First, Your Honor's former membership in the New York Thoroughbred Breeders Inc. and former employment at a law firm that represented a racehorse rescue charity, the Thoroughbred Retirement Foundation, has no reasonable bearing on the Court's ability to be impartial in this matter. In particular, the Motion cites for support the New York Thoroughbred Breeders' Association's proposals regarding the use of Clenbuterol—an initiative that does not appear to be led by, or ascribed to, Your Honor—and an affidavit —neither filed, nor sworn to, by Your Honor. The strained connections that the defendants draw between public statements made by organizations, and this Court's supposed perception of the merits of this case, are meritless.

The Motion makes much of Your Honor's fifteen-year membership in the New York Thoroughbred Breeders, Inc., a nonprofit membership organization which purports to "support the continued success of Thoroughbred breeding and racing in New York State" and counts among its "partners" the "NYS Racing and Wagering Board . . . the various sales companies and the NYS legislature," among other industry organizations and state and local entities involved in the racehorse industry. *See New York Thoroughbred Breeders, Inc.*, https://www.nytbreeders.org/about/overview.cfm (last visited May 13, 2021); *New York Thoroughbred Breeders, Inc. - Partners*, https://www.nytbreeders.org/about/partners.cfm (last visited May 13, 2021). The organization does not list, in its stated purpose, anti-doping, the regulation of medication on racehorses, or other matters apart from breeding and the general promotion of Thoroughbred racing. Ascribing to Your Honor any bias on the basis of membership in this organization is baseless.

The Motion quickly pivots to citing the *pro bono* representation of a racehorse-related charity by Your Honor's former employer, the law firm Simpson Thacher and Bartlett, during the time Your Honor was a partner at the firm. The Motion further implies that the representation provided by a 900-person law firm of a racehorse rescue charity, the Thoroughbred Retirement Foundation, demonstrates that the attorneys in that action and, by extension, Your Honor, have adopted the views of this charity, and that the views of the charity are necessarily hostile to the defendants. So far as the Government's research has revealed, Your Honor did not appear as an attorney representing the charity in the litigation in question. *See The People of the State of New York v. Moore et al.*, No. 9400, 2012 WL 12531852 (N.Y.A.D. 1 Dept.). The allegations at issue in that suit were, in substance, mismanagement of charitable funds by members of the charity that was civilly sued. The allegations did not, to the Government's knowledge, touch upon the doping of racehorses. Nor is it clear—given the allegations in the suit—that representation of the charity by *anyone* implies a viewpoint on illicitly medicating racehorses.

Recusal is not warranted where the presiding judge has prior involvement in an industry or association that is the subject of the litigation, but which does not involve the parties or precise matters raised in the litigation in question. It is expected that judges will participate in non-legal activities, even if those activities touch upon matters that are later the subject of litigation. *See United States* v. *Pitera*, 5 F.3d 624, 626 (2d Cir. 1993) (affirming denial of recusal motion where district judge had given speeches to law enforcement agents and prosecutors about "steps they might take to increase the prospects for conviction in narcotics cases," and noting that the judge often lectured at trial seminars); *Da Silva Moore* v. *Publicis Groupe*, 868 F. Supp. 2d 137, 163 (S.D.N.Y. 2012), *objections overruled sub nom. Moore* v. *Publicis Groupe SA & MSL Grp.*, No. 11 Civ. 1279 (ALC), 2012 WL 12528637 (S.D.N.Y. Nov. 8, 2012) (affirming magistrate judge's denial of recusal motion where magistrate judge had spoken and written publicly about the benefits of computer-assisted review in the context of civil discovery, an issue of dispute in the pending case); *In re Judicial Misconduct*, 632 F.3d 1289, 1289 (9th Cir. 2011) ("Engaging in such law-related activities—including speeches that comment on current events and legal developments—is permitted not only because judges are citizens, but because they are particularly knowledgeable on such topics.").

As an illustrative example, former Assistant United States Attorneys ("AUSAs") who have prosecuted members of a particular gang are not required to recuse themselves in subsequent prosecutions involving a different set of members of that same gang. *See, e.g.*, *United States v. Sanchez*, 623 Fed. Appx. 35, 42 (2d Cir. 2015) (summary order) ("Judges in our circuit who previously prosecuted Mafia figures commonly hear cases involving the Mafia. (citing cases)). A former AUSA presiding as a District Judge over the criminal prosecution of a crime family that he or she had previously prosecuted presents a much closer question than the one at issue here. The defendants cannot even point to statements or positions taken by Your Honor in making this argument. The Motion hastily ascribes motives to associations and independent entities, and jumps to conclude that Your Honor's affiliation with those entities—no matter how attenuated—will result in the perception of bias. The law requires that a motion for recusal founded on such baseless assertions be denied.

Second, the Motion raises the speculation – and the Motion essentially acknowledges that this is speculation – that Your Honor may be a "putative victim" in this case on the basis that Your Honor purportedly stood to gain financially from any purse winnings earned by racing horses Your Honor bred. The Motion cites two such horses that competed in a total of four races against either Servis or Navarro between 2006 and 2009. This argument is, likewise, devoid of facts and rife with speculation regarding a hypothetical breeder's stake in the success of a racehorse that is bred and sold, and on charges the Government *could bring, but has not brought,* in this matter.

Your Honor's historical breeding of racehorses, without more, does not place Your Honor in the category of putative victims *in this case*. The fact of any judge's involvement in an industry prior to taking the bench does not imply any impartiality merely due to familiarity with the industry, subject area, or any perceived parallels between a presiding judge and the victims in a particular matter.[4]

---

[4] Indeed, senior judges are not expected to disqualify themselves from cases involving elder

The laws governing New York Thoroughbred breeders treat that category of industry participants differently than other players with direct financial stakes in the outcome of each race in which a particular horse is entered to compete. Unlike trainers and owners, breeders do not as a matter of right receive a portion of purse winnings. Certain stakes races (not every race) include "breeder awards" provided to New York Thoroughbred breeders of New York-sired horses, which are calculated, in part, as a percentage of purse winnings and are, in any event, capped at a particular amount. *See, e.g.*, New York Thoroughbred Breeding and Development Fund, https://www.nybreds.com/awards-program/award-rates/ (last visited May 13, 2021). Eligibility is not automatic, but requires that the breeder's horse be "New York-bred[]," *see* N.Y. Rac. Pari-Mut. Wag. & Breed. Law § 254, that the horse be registered so that it is eligible for this program, *see generally* New York Thoroughbred Breeding and Development Fund, https://www.nybreds.com/registration-status-new.php (last visited May 13, 2021) (database to check registration status of an eligible Thoroughbred horse), and that the horse compete in an eligible race in the State of New York, *see* N.Y. Rac. Pari-Mut. Wag. & Breed. Law § 254.

These criteria are critical to understanding why the argument raised in the Motion— namely, that Your Honor may have a direct financial stake in the outcome of the litigation—is misguided, at best. It is certainly not the case, as the Motion implies, that every Thoroughbred breeder stands to benefit financially from the horses they breed. Certainly, in the four races cited in the Motion, the Government's understanding is that Your Honor did not, in fact, stand to benefit financially based on the outcome of the race because the gating criteria described above were not satisfied – facts that the defendants were well positioned to have identified in the year between indictment and the filing of this Motion. The January 27, 2009 race in Tampa Bay Downs, Florida in which "Here's Ya Souvenir" raced (with a total purse of $9,500 for all competitors and actual purse winnings of $1,710 for a second place finish) and the July 3, 2009 race in Monmouth Park, New Jersey, in which "Last Boat Home" raced (with a total purse of $3,360 for all competitors and actual purse winnings of $140 for a twelfth place finish) both took place *outside of New York State*, and are consequently ineligible for a "breeder award" for a New York-bred horse. To the Government's knowledge, there is no breeder award granted by the States of Florida or New Jersey for horses bred in New York. In any event, "Here's Ya Souvenir," which also raced at Aqueduct in New York on January 14, 2006 (with a total purse of $41,000 and actual purse winnings of $1,230 for a fifth place finish) and January 14, 2007 (with a total purse of $16,000 and actual purse winnings of $64 with a tenth place finish) was not registered to participate in the breeder award program,[5] and therefore its purse winnings are immaterial to the breeder. In sum, the speculation of the Motion is half-baked even as speculation; it is not apparent at all that Your Honor would have any non-speculative financial stake in the outcome of races in which horses bred by Your Honor competed.

---

fraud. No such claims are reasonable in those cases; nor is it reasonable here.

[5] The Government ascertained the registration status of the Thoroughbred horses at issue through a search of a publicly accessible online database. *See* New York Thoroughbred Breeding and Development Fund, https://www.nybreds.com/registration-status-new.php (last visited May 13, 2021).

Moreover, the races cited in the Motion involving horses trained by Navarro and Servis all pre-date the conspiracies charging Navarro and Servis in the S6 Indictment by several years. The Government informed defense counsel in a conference call on May 13, 2021 that the Government has no basis, and no present intention, to supersede the Indictment to extend the time frame of these conspiracies beyond 2016. The Government informed defense counsel that the Government had evidence of positive drug tests associated with horses trained by Navarro; the proof of which extends only as far back as September 10, 2010—more than a year *after* the latest race cited by defendants in the Motion. The Government nonetheless has no present intention of returning a superseding indictment on the basis of this or other tests preceding 2016, does not at present intend to present such evidence at trial, and presently has no basis to believe that new sources of information will arrive to extend the start-date of these charged conspiracies.

The only charged conspiracy overlapping with the time frame in which your Honor was active as a Thoroughbred breeder is the Fishman Misbranding Conspiracy, which is alleged to have begun in 2002. The Government's understanding, and the evidence that it would presently offer at trial, is that, between 2001 and 2016, Seth Fishman was selling drugs predominantly to those involved in racing Standardbred—not Thoroughbred—horses. There is consequently no basis to presume that Your Honor would have had any financial stake, or any involvement in horses raced while doped by Fishman's drugs.

Finally, the defendants' recusal motion cites this Court's personal connection to an individual who is a member of the Jockey Club, whose interests include the application of laws, rules, and regulations to root out illegal or improper conduct in the racehorse industry. The wildly speculative supposition made by defendants is that this Court is so personally or financially entangled with this individual that an objective and reasonable person, aware of all the relevant facts, would conclude that this relationship both prejudices the Court against the defendants and renders the Court unable to "put [these] personal beliefs aside and rule according to the laws as enacted, as required by his or her oath." *Aguinda*, 241 F.3d at 204. As with the suppositions regarding this Court's affiliation with certain associations, the defendants bend over backwards to suggest the specter of impropriety through such a friendship.

Recusal is unwarranted in many cases where the presiding judge knows the very litigants appearing before the Court, let alone a case in which the presiding judge knows a member of an industry group whose leadership may have an interest in the outcome of the Government's investigation. By way of example, former law clerks routinely represent parties in litigation before District Judges for whom they have clerked, with no legal requirement to recuse, *Bailey v. Broder*, No. 94 CIV. 2394 (CSH), 1997 WL 73717, at *7 (S.D.N.Y. Feb. 20, 1997) ("Judge Motley stated, when asked to step down from a case in which an attorney had served as a student law clerk in her chambers two years earlier, that the moving party's argument, 'if taken to its illogical conclusion, would have virtually every judge recuse himself or herself whenever a former law clerk, or any attorney with whom he or she is acquainted for that matter, appears before the court.'" (citation omitted)); so, too, do former colleagues at law firms or other acquaintances, *Gomez v. Vill. of Sleepy Hollow*, No. 07 CIV. 9296 FPS, 2012 WL 1379125, at *3 (S.D.N.Y. Apr. 19, 2012) ("[A]ssociations between a judge and his or her neighbors, friends, and social acquaintances, without an allegation of bias or prejudice, are not sufficient to warrant recusal." (citing *Bailey v. Broder*, No. 94 Civ. 2394, 1997 WL 73717, at *3 (S.D.N.Y. Feb. 20, 1997)); *see also Gomez v.*

*Vill. of Sleepy Hollow*, No. 07 CIV. 9296 FPS, 2012 WL 1379125, at *3 (S.D.N.Y. Apr. 19, 2012) ("I find that my 'relationship' with the family of [one of the parties' attorneys] does not require my recusal."). *Accord Smith v. Pepsico, Inc.*, 434 F. Supp. 524, 525 (S.D. Fla. 1977) (courts have found "an insufficient basis for recusal" "when the trial judge is a former law partner of a firm now appearing in litigation before the court." (citations omitted)).[6]

In an illustrative case, a party to a litigation moved for recusal of District Judge Charles S. Haight on the basis that: (1) a partner in the firm representing one of the litigants, Davis Polk & Wardwell, prepared Judge Haight's will, but had no involvement in the matter being litigated; (2) the Davis Polk partner "in charge of [the] litigation" served with Judge Haight as a member of the board of trustees of a school they had both attended at different times; and (3) former clerks and/or interns of Judge Haight were employed by Davis Polk during the litigation. Judge Haight denied the recusal motion, finding that it would be "pernicious" and "unfair" to require recusal on the basis of these facts.[7]

Here, the defendants argue an even more remote basis for recusal. The defendants take the position that an objective and factually informed person would reasonably conclude that the Court's pre-existing relationship with *a third party* who is a member of the Jockey Club, and in no way involved in or implicated by this case, renders the Court biased. To make this argument, the defendants assume as true the incorrect notion that the Jockey Club is coextensive with the Government in this case—a convenient argument for purposes of the Motion, and based entirely on the defendants' slanted reading of news articles. In another context regarding the propriety of recusal motions, the Second Circuit has emphasized that "[j]udicial inquiry may not . . . be defined by what appears in the press." *Drexel*, 861 F.2d at 1309. Thus, regardless of what allegations, hypotheses, or conspiracy theories are advanced in the press, those are not a basis for recusal. The relevant metric of the Court's impartiality is not – and should not be – a smattering of news articles and suppositions regarding the Government's investigation. *See generally Lovaglia*, 954 F.2d at 815 ("remote, contingent, indirect, or speculative" allegations of bias do

---

[6] *Bailey v. Broder*, No. 94 CIV. 2394 (CSH), 1997 WL 73717, at *7 (S.D.N.Y. Feb. 20, 1997) ("Advisory Opinion No. 11 of the Judicial Conference Committee on Codes of Conduct concerns an inquiry by a judge as to whether he should recuse himself in cases where an attorney is a friend of long standing and also a godfather of one of the judge's children. The Committee, pointing out that Judicial Canon 33 of the ABA makes clear that judges are permitted to have friends and participate in society, responded that the judge was not barred from the case, as a 'godfather' designation may indicate that the attorney is 'merely within the wide circle of a judge's friendship,' although if a "very close friend and almost part of the family," the judge should excuse himself.").

[7] *Accord Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 554 (S.D.N.Y. 2000) ("There is little question that I should not recuse myself" on the basis that, "22 years ago I was a partner at Skadden, Arps, Slate, Meagher, & Flom LLP ("Skadden Arps"), the firm which represents [a litigant] in this action; in the past Skadden Arps assisted my spouse in the preparation of her will; and Skadden Arps provides legal services to the trustee of a trust to which I am a beneficiary.").

not warrant recusal). Nor is it a basis to assume that this Court will adopt the views of the Jockey Club purely by affiliation with a member of the Jockey Club.

There is simply no reasonable likelihood that "an objective, disinterested observer" informed of these facts would "entertain significant doubt that justice would be done absent recusal." *Lovaglia*, 954 F.2d at 815. The Government has no intention of calling as a witness the individual at issue in the defendants' Motion, or indeed any representative of the Jockey Club. As with the example cited above, former AUSAs who serve on this bench preside over cases prosecuted by current AUSAs, some of whom were former colleagues, law clerks, law school classmates, or friends. A reasonable person would not question that a judge can separate their acquaintances' and colleagues' opinions from the litigation at hand, and remain impartial. *Cf. Aguinda*, 241 F.3d at 204 ("[T]he presumption is that a judge will put personal beliefs aside and rule according to the laws as enacted, as required by his or her oath," and no appearance of impropriety is "created by the fact that every judge inevitably has opinions on the controversies of the day."). Indeed, were the court to give credence to such speculative concerns, "the price of avoiding any hint of impropriety, no matter how evanescent, would grant litigants the power to veto the assignment of judges" and "would carry a worthy policy too far." *In re Drexel Burnham Lambert*, 861 F.2d 1307, 1315 (2d Cir. 1988). For all these reasons, this basis for recusal also fails.

Finally, the defendant's Motion includes the lines: "On our call last night, the government acknowledged that the Jockey Club has played a role in the instant investigation. In fact, it stated that government officials met with the Jockey Club as early as 2017." Mot. at 6. This is a stunningly misleading statement given the context of the Government's statement during a call that the Government participated in believing it to be a good faith discussion of the basis (or lack thereof) for the present Motion. As the Government has disclosed through wiretap affidavits and letters to counsel since no later than April 2, 2020, the private investigative group 5 Stones Intelligence provided certain leads to the FBI in the course of its investigation. The FBI then pursued certain leads, declined to pursue others, and made investigative and charging decisions entirely independently of any non-governmental source of information. As noted above, and as expressly stated to defense counsel on May 12, the Government has no intention of calling as a witness in its case-in-chief any representative of the Jockey Club or 5 Stones Intelligence – such witnesses would be unnecessary precisely because of the FBI's extensive and independent efforts to investigate the wrongdoing by these defendants.

**IV.     Conclusion**

Defendants have not satisfied their heavy burden to overcome the presumption of impartiality.  It is apparent from the defendants' shifting theories of perceived bias that the defendants are in search of arguments to justify a position to which they have already committed. Absent additional facts that materially change the analysis and about which the defendants merely speculate, the high standards for the Court recusing itself have not been met here, thus "disqualification is not optional; rather, it is prohibited." *Aguinda*, 241 F.3d at 201.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

by: ___/s/_____
    Andrew C. Adams
    Sarah Mortazavi
    Assistant United States Attorneys
    (212) 637-2520 / 2340

Cc: All defense counsel (by ECF)