USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/14/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

JORGE NAVARRO, ERICA GARCIA, MARCOS ZULUETA, MICHAEL TANNUZZO, SETH FISHMAN, LISA GIANNELLI, JORDAN FISHMAN, RICK DANE, JR., CHRISTOPHER OAKES, JASON SERVIS, KRISTIAN RHEIN, MICHAEL KEGLEY, JR., ALEXANDER CHAN, and REBECCA LINKE,

Defendants.

S6 20-cr-00160 (MKV)

ORDER DENYING MOTION TO RECUSE

MARY KAY VYSKOCIL, United States District Judge:

Fourteen months into this case, Defendants filed a letter motion seeking the Court's recusal, pursuant to 28 U.S.C. § 455(a), based on the Court's past involvement in certain facets of the horse industry. *See* Letter Motion Seeking Recusal, ECF No. 372 ("Def. Ltr."). The Government opposes the request. *See* Letter Opposing Recusal, ECF No. 375 ("Gov. Ltr."). At a previously scheduled status conference on May 14, 2021, the Court denied the motion on the record as a patently frivolous and bad faith filing predicated on manifestly false factual assertions and facts otherwise plainly irrelevant under black letter law. This order memorializes and supplements the Court's oral ruling.

The law is clear that a Party seeking recusal has a heavy burden, and a judge has an "affirmative duty" not to unnecessarily self-disqualify. *LoCascio v. United States*, 473 F.3d 493, 498 (2d Cir. 2007) (quoting *Nat'l Auto Brokers Corp. v. Gen. Motors Corp.*, 572 F.2d 953, 958 (2d Cir. 1978)); *Da Silva Moore v. Publicis Groupe*, 868 F. Supp. 2d 137, 150 (S.D.N.Y. 2012) ("[m]ovants must overcome a presumption of impartiality, and the burden for doing so is substantial." (quoting *Metro. Opera Ass'n v. Local 100, Hotel Emps. Int'l Union*, 332 F. Supp. 2d

1

667, 670 (S.D.N.Y. 2004)) (alteration in original)). Courts have long recognized that such motions are often filed for tactical advantage and not solely based on concerns of impartiality. *See In re F.C.C.*, 208 F.3d 137, 139 (2d Cir. 2000); *United States v. Int'l Bus. Machines Corp.*, 539 F. Supp. 473, 477 (S.D.N.Y. 1982); *In re Olsen*, 358 B.R. 609, 625 (Bankr. S.D.N.Y. 2007). As discussed below, the Government's Opposition accurately puts the lie to the confected charges Defendants level in seeking my recusal, leading to the inescapable conclusion that the motion is a tactical maneuver calculated to obstruct the orderly conduct of this case.

In the Second Circuit, a judge must recuse pursuant to 28 U.S.C. § 455(a), under which Defendants move, only when "an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal," or when "'a reasonable person, knowing all the facts,' would question the judge's impartiality." *United States v. Yousef*, 327 F.3d 56, 169 (2d Cir. 2003) (alteration in original) (quoting *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992)); *see also United States v. Wedd*, 993 F.3d 104, 114 (2d Cir. 2021) (same). Recusal is not appropriate where the circumstances giving rise to the purported appearance of impropriety are "remote, contingent, indirect or speculative." *Lovaglia*, 954 F.2d at 815. Given the many manifestly false factual statements made by Defendants and the irrelevance, under the applicable law, of the rest of the charges in the motion, it is clear that this motion was not made in good faith and is wholly frivolous.

Defendants' primary argument in favor of recusal is based on the fact that more than fifteen years ago I was a breeder of two horses that raced against horses trained by Defendants Navarro and Servis on four occasions between 2006 and 2009. *See* Def. Ltr. at 3. As Defendants surely know, a "breeder" is not an "owner" of a racehorse. *But see* Def. Ltr. at 3 n.3 (describing certain horses as "your horse"). Instead, a breeder is someone who had an interest in the sire or

dam (*i.e.* one of the parents) of a horse that eventually raced.  I held a fractional share interest in the parent horses of those identified by Defendants as racing against their horses in 2006-2009.  To be clear, the *offspring* of horses in which I had an interest—offspring in which I had no interest—ran in races in which Defendants Servis or Navarro-trained horses raced.

Based on this, Defendants then disingenuously argue that because of my role as one of the people involved in breeding the horses, there is a *possibility* that I could have received a "breeder's award" based on the horse's performance.  *See* Def. Ltr. at 3-4.  Defendants further argue that I could be a victim of the crimes alleged in the Indictment in this case.  *See* Def. Ltr. at 4-5.  Both assertions are demonstrably false, based on publicly available information.

As an initial matter, any such *de minimis* potential interest is a "remote" and "speculative" economic interest that the Second Circuit has clearly held is not sufficient to merit recusal.  *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988).  And, significantly, as confirmed by the Government's Opposition to the motion, the races to which Defendants attach significance fall well outside the dates of the conspiracies identified in the Indictment.  *See* Gov. Ltr. at 10.  Unless Mr. Navarro or Mr. Servis intend to admit that they were doping horses as early as 2006, there is no good faith basis to claim I could be a potential victim.

Moreover, the very regulations Defendants cite make clear, *see* Def. Ltr. at 4, a breeder is only eligible for an award under New York law for races run within the state of New York.  *See* N.Y. Comp. Codes R. & Regs. tit. 9 § 4014.1(a).  And, as the Government points out, the same regulations provide that the breeder is not eligible unless the horse is registered with New York State.  *Id.* § 4014.1(b); *see* Gov. Ltr. at 9.  Defendants selectively ignore the fact that two of the races Defendants identify took place outside New York.  *See* Def. Ltr. at 3 n.3.  With respect to the other two races, the Government has presented publicly available evidence that the horse in

those races was not eligible to receive a breeder's award at all, because it was not registered for the breeder's program. *See* Gov. Ltr. at 9.

Defendants' arguments unrelated to a supposed economic interest are even more frivolous, as they attempt to assign to me the views of other people and organizations, most of which I have never been affiliated with. Defendants first point to the fact that for some period of time ending more than five years ago (before I took the bench), I was a member of New York Thoroughbred Breeders Inc. That organization is not a party to this litigation and has not, to my knowledge or based on a review of the parties' submissions, taken any position on the issues here. Defendants also point to my former law partner's involvement with the New York Racing Association, the New York Thoroughbred Breeders, and the Jockey Club. Def. Ltr. at 4. Again, some of Defendants' statements are demonstrably false. For example, the person in question is not on the Board of New York Racing Association ("NYRA") and has not been on the NYRA Board since 2015. In any event, my relationship with someone who is involved in the horse industry is insufficient as a matter of law to be a conflict. *See Gomez v. Village of Sleepy Hollow*, No. 07 CIV. 9296 FPS, 2012 WL 1379125, at *3 (S.D.N.Y. Apr. 19, 2012); *United States v. Nelson*, No. 94-CR-823 (DGT), 2010 WL 2629742, at *5 (E.D.N.Y. June 28, 2010).

Neither the views of the one organization of which I was once a member, nor (clearly) the views of organizations with which I was never affiliated, require my recusal in this case. For example, Defendants' motion makes much of the statements by the Vice Chairman of the Jockey Club, whom I do not know and have never met. I am not and never have been associated with Jockey Club. Moreover, under black letter law, statements like these are immaterial to the question of recusal. *See Sevier v. Hickenlooper*, 2018 WL 447356, at *3 (D. Colo. Jan. 16, 2018) ("[N]o authority suggests an attenuated or past connection to a non-party organization requires

4

recusal in cases where issues arise on which the organization takes positions." (citations omitted); *McNeil v. Aguilos*, No. 91 CIV. 6938 (SS), 1995 WL 406086, at *2 (S.D.N.Y. July 10, 1995) (Sotomayor, J.) (holding that views expressed by the head of an organization to which the judge belonged before assuming the bench were "not necessarily [the views] of the Court" and were not grounds for recusal) *see also Sierra Club v. Simkins Indus., Inc.*, 847 F.2d 1109, 1117 (4th Cir. 1988) ("[P]rior association [membership in the plaintiff organization] does not, in itself, form a reasonable basis for questioning a judge's impartiality").

Indicative of the weakness of this motion, Defendants finally point to *pro bono* representation by my 900+ person former law firm, Simpson Thacher & Bartlett LLP, of a non-profit organization, the Thoroughbred Retirement Foundation, while I was a member of the firm. *See* Def. Ltr. at 4-5. This charity cares for old, retired, and broken racehorses and has no connection to this case or the issues or charges involved. I had no involvement in the representation of the organization and indeed, Defendants do not and cannot allege that I ever worked on any matter related to it. The representation cannot give rise to a conflict or recusal. *Nat'l Auto Brokers Corp.*, 572 F.2d at 958. That the motion even attempts to rely on this representation further illustrates that the motion was filed in bad faith and is frivolous.

Finally, as the Government argues, Defendants delayed in bringing this motion making clear that it is a tactical maneuver. "It is well-settled that a party must raise its claim of a district court's disqualification at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987). All of the information to which Defendants point is publicly available and has been since this case was assigned to me over a year ago.

In short, in light of the factual inaccuracies and otherwise irrelevant "facts" in Defendants' motion, it is clear that "a reasonable person, knowing all the facts" would conclude that my impartiality is not in question. *Wedd*, 993 F.3d at 114. In light of my "affirmative duty" to keep this case absent a clear reason to recuse myself, and given the significant resources the Court has devoted to this case over the last fourteen months, *see LoCascio*, 473 F.3d at 498, the motion to recuse is DENIED. The motion to hold in abeyance the Court's rulings on the pending motions to dismiss [ECF No. 355] also is DENIED.

The Clerk of Court respectfully is requested to close the motions at ECF Nos. 355 and 372.

**SO ORDERED.**

Date: May 14, 2021
New York, NY

MARY KAY VYSKOCIL
United States District Judge