UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA,                         Indictment No.: 20 CR 160 (MKV)


       v.


JORGE NAVARRO, et al.,
(SETH FISHMAN),

                 Defendant.

-------------------------------------------------------------X


**REPLY MEMORANDUM IN FURTHER SUPPORT OF
SETH FISHMAN'S MOTION TO SUPPRESS**



SERCARZ & RIOPELLE, LLP
950 Third Avenue, 32nd Floor
New York, New York 10022
Telephone: 1-212-586-4900
*Attorneys for Seth Fishman*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

THE INITIAL EAVESDROPPING APPLICATION FAILED TO ESTABLISH THE
REQUISITE BASIS FOR A FINDING OF PROBABLE CAUSE .............................................. 3

THE GOVERNMENT FAILED TO DEMONSTRATE THAT NORMAL INVESTIGATIVE
PROCEDURES HAVE BEEN TRIED AND HAVE FAILED, OR REASONABLY APPEAR
TO BE UNLIKELY TO SUCCEED IF TRIED .......................................................................... 4

THE "GOOD FAITH" EXCEPTION TO THE WARRANT REQUIREMENTS DOES NOT
APPLY WHERE THE APPLICATION IS SO LACKING IN INDICIA OF PROBABLE
CAUSE, AND IS SO FACIALLY DEFICIENT, THAT RELIANCE UPON IT IS
UNREASONABLE ................................................................................................................... 7

CONCLUSION......................................................................................................................... 9

## <u>TABLE OF AUTHORITIES</u>

Cases

*Fountain v. United States*, 357 F.3d 250 (2d Cir. 2004)................................................................ 8

*United States v. Biaggi,* 853 F.2d 89 (2d Cir. 1988).................................................................... 2

*United States v. Clark,* 638 F.3d 89, 100 (2d Cir. 2011) ............................................................. 8

*United States v. Raymonda,* 780 F.3d 105  (2d Cir. 2015) .......................................................... 8


Statutes

18 U.S.C. § 2518(3) ..................................................................................................................... 2

18 U.S.C. § 371............................................................................................................................ 8

# INTRODUCTION

In its discussion of the threshold of evidence necessary to support a finding of probable cause, the Government suggests that when presented with a warrant application, the judge must:

> Simply […] make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and the "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Martin,* 426 F.3d 68, 74 (2d Cir. 2005) (quoting *Illinois v. Gates,* 462 U.S. at 238).

(MOL at pp.11-12).[1]

Yet, the Government fails to apply a "practical," "common-sense" approach to its analysis of the various applications for authority to wiretap the Seth Fishman phones.  Instead, the Government's omnibus brief in opposition to the defendants' pretrial motions is a 155 page compendium of arguments and authorities used to support the introduction of evidence, including intercepted communications, without regard to the factual circumstances that gave rise to the application for interception authority.[2]

Absent from the Government's analysis is any consideration that the targeted offenses all involve a "scheme to defraud" regulators, members of the betting public, and competitive horse owners through the "doping" of Standardbred horses.  Equally absent is any consideration of the fact that the target phones were used by a licensed veterinarian whose responsibilities included the writing of prescriptions and the dispensing of medications for the treatment of animals,

---

[1]  Citations in the form (MOL at p.    ) refer to the Government's Memorandum in Opposition.
[2]  The Government acknowledges that the defendant has standing to challenge evidence derived from electronic eavesdropping on the phones of alleged co-conspirators in instances where the defendant is overheard in conversation with others, as well as eavesdropping on those devices for which the Government, in its application for authority, names the defendant as a target-subject of its investigation.  (MOL at n.9, pp.25-26).

including racehorses, and who had no demonstrable financial interest in the outcome of any horserace.

Thus, while the Government's affidavit in support of the initial grant of authority to wiretap the Fishman phones references a confidential source who allegedly purchased PEDs from the defendant (MOL at p. 28); Co-Conspirator-1 who told the agents that two of the co-defendants used products supplied by the defendant (*Id.* at p. 29); and another confidential source, CS-2, who allegedly procured from a co-defendant a painkiller allegedly obtained from the defendant's supposed distributor (*Id.* at 30), the wiretap application did not include evidence (1) providing probable cause to believe that the defendant supplied the product with the requisite knowledge and intent to participate in the targeted conspiracies; (2) that communications relevant to those offenses would be intercepted over the defendant's phones; and (3) that the phone would be used in furtherance of the criminal conduct. *See* 18 U.S.C. § 2518(3); *United States v. Biaggi,* 853 F.2d 89, 95 (2d Cir. 1988).[3]

Moreover, because horseracing is the subject of substantial regulatory and testing regimes throughout the United States, the failure to demonstrate that any racehorse that received products prescribed by, or provided by, Dr. Fishman subsequently tested positive either for banned substances; or, for the presence of inappropriate amounts of other alleged performance enhancing substances, amounts to a failure to demonstrate that less intrusive alternatives to the requested eavesdropping could have been applied.

---

[3]  The Government properly notes that averments containing hearsay are appropriate in an affidavit in support of wiretapping authority.  However, where the Government seeks to link a defendant, and the use of his phone, to a conspiracy to engage in mail and wire fraud, the determination of whether probable cause exists for the grant of eavesdropping authority should include consideration of whether information supplied in support of the warrant consists of eyewitness testimony or multiple levels of hearsay.

2

Finally, the "good faith" exception to the warrant requirement will not support the admission of evidence derived from the instant wiretap applications where it is clear that the application for a warrant to search for evidence of the targeted offenses was a subterfuge to obtain court authorization for the purpose of gathering evidence of the non-targeted crimes ultimately charged; namely, the conspiracy to engage in adulteration and misbranding.

## THE INITIAL EAVESDROPPING APPLICATION FAILED TO ESTABLISH THE REQUISITE BASIS FOR A FINDING OF PROBABLE CAUSE

The Government begins its discussion of "probable cause" by reviewing the regulatory regimes in states of New Jersey, New York and Florida. (MOL at p. 28).  The racing rules in each of these states prohibit the use of certain banned substances and regulate efforts to dispense a broader variety of substances within a given time period prior to a horse race.  For example, the Government notes:

> Under applicable New Jersey racing rules, a horse may not carry in its body "any drug and/or substance foreign to the natural horse," […] Under applicable New York racing rules, banned substances are considered those that are not specifically listed on a prohibited list of substances or in the rule itself, have[ing] a pharmacologic potential to order materially the performance of a horse, had no generally accepted medical use in the horse when treated, and [are] capable of any time of causing an action or effect or both within several body systems of a horse […]; Under applicable Florida racing rules, most substances (except those which are specifically enumerated) cannot be administered to a horse within 24 hours of a race.

(*Id.*).

Among the "practical," "common-sense" considerations that must inform the Court's determination of whether there is "probable cause" is the fact that Dr. Fishman was, throughout the relevant period, a veterinarian, whose responsibilities include the distribution of medications specifically designed to improve the health and well-being of animals including, *inter alia*, racehorses.  It follows that special care should be applied in determining whether there was

probable cause to believe that Dr. Fishman's phones were being used in the furtherance of the "scheme to defraud," rather than the legitimate business of a veterinarian. Yet, while the warrant application included anecdotal evidence that individuals who were believed to be involved in horse doping had obtained products from the defendant, there was no evidence – let alone probable cause – to support the notion that (1) the defendant was involved in the scheme to defraud; (2) he used his telephones in furtherance of the scheme to defraud; or (3) that conversations taking place over the phone provided a link in the chain of conduct involved in the alleged conspiracy.

Thus, the "practical," "common-sense" approach required to determine whether there was probable cause to support a grant of eavesdropping authority fails to establish that the phones would yield evidence of the "scheme to defraud" described in the warrant.  Moreover, for the reasons stated in our original moving papers, the subsequent applications for eavesdropping authority failed to establish probable cause based upon evidence derived from an "independent source," untainted by the evidence derived from the original wiretap application.

## THE GOVERNMENT FAILED TO DEMONSTRATE THAT NORMAL INVESTIGATIVE PROCEDURES HAVE BEEN TRIED AND HAVE FAILED, OR REASONABLY APPEAR TO BE UNLIKELY TO SUCCEED IF TRIED

In its discussion of alternative investigative techniques, the Government is content to rely upon a rote listing of alternative techniques, coupled with conclusory assertions as to why they will not work; rather than an honest effort to discuss alternative techniques in the context of the facts of this case.  For example, the Government is content to note that "The February 14 Affidavit devoted 11 pages to the subject of alternative investigative techniques and why they were unlikely to be successful in investigating Seth Fishman or Oakes."  (MOL at pp. 34-35).

4

The Government goes on to list 11 such techniques together with a perfunctory account of why each of them would have failed. (*Id.* pp. 35-36). This discussion, however, is totally divorced from the facts underlying this particular wiretap application.

Continuing in this vein, the Government is quick to cite the following from the initial application for wiretapping authority on the Fishman phones:

> "'Professional horseracing networks are comprised of individuals well-known to each other, typically with long standing ties' and that people involved in the crimes of alleged are 'reticent to discuss their criminal activity with outsiders.'"

(MOL at p. 35).

However, there is substantial evidence in this case to indicate that Seth Fishman had no comparable reluctance to discuss his products with potential customers unknown to him.

In its initial application for authority to wiretap the Fishman phones, the Government makes reference to CS-4, CC-1 and CS-2, individuals who alleged that they purchased products created and sold by the defendant or others on his behalf. (MOL at pp. 28-30). Conspicuously absent is any suggestion that these individuals, or others, were able to purchase Fishman's product only after a prolonged period during which they were made to earn Fishman's trust.

The Government's theory that Fishman and others who distribute medication for horses represent a "closed circle" is further undermined by the results of the initial grant of wiretap authority. The Government goes on to detail conversations between Fishman and potential customers who remain unidentified or have little or no prior course of dealing with the defendant. (*See* MOL at pp. 42-44).

5

The Government also correctly notes that 18 U.S.C. § 2518(1)(c) does not require a demonstration that every alternative technique must be tried or that all other techniques would be doomed to failure.  (MOL at p. 14).

However, the Government overlooks the fact that both Standardbred and Thoroughbred horse racing were, at the time when eavesdropping authority was sought, subject to a regulatory framework that routinely required blood testing of horses in the aftermath of races; and, provided as well for periodic "out of competition" testing.

Throughout the Government's omnibus brief, much was made of the fact that intercepted conversations involving other defendants are replete with references to the fact that products dispensed to owners and trainers were "untestable," or that steps could be taken to ensure that no evidence of the product would appear in the standard post-race examination.  However, the Government gave no thought to the alternative investigative technique of capturing a horse's blood sample during routine post-race, or "out of competition" testing and sending the sample for a more detailed analysis calculated to reveal, not only the presence of suspicious substances; but also, substances present to a suspicious degree in the body of the racehorse.

In this investigation, it would have been both appropriate and necessary to require that, before granting eavesdropping authority, the Government should demonstrate a connection between prescriptions provided by the defendant, or evidence that the defendant was involved in the distribution of products to owners or trainers, and a resulting blood test in which a racehorse was found to be in violation of a state regulatory regime.  Yet, none of the applications for wiretapping authority demonstrated any such linkage.

The failure to apply this readily available alternative investigative technique, standing alone, warrants suppression of evidence derived from the wiretap of the Fishman phones.


## THE "GOOD FAITH" EXCEPTION TO THE WARRANT REQUIREMENTS DOES NOT APPLY WHERE THE APPLICATION IS SO LACKING IN *INDICIA* OF PROBABLE CAUSE, AND IS SO FACIALLY DEFICIENT, THAT RELIANCE UPON IT IS UNREASONABLE

Notwithstanding several rounds of electronic eavesdropping, and months of additional investigation based upon evidence derived from the resulting conversations, Seth Fishman was indicted only for conspiracy to engage in the adulteration and misbranding of performance enhancing substances.

The Government, clearly aware that these facts raise the inference that it used an application to engage in electronic eavesdropping for evidence of targeted crimes relating to a "scheme to defraud" as a pretext, or "subterfuge," to seek evidence of the non-target offenses of adulteration and misbranding, argues that the "gulf" between a conspiracy to engage in the regulatory crimes of adulteration and misbranding; and, the target offenses is not "wide."  (MOL at pp. 33-34).[4]

To the contrary, the gulf was sufficiently wide that despite months of electronic eavesdropping, and the opportunity to investigate evidence derived from several eavesdropping applications, no charges were brought against the defendant for the target offenses enumerated in each warrant application. In contrast to the elements of the general conspiracy statute charged in

---

[4]  The Government notes that it included reference to the non-targeted crime of conspiracy to engage in adulteration and misbranding in each of the wiretap applications.  However, where probable cause exists only as to these offenses, for which wiretapping authority could not, as a matter of law be obtained, the inclusion of reference to these crimes does not mitigate our contention that the Government was well aware that an application based upon the authority to engage in electronic eavesdropping for evidence of mail fraud, wire fraud and other crimes for which there was clearly no probable cause is, in every material respect, a subterfuge for the effort to collect evidence of adulteration and misbranding which formed the basis for the Indictment in this case.

Counts One and Two of the instant Indictment, s*ee* 18 U.S.C. § 371, the targeted offenses each require, as an object of the requisite "scheme to defraud" unlawfully obtaining "money or property."  *See Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004).  While the Government was able to proffer evidence that among those who obtained products from the defendant were individuals who used these substances as part of a "scheme to defraud," there was no basis for probable cause to infer that the defendant's phone was used in a conspiracy to obtain "money or property" from the alleged victims.

The Second Circuit has found that "good faith" reliance by an officer is unreasonable in at least four circumstances: "'(1) where the issuing Magistrate has been knowingly misled; (2) where the issuing Magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in *indicia* of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.'" *See United States v. Raymonda,* 780 F.3d 105, 118 (2d Cir. 2015)(quoting *United States v. Clark,* 638 F.3d 89, 100 (2d Cir. 2011)).  We contend that the initial application for authority to wiretap the Fishman phones was so lacking in *indicia* of probable cause for the target offenses as to preclude reliance upon the "good faith" exception to the requirement of a valid eavesdropping warrant.

"The burden is on the Government to demonstrate the objective reasonableness of the officers' good faith reliance on an invalidated warrant."  *Clark,* 638 F.3d at 100 (internal quotation marks omitted)."

Accordingly, neither the initial application for wiretapping authority, nor the subsequent applications for extension authority, can be upheld by resort to the "good faith" exception to the warrant requirement in this case.

**CONCLUSION**

For all the reasons set forth herein, and in our original moving papers, we respectfully submit that the relief requested in our motion to suppress should, in all respects, be granted.

Dated:  New York, New York
        September 23, 2021

                                           Respectfully submitted,

                                           SERCARZ AND RIOPELLE, LLP

                                    By: /s/ Maurice H. Sercarz_____
                                            950 Third Avenue, 32nd Floor
                                            New York, New York 10019
                                            Telephone: (212) 586-4900
                                            Email: msercarz@sercarzandriopelle.com
                                            *Attorneys for Seth Fishman*