

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 17, 2021

**BY ECF/EMAIL TO CHAMBERS**
Honorable Mary Kay Vyskocil
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

RE:   *United States* v. *Seth Fishman,* S6 20 Cr. 160 (MKV)

Dear Judge Vyskocil:

The Government writes in brief response to the Seth Fishman's December 13, 2021 letter to the Court opposing bail modification (the "Letter"), chiefly to respond to two points raised in the Letter.

First, Fishman attempts to justify his continued manufacture of drugs by claiming a "good faith" effort to meet the requirements of the "export exemption" set forth in 21 U.S.C. § 381(e). As discussed in the Government's motion *in limine* (ECF No. 572) and opposition to Fishman's motion *in limine* (ECF No. 598), Fishman bears the burden of establishing that his illegal drug sales are exempted from the prohibitions of the Food, Drug and Cosmetics Act ("FDCA") by dint of the export exemption. That exemption applies *only* if, among other things, the drugs shipped overseas "accord[] to the specifications of the foreign purchaser," are "not in conflict with the laws of the country to which it is intended for export," are properly labeled as drugs "intended for export," and are "not sold or offered for sale in domestic commerce."  21 U.S.C. § 381(e).  The defendant has the burden of establishing that this "narrow[]" exemption applies to his foreign sales, which it does not. *See United States v. Kanasco, Ltd.*, 123 F.3d 209, 211 (4th Cir. 1997) ("The burden of pleading and proving the applicability of § 381(e)(1) is on [the defendant]—the party that seeks the benefit of the exemption," and noting that the export exemption must be construed "narrowly" (citing cases)); *see also United States v. Endotec, Inc.*, 563 F.3d 1187, 1195 (11th Cir. 2009) (holding that manufacturer bore burden of demonstrating that the separate "custom device" exception applied, and collecting cases); *cf. United States v. Mayo*, 705 F.2d 62, 75 (2d Cir. 1983) ("The Supreme Court in *Patterson v. New York*, described an affirmative defense as one that 'does not serve to negative any facts of the crime.'" (quoting *Patterson*, 432 U.S. 197, 206-207 (1977))).

Fishman's Letter does not even attempt to suggest that Fishman has or could satisfy those critical elements. Among the drugs observed at Fishman's premises were drugs of the same variety that were previously developed for and sold in the U.S. market. Fishman unsurprisingly provides no records reflecting that such drugs "accord[] to the specifications of the foreign purchaser." Nor

does Fishman attempt to explain the way in which these drugs conform to the "laws of the country to which [the drugs are] intended for export." Notably, Fishman's submission does not even identify the country to which he purportedly intended to ship these drugs. Although he refers throughout to his prior work in the United Arab Emirates, that jurisdiction does not appear to allow for the import of Fishman's drugs absent additional disclosures and approvals by local authorities, none of which Fishman or Equestology has ever produced. *See* Issue of Permit to Import Medicines from a Local Agent, United Arab Emirates Ministry of Health & Prevention, *available at* https://mohap.gov.ae/Handlers/DownloadPDF.ashx?id=29860 (last visited Dec. 17, 2021). [1] Moreover, in the course of the Government's Rule 41 litigation, which is also discussed in the recent motions *in limine*, a particular UAE-based client was unable to identify the purpose, nature, or precise shipments of drugs that the client had purportedly obtained for the purpose of enhancing the fertility of camels. *See* ECF No. 598 at 10 (Gov't Opposition to Fishman Motions *in Limine*, describing the bogus allegations of the Presidential Camel Rule 41 petition, including the claim that drugs seized from Fishman's premises had been designed for the purpose of camel breeding). These failings are compounded by the fact that Fishman's Administrative Assistant in or about November 2021 informed the Government that Fishman was compounding energy drinks and a single brand of ulcer paste for export to *Singapore*, not the United Arab Emirates – there is no indication that Fishman or any local importer is attempting to comply with Singaporean law in any respect.

Second, the defendant suggests that the Government has implicitly condoned his ongoing criminal activity insofar as Fishman and/or his former counsel have claimed that Fishman holds an intention to continue his drug sales in conformity with the foreign sales exemption of 21 U.S.C. § 381(e). Related to this argument, Fishman argues that the Government's motion for revisiting Fishman's bail is motivated by an attempt to disrupt his trial preparation. Neither is true. Fishman was originally charged by complaint in October 2019 and, following his failed effort to avoid charges, was indicted in February 2020. After continued investigation, Fishman was charged in the S6 superseding indictment with, among other things, *continuing to commit his misbranding conspiracy* following his October 2019 arrest. The Government seized Fishman's drugs upon his arrest, and opposed the Rule 41 motion Fishman's apparent foreign customers had filed in the Southern District of Florida, specifically disputing the notion that Fishman's operation had been in compliance with the export exemption. Moreover, as reflected in the reports that Fishman attached to the Letter, in August 2020, Fishman's Administrative Assistant informed the Government that Fishman's operation had essentially shuttered as of that date. *See* Ex. E to Fishman Letter ("EQUESTOLOGY did not continue after the arrests in March 2020. . . . FISHMAN said that he and JORDAN [Fishman] *hoped* to get the business back up and running after they heard what they could and could not do with EQUESTOLOGY and 21st CENTURY BIOCHEMICALS." (emphasis added)).

---

[1] On or about April 3, 2020, the Government served Equestology Inc. with a subpoena seeking, among other things, "any and all documents relating to the following substances, including any and all component chemicals or drugs used to create such substances: . . . HP Bleeder, HP Bleeder Plus, . . . and any and all substances sold to or marketed for sale or use by any trainer, owner, or veterinarian of horses and/or camels." Equestology eventually complied with that subpoena following substantial litigation to compel that compliance.

      Upon reengaging with the Administrative Assistant in preparation for Fishman's trial in or about November 2021, the Government learned from the Administrative Assistant that Fishman was then engaged in sales of "energy drinks" and, for the first time, further learned that this Administrative Assistant had recently prepared shipments of an ulcer paste (a misbranded drug) for shipment to Singapore. That information was provided to the Government on or about November 9, 2021, and the Administrative Assistant provided records of her ulcer paste production between on or about November 9, 2021 and November 14, 2021.[2] The Government followed through with its consent search shortly thereafter, on December 3, 2021, and which time the agents became aware that the Administrative Assistant had neglected to mention the large quantities of still other drugs being manufactured by Fishman. In short, the Government acted when it obtained information suggesting that a consent search of Fishman's operation might reveal continued operation of his illegal drug business, which it in fact has.

      Finally, the Government notes that Fishman points to no authority for the proposition that a proffering witness cannot provide voluntary consent to a search. The notion is patently absurd as even an *arrested defendant* can voluntarily consent to speak with law enforcement and to premises searches. Here, the Administrative Assistant – who enjoyed the benefit of counsel throughout her dealings with the Government – was plainly positioned to provide knowing and voluntary consent to the search of her own workspace, and the investigating agents were entirely justified in relying on that authority.

      Respectfully submitted,

      DAMIAN WILLIAMS
      United States Attorney

by: _____
      Andrew C. Adams
      Sarah Mortazavi
      Assistant United States Attorneys

CC: Maurice Sercarz, Esq. (counsel for Seth Fishman)

---

[2] A copy of the draft notes of the November 9, 2021 proffer of the Administrative Assistant is attached as Exhibit A hereto and is submitted under seal.