M1DCnavC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4                v.                        20 Cr. 160 (MKV)

5   JORGE NAVARRO, et al.,

6                   Defendants.

7   ------------------------------x

8                                          New York, N.Y.
                                           January 13, 2022
9                                          11:14 a.m.

10
    Before:
11
                       HON. MARY KAY VYSKOCIL,
12
                                           District Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

M1DCnavC

                                            APPEARANCES

DAMIAN WILLIAMS,
          United States Attorney for the
          Southern District of New York
BY:  SARAH MORTAZAVI
     ANDREW ADAMS
     ANDEN FONG CHOW
     Assistant United States Attorneys

COLSON LAW PLLC
Attorney for Defendant Erica Garcia
BY:  DEBORAH A. COLSON

THE LAW OFFICE OF DONALD T. ROLLOCK
Attorney for Defendant Michael Tannuzzo
BY:  DONALD T. ROLLOCK

SERCARZ & RIOPELLE LLP
Attorneys for Defendant Seth Fishman
BY:  MAURICE H. SERCARZ
     MARC A. FERNICH

FASULO BRAVERMAN & DIMAGGIO
Attorneys for Defendant Lisa Giannelli
BY:  LOUIS V. FASULO
     ALEX S. HUOT
     SEAN MCCABE

THE C.H. SCHOLAR LAW FIRM
Attorney for Defendant Rick Dane, Jr.
BY:  CALVIN H. SCHOLAR

GLAVIN PLLC
Attorneys for Defendant Jason Servis
BY:  RITA M. GLAVIN

DAVID PATTON
FEDERAL DEFENDERS OF NEW YORK
          Attorney for Defendant Alexander Chan
BY:  ROBERT M. BAUM
     JENNIFER BROWN

ALSO PRESENT:
     Emma Maya Greenwood
     Karline Jung, USAO Paralegal

M1DCnavC

```
 1              (Case called)
 2              THE DEPUTY CLERK:  As I call the defendant's name,
 3      counsel, please state your name for the record.
 4              Erica Garcia.
 5              MS. COLSON:  Good morning, your Honor.  Deborah Colson
 6      for Dr. Garcia.  She has waived her appearance today and
 7      consented to my appearance over video.
 8              THE COURT:  Good morning, Ms. Colson.
 9              THE DEPUTY CLERK:  Michael Tannuzzo.
10              MR. ROLLOCK:  Donald Rollock for Michael Tannuzzo,
11      appearing virtually, your Honor.  My client's appearance was
12      waived.  He also executed the waiver to appear and has
13      consented to me appearing virtually.
14              THE DEPUTY CLERK:  Seth Fishman.
15              DEFENDANT SETH FISHMAN:  I'm here, your Honor.
16              MR. SERCARZ:  For the defendant, Seth Fishman, Maurice
17      Sercarz and Marc Fernich.  I note that Mr. Fishman is appearing
18      remotely, your Honor, and he appears to be involved.  He
19      appears to hear us, perhaps he can wave to make sure.
20              THE COURT:  Thank you.  Good morning, Mr. Sercarz and
21      Mr. Fernich.
22              I think Dr. Fishman did state his appearance; correct?
23      Dr. Fishman, you can hear us?
24              DEFENDANT SETH FISHMAN:  Yes, that is correct, your
25      Honor.
```

M1DCnavC

1        THE COURT:  Good morning, sir.

2        THE DEPUTY CLERK:  Lisa Giannelli.

3        MR. FASULO:  Good morning, your Honor.  Louis Fasulo

4    of Fasulo Braverman & DiMaggio, along with Alex Huot, who is on

5    video remote, and Sean McCabe from my office.  And I believe

6    Ms. Giannelli is on video as the Court ordered.

7        THE COURT:  Good morning, Mr. Fasulo and cocounsel.

8    Cocounsel are on remote?

9        MR. FASULO:  Cocounsel is on remote.

10       MR. HUOT:  Yes, your Honor.  Ms. Giannelli is on by

11   telephone.  She wasn't able to access the link, so she dialed

12   in.

13       THE COURT:  Why was she unable to access?

14       MR. HUOT:  She was trying to enter it and it just

15   wasn't working for her.  At about 11:10, we said to just go

16   ahead and dial in because it had been so long.

17       THE COURT:  She should remain dialed in, but one of

18   you who are representing her should send her the link.

19       MR. FASULO:  We did, your Honor.  She had the link

20   this morning.

21       MR. HUOT:  She has it.  I don't know if -- Lisa, if

22   you want to -- if there was a particular error that was popping

23   up or something.

24       DEFENDANT GIANNELLI:  Yes, your Honor.  I tried to do

25   the link.  I don't have a Microsoft account on my phone for

1    some reason, and I panicked and I wanted to make sure I was

2    here, so they told me to dial in.

3              THE COURT:  All right.  Thank you.

4              THE DEPUTY CLERK:  Rick Dane, Jr.

5              MR. SCHOLAR:  Good morning, your Honor.  Calvin

6    Scholar for Mr. Dane.  Mr. Dane has dialed in, as well.

7              THE COURT:  Mr. Dane is by video or by telephone?

8              MR. SCHOLAR:  He's by telephone.  He's on the line

9    ending in 23.

10             DEFENDANT DANE:  Good morning, your Honor.  I'm

11   present.

12             THE COURT:  Good morning, Mr. Dane.

13             THE DEPUTY CLERK:  Jason Servis.

14             DEFENDANT SERVIS:  Good morning, your Honor.  I'm on

15   the line.

16             THE COURT:  On the telephone, Mr. Service?

17             DEFENDANT SERVIS:  Yes.  Yes, your Honor.

18             THE COURT:  And Ms. Glavin, do you hear us?  We don't

19   hear you, though.  We're not hearing you, Ms. Glavin.  You need

20   to turn your microphone on.

21             THE DEPUTY CLERK:  Microphone is still not on.

22             THE COURT:  Maybe we can get the AV people to help

23   Ms. Glavin while we continue the rest of the roll call.

24             THE DEPUTY CLERK:  Alexander Chan.

25             MR. BAUM:  Good morning, your Honor.  Robert Balm on

M1DCnavC

1    behalf of Mr. Chan.  Mr. Chan has waived his appearance and we

2    filed the appropriate affidavit for Mr. Chan.

3            Judge, may I ask the Court an additional question at

4    this point?

5            With the Court's permission, I have a sentencing for

6    an incarcerated client at 12 o'clock with Judge Berman.  I made

7    arrangements to be replaced by a colleague from my office,

8    Jennifer Brown.  With the Court's permission, I would like to

9    leave and allow Ms. Brown to remain for the rest of the

10    conference.

11            THE COURT:  Is Ms. Brown here?

12            MR. BAUM:  She will be arriving in about 10 minutes,

13    Judge.

14            THE COURT:  All right.  That's acceptable to the

15    Court.

16            MR. BAUM:  Thank you, your Honor.

17            THE COURT:  Assuming you've talked about all this with

18    your client, who doesn't seem to think it's important to show

19    up today.

20            MR. BAUM:  My client couldn't take the time off from

21    work, and he apologizes.

22            THE COURT:  It's his rights that might be impacted

23    here.

24            MR. BAUM:  Understood, your Honor.  Thank you.

25            THE COURT:  Ms. Dempsey, would you continue calling

M1DCnavC

 1    the roll.

 2         THE DEPUTY CLERK:  Yes.  And the government, please

 3    state your name.

 4         MS. MORTAZAVI:  Yes.  Good morning, your Honor.  Sarah

 5    Mortazavi, Andrew Adams, and Anden Chow.  And we also have

 6    present at counsel table our paralegal, Karline Jung.

 7         THE COURT:  Good morning, Ms. Mortazavi and Mr. Adams

 8    and Mr. Chow.  And I'm sorry, your name, ma'am.

 9         MS. JUNG:  Karline Jung.

10         MS. MORTAZAVI:  Karline Jung, your Honor.  J-u-n-g.

11         THE COURT:  Thank you.  Welcome.

12         MS. MORTAZAVI:  Your Honor, Emma Greenwood is also on

13    the line with us.

14         THE COURT:  Ms. Greenwood, thank you for being here

15    with us.  Can you hear us clearly?

16         MR. ROGACZEWSKI:  Yes, I can, your Honor.  Good

17    morning.

18         THE COURT:  Good morning.  Let me circle back.

19         Ms. Glavin, are you squared away?

20         MS. GLAVIN:  I think so.  Can you hear me now?

21         THE COURT:  Yes, we can, loud and clearly.

22         MS. GLAVIN:  Eagle has landed.

23         THE COURT:  Good morning, everyone.  We do have a

24    court reporter with us this morning.  Mr. Malinowski.

25         So, let me just, for the sake of good order, deal with

M1DCnavC

1    the fact that we are here for both a pretrial conference in

2    connection with the Group 1 defendant trial and for a general

3    status conference with regard to the rest of the defendants in

4    this case.

5         I noticed today's hearing to be an in-person hearing.

6    I noted that in an order, dated January 11th, and I thereafter

7    received then requests from a number of defense counsel asking

8    if either they and/or their clients could appear remotely.

9    Those counsel largely cited concerns about COVID.  Although, as

10   we've heard, some people have some other reasons for not being

11   here.

12        I am in the courtroom as are a number of counsel.  I

13   did agree, though, to allow all defense counsel not involved in

14   the Group 1 trial and any defendant who didn't wish to appear

15   in person to participate by videoconference if they waived

16   personal appearance.

17        I want to note that since this is merely a status

18   conference with respect to the Group 2, 3, and 4, for now,

19   trial groupings, it's not even clear that those defendants need

20   to or have a right to be present at this proceeding, and I just

21   refer to Rule 43(b)(3) of the Federal Rules of Criminal

22   Procedure.  It may be a different question with regard to the

23   Group 1 defendants with respect to whom we're holding a

24   pretrial conference.

25        In any event, pursuant to the authority provided by

M1DCnavC

1    Section 15002 of the CARES Act and standing orders issued by

2    our chief judge pursuant to that act, I can conduct proceedings

3    remotely, even a proceeding at which a defendant is ordinarily

4    required to or has a right to be present.

5        The CARES Act provides, as we all know by now, that a

6    court may conduct certain felony proceedings by videoconference

7    when:

8        One, the chief judge of the district orders that

9    proceedings cannot be conducted in person without seriously

10    jeopardizing public health and safety; and

11        Two, when the district judge in a particular case

12    finds for a specific reason that the proceeding in that case

13    cannot be further delayed without serious harm to the interest

14    of justice.

15        By standing order, dated September 15th, 2021, Chief

16    Judge Laura Taylor Swain made the finding required by the first

17    part of the CARES Act.  I find, given how long this case has

18    been pending and that we are scheduled to begin a trial in this

19    case next week, the conference cannot and should not be delayed

20    without serious harm to the interest of justice.

21        The Court has received, for all of the defendants who

22    are not present in the courtroom, signed waivers of their right

23    to be present and consents to proceed by videoconference.

24    Counsel who are present in the courtroom have noted their

25    appearance on the record already.  And as we went through the

M1DCnavC

 1  list of appearances, I have confirmed that all counsel and all

 2  defendants who have appeared are able to see and to hear

 3  clearly.

 4       I would note that with respect to the Group 1

 5  defendants — and I'm singling them out again because we do have

 6  a trial in that case scheduled for next week, so today's

 7  proceeding takes on a slightly different character — counsel

 8  for Ms. Giannelli, Mr. Fasulo is present in the courtroom.

 9       Ms. Giannelli filled out a form consenting to proceed

10  by videoconference and waiving her right to be present in

11  person.  She's noted that she had technical difficulties this

12  morning and was unable to connect to the videoconference.

13       So I do find that she has knowingly and voluntarily

14  waived her right to be present in person and that, due to

15  technical problems, she cannot participate by videoconference.

16       But, Ms. Giannelli, are you consenting, nonetheless,

17  to proceed telephonically?

18       DEFENDANT GIANNELLI:  Yes, your Honor, I am.

19       THE COURT:  I note, too, that counsel for Mr. Fishman,

20  Mr.Sercarz and Mr. Fernich are here in the courtroom, and

21  Dr. Fishman has signed a waiver of his right to be present in

22  person and has consented to proceed by videoconference.  I see

23  Dr. Fishman on my video screen.

24       Dr. Fishman, you have confirmed that you can see and

25  hear clearly?

M1DCnavC

1      DEFENDANT SETH FISHMAN:  Yes, I can, your Honor.

2  Thank you.

3      THE COURT:  And you waive your right to be present in

4  open court, notwithstanding that we're conducting a pretrial

5  conference in connection with your case; correct?

6      DEFENDANT SETH FISHMAN:  Yes, I do, your Honor.

7      THE COURT:  All right.  So we have on the record that

8  the following defendants and their counsel are participating

9  remotely:  Defendant, Mr. Servis and his counsel, Ms. Glavin.

10  And I have a waiver and a consent from Mr. Servis; correct,

11  Ms. Glavin?

12      MS. GLAVIN:  That's correct, your Honor.

13      THE COURT:  Thank you.  Mr. Dane is not participating?

14  Let me just confirm if I'm correct on that.  Mr. Dane is

15  present by telephone.  His counsel, Mr. Scholar, is also

16  participating remotely, and I have waivers and consents from

17  Mr. Dane; correct?

18      MR. SCHOLAR:  That is correct, your Honor.

19      THE COURT:  Mr. Tannuzzo and his counsel are

20  participating remotely, and I have a waiver and consent, as

21  well; correct?

22      MR. ROLLOCK:  That is correct, your Honor.  Correct.

23      THE COURT:  Mr. Garcia and her counsel, Ms. Colson,

24  are participating remotely, and I have a waiver and a consent

25  to proceed by video; correct?

M1DCnavC

1          MS. COLSON:  That is correct, thank you, your Honor.

2          THE COURT:  Finally, Mr. Chan is waiving any

3   participation in today's proceeding.  Is that clear from what

4   he has signed?

5          MR. BAUM:  I hope so, your Honor.  That was his

6   intention and in signing the affidavit on his behalf.

7          THE COURT:  And you've discussed his right to

8   participate remotely?

9          MR. BAUM:  Yes, your Honor.  I also discussed the

10   issues -- the anticipated issues and he consented to waive his

11   appearance.

12          THE COURT:  All right.  So the Court does accept each

13   of the waivers of personal appearance and consents to proceed

14   by videoconference.  I find that those waivers have been

15   knowingly made.  I will sign them, accept them, and file them

16   on the docket in connection with today's conference.

17          So, the first order of business, as I said, we're here

18   for a general status conference in this matter, but also for a

19   pretrial conference in connection with the Group 1 defendants.

20          Ordinarily, I would simply deal with the general case

21   conferencing issues and then excuse anybody who wishes to be

22   excused and proceed with what we need to talk about with regard

23   to phase 1.  There is a little bit of a going around in circles

24   that occurs here, though, because if I excuse everyone and then

25   we have a conversation about the Group 1 trial, the outcome of

M1DCnavC

```
1    that conversation could well impact some of the other

2    defendants, which is why, when I received a request for people

3    to be excused from attending today altogether, I felt compelled

4    to deny that request since people's rights may be impacted by

5    decisions that get made.

6          I would like, before I turn to the Group 1 trial

7    issues, to get a general update, though, on the status of

8    discovery and the case in general.

9          So who is prepared to address that?

10         MS. MORTAZAVI:  I'm happy to address that, your Honor.

11         THE COURT:  Thank you.

12         MS. MORTAZAVI:  With respect to discovery, all

13   discovery has now been produced.  As we've reviewed for the

14   Court before, as we receive documents in some cases, because

15   witnesses are voluntarily turning them over, we are continuing

16   to produce them.

17         In fact, yesterday, we received a document for the

18   first time and we produced it to the defendant to whom that

19   document pertained.  We will continue to fulfill our discovery

20   obligations as needed.

21         We have also, with respect to the Group 2 remaining

22   trial defendant, who is Mr. Dane, we've already come upon our

23   first deadline for the Group 2 trial, which was the expert

24   disclosure deadline that the Court set for last week.  We made

25   our disclosure to Mr. Scholar, and we are prepared to continue
```

to meet all pretrial filing deadlines leading up to the trial.

Apart from that, we are engaged in discussions with other defendants in this matter about the possibility of a pretrial disposition.  We have nothing to bring to the Court's attention, but if that changes, we will certainly alert the Court.

THE COURT:  All right.  So, in connection with the Group 2 trial, a question that just jumps out is obviously we had eight defendants remaining who needed to go to trial and we had originally talked about four separate trial groups.  There are severance motions that are going to be made, and I want to talk to people about that in a moment with respect to whether the Group 3 and Group 4 trials should be one trial or two separate trials.  But in the interim, Dr. Linke has entered into a deferred prosecution agreement with the government, which we've taken care of, and that leaves Mr. Dane as the sole defendant in Group 2.

Is it still the view of the government that you would proceed with a trial solely against Mr. Dane or can he be combined with any of the other existing trial groups?

MS. MORTAZAVI:  Your Honor, I don't believe that he could, just based on the issues that would be raised at Mr. Dane's trial versus the issues that would be raised in a Group-3 or a Group-3-and-Group-4 trial.

As we stated at the prior conference, the four

M1DCnavC

defendants — apart from Mr. Dane — who are remaining have

closely-related issues.  Mr. Dane is not in that category.  So

we think it would just be more efficient and expeditious to

resolve his trial before turning to the remaining defendants.

THE COURT:  All right.  The next thing that's case

specific, general to all defendants, is Ms. Greenwood.

Is there anything further that you wish to tell me

with respect to discovery?  I did receive an ex parte interim

report or update from Ms. Greenwood, I have read that.  I have

a general understanding of the status of discovery, but

Ms. Greenwood, is there anything you want to say for the

record?

MS. GREENWOOD:  Thank you.  Just to clarify, and I,

since the last conference, received two productions, global

productions that is for all defense counsel on December 7th, I

believe, and December 28th, the latter of which was produced in

two parts and was more voluminous than the initial production.

So it has not been that long since defense counsel had received

the productions from my office, but we distributed the latter

on December 29th and December 30th.

THE COURT:  Is there anything that any defendant

wishes to say for the record with regard to discovery or case

status generally?

MS. GLAVIN:  Your Honor, this is Rita Glavin for Jason

Servis.

M1DCnavC

1          The observation, just simply to emphasize against the

2     Court, I haven't had a chance, these most recent productions

3     that Ms. Greenwood referred to, and they're not small

4     productions.  I have not had a chance to go through them.  And

5     all of this informs the issues of severance motions, and

6     certainly what I'm thinking about for trial strategy.  So I

7     have to go through this.  So I just want to bring it to the

8     Court's attention.

9          I know that the government takes the view, as they

10    have often throughout the case, that this may not be relevant

11    to me or should be easy to go through.  I know you have always

12    extended an offer to help us go through discovery, but it comes

13    down -- the bottom line is that each of us, regardless how

14    people characterize discovery, I'm looking at different things

15    and I have different thoughts about it and different

16    perspectives and I don't want to share that with the

17    government.

18         So I just bring that to the Court's attention because

19    I think in the regular discussions I have with my colleagues,

20    who represent other defendants in this case, we've all been

21    trying to work collaboratively, and we're all encountering the

22    same issues with the volume of this.

23         I wanted to make a record on that point because I

24    think it's important.

25         THE COURT:  I understand what you're saying.  So it

M1DCnavC

```
1   does bring me to another more general topic that I want to talk
2   about, and that is that after -- I believe our last conference
3   was November 4th.  At that conference, we talked about whether
4   there still needed to be four separate trial groups and I gave
5   the defendants, I believe, until November 18th to advise the
6   Court whether they objected to combining groups 3 and 4.  I
7   received a letter from Ms. Glavin proposing a schedule for
8   briefing of a severance motion.  I took that to mean that the
9   defendants don't believe Group 3 and 4 can be joined, and the
10  government has a different view.

11          Am I correct about that?

12          MS. MORTAZAVI:  Your Honor, I believe you are.  Since
13  the last conference, we did confer with defense counsel and
14  outlined our views.  They took them into consideration so that
15  they would speak amongst themselves and evaluate their
16  position, and I took their proposed briefing schedule as an
17  indication that they do believe that the trial should be
18  severed.  The government's view remains that it's appropriate
19  for those four individuals to be tried together for purposes of
20  efficiency.

21          THE COURT:  All right.  Ms. Glavin, is that a fair
22  summary?

23          MS. GLAVIN:  Yes.  Your Honor, I have not made a final
24  decision on this.  There is just one that I'm just going
25  through, I'm trying to assess coconspirator statements, and
```

M1DCnavC

1    there is a lot of them.  So I have spoken with my colleagues

2    within the Group 3 and 4, and I don't think any of us have made

3    a final decision on this, particularly as we look through.  I

4    mean, we need to go through the calls for the defendants.

5         THE COURT:  I understand.  So the reason I was asking

6    that is I wanted to know, first of all, do we need motion

7    practice on the severance issue or was there some agreement,

8    but there is no agreement?

9         But also, if you're telling me you have not -- and I

10   appreciate that you're telling me you're not yet in a position

11   to have a final view on it, but as I understand it, the

12   briefing schedule calls for your briefs right now, your motion,

13   on January 31st.

14        If it develops as a result of the timing of discovery

15   that we need to adjust the schedule, I assume I'll hear from

16   you.

17        MS. GLAVIN:  Yes, your Honor.  And so the Court is

18   aware, we had a call amongst defense counsel and the group

19   yesterday, because I think we all want to make decisions — if

20   we can — together, and nobody wants to engage in unnecessary

21   motion practice.  So if we need a little more time, we will

22   certainly apprize you promptly.

23        THE COURT:  That's why I'm asking the question.  I

24   don't want to entertain motion practice if there are things we

25   can resolve, but I'll await further advice from everyone.

M1DCnavC

1              Go ahead, Ms. Mortazavi.

2              MS. MORTAZAVI:  Pardon me, your Honor.  I want to put

3     one point on the record.

4              THE COURT:  Sure.

5              MS. MORTAZAVI:  Both to respond to Ms. Glavin's

6     comment and to just provide context to the Court about why it

7     is that discovery is continuing to be produced.

8              The latest group general discovery production was

9     several gigabytes and was produced in two phases.  As

10    Ms. Greenwood pointed out, everything that we could make

11    available through our USA Flex platform, which is essentially

12    instantaneous, we did try to make available.

13             The voluminous part of the discovery that we could

14    disseminate in that manner was a phone that we only recently

15    were able to unlock in order to access the contents and search.

16    So, of course, we have an obligation to disseminate that phone

17    in discovery.  It was Mr. Tannuzzo's cellphone that was found.

18    So I understand Ms. Glavin's comment that she would like to

19    review the contents of that phone before making a motion, but

20    the timing of it is such that we get access to it when we get

21    access to it.

22             THE COURT:  Right.  Look, that's fine.  I have to say

23    that for a case with this volume of discovery and this number

24    of defendants, generally speaking, you've all been working

25    cooperatively, and I don't think that people are casting

1    aspersions in terms of discovery, but I do think Ms. Glavin's

2    position that she needs time to review that to decide whether

3    she wants to make a severance motion is reasonable.

4           MS. MORTAZAVI:  Of course.  And that's why I outlined

5    that it was Mr. Tannuzzo's phone.  I understand why she's

6    making the comments she is, but I wanted to put on the record

7    the reason why the latest discovery is being characterized as

8    voluminous and why it came, relatively speaking, so late in

9    this case.

10          THE COURT:  Thank you.  Anything else in terms of

11   general case status that we should talk about?

12          All right.  Let me just pause for one moment.

13          (Pause)

14          All right.  Normally, I would say to the defendants —

15   who are not Group 1 defendants at this point — we should talk

16   about a further status conference and exclusion of time, but as

17   I said, there are some issues with regard to the Group 1

18   defendants that I think potentially bear on everybody.  So, I'm

19   going to turn now to Group 1 and we'll circle back at the end

20   to where we're going in general.

21          I want to put the following on the record by way of

22   chronology.

23          As you all know, this case was filed in March of 2020.

24   I advised the parties last spring that they should be ready for

25   trials to begin in the fourth quarter of last year, and you all

M1DCnavC

```
 1    talked about and you all agreed to various trial groupings.

 2    People in Group 1 were told that the Group 1 trial, I would be

 3    requesting a slot for the fourth quarter.  We were given a slot

 4    for November 15th of 2020 and I advised people of that in

 5    August of last year.

 6            We had a general conference in this case in September.

 7    In advance of that conference, I received letters from counsel

 8    to Dr. Fishman and counsel to Ms. Giannelli, writing to me

 9    telling me that they had been told to be trial ready in other

10    cases, and they asked to push the Group 1 trial to the first

11    quarter of 2022.

12            In those letters, the defendants expressly waived

13    their speedy trial rights.

14            At the conference that we held on November 4th, I

15    offered to the Group 1 defendants that we could actually move

16    the trial up a little bit since I had another trial slot in

17    early November, which case was resolved and the trial was not

18    going to go forward, and because of the schedule that you had

19    all worked out, which is a perfectly legitimate issue, that

20    earlier trial date did not work to do the Group 1 trial.

21            I told people at that time, and I entered an order — I

22    think that's ECF 551 — in which I said the Group 1 defendants

23    were on notice that I was going to be requesting a trial date

24    for the first quarter of 2022, and that the Group 2 defendants

25    were on notice that I would request a trial date for the latter
```

M1DCnavC

1    part of the first quarter of 2022, and that the parties needed

2    to be prepared to proceed accordingly.

3            When the calendar came out for the first quarter, I

4    immediately advised people on December 1st that we were

5    assigned, for Group 1, the first backup slot for January 19th

6    and that the defendants needed to be ready to proceed to trial

7    on that date.

8            On January 7th, I entered an order advising everyone

9    that the trial that was ahead of us on the schedule for January

10   19th had been adjourned, and therefore the Group 1 trial was

11   moving forward on January 19th.

12           Three days later, on January 10th, I received a letter

13   from counsel to Ms. Fishman asking to adjourn next week's

14   trial.  She told me in that letter, or her counsel did, that

15   Dr. Fishman would be joining in that request and filing a

16   separate letter.  That letter came in on the 12th of January,

17   yesterday.

18           I have not received any position from the government

19   with respect to this request, although the government has

20   complied with all of the pretrial deadline submissions that I

21   had set and had submitted proposed requests to charge, proposed

22   voir dire questions, and a proposed verdict form.

23           Dr. Fishman submitted a two-page, single-spaced list

24   of subject matters on which he requested that I give a charge.

25   He submitted no voir dire questions and no verdict form.

1            And by the way, those deadlines were all extended, for

2    good reason, at request of counsel.  The reason is a good

3    reason and I hope things are good on that front or improving on

4    that front.

5            I entered an order making it very clear that what had

6    been submitted on behalf of Dr. Fishman was wholly

7    unacceptable.  No experienced lawyer practicing in this

8    district thinks that an order to submit proposed requests to

9    charge means give me a laundry list of topics on which you want

10   me to charge the jury.  It means give me the language that you

11   want me to use in charging the jury and give me authority for

12   those requests to charge.

13           In any event, that's the state of the record that the

14   Court had.  I entered an order to the effect that what had been

15   submitted by Dr. Fishman in terms of requests to charge was not

16   adequate.  I then received from the government a letter I

17   believe advising me that you were going to confer with the

18   other side and submit something jointly in terms of request for

19   charge and verdict forms and proposed voir dire, and I have

20   received those materials and we can talk about them in a

21   minute.  I do have some questions.

22           The current question before the House is the request

23   by defendants to adjourn next week's trial.  I note portions of

24   those requests are redacted and, with the Court's permission,

25   had been filed under seal.  So I don't want to discuss in open

M1DCnavC

court the details of the reasons for those requests.

I note three things.

One is that with regard to Ms. Giannelli's request, the reasons she offered are largely, if not, wholly, within her own control.

Second, with respect to both parties' requests, Dr. Fishman's and Ms. Giannelli's, neither of the reasons given is news to anybody. You've known of these circumstances for quite some period of time, and I'm just baffled at why you would wait, other than for strategic reasons or because you're otherwise unprepared, which certainly does seem to be what's suggested by the submissions that were made initially, at least by the defendants, that you're otherwise unprepared to go to trial.

And the third observation that I'm going to make is that neither of the requests that I received, unlike the last time, neither of them contain an express waiver of defendant's speedy trial rights.

So, I'm prepared to hear from people, but the Court's view is -- let me just give you a few facts.

As you well know, the Southern District has a series of protocols in place. I certainly am very careful. I just paused to say to someone they're not following our COVID protocols and to ask them to please comply. The court has a number of protocols in place in order to deal with risks as a

1    result of COVID.  We have conducted, in the Southern District,

2    more than 100 jury trials during the course of COVID without

3    any significant incident.  So, the Court is really not inclined

4    to adjourn next week's trial.

5              I will hear from the parties.

6              MR. FASULO:  Judge, if I may, on behalf of

7    Ms. Giannelli.  Should I stand?

8              THE COURT:  You don't have to spanned stand because I

9    think it's easier for the court reporter to hear when you're

10    speaking directly into the microphone, but identify yourselves

11    for the record.

12              MR. FASULO:  This is Louis Fasulo for Ms. Giannelli.

13    Just a couple of things.

14              You said the defendants are not prepared.  We

15    submitted all pretrial motions on behalf of Ms. Giannelli.

16              THE COURT:  You did.

17              MR. FASULO:  On time.

18              THE COURT:  You did.

19              MR. FASULO:  And, in fact, we are prepared.  So I take

20    offense to that comment because we are ready to move forward

21    and we worked very hard in this case.  We have a whole team of

22    people working and we continue to work on the case.  So I don't

23    know if you're referring to us, but we did submit, pursuant to

24    the Court's order, and we asked that we wait a day because both

25    the government and the defense was not really clear about the

M1DCnavC

```
 1    joint submission, and we got together and we got the joint
 2    submission in --
 3               THE COURT:  You did.  You did.  Hold on.  Hold on.
 4    Let's not talk over each other.
 5               I think I said that on the record, that Ms. Giannelli
 6    did comply with the deadlines.
 7               MR. FASULO:  You missed that, Judge.  You skipped
 8    that.  That was not on the record.
 9               THE COURT:  All right.  She did comply with the
10    deadlines.  I do think I said she submitted her own proposed
11    instructions and then, thereafter, there was a joint.
12               But, in any event, that is accurate.  You submitted on
13    her behalf a rather lengthy proposed juror questionnaire, and
14    the indication was that you had talked with the government
15    about the verdict form.  So Ms. Giannelli has complied and it's
16    my understanding, as well, that she consulted thereafter with
17    the government when what I think, but I'm not sure, is a joint
18    submission came in.
19               MR. FASULO:  It is, your Honor.
20               THE COURT:  So that is correct.
21               MR. FASULO:  I'm sorry if I missed that.  I didn't
22    hear that in of the record.  I just want the record to be clear
23    on that.  So I apologize if I missed that.
24               Secondly, in terms of the adjournment, Judge, the
25    request wasn't made because we weren't aware of the COVID
```

1    situation back in December, and it's not made because we're not

2    ready to proceed.  As the Court is aware and as we stated in

3    our application, it was really just the surge.  It was the

4    defense's contention that with this surge and the understanding

5    that the surge is maybe hitting a peak and would then be

6    somewhat -- come down in a way that would not be as risky, that

7    it would be in the interest of justice to have the trial move

8    without interruption.  Therefore, a short adjournment would

9    accomplish that.  That's what our hope is.

10           THE COURT:  Right.  Mr. Fasulo, I don't know what that

11   means.  Adjourn it without interruption and a short

12   adjournment -- hold on.  Hold on.  Given that you all

13   understand that scheduling is being done through a central

14   scheduling office and I do not have flexibility to say, okay,

15   we'll adjourn this for two weeks.

16           MR. FASULO:  I respect that, Judge, and I respect the

17   Court's limitation.  But that doesn't stop my obligation to

18   make an application based on what we saw and what we believed

19   to be more prudent from the defendant's point of view.  That's

20   it.  If the Court orders us to move forward, we are ready to

21   move forward.  So I don't want it to seem like we're looking

22   for crazy delays here and we're not ready to proceed.  We are

23   ready to proceed.  We are concerned, as we stated in our

24   letter, for a number of reasons --

25           THE COURT:  Including some letter within

M1DCnavC

```
1    Ms. Giannelli's control and that you -- you may not have known,
2    but that's your client's fault.  Correct?
3              MR. FASULO:  Judge, I think my client has to make the
4    decisions that she believes is right for herself.  So I
5    understand the Court's statement.  Obviously, this is not the
6    first time this discussion has occurred, and we have had these
7    discussions, as well.  So I respect the Court's statement on
8    that, but I am not going to comment that it's my client's
9    fault.
10             THE COURT:  Now, I said it was within her control and
11    it's her fault if you didn't know.
12             MR. FASULO:  Oh, no.
13             THE COURT:  You did not know; right?  That's what you
14    said in your letter.
15             MR. FASULO:  It was our hope that she would have --
16    yes, Judge.  It was our hope that this was not going to be the
17    position.  We did know where we were at, we didn't know that we
18    were continuing in this position, especially with the changes
19    that were happening and the new guidelines and the new
20    understanding of what the government indicates should be done.
21             THE COURT:  What about my final observation to you,
22    that your letters this time -- and I want to hear from
23    Dr. Fishman's lawyers, too.  Your letter stands this time in
24    stark contrast to the way you phrased things last time in terms
25    of speedy trial rights.
```

M1DCnavC

```
 1              MR. FASULO:  In terms of speedy trial, that was an
 2     omission by the defense, but obviously that's not a concern of
 3     Ms. Giannelli and she would have waived speedy trial for the
 4     purposes of a short adjournment.  I'm sorry I didn't put that
 5     in the letter.
 6              THE COURT:  Mr. Fasulo, given what I just reiterated,
 7     and which was in my prior order, that I do not have the
 8     ability -- and we discussed it at conferences, I do not have
 9     the ability to grant a short adjournment.  I don't know what
10     that means in light of all of that.  Is Ms. Giannelli waiving
11     her speedy trial right when she requests an adjournment?
12              MR. FASULO:  Yes, your Honor.
13              THE COURT:  All right.  Let me hear from counsel to
14     Dr. Fishman.
15              MR. SERCARZ:  Thank you for the opportunity to address
16     the Court.
17              THE COURT:  Your name for the record.
18              MR. SERCARZ:  Maurice Sercarz on behalf of
19     Dr. Fishman.
20              THE COURT:  It's hard when we're all sitting with
21     masks to know who's speaking.
22              MR. SERCARZ:  Yes, your Honor.  First of all, your
23     Honor, I apologize for the omission, but in joining
24     Ms. Giannelli's motion for an adjournment of the trial, it was
25     my intention to indicate — and I failed to do so, for which I
```

1    apologize — that Dr. Fishman was prepared to waive his speedy

2    trial rights if an adjournment would be granted.

3          I join in my colleague, Mr. Fasulo, in indicating that

4    we've been well aware of the orders of the Court and the method

5    for scheduling trials in the Southern District of New York.

6    The intervening event was a surge in the pandemic, not any

7    matter related to trial preparedness.

8          With regard to the motions that were filed, I, too,

9    notwithstanding that I came into the trial one year or more

10   after the indictment, I am the second attorney --

11         THE COURT:  Yes, Mr. Sercarz.  When you appeared with

12   Mr. Feldman, I believe it was --

13         MR. SERCARZ:  Yes.

14         THE COURT:  -- that Dr. Feldman asking to have you

15   substitute in, we specifically had a conversation on the record

16   that your coming in one year into the case would not be a basis

17   for any requests for adjournment.

18         MR. SERCARZ:  Understood and agreed.

19         THE COURT:  Okay.

20         MR. SERCARZ:  Okay.  But all I'm trying to say is that

21   I've done my best to meet every deadline.  There was one

22   occasion recently where — in connection with materials relating

23   to jury instructions, requests to charge — I asked for a brief

24   adjournment in connection with a family health emergency --

25         THE COURT:  Twice.  Twice, Mr. Sercarz.  Just so the

1    record is clear, I told you and I said before, without trying

2    to get into your personal situation, that those were legitimate

3    requests and the Court readily granted them.

4            MR. SERCARZ:  I want to thank you, your Honor.

5            THE COURT:  Let me finish.  I will never deny somebody

6    a reasonable request based on family health situations.  So

7    there is no issue about that.  But all I was saying is that

8    having given you that extension, you then turned around and

9    filed what frankly is one of the most unprofessional

10   submissions I've ever seen in my 40 years of being a lawyer,

11   and you filed nothing in terms of voir dire and verdict form.

12   So, go ahead.

13           MR. SERCARZ:  With regard to voir dire, I joined in

14   the voir dire requests by my colleague, Mr. Fasulo on behalf of

15   Ms. Giannelli.  The government was aware of that.  And it

16   factored into the collaborative discussions that we had before

17   final versions were submitted to the Court.

18           Indeed, when the government determined that it wanted

19   to submit an alternative questionnaire that could be used

20   orally with the jury in lieu of the questionnaire, they

21   contacted me separately.  And even after having joined in

22   Mr. Fasulo' requests, I took the time — and I think the

23   government will confirm this — to speak to them about any

24   objections I had to their requests for an oral interview of the

25   jury and added certain areas that I felt should be included, as

M1DCnavC

1    well.

2            So, rather than absenting myself from the discussions,

3    I participated collaboratively, both with Mr. Fasulo in helping

4    him prepare his instructions and with the government in

5    presenting an alternative questionnaire for the jury.

6            THE COURT:  All right.  Well, there is no way the

7    Court could know that.  If you are making something as a joint

8    submission with a codefendant, you ought to label it that way

9    or put in a cover letter that says that.  But you did make a

10   separate submission with respect to requests to charge, so

11   there would be no rational basis for me to assume that you were

12   acting in concert with Ms. Giannelli with Mr. Fasulo.

13           MR. SERCARZ:  I hope that now that I've explained

14   this, the Court has a better impression of my preparedness than

15   it did moments ago.

16           With regard to the request to charge, your Honor, it

17   was our determination, when considering the state of the case,

18   to submit general requests and to reserve the right to make

19   requests as developed by the evidence.

20           THE COURT:  You just decided that, notwithstanding the

21   order that I had entered.

22           MR. SERCARZ:  Your Honor, I did not read the order

23   that you had entered as requiring defense counsel to submit its

24   requests to charge on every conceivable issue and all lines of

25   defense that may develop during the course of a trial.

M1DCnavC

1    And, indeed, perhaps here it is my problem, but I've

2    been trying a lot of cases, both in this courthouse and across

3    the river, and I have not been called upon to do something

4    comparable to that in any of my other cases.  If I didn't read

5    your order correctly, I apologize, your Honor, but I thought

6    that submitting general requests now and reserving our right to

7    submit requests pertaining to potential defenses in the case as

8    the evidence developed is consistent with the law and was

9    consistent with the Court's order.

10    With regard to the nature of the requests, I note that

11    each one of them referenced Sand, which is the source authority

12    for many of the instructions that are customarily given in this

13    district and across the river when it comes to general

14    requests.

15    I would note that in earlier drafts of the

16    government's request to charge, before the parties observed

17    that the Court was dismissing mine out of hand, the parties

18    were prepared to submit certain general requests with

19    perfunctory citations to authority.

20    THE COURT:  The perfunctory citations are fine.  What

21    isn't fine is that you give me a single-spaced laundry list of

22    "here's what we want you to charge" and you expect the Court to

23    do the work of generating the kind of document that ultimately

24    got submitted.  But I think we've had enough on that.  We are

25    where we are.

M1DCnavC

1          So let's talk about your requests.

2          Are you each renewing your requests to adjourn or I

3    heard somebody talk about we may have reached a peak?

4          MR. FASULO:  Judge, I am renewing my request.

5          MR. SERCARZ:  As am I.

6          THE COURT:  Let me hear from the government.

7          MS. MORTAZAVI:  Thank you, your Honor.

8          THE COURT:  Let me make one observation — I'm sorry —

9    before I hear from you Ms. Mortazavi.  And it's up to you if

10   you want to stand or not.

11         As I said at the beginning, what I do on this request

12   impacts everybody else in this case.  So there aren't only your

13   clients' speedy trial rights, there are speedy trial rights of

14   all the other defendants and there are interests of judicial

15   economy that are implicated, as well.  A lot of time and effort

16   has gone into preparing for this trial and into having an

17   appropriate number of prospective jurors summoned to show up

18   next week.

19         So, after I hear from the government, anybody else who

20   wishes to be heard from will be heard from.

21         I will say that, in the order that I entered

22   originally advising that I was going to request two trials for

23   the first quarter, one for the Group 1 defendants and one for

24   the Group 2 defendants, I did tell everybody, put everybody on

25   notice that if we were not given a slot or could not move

M1DCnavC

1      forward next week, that the Group 1 defendants would move to
2      the Group 2 slot.
3              Let me hear from the government.
4              MS. MORTAZAVI:  Certainly, your Honor.
5              Ms. Giannelli's letter noted that the government
6      objects to both defendants' requests for an adjournment and we
7      continue to object.
8              THE COURT:  But you said we didn't consent, I think,
9      but yes.
10              MS. MORTAZAVI:  Playing a game of telephone, perhaps.
11              But the government does object to the request for
12      adjournment.
13              And I want to outline some of the parties' discussions
14      that the Court is not privy to, to highlight that I do believe
15      that defense counsel have been engaged in this trial, they've
16      received materials necessary for this trial.  And I'd reiterate
17      the statements that Mr. Fasulo made that, in the government's
18      view, it appears that both defense counsel have been engaged,
19      are aware of the issues, have the materials they need, and
20      would be prepared to try this case next week.
21              THE COURT:  Let me just say on that, Ms. Mortazavi,
22      both sets of counsel have said they're prepared to proceed, so
23      I don't think you need to belabor that.
24              MS. MORTAZAVI:  Certainly, your Honor.  The government
25      has produced its exhibits.  There will be some additions, there

M1DCnavC

1    will be some changes, but minor compared to the amount that has

2    been produced to date.  It comes with a searchable index of

3    3500 that's been produced.  As the Court noted, the parties

4    have made all of their pretrial submissions.  The parties have,

5    in fact, begun discussions and, in some cases, executed

6    stipulations to certain evidence --

7              THE COURT:  I had a question about that.

8              MS. MORTAZAVI:  -- in order to both narrow the range

9    of witnesses that would have to be called to make the trial

10   more efficient and to provide some clarity to the government so

11   that we don't have to arrange for those witnesses to be present

12   and focus everyone's attention on the exhibits that are truly

13   at issue, the witnesses that are truly at issue, et cetera.

14             So I do believe that the parties are at a very

15   advanced stage.  The government is certainly ready to proceed

16   to trial on Wednesday and it appears as if both counsel are

17   ready to proceed to trial, as well.

18             I want to reiterate, Mr. Sercarz's statements that, in

19   connection with the most recent filings of pretrial

20   submissions — the requests to charge, the voir dire, the

21   verdict form — that all parties have been in discussions both

22   prior to the filing date, on the filing date, and then again on

23   the extended filing date that the Court granted to give the

24   parties an opportunity to jointly submit documents, and those

25   documents do reflect objections from the government in the case

M1DCnavC

1    of the documents filed by Ms. Giannelli's counsel and those by

2    defense counsel and the documents that the government has

3    filed.

4         Your Honor, the COVID-19 surge, as the Court has

5    noted, has been long at issue in the district and in this

6    courthouse, and trials have continued.  There are two trials

7    during the current surge that are currently underway in this

8    courthouse, and the chief judge of this court and the judges in

9    this district, and I believe in the Eastern District, have

10   determined that it is safe for trials to continue,

11   notwithstanding the increased surge in COVID cases.

12        THE COURT:  Correct.

13        MS. MORTAZAVI:  I understand that is the changed basis

14   on which defense counsel are seeking an adjournment, but

15   clearly, that alone is no basis to adjourn trials.  It has not

16   been a basis for other trials that have begun since January,

17   and we don't believe it's a basis to adjourn the trial here.

18        There were specific reasons to Ms. Giannelli that were

19   presented --

20        THE COURT:  And Dr. Fishman, as well.

21        MS. MORTAZAVI:  And Dr. Fishman.  That I will not

22   belabor on the record because those matters are under seal.

23        THE COURT:  Correct.

24        MS. MORTAZAVI:  But there are some measures that

25   certainly could be taken to protect everybody involved during

M1DCnavC

1    the trial.

2            If the Court would like to have a discussion regarding

3    those procedures, we are happy to either have a sidebar under

4    seal or to present a sealed submission with some of those

5    proposals.

6            But, in any event, I do not believe that those matters

7    that were raised in the letter are so insurmountable that we

8    cannot proceed to trial next week.

9            I would also like to note, your Honor, that with the

10   date for the current Group 2 trial defendant, Mr. Dane, that

11   that date that was reserved for this matter is behind another

12   case before Judge Rakoff. We've spoken with the prosecutor

13   involved in that case. Our understanding is that it is

14   unlikely to either adjourn or to be resolved pretrial. So, we

15   might be looking at an adjournment of several months into the

16   second quarter. That's simply inefficient given that all the

17   parties have prepared for trial to date. It also does not

18   account for any future surges in COVID, which are certainly

19   possible.

20           So, for all those reasons, we think it's appropriate

21   and certainly safe for us to proceed to trial next week as

22   scheduled.

23           THE COURT: Is there anything further from the

24   defense?

25           MR. FASULO: Judge, I just want the record to be

M1DCnavC

1    clear, it is true -- and this is your courtroom, Judge, and you

2    will make the final decision in this.  I understand that, but

3    it is true that in the Eastern District, the administrative

4    judge recently, on the government's application, adjourned a

5    case based on the surge.

6         So the government, I understand their position in this

7    case, I understand over the river, I understand why protocols

8    may be different, but I don't think this is a frivolous

9    application.  Other courts have actually closed down during the

10   pandemic until the end of January.  I understand the

11   limitations.

12        However, I just want to make sure that the Court

13   understand we respect the Court's decision, we understand the

14   limitations the Court is working under, but we do have to

15   represent our clients and we do have an obligation to make an

16   application, which I don't believe is frivolous.  I do

17   understand the order and we do understand what we were working

18   under and, as the government has just indicated, we are all

19   moving forward to get this case to trial.

20        So, that is what our intent is and I don't want to, in

21   some way, insult the Court in any way that we don't understand

22   the other issues that the Court has to balance.

23        THE COURT:  Thank you.

24        MR. SERCARZ:  Your Honor, just one factual issue that

25   I wish to add.  I already made the argument that we could not

M1DCnavC

```
1    foresee the nature and the extent of the surge when it came to
2    omicron, and I will be a little bit circumspect in light of the
3    sealing.
4          We joined in the application on behalf of
5    Ms. Giannelli.  The information that was first made available
6    to the Court regarding Ms. Giannelli was also made available to
7    us for the first time at the time that the Court heard it, and
8    I would ask the Court to consider that and to note that, given
9    we're all going to trial in the same courtroom, my client has
10   reason to be concerned that his health is being placed at
11   heightened risk as a result of those factors that are contained
12   in Ms. Giannelli's motion, and that is a new circumstance which
13   warranted the letter that I wrote to this Court on my client's
14   behalf.  I feel that I have an obligation to safeguard not only
15   his trial rights, but the state of his health, and it was with
16   that spirit that I wrote the letter to the Court for its
17   consideration.  And I thank you for the opportunity to speak on
18   this, your Honor.
19         THE COURT:  So I have a couple of questions, actually,
20   for you, Mr. Sercarz.  You may want to confer with Dr. Fishman
21   and your cocounsel.
22         Dr. Fishman, as I understand it, lives in Florida;
23   correct?
24         MR. SERCARZ:  Yes.
25         THE COURT:  Florida is reacting in a very different
```

M1DCnavC

```
 1   way to COVID-19 than New York.

 2              Has Dr. Fishman been in lockdown in Florida?  Does he

 3   go out to restaurants?  Does he stay in quarantine?  Does he

 4   take steps to assure that he's not exposed to COVID-19?

 5              MR. SERCARZ:  I did not anticipate this question in a

 6   way that it would allow me to --

 7              THE DEFENDANT:  May I answer my own questions?

 8              THE COURT:  I'm sorry.  Was that Dr. Fishman?  Hold

 9   on, Dr. Fishman.

10              Do you want to talk in private with your client?

11              MR. SERCARZ:  If there is a way to do so, your Honor,

12   I think it would be useful.

13              THE COURT:  I think you have a phone, don't you?

14              Dr. Fishman, are you reachable by phone?

15              THE DEFENDANT:  Yes, I am, your Honor.

16              THE COURT:  Mute your line so that we don't hear your

17   conversation with your lawyer and counsel.  Why don't you step

18   out.

19              MR. SERCARZ:  Thank you, your Honor.

20              THE COURT:  Is the court reporter okay if we take a

21   five-minute recess?

22              (Pause)

23              Mr. Fasulo, I don't know if you need to speak with

24   Ms. Giannelli at all.

25              MR. FASULO:  Judge, I've tried to speak to
```

M1DCnavC

 1 | Ms. Giannelli already.

 2 |        MR. SERCARZ:  Your Honor, you're about to embark upon

 3 | a line of questioning.  If there are other questions that we

 4 | should take up with our client during the break, it might save

 5 | time.

 6 |        THE COURT:  That's what occurs to me.  That's what

 7 | occurs to me, what I've asked you.  I think you understand the

 8 | import of what I'm asking.

 9 |        MR. SERCARZ:  Of course.  Yes, your Honor, I'll have

10 | an answer.  Thank you.

11 |        THE COURT:  We'll stand in recess for five minutes or

12 | so.

13 |        (Recess)

14 |        THE COURT:  All right, Mr. Sercarz.

15 |        MR. SERCARZ:  Yes, your Honor.  I have spoken to my

16 | client and I'm prepared to give you an answer to the question.

17 | If there are any additional questions, my client can provide

18 | further detail.

19 |        While my client certainly is not in quarantine, he has

20 | assiduously avoided being in large crowds of people.  He does

21 | not, as a habit, eat in public restaurants, he has not gone to

22 | the movies.  My client tells me that he goes to the beach at

23 | off-hours when there are few, if any, people there.  He goes to

24 | the gym at off-hours when there are few, if any, people there,

25 | and brings materials to wipe down the machinery.

M1DCnavC

1          Apart from that and preparing for trial, there is very

2     little that he does that has put him in contact with other

3     people and has posed a threat of contracting the virus.

4          If the Court has any other questions that are more

5     precise than that and that I have failed to answer, your Honor,

6     he's prepared to address them directly with the Court.

7          THE COURT:  I don't have any additional questions.

8     Does anyone else wish to be heard?  Any other defendant want to

9     weigh in, one way or another?

10          All right, then.  It is the view of the Court that we

11    can proceed safely with this trial next week and that the

12    motions to adjourn are denied.

13          In large part, I'm doing that for the following

14    reasons:

15          One, I do believe that the court has sufficient safety

16    protocols in place.  We have, as I say, conducted over a

17    hundred trials in the Southern District without any significant

18    incident.  These requests for adjournments, while you are

19    predicating them in part on the peak in the omicron -- or the

20    surge — I'm sorry — in omicron occurrence in New York and

21    elsewhere, you also are invoking other health-related issues

22    with respect to each of your clients.  Neither of those are new

23    information.

24          So, if you had brought this to my attention earlier

25    and we could have made better plans, we might have done that,

M1DCnavC

1    but I also note that some of the circumstances are controllable

2    by the defendants — let me say it that way.

3          I will entertain from both sides, I'd ask you to talk

4    to each other and propose to the Court any additional protocols

5    that you think would make sense in terms of ensuring the safety

6    of Dr. Fishman and Ms. Giannelli and counsel, as well, and

7    anybody else who might wish to attend the trial, and we can

8    certainly talk about that, but otherwise, we will proceed.

9          The Group 2 trial defendant, only one defendant now,

10   is on notice for March 9th.  I understand that you've got some

11   word that Judge Rakoff's trial is unlikely to be adjourned, but

12   one never knows.  I was sort of told similar things about next

13   week's trial slot in terms of whether we were going forward and

14   then developments happened.  Nobody can foresee exactly what's

15   going to happen.

16         So, let me turn back to the case generally and then

17   everybody involved in phase 1, we can stay and talk about some

18   issues that we should talk about with respect to the trial.

19         With respect to the remaining defendants, are there

20   any other issues that we ought to discuss?

21         All right.  I think it makes sense then for us to pick

22   a date for a further conference.  And I assume there are

23   motions to exclude time, Ms. Mortazavi?

24         MS. MORTAZAVI:  Yes, your Honor.  We would ask for a

25   conference date in 45 days and move to exclude time up to that

M1DCnavC

```
 1    point.  Of course, the government is flexible if any other
 2    counsel on this call would like a trial date further along in
 3    time, given the anticipated date of their trial.
 4            Separately, the Group 2 trial date, if it does move
 5    forward, will have its own final pretrial conference schedule.
 6            THE COURT:  Correct.  Those of us who are going to be
 7    tied up with the Group 1 trial will be tied up roughly until
 8    the second week, I guess, of February.
 9            The next trial date is the 9th; is that right,
10    Ms. Dempsey?
11            THE DEPUTY CLERK:  21st.
12            THE COURT:  So it seems to me that a conference
13    sometime in late February makes sense.
14            MS. MORTAZAVI:  Yes, your Honor.  As a general status
15    conference, I think that does make sense.  We can confer with
16    Mr. Dane's counsel regarding a final pretrial conference date.
17            THE COURT:  All right.  Ms. Dempsey, how do we look
18    like late in the week of the 21st, which is Presidents' week,
19    or the week of the 28th?
20            THE DEPUTY CLERK:  The 28th is the Monday, we could do
21    March 3rd.
22            THE COURT:  The end of the week of the 21st is not
23    good then, are you saying?
24            THE DEPUTY CLERK:  We can do the 24th at 11:00 a.m.
25            THE COURT:  Does that work?
```

M1DCnavC

1          MS. MORTAZAVI:  It does for the government, your

2     Honor.

3          THE COURT:  Is there any issue for any defendant with

4     having a conference on February 24th, general case status

5     conference?

6          All right.  Hearing none, we'll set the case for a

7     general status conference on February 24th at 11:00 a.m.

8          Is there a motion by the government?

9          MS. MORTAZAVI:  There is, your Honor.  We move to

10    exclude time up to that date for multiple reasons, including so

11    that the parties can file their motions to sever, if those

12    motions are forthcoming, or at least contemplate the motions to

13    sever and file, and for the Court to consider those motions.

14    Additionally, it will allow time for the Court to preside over

15    the Group 1 trial before turning its attention to the remaining

16    defendants.

17         THE COURT:  All right.  Is there any objection by any

18    defendant to the exclusion of time between today and February

19    24th?

20         MS. GLAVIN:  No, your Honor, on behalf of Jason

21    Servis, and we consent to the exclusion.

22         THE COURT:  Thank you.  Let me do a roll coal of the

23    other defendants.

24         Mr. Rollock, on behalf of Mr. Tannuzzo?  Mr. Rollock.

25         MR. ROLLOCK:  I'm sorry, Judge.  I apologize.  I said

M1DCnavC

1   I have no objection and I agree to the exclusion of time.

2               THE COURT:  All right.  Thank you.

3               All right.  You've stepped in for Mr. Dane, Ms. Brown?

4               MR. SCHOLAR:  No, Judge.  On behalf of Mr. Dane, no

5   objection.

6               THE COURT:  I'm sorry.  You're on behalf of Mr. Chan,

7   then?

8               MS. BROWN:  Yes, that's correct.

9               THE COURT:  I believe all parties consent to the

10  exclusion of time.  So I will exclude all time from today until

11  February 24th.  I do find that the interests of justice served

12  by the exclusion of such time outweigh the interests of the

13  public and the individual defendants in a speedy trial because

14  it will allow the Court to conduct the trial of the Group 1

15  defendants, it will allow the defendants in groups 2, 3, and 4

16  to continue their review of the discovery that's just been

17  produced, and to consider their positions with respect to trial

18  groupings and whether they intend to move to sever, and it will

19  allow those parties to continue their own trial preparation

20  and, if they wish, to engage in any discussions with the

21  defendants.  That exclusion of time is with the consent or

22  without any objection by the defendants who are involved.

23              So, at this point, anybody who wishes to excuse

24  themselves, if you're not involved in the Group 1 trial, you

25  are free to do so.  You're also free to stay if you wish to do

M1DCnavC

1    that.  But what we will be talking about going forward all

2    relates to the Group 1 trial.

3           So, the first item that I have on the agenda with

4    respect to the group 1 trial is the in limine motions that were

5    filed by both sides.  The Court has carefully been through

6    those motions and I am prepared to rule on them and/or discuss

7    them with the parties today.

8           Let me just say, as a preliminary matter, the Court

9    did receive a motion by the government with respect to 13

10   different categories of evidence.  Initially, I believe it was

11   Dr. Fishman who filed, and then Ms. Giannelli joined in an

12   identical motion, and the briefing on that motion was joint, as

13   I understand it, dealing with four different categories of

14   evidence.  Two of the categories raised by the defendants

15   basically are the mirror image or are related to categories

16   that were raised by the government.  So, in total, we have

17   roughly 15 different categories of evidence that I want to talk

18   to the parties about.

19          Let me just say that I'm a little bit surprised by

20   some of the motions that have been filed, and this is directed

21   more at the government than at the defendants.  A number of

22   these categories, the motions in limine are largely

23   explications on what's pretty much hornbook law about what is

24   and what isn't hearsay.  The Court knows the rules of evidence

25   and I am prepared to deal with routine evidentiary objections.

M1DCnavC

1    Some of the categories that you move with respect to, you

2    acknowledge that it's premature for the Court even to rule at

3    this point.  Others of your requests are contingent — if the

4    defendants open the door, then you should say this.

5         Obviously, a trial is a fluid situation and I'll have

6    to react to the evidence as people offer it and to objections

7    as they're made, and I don't intend to rule on hornbook

8    principles of law.  The law is what the law is.

9         Other categories, you state general propositions and

10   then you give me illustrations.  And again, the Court doesn't

11   rule on illustrative pieces of evidence.  The purpose of an in

12   limine motion is to preclude or to seek in advance an order so

13   that it's clear you won't be violating any evidentiary rule, a

14   rule that certain evidence is admissible.

15        In all my years of practicing, I have to say that I

16   have found the most helpful in limine motions are those that

17   are targeted to specific pieces of evidence.  Once in a while,

18   a category makes sense, but a motion saying statements by a

19   coconspirator are admissible, the law is what the law is on

20   that, and I am not going to rule in a vacuum on that.

21        So having given that kind of preamble, let me just

22   walk through these various motions that I have in front of me.

23        With respect to the government's motion relating to

24   out-of-court statements, I think that really covers categories

25   1 and 2 of your motion.  I think that's covered by the comments

M1DCnavC

1    I just made.  The law is what the law is on hearsay and on

2    admissibility of coconspirator statements or statements of

3    agents of a defendant.  And I don't think, frankly, that the

4    defendants took a lot of issue with your statement of hornbook

5    law in that respect.

6            To the extent, though, you give me an illustration, as

7    I say, I'm not going to rule on an illustrative example of

8    communications among Fishman, Giannelli, and Jordan Fishman.

9    If and when you offer it, it will be dealt with in accordance

10   with the rules of evidence.  Obviously, the defendants are free

11   to object to any particular statement if they believe it

12   doesn't meet the tests that were articulated, which are pretty

13   clear and noncontroversial, and I really can't rule until I

14   have the context and I have all the information that I need.

15           The request to preclude Dr. Fishman and Ms. Giannelli

16   from introducing any of their own statements, the same ruling

17   obtains.  That's a general proposition of law.  Again, I don't

18   think the defendants really dispute what the hornbook law is,

19   but I can't rule in the abstract.  In the context, I will rule

20   appropriately, and the rules of evidence are as stated in the

21   brief without a whole lot of objection.

22           The motions dealing with proffer statements that were

23   made, that really is one of the motions that I think both sides

24   have moved with respect to -- it's the third category in the

25   government's motion, permitting the government to admit

M1DCnavC

1    Dr. Fishman's proffer statements should Fishman or his defense

2    attorneys open the door.  Again, a conditional request, but the

3    defendants move to preclude evidence obtained pursuant to a

4    limited grant of immunity.  Again, the government's motion is

5    made on a conditional basis.

6        With respect to the defendants' -- and both sides,

7    frankly, acknowledge that these motions are premature.  So I

8    don't really know what you want me to do with it when you're

9    acknowledging that your motions are premature.  But I will say

10   if and when specific pieces of evidence are identified to the

11   Court, I'll rule on them.

12       I will say that in connection with the interviews that

13   Dr. Fishman engaged in with the FBI in the Eastern District of

14   New York, that's category 10 of the government's motion.  That

15   regards a security case against David Brook.  Those statements,

16   I find, are admissible subject to any relevance or other

17   evidentiary objections that you might have.

18       Dr. Fishman doesn't dispute that he chose to speak to

19   law enforcement.  He did that without counsel there and he did

20   that without the protection of any proffer agreement.  He was

21   told he wasn't under investigation, so you cannot credibly

22   argue that the statements were made in connection with any

23   plea.

24       So generally speaking, I find that Rule 410 of the

25   Rules of Evidence and Rule 411 of the Criminal Procedure Law do

M1DCnavC

1    not preclude the admission of those statements.

2             Next, let's talk about the Delaware investigation,

3    2011.  This is another one of the motions that both sides move

4    with respect to -- the defendants' motion is perhaps more

5    targeted.  The defendants' phrase it as the introduction of

6    evidence regarding an investigation into the death of a

7    racehorse in Delaware in 2011.  The government frames it --

8    that's the government's category No. 9 permitting the

9    government to admit as nonhearsay, records from the Delaware

10   State Division of Professional Regulation Investigation into

11   Fishman and Giannelli.

12            This is a little bit of a mixed bag.  I do find that

13   the death of that racehorse or introducing evidence of the

14   death of the racehorse would be more prejudicial than

15   probative, and so the government is prohibited from talking

16   about the fact that that horse died while under the care of

17   Dr. Fishman.

18            Having said that, I do find that the fact that there

19   was an investigation and some of the statements contained in

20   the complaint are relevant to the argument relating to the

21   defendants being on notice with respect to the legality of what

22   they were doing and do bear on their state of mind and perhaps

23   the issue of intent to defraud or mislead.

24            So, while I am precluding as prejudicial under Rule

25   43, more prejudicial than probative any mention of the fact

M1DCnavC

1    that the horse died, the parties can confer with one another, I

2    believe, and appropriately redact the actual complaint, and the

3    government can be circumspect in any statements it makes about

4    the Delaware investigation.  And there is not a need, really,

5    for you to say more than the fact that there was an

6    investigation because a complaint was made.  You don't really

7    need to say the complaint was made because a horse died.

8         MS. MORTAZAVI:  Your Honor, if I may speak to that.

9         THE COURT:  Yes.

10         MS. MORTAZAVI:  We had not understood, until the

11    defense's reply was filed, that they had a separate or specific

12    objection to the mention of the death of the racehorse as

13    opposed to the investigation in its entirety.  So we didn't

14    focus on that in our opposition, but I would like the

15    opportunity to file supplemental papers with the Court

16    highlighting other evidence that shows that years after this

17    investigation in discussing the drug at issue, pentosan, that

18    Dr. Fishman did discuss that that drug could be used to kill a

19    horse, and that he continued to distribute pentosan, even

20    though he was aware of it, and discussed the fact that it had

21    lethal effects on horses, even years afterward.

22         I think that is appropriate for establishing Seth

23    Fishman's state of mind, and the fact that he was well aware of

24    the dangers of the drug that he was distributing.  And when we

25    were talking about the safety and efficacy of drugs, which is a

M1DCnavC

1    finding that the jury must make, I do think that it is relevant

2    and that the prejudicial impact is not so great that we cannot

3    introduce this evidence.

4         So if the Court would permit, we would like to

5    supplement our papers.

6         THE COURT:  When will you do that?

7         MS. MORTAZAVI:  At the end of this week, your Honor.

8         THE COURT:  So by the end of the day tomorrow?

9         MS. MORTAZAVI:  That's correct.

10        THE COURT:  And we're talking specifically now the

11   issue of the death of the horse?

12        MS. MORTAZAVI:  Solely about the death of the horse,

13   your Honor.  We just want to highlight the exhibits in which,

14   as I said, years later, Dr. Fishman is discussing this very

15   drug, discussing the fact that it could kill a horse, and that

16   there are also communications indicating that he continued to

17   distribute the drug.  I think the totality of that casts that

18   particular fact on the Delaware investigation in a very

19   different light.

20        THE COURT:  And when can you file a response?

21        MR. SERCARZ:  The government is answering by the end

22   of the day tomorrow?

23        MS. MORTAZAVI:  That's correct.

24        MR. SERCARZ:  Can I have something by close of

25   business Monday, your Honor?

M1DCnavC

1          THE COURT:  That will work.

2          Yes?

3          MR. SERCARZ:  Your Honor, there is another loose end

4    with regard to this Delaware investigation I would like to

5    bring to the attention of the Court.

6          THE COURT:  Sure.

7          MR. SERCARZ:  The interviews of Dr. Fishman were

8    recorded.  Indeed, Dr. Fishman is the one who had them recorded

9    and the government is in possession of that recording.  The

10   questions that were asked of Dr. Fishman were not asked in the

11   kind of form that would be appropriate in a court of law.  And

12   there is one particular set of questions along the lines of the

13   investigator saying to the doctor, this is not meant to be a

14   quotation, but capture the essence of it:  You know, doctor,

15   I've spoken to several people about you and none of them have

16   given me any information suggesting that you examine any of the

17   animals.

18          I think the government has made an appropriate point

19   that it is putting the defendant on notice that there may be a

20   question as to his VCPR — to use the abbreviation — his

21   relationship with the animals, but by the same token, if the

22   Court agrees with me as to the form of the questions, an

23   instruction might be in order that the jury is not to infer

24   from the asking of the question that the comments made by the

25   investigator are truthful.  I will be asking for an instruction

M1DCnavC

1    along those lines, your Honor.

2            THE COURT:  All right.  Go ahead, Mr. Adams.

3            MR. ADAMS:  I'm sorry, your Honor.  I expect that I'll

4    put exhibits on.  It's actually not our intention to admit the

5    portion of the recording that includes Dr. Fishman at all.  So

6    this will be moot.  The only portion that we intend to actually

7    admit are two clips of a discussion with Lisa Giannelli, and I

8    don't think that any of the questions or certainly the comments

9    from the investigator are objectionable or will need a

10   supplemental instruction, but we're focused on things that come

11   out of Giannelli's mouth and a handful of clips from that

12   recording.

13           THE COURT:  I assume that you will provide those in

14   advance or that Mr. Fasulo knows what you're talking about?

15           MR. ADAMS:  The clips have been provided as exhibits.

16   There are two subexhibits of the larger recordings.  Everybody

17   has everything.

18           THE COURT:  Thank you.  Mr. Fasulo is nodding his head

19   yes.  So I will look for those further submissions and we'll

20   deal with that one category.

21           MR. FASULO:  Judge, if I may on the same category?

22           THE COURT:  Yes.  You can sit, Mr. Fasulo.  When you

23   first start talking, I have look to see who's talking.

24           MR. FASULO:  I do understand the Court's ruling on

25   this.  However, there is also the findings of the Delaware

M1DCnavC

1    commission, which, I think, if you're allowing the complaint

2    in, I think we should be allowed to inquire about what the

3    result of this investigation was.

4         MS. MORTAZAVI:  Your Honor, I think Mr. Fasulo is

5    using findings, but I think he's talking about the

6    resolution --

7         MR. FASULO:  I said res -- I'm sorry.

8         THE COURT:  You mean the fact the charges were

9    dismissed without any action?

10         MS. MORTAZAVI:  That's correct, your Honor, because

11    the findings of the Delaware Division of Professional

12    Regulations are very different, and as we briefed in our

13    motion, if we are going to discuss the fact that, ultimately,

14    it's not quite accurate to say that this was dismissed, there

15    was no criminal prosecution pursued after referral, but the

16    Division of Professional Regulation did make a number of

17    findings that their regulations had been violated and did refer

18    it for prosecution.

19         The government's position is rather than bringing in

20    all sets of these facts, which frankly is not relevant, because

21    what is relevant is the fact that they were at least, as of the

22    time of the investigation, notified of certain of these

23    provisions that are important to their state of mind.  What

24    followed afterwards really is not relevant and is, to borrow a

25    phrase, a bit more of a mixed bag because there were findings

M1DCnavC

1    made that showed that they had violated these relations.  Just

2    merely because they were not prosecuted as a result is no

3    showing of innocence, it is no showing of good conduct, and

4    it's more likely to confuse the jury.

5         THE COURT:  Yes, but the problem is -- Mr. Fasulo is

6    nodding his head as you're saying what you mean by the findings

7    and there were no criminal charges and all, but the problem

8    with that is, it's the government that wants to use this

9    investigation, and to just float out there that there was this

10   investigation without -- you are opening, basically, the

11   sideshow.  And I don't disagree with you that there is the

12   potential that we get into a whole -- I don't know what else to

13   call it but a sideshow, although you are correct that what you

14   want to use does go to the state of mind of the defendants and

15   whether they were on notice that what they were doing was

16   questionable conduct.  To leave it hanging then in front of a

17   jury is arguably prejudicial to the defendants.

18        MS. MORTAZAVI:  And, your Honor, I have two responses

19   to that.

20        THE COURT:  Yes.

21        MS. MORTAZAVI:  The first is that, as we laid out in

22   our papers, the reason we don't believe this is a sideshow and

23   a detour is because we believe that this division was one of

24   the victims.  So this is an instance in which they are

25   specifically lying to an investigator that could take action to

M1DCnavC

1    revoke Dr. Fishman's license.

2              THE COURT:  It is during the relevant timeframe, I

3    will note that, too, and I don't think that's disputed.

4              MS. MORTAZAVI:  Certainly.  So in terms of how this

5    will be cast in the government's case, I just wanted to clarify

6    how the government views this conduct.

7              The second is I think that any prejudicial effect by

8    leaving hanging the outcome of this proceeding could be

9    alleviated by an instruction telling the jurors to simply put

10   out of their minds what happened as a result of this

11   proceeding.  They will otherwise have no evidence as to whether

12   charges were filed, what the ultimate conclusions were, whether

13   anyone was disciplined, and there will be proof that

14   Dr. Fishman remained licensed in Delaware.  There are copies of

15   his veterinary license that are in the records that we intend

16   to offer.

17             And so, if anything, the jury can draw certain

18   conclusions about his ability to continue operating in the

19   state, but certainly the Court can give an instruction telling

20   the jury to put out of their minds the outcome of that

21   proceeding because it is a bit of a mixed bag.

22             THE COURT:  All right.  Look, let me suggest the

23   following:  You're going to file an additional brief tomorrow,

24   the defendants are going to object by the close of business on

25   Monday.  I think you need to include this issue in addition to

M1DCnavC

1    the death of the horse, and we can talk about this and I will

2    give you a ruling when we next convene.

3            Before we break today and I want to move this along to

4    the rest of the categories of in limine motions and the other

5    things we need to talk about, I do have a 2 o'clock other

6    criminal case on the calendar.  So include this in the briefing

7    that you're going to submit and then we'll talk further about

8    it.

9            Mr. Fasulo I didn't mean to --

10           MR. FASULO:  I just had one thing, Judge.  I

11   understand the government's purposes for intent, to show my

12   client's intent.  And I think it's also important, afterwards,

13   as to the results of how that affected her intent going

14   forward, as well.  I think you have to have that further

15   defined because, obviously, if there is no action and there is

16   no criminality and the doctor remains his license in terms of

17   my client's understanding and her intent moving forward could

18   be different than Dr. Fishman's understanding of what actually

19   occurred.

20           THE COURT:  Maybe.  So I'll hear from you all.

21           MR. FASULO:  Thank you.

22           THE COURT:  The next category is the government

23   moves -- and I think the defendants don't disagree that the

24   defendants shouldn't offer any evidence or arguments about why

25   other individuals have not been investigated or charged; is

M1DCnavC

```
 1        that correct?
 2                MR. FASULO:  Agreed.
 3                THE COURT:  That was category 4 in the government's
 4        motion in limine.
 5                I'm going to put aside for a moment the advice of
 6        counsel issue.  I want to circle back to that because I think
 7        that's a much thornier issue.
 8                The next category is foreign exports, and I want to
 9        put that aside for a moment.
10                Actually, let me jump ahead.
11                Cross examination of cooperators, which was a category
12        in the government's motion.  Precluding cross examination as to
13        prior conduct, that's category No. 13 in the government's
14        motion.  The defendants, as the Court views things, have not
15        filed an opposition; correct?  You don't oppose that?
16                MR. FASULO:  Judge, we just got -- because we're
17        receiving, on an ongoing basis, the 3500 material and we need
18        to evaluate it as we get closer to trial.  We'd ask the Court
19        to defer on that ruling until trial.
20                THE COURT:  I think that's fair.  Any objection?
21                MS. MORTAZAVI:  No, your Honor.
22                THE COURT:  Let me just give you some general guidance
23        on this.  So I hear and appreciate, Mr. Fasulo, why this wasn't
24        addressed in the briefing.
25                Again, you know the rules of evidence about prior
```

M1DCnavC

1    conduct and bad acts and whether it's admissible or not

2    admissible.  The only things that are fair grounds, really, for

3    cross examination would be things going to the truth of

4    whatever it is that the witness testifies to and their

5    credibility, generally speaking.

6          Some of the examples of what was concluded in the

7    government's motion, it strikes the Court as clearly

8    irrelevant.  The fact that cooperating witness No. 1 shot

9    somebody with a BB gun when he was a kid, it does seem to me

10   that that's clearly irrelevant and the same with other things.

11   Fistfights when people are 18.  Maybe even their

12   extramarital --

13         MS. MORTAZAVI:  Your Honor, I believe we may have

14   filed that portion under seal.  So we would just ask --

15         THE COURT:  All right.  So let me just say this —

16   thank you for that clarification — some of the conduct, it

17   seems to me, reasonable experienced defense lawyers ought to

18   know is off limits.  There may be there were a couple of things

19   included, and I won't articulate them on the record, we can

20   talk about them when we convene for the final pretrial

21   conference, but there were a couple of things alluded to that,

22   to me, it seemed arguably do bear on the credibility of these

23   witnesses.  So if it goes to credibility, it's fair game.

24   Otherwise, you know the rules of evidence and we can talk about

25   it further if there is a need.

M1DCnavC

1          There were a number of other categories that there

2     don't seem to be a lot of disputes about, including the defense

3     cross examination of law enforcement witnesses.  The

4     defendants, as I understand it, are not intending to raise a

5     defense of public authority or entrapment by estoppel; is that

6     correct?

7               MR. SERCARZ:  Correct.

8               MR. FASULO:  Correct, Judge.

9               THE COURT:  And the defense has also agreed that it

10    doesn't intend to raise personal characteristics of their

11    clients unrelated to guilt; correct, Mr. Fasulo?

12              MR. FASULO:  Well, Judge, I am not able to answer that

13    question until we assess whether or not Ms. Giannelli is going

14    to testify.  If she does, anything that goes to her credibility

15    obviously will be relevant and may infringe on what the Court

16    has just asked me.

17              THE COURT:  Fair enough.

18              MR. FASULO:  If she doesn't testify, obviously we

19    would be in agreement with the Court on that.

20              THE COURT:  I think, in fairness, Mr. Sercarz, this

21    might be directed more to your client and, in particular, I

22    think you know what it is the government is referencing most

23    pointedly.

24              MR. SERCARZ:  I think I do know some of it, yes, your

25    Honor.

M1DCnavC

1    THE COURT:  And are you intending to or are you in

2    agreement -- as best I can tell, you seem to agree to this in

3    the briefing.

4    MR. SERCARZ:  You know, I don't want to be operating

5    under a misimpression.  May I approach the government to make

6    sure we're on the same page?

7    THE COURT:  Yes, sure.  Let me just interrupt your

8    conferring, because I do want to say one thing.  I generally

9    agreed with the government's position on this with one caveat:

10    You asked not to include educational background and all —

11    Dr. Fishman is a veterinarian.  The fact he's educated and

12    licensed as a veterinarian clearly is relevant here and is

13    going to come into evidence; correct?

14    MS. MORTAZAVI:  Correct, your Honor.

15    THE COURT:  So Mr. Sercarz, you have my thoughts on

16    that, but otherwise, are the parties in agreement?

17    MR. SERCARZ:  Your Honor, there may be a basis for

18    some disagreement, and I'll try and tell you what it is in a

19    more roundabout way.

20    It is not my intent to introduce evidence for the

21    purpose of engendering sympathy for my client by describing or

22    commenting having any witness or the defendant himself comment

23    upon his health condition, but I offer this for consideration

24    to the Court.  If we embark upon a defense of the client, and

25    particularly a good faith defense, I would proffer to the Court

M1DCnavC

```
 1    that it might be relevant that the defendant uses substances
 2    comparable to those that he was providing during the course of
 3    his practice.  I think that that would be a demonstration of
 4    good faith, and I might wish to elicit testimony on that issue.
 5    So I guess I'm parsing the government's preclusion motion.
 6              THE COURT:  Ms. Mortazavi.
 7              MS. MORTAZAVI:  Your Honor, I think this is worth
 8    further discussion by the parties before we bring this back to
 9    the Court's attention.
10              THE COURT:  Why don't we put that on the agenda and
11    we'll talk about it further.
12              I'm going to propose to you that we have a final
13    pretrial conference on Tuesday, Monday being a legal holiday.
14    So let's put that on the agenda of things to talk about.
15              The final category of in limine motions that I've put
16    to the side are the advice of counsel issue raised by the
17    government.
18              Are the defendants intending to rely on advice of
19    counsel?
20              MR. SERCARZ:  Answer by Dr. Fishman is no.
21              THE COURT:  Okay.  Mr. Fasulo.
22              MR. FASULO:  If Ms. Giannelli testifies in this case
23    and she is cross examined on the issue of the Delaware
24    incident, there was counsel present at that time.  I think it
25    may become relevant to her testimony as to what her
```

1    understanding was.  So as it goes to her state of mind, it may

2    be relevant in that context.  Other than that, we don't plan on

3    raising it during the government's case.  So I think it's

4    premature to address it as to Ms. Giannelli at this point

5    because, obviously, that decision hasn't been made by

6    Ms. Giannelli.

7         THE COURT:  Let me just -- go ahead, Ms. Mortazavi.

8    Did you want to be heard?

9         MS. MORTAZAVI:  Your Honor, even though Mr. Fasulo is

10   pegging the possibility that he would raise this in

11   Ms. Giannelli's testimony if she elects to testify, the

12   government would still need the records that underpin that

13   argument if that's one that she intends to introduce.

14        THE COURT:  So I was just going to say, I appreciate

15   what you're saying, Mr. Fasulo, and you're telling me it only

16   really becomes an issue if Ms. Giannelli testifies?

17        MR. FASULO:  If she doesn't testify, we are not

18   raising it, Judge.

19        THE COURT:  So if she intends to testify and if you

20   intend to elicit from her the fact that she consulted with

21   counsel and relied on advice, those materials need to be turned

22   over to the government and you will be waiving the privilege.

23        MR. FASULO:  I understand, Judge.

24        THE COURT:  The law is very clear, you cannot use this

25   as a sword and a shield.  And I'm also not going to count on

M1DCnavC

1    this, sandbagging the government at the eleventh hour and

2    saying we're putting on Ms. Giannelli tomorrow and here's all

3    these materials.

4            MR. FASULO:  I think we can have further discussion

5    with the government.  The government is aware who counsel was.

6            THE COURT:  It's not a question of who the counsel

7    was.

8            MR. FASULO:  They've interviewed them.  I think we

9    need to have further discussions on this.

10           THE COURT:  Have you waived privilege on that issue?

11   Are you waiving privilege?

12           MR. FASULO:  If Ms. Giannelli testifies, then we will

13   be in a different position and we may waive.

14           THE COURT:  If you're telling me Ms. Mortazavi or

15   somebody on behalf of the government team knows who the counsel

16   is, that's not waiving the privilege, but if you've given them

17   leave to interview that person.

18           MR. FASULO:  I will give ample notice whether

19   Ms. Giannelli is going to testify.

20           THE COURT:  You told me they interviewed the lawyer.

21           MR. FASULO:  I understand they've been in contact.

22   Maybe the government can shed light on that.

23           MS. MORTAZAVI:  Your Honor, I would like to, for the

24   record, because we have interviewed the attorney because we

25   would like to some submit some -- and let me be clear about the

M1DCnavC

1    topics that we covered.

2         We are looking to admit some public documents related

3    to the Delaware proceeding, which we provided to the Court, the

4    complaint, and the response, which are not privileged.  Those

5    were given over to the Delaware Division of Professional

6    Regulation.  We have confined our questions to counsel to

7    solely those matters that are not privileged.  We very

8    specifically have not asked any questions that would infringe

9    upon the privilege and he has, in turn, been very careful to

10   protect the attorney-client privilege as he should.

11        MR. FASULO:  I'm not making any allegations that they

12   didn't.  My point is we're not sandbagging.  They know who he

13   is, they've been in contact with him.  I think, with a little

14   bit of notice, they will be able to get the information they

15   need.

16        THE COURT:  My question was whether you've already

17   waived.  I wasn't suggesting you've done anything wrong.

18        MR. FASULO:  We have not waived.

19        THE COURT:  I'm telling you now that you need to give

20   the government all of the privileged communications relating to

21   Ms. Giannelli's consulting with counsel regarding the Delaware

22   investigation if she intends to open that door.

23        MR. FASULO:  Absolutely, Judge.  I understand that.

24        MS. MORTAZAVI:  Your Honor, in speaking to

25   Mr. Schwartz, our understanding --

M1DCnavC

```
 1              THE COURT:  Who's Mr. Schwartz?
 2              MS. MORTAZAVI:  Pardon me.  The attorney who
 3     represented Ms. Giannelli and Dr. Fishman in that proceeding.
 4     Our understanding is he has access to limited records.  So if
 5     the privilege is waived, we do just want to put a fine point on
 6     what the Court has said, that the government will need time in
 7     order to deal with the waiver of privilege because we will need
 8     to then interview Mr. Schwartz about the topics we did not
 9     cover, access any records he has and, of course, review the
10     records Ms. Giannelli has in her possession.
11              So we just want to make a note of that, that we will
12     need time in order to do all those things.
13              MR. FASULO:  Judge, the government has Ms. Giannelli's
14     computer.  They continue to have her computer.  That is where
15     any access to any information to any emails would have been on.
16     We will get to the government, we will try to understand what
17     may have been there.  Any documents that she has, any other
18     information will be turned over to the government promptly.
19              MS. MORTAZAVI:  I'm sorry, your Honor.  I hate to
20     belabor this point, but I think it is important enough to
21     clarify.
22              When we conduct searches, the agents set aside
23     privileged materials so they are not tainted so we do not
24     violate the privilege ourselves.  So it is not sufficient to
25     say that the government has electronic devices that may contain
```

M1DCnavC

1    privileged materials.  We would still ask Ms. Giannelli

2    identify them and produce them so that we can expeditiously

3    review it, especially since it seems to be coming in the middle

4    of trial.

5            MR. FASULO:  Other than the fact we don't have those

6    devices to be able to do so and we haven't been turned back

7    over to the defense.  So whatever she has and whatever she has

8    access to, she will turn over.  But, in terms of what's on her

9    computer, it will be impossible for her to indicate what

10   actually was or was not on her computer without having the

11   computer accessible to her.

12           MS. MORTAZAVI:  Your Honor, rather than speaking to

13   the Court, perhaps it makes sense for the parties to discuss.

14           THE COURT:  Yes.

15           MS. MORTAZAVI:  I do want to point out, if we do

16   possess electronic devices, we can make them accessible to

17   Ms. Giannelli so she can search them.  We did seize them in

18   2020.  These were conversations that occurred a decade prior.

19   So it's not even clear that the records would exist on the

20   devices that were seized.  Nevertheless, the parties will

21   discuss and I'm sure the defense counsel will give us ample

22   time to jump through these hoops.

23           THE COURT:  I appreciate the parties talking to each

24   other and working cooperatively, and this may or may not become

25   an issue, apparently.

M1DCnavC

1          The next category is the government's item 11.

2          MS. MORTAZAVI:  Pardon me, your Honor.  I do just want

3     to make perfectly clear the Court's ruling on the

4     advice-of-counsel defense.  Both defendants have actually

5     raised the prospect that they might introduce evidence of

6     meetings with counsel without discussing any actual advice that

7     was given.  I understand the Court's ruling to be that that

8     would not be permissible.

9          THE COURT:  Correct.  Correct.  That is trying to have

10    it both ways, use it as a shield or a sword.

11         MS. MORTAZAVI:  Understood, your Honor.  Thank you.

12         THE COURT:  Okay.  Understood by the defendants?

13         MR. SERCARZ:  Yes.  Your Honor, just to be crystal

14    clear, and my client is not in the room with me, I would like

15    to ensure that my client did not speak to an attorney or

16    attorneys on subjects of the export exemption and/or the

17    veterinary exemptions to the law --

18         THE COURT:  We haven't gotten there yet.  I'm just

19    going to turn to that in a minute.

20         Let me just say, this is the problem with and why I

21    treated differently the request for waivers of personal

22    appearance by the Group 1 defendants and the rest of the group,

23    and each of your clients elected not to be here.

24         MR. FASULO:  Judge, I think you're waiting for an

25    answer from me on the question you just posed, and I totally

1    understand the Court's ruling on that and I understand where

2    we're going.

3         THE COURT:  The next category I was going to turn to

4    Mr. Sercarz, was this request, No. 11, by the government,

5    permitting the government to admit Dr. Fishman's sales of

6    adulterated and misbranded drugs to clients located abroad and

7    those engaged in activities other than racing.

8         As I understand it, the export exemption is an

9    affirmative defense which has not been raised or preserved by

10    Dr. Fishman and therefore would not be something that he should

11    be permitted to mention.

12         It also opens up, I think, again, a whole separate

13    sideshow about what the requirements are in foreign countries

14    and whether Dr. Fishman did or didn't comply with them.  The

15    simple fact is he did send things abroad and I don't think the

16    government is relying on that for anything more than it was

17    part of his production of materials in the facility where he

18    produced these goods.

19         If you intend to try to -- well, let me hear from you

20    about what your view is on this subject.

21         MR. SERCARZ:  Here's my difficulty, your Honor.  The

22    defendant is charged in the indictment -- and forgive me, I'm

23    not going to be long-winded, but the two conspiracies with

24    which he is charged, one relates to horse doping in the United

25    States on the part of Mr. Navarro and others, and the

1    defendant's alleged involvement and intent with regard to that.

2         The other concerns the manufacturing and/or

3    compounding of materials with Ms. Giannelli who distributed --

4    is accused of distributing product only in the United States,

5    and Jordan Fishman, who was compounding from a pharmacy in the

6    United States.  It had always struck me that evidence regarding

7    my client's distribution of products abroad was in the nature

8    of other act evidence.  It is clearly relevant on subjects

9    relating to my client's intent and other subjects in the case.

10        But were the government to offer evidence of these

11   exported items as direct evidence of guilt, there is a problem,

12   and the problem is as follows, your Honor:  I think we all know

13   the parameters of the export exemption well enough to know that

14   there are circumstances under which products that are forbidden

15   in the United States can be distributed abroad consistent with

16   the export exemption.

17        So for the government, for example, to offer evidence

18   that the defendant is distributing Epogen abroad and then to

19   simply elicit evidence that Epogen is a banned substance here

20   in the United States, under certain circumstances, carries with

21   it the potential to mislead the jury.

22        THE COURT:  If it's done that way, I don't disagree.

23        MR. SERCARZ:  That's the basis of my concern.

24        Moreover, notwithstanding that, in a civil trial, the

25   export exemption is in the nature of an affirmative defense and

M1DCnavC

1    there is a burden of proof upon a defendant.  In a criminal

2    trial, if a defendant argues that he is seeking in good faith

3    to comport himself with law, that is relevant evidence, it is

4    probative evidence, and it is for the government to prove

5    beyond a reasonable doubt that the defendant had the guilty

6    knowledge and intent.  And the fact that there is, within the

7    context of civil litigation, an affirmative defense does not

8    trump the defendant's right to assert a good faith defense and

9    the government's obligation to prove intent beyond a reasonable

10   doubt.

11             THE COURT:  I don't think anybody disagrees with that.

12             Let me just pause you for a minute.

13             MR. SERCARZ:  All right.

14             THE COURT:  Correct?

15             MS. MORTAZAVI:  Your Honor, I have several responses

16   to that, if Mr. Sercarz is --

17             THE COURT:  Why don't we let Mr. Sercarz finish then.

18   I'm sorry.

19             MR. SERCARZ:  It's all right, your Honor.  I think

20   you've got the gist of my argument.  I'm happy to hear from the

21   government.

22             THE COURT:  Okay.  Thank you.

23             MS. MORTAZAVI:  Certainly, your Honor.  A few

24   responses to recharacterize what Mr. Sercarz said.

25             The indictment gives ample notice, ample notice that

M1DCnavC

1    the government considers, as part of the conspiracy, efforts to

2    dope overseas races.  And, in fact, we mentioned the United

3    Arab Emirates specifically, which is the only country that

4    Dr. Fishman claims he sent shipments complying with the export

5    exemption.  In fact, he did not.  We attached, as an exhibit to

6    one of our filings, an email in which Dr. Fishman appears to

7    acknowledge that he did not comply with the export exemption.

8    And he has shipped to many other countries that were not dealt

9    with at all in the motions of limine that haven't been dealt in

10   any prior motions, including Singapore, including France,

11   including Canada.

12          THE COURT:  Are you intending to offer evidence of all

13   of that?

14          MS. MORTAZAVI:  Yes, your Honor.  And the way in which

15   the government intends to offer it is not by having a broad

16   demarcation between domestic and foreign.  It was all of a

17   piece.  Dr. Fishman was selling to all sorts of clients all

18   around the world and in the United States.

19          And in paragraph 2 of the indictment, the government

20   points out that the United Arab Emirates specifically was one

21   of the markets in which these conspirators operated.  We also

22   point out the race in which XY Jet (ph.) was involved in, the

23   golden (indiscernible) race in Dubai.

24          So, for defense counsel to take the position that we

25   are somehow straying from the indictment or the charges is

M1DCnavC

1    simply not true.  It is still illegal for someone to

2    manufacture drugs in the United States and ship it overseas if

3    they're not compliant with the export exemption.

4        THE COURT:  Yes, but doesn't he then have a right to

5    offer evidence about the export exemptions, and aren't we going

6    to get into a whole sideshow about what the requirements were

7    in various jurisdictions and Dr. Fishman's good faith belief

8    and again now his reliance on counsel?

9        MS. MORTAZAVI:  Your Honor, the reason we do not have

10   to get into that, and, in fact, we moved to preclude that.

11       THE COURT:  I know you did.

12       MS. MORTAZAVI:  There is no basis other than

13   Dr. Fishman's own assertions, repeated assertions that this

14   export exemption even applied, that he ever received advice of

15   counsel saying that it applied.  We have no record evidence, we

16   have no statements from a witness.  All we have are Seth

17   Fishman's own unsupported assertions in these various filings,

18   and that simply is not enough.

19       THE COURT:  Well, if that were true though, he's free

20   to take the stand and testify to that, isn't he?

21       MS. MORTAZAVI:  No, your Honor, he is still subject to

22   the rules of evidence.  And we think that it is more

23   prejudicial to bring up an affirmative defense that does not

24   have any record support than it is to allow him to simply

25   pontificate about what could have applied but didn't apply.

M1DCnavC

1          THE COURT:  It doesn't have to have record support, it

2     has to have statutory support.

3          MS. MORTAZAVI:  But your Honor, there has to be a

4     basis in the evidence to establish that that is even relevant

5     to these proceedings.

6          THE COURT:  Yes, but testimony of a defendant is

7     evidence.  You can cross examine him, can you try to impeach if

8     Dr. Fishman chooses to offer evidence, but --

9          MS. MORTAZAVI:  Certainly, your Honor.  But this Court

10     does have to do a balancing of the relevance and the

11     prejudicial effect.

12          Here, this is an affirmative defense just like the

13     duress defense, and we pointed to several cases in which a

14     defendant wished to assert a duress defense based solely on

15     their own testimony and judges did not allow it because they

16     rightly concluded that it would be a sideshow and there was no

17     support for that affirmative defense.

18          THE COURT:  Look, here's where I'm at right now, and I

19     have to try to rein this in a little bit.  Why don't you sit

20     for a minute.

21          The Court's present thinking is the following:  I do

22     think that if the government introduces evidence of foreign

23     sales and makes it part of its case, my present thinking is

24     that then Dr. Fishman has the right to offer evidence that

25     these sales conformed to the requirements in the foreign

M1DCnavC

1    country and were therefore exempt from the provisions of U.S.

2    law.  It does implicate questions potentially about advice of

3    counsel, and we're going to have to talk about that further.

4    It's very hard for me to issue any kind of -- it's impossible

5    for me to issue any kind of a more specific ruling than that

6    because, A, I don't know what the government intends to say and

7    do in its case, and I don't know what evidence, if any, the

8    defense might offer.  Dr. Fishman is free to testify, but he's

9    also free not to testify.  He doesn't have to take the stand.

10   And so I really can't issue a more specific ruling than this.

11           But I want to go back and look at, again, the briefing

12   that you've given me on this affirmative defense and the

13   question of whether if it should turn out that the only

14   potential evidence that the defense has is the affirmative

15   testimony of the defendant himself, whether that is

16   insufficient.  And we can talk further about this on Tuesday

17   then.

18           MR. FERNICH:  Judge, can I add one thing?  This is

19   Fernich.

20           It's a misnomer to call it an affirmative defense.  We

21   have a burden, as your Honor recognized, to present some

22   evidence implicating the defense, raising the defense.  If we

23   fail to present any evidence to support it and we're just

24   making it up, then it's out of the case.

25           THE COURT:  I hear what Mr. Sercarz is saying.  He's

M1DCnavC

1    saying it's an affirmative defense in a civil case, but in a

2    criminal case, the question of intent to defraud is part of the

3    government's affirmative case in chief.

4            MR. FERNICH:  Actually, to make out a violation of the

5    statute, as well, technically it's a conspiracy case.

6            THE COURT:  Maybe yes, maybe no.

7            MR. FERNICH:  Exactly.

8            THE COURT:  I don't know that I agree on that at all.

9            To try to really narrow things down, there is, it

10   seems, ample evidence that's going to be introduced about drugs

11   being manufactured in an unlicensed facility that never left

12   the country.  So this is why I'm throwing out to you all -- and

13   I'm not accepting that that's true.  I'm just saying that's the

14   government's position.

15           You all need to think about how you want to shape your

16   case and what doors you're going to open by how you get into

17   various areas.

18           MR. FERNICH:  Ultimately, as Mr. Sercarz indicated,

19   they bear the burden of persuasion on intent -- double intent —

20   intent to mislead and defraud, and then the normal intent in a

21   criminal case of intentional, knowing, and willful violations

22   of the statute.

23           So we have to present some evidence to say, we

24   attempted to comply with the exemption or we did comply with

25   the exemption.  Once we do that -- if we don't do it, it's out.

M1DCnavC

```
 1    If we do do it, they have to disprove it beyond a reasonable
 2    doubt.  It's not like a duress case because duress is you're
 3    conceding guilt and you say I did it, but I have an excuse,
 4    guilty with an excuse.
 5             THE COURT:  I think you're doing the same thing.  If
 6    you go there, you're saying I did it, but it was okay under the
 7    laws of this foreign country, at least that was my good faith
 8    belief.
 9             MR. FERNICH:  No, I didn't violate the statute because
10    I fit within the exemption.  There is no violation.
11             THE COURT:  I hear what you're saying.  As I said,
12    we'll talk about this more on Tuesday, perhaps, and as the
13    evidence unfolds, but you have my general thinking on what the
14    parameters are.
15             The final categories of things that were raised in the
16    competing in limine motions deal with the testimony of experts.
17    The defense has moved to limit or preclude three government
18    witnesses, Dr. Gene Bowman, Dr. Cynthia Cole, and Dr. Diana
19    Linke.
20             So let me take them one by one and give you my -- I'm
21    not going to preclude any of them, I'll say that right off the
22    bat.  However, it is not the role of an expert to instruct the
23    jury on what the import of the criminal statute is.  That's the
24    Court's prerogative when I charge the jury.  So your witnesses
25    need to be careful not to invade the province of the Court in
```

M1DCnavC

1    instructing the jury.

2            With regard to Dr. Linke, I do believe that her

3    observations about both Dr. Fishman's observations and prior

4    veterinary clinics is fair game, but if she's testifying as a

5    lay witness, then she has to be careful not to talk about

6    scientific or specialized knowledge as a basis for what she's

7    saying.

8            With regard to Dr. Cole, I don't really see any limit

9    to limit or preclude her.  But having said that, I hear what

10   the defense is saying about their desire then to call -- is it

11   Dr. Fanger (ph.)?

12           MR. FERNICH:  Yes.

13           THE COURT:  -- in response.  And I don't understand

14   why she hasn't been disclosed as an expert witness and full

15   notice hasn't been given and disclosures turned over.

16           Where do things stand with that?  Have you received

17   information?

18           MS. MORTAZAVI:  Your Honor, apart from the initial

19   letter that I believe the Court has as an exhibit to one of our

20   filings, we've not received anything else.  And so, at this

21   point, we had assumed that Dr. Fanger would not be called as a

22   witness because the time has long passed to give the government

23   sufficient materials to respond to her testimony.  But defense

24   counsel can speak to that.

25           THE COURT:  Before I turn to defense counsel,

M1DCnavC

1   Ms. Mortazavi, if I were to permit Dr. Fanger to testify, is it

2   your position that the government would need to go find another

3   witness or can one of your three experts --

4          MS. MORTAZAVI:  Well, your Honor, it's almost

5   impossible for us to say because we received no 3500 material.

6   We don't know the scope of her testimony.  We don't know what

7   she has reviewed to date regarding this case.  So it could be

8   that our existing experts could respond.  It could be that we

9   have to obtain a new expert.

10          In any event, we think it's far too late to notice

11  Dr. Fanger.

12          THE COURT:  Who wants to be heard from the defense?

13          MR. SERCARZ:  I will, your Honor.  Hopefully this will

14  make it clearer and provide the government with some assistance

15  in this regard.

16          It was originally my intent to obtain an expert

17  witness and have a witness available to testify regarding the

18  various products that were seized by the government and those

19  that were sold by my client in order to have them offer an

20  opinion, if needed, regarding the safety and efficacy of those

21  products.

22          I will not be calling Dr. Fanger or anyone else to

23  testify on that subject, but it becomes increasingly apparent

24  to me, as I read the government's submissions, that an issue

25  may arise as to whether or not Dr. Fishman had the VCPR

M1DCnavC

1    relationship with those animals whose owners and trainers were

2    receiving product from Dr. Fishman.

3         I don't know what, if anything, any government witness

4    is going to say as to that, but that strikes me, as a lay

5    person who's learning this, as he goes, as a very nebulous

6    concept.

7         In the event the government seeks to argue that that

8    relationship did not exist, I wanted to have available to me a

9    witness who could testify as to the breadth of that concept in

10   order for me to make appropriate arguments as to whether or not

11   my client had the appropriate relationship to qualify as a

12   veterinarian who was prescribing and/or dispensing products

13   within the statutory regime.  So, if I called Dr. Fanger as a

14   witness, it would be on that subject and for that purpose.

15        Hopefully, that's helpful.

16        MS. MORTAZAVI:  Your Honor, frankly, it's not.  Again,

17   we don't have any 3500 material, we don't know what she's

18   reviewed.  This Court set a reciprocal expert disclosure of

19   November 18th.  The government met that deadline, in fact had

20   noticed Dr. Cynthia Cole over a year prior to that deadline,

21   and then noticed Dr. Bowman in November.  We still have nothing

22   regarding Dr. Fanger and it's simply insufficient to make a

23   few-sentence disclosure during a court conference less than a

24   week before trial and expect the government to be prepared to

25   respond to expert testimony.

1          We think that she should be excluded.

2          THE COURT:  Based on what I heard so far, I don't

3    really see a legitimate reason why notice was not given of what

4    you're telling me you intend to try to use Dr. Fanger for and

5    why you didn't provide disclosure materials, both about what

6    she may have seen.  I take it you're telling me she may have

7    not seen anything yet.  I don't know.  But the government was

8    entitled to know that.  And I did enter an order setting

9    November 18th as the deadline.  So the Court's current view is

10   that that's off limits.

11         MR. SERCARZ:  I respect it, I understand it, and if I

12   have anything to add, I will make the application in writing

13   for the Court to rule on and for the government to comment on.

14         THE COURT:  That's fine.  I think that that takes care

15   of the in limine motions.

16         As I said, we obviously need to have a further

17   conference before the trial of this case begins next week.

18   Let's set Tuesday.  What time, Ms. Dempsey?

19         THE DEPUTY CLERK:  1:30.

20         THE COURT:  Why don't we say 2:00 p.m. for a

21   conference in the case.

22         THE DEPUTY CLERK:  Okay.

23         THE COURT:  I want to talk to you about a few other

24   things.  I want to make sure I understand clearly what I have

25   now before me.

M1DCnavC

1         Ms. Mortazavi, you were good enough, I believe it was
2    you who had delivered to the Court this binder that contains
3    the pretrial submissions.
4         MS. MORTAZAVI:  Quite technically, our paralegal,
5    Ms. Jung, yes.
6         THE COURT:  Thank you.  I want to be clear that, in
7    terms of proposed requests to charge, there is now one joint
8    document and that the areas of disagreement -- the only things
9    on which there are disagreement are the charges where there are
10   colored competing provisions; correct?
11        MS. MORTAZAVI:  That's correct, your Honor.  It's
12   No. 7 in the tabbed binder that we've provided to the Court.
13        THE COURT:  Is that correct, Mr. Fasulo?
14        MR. FASULO:  That is correct, Judge.
15        THE COURT:  Mr. Sercarz?
16        MR. SERCARZ:  Yes.
17        THE COURT:  These are joint requests from Dr. Fishman,
18   Ms. Giannelli, and the government, except where there are
19   disputes that have been noted?
20        MR. FASULO:  That's correct.
21        MR. SERCARZ:  And subject to any theory of defense
22   charges.
23        THE COURT:  Yes.
24        MR. FASULO:  Yes, I assumed that was --
25        THE COURT:  Yes.  Correct.  With respect to the

M1DCnavC

1    question of a proposed juror questionnaire and/or questioning

2    the jurors, the Court has no intent to distribute to the jurors

3    the somewhat massive proposed questionnaire that the defendants

4    submitted.  I am not doing a written questionnaire.  The Court

5    will conduct voir dire of prospective jurors.

6            Was that a joint submission by Ms. Giannelli and

7    Dr. Fishman?

8            MR. SERCARZ:  Yes, your Honor.

9            THE COURT:  So I'm not going to ask to have that

10    distributed to jurors.

11            Having said that, I did review it very carefully.

12    It's got close to a hundred questions in it, I think.  Some of

13    those questions may be appropriate for us to inquire during the

14    oral voir dire that the Court will conduct.

15            Some of the questions in there, there is a question in

16    there about gang violence and conspiracy.  I don't know what

17    that has to do with this case.  I mean, some of it seems

18    completely and totally irrelevant.

19            Go back, carefully review your proposed written

20    questionnaire, defendants, and if there are specific, discrete

21    questions that you would like me to add, I will consider them.

22    I'd like to receive that by the close of business tomorrow.

23            MR. FASULO:  Judge, if we can consult with the

24    government and see if we can come to some sort of consensus on

25    the additional questions before we respond to the Court?

M1DCnavC

1    THE COURT:  Sure.  That would be even better.

2    MR. FASULO:  Thank you.

3    THE COURT:  All right.  I'm not saying that I have

4    carefully reviewed the government's proposed oral questions and

5    decided whether they're all fine or any of them are off limits.

6    I will do that and we'll talk about that on Tuesday afternoon.

7    But I am telling you that we're going to do it by oral

8    questioning and not a written questionnaire.

9    Now, obviously, before we pick a jury, it is

10    appropriate for me to give the jurors, in a very broad brushed

11    sense, a statement about what the case is about.  I do have

12    from your proposed -- which I now understand to be the joint

13    proposed instructions, a general summary of the case.  Oh, no,

14    I'm sorry.  It's at the beginning of the voir dire.

15    MS. MORTAZAVI:  That's correct, your Honor.

16    THE COURT:  Defendants, have you signed off on that?

17    Are you in agreement?

18    MR. FASULO:  Judge, can we also -- the answer is we

19    reviewed the government's submissions and when we saw they

20    wanted to do it, in substance, we were not at odds with the

21    government's submission.  But if you give us a little bit of

22    time again to jointly talk to the government, we may have a

23    joint --

24    MR. SERCARZ:  Your Honor, I was struck by the -- in

25    the government's proposed voir dire questionnaire by their use

M1DCnavC

1  of the term "overseas" in their description of the defendant's

2  activity because it triggered in me precisely the colloquy that

3  we had in court today and I would urge the Court to bear in

4  mind my reservations about consenting to that term in that

5  location.

6        THE COURT:  I'm not ruling on anything right now.

7  You're going to go back and confer with the government.  Let me

8  give you a couple of observations.  And Ms. Mortazavi, you have

9  Mr. Sercarz' comment in that regard, too.  It may well be

10  that -- it is in the indictment; right?  It is.  So, to fairly

11  summarize the indictment at the time you're just orienting the

12  jury to what the case is about, it may be appropriate.  But all

13  I'm saying, go back and talk about this and then come back to

14  the Court.

15        Let me give you a couple of other general

16  observations.

17        I think the defendants are proposing that we say that

18  Dr. Fishman's product violated FDA regulations and that we take

19  out any reference to criminal laws.  I'm not doing that.  This

20  is a criminal case.  So you should be guided accordingly.

21        Then there is an objection by Dr. Fishman to any

22  reference of violations overseas.  That's your point, we just

23  alluded to that.  So I'm going to skip down to that.

24        I will say the government's phraseology is a little

25  redundant on the performance enhancing aspect of it.  You talk

M1DCnavC

1    about performance enhancing PEDs, for example.

2             So why don't you, both sides, talk to each other, go

3    back and look at what's been submitted, and by the close of

4    business tomorrow, if you can agree on a proposed introduction

5    of the case for the jury, I think that would be a very helpful

6    thing.

7             I don't know whether you've all talked about or have

8    given consideration to the number of alternates that we ought

9    to include here.  Standard, we would have two.

10            But, given where we're at, Ms. Mortazavi.

11            MS. MORTAZAVI:  Your Honor, our request is we seat

12   four alternates just given the length of this trial.

13            THE COURT:  Defendants.

14            MR. FASULO:  Judge, from defendant Giannelli, we would

15   agree, at least four alternates.

16            MR. SERCARZ:  I agree.

17            THE COURT:  At least or four?

18            MR. FASULO:  Four.

19            MR. SERCARZ:  I agree, your Honor.

20            THE COURT:  Four.  All right.  Then we'll seat four

21   alternates.

22            And you all know the rules, then, in terms of how that

23   impacts the question of additional challenges; right?

24            All right, there was a request by the government to

25   take one witness by closed circuit TV, I think you're asking

M1DCnavC

1    for?

2              MS. MORTAZAVI:  That's correct, your Honor.  And I

3    understand that it's on consent.

4              THE COURT:  Defendants.

5              MR. FASULO:  Yes, Judge, it's on consent.  We are

6    working out the details with the government to ensure the

7    proper protocols, but assuming we meet all those protocols, we

8    are going to be fine.

9              MR. SERCARZ:  Agreed.

10             THE COURT:  So you all need, obviously, to work with

11   the Court AV people, too, and that's true not only with this

12   witness, but you also need to make sure you're all conversant

13   with and able to handle the AV equipment that will be in the

14   courtroom.

15             We will not be in this courtroom.  I think you all

16   know that, for criminal trials, there are three larger

17   courtrooms in this courthouse.  One is the ceremonial courtroom

18   and there are two others.  They've been reconfigured so that

19   that back wall of the jury box is removed and the whole jury

20   box is extended to be that whole side of the courtroom so that

21   jurors are socially distanced.

22             If we're going to be seating 16 in the jury box --

23   I'll just doublecheck.  I don't know yet.  I asked earlier this

24   morning what courtroom we're assigned to and I still don't have

25   an answer, but I will let you know as soon as I know.

M1DCnavC

1          But you can, in the meantime, still confer with the AV

2     people and all.

3          MS. MORTAZAVI:  Your Honor, we would just ask for the

4     opportunity to have our paralegal access the courtroom perhaps

5     the day before trial in order to test the technology and ensure

6     that we are seamless.

7          THE COURT:  I understand this issue.  Frankly, I have

8     the same request, that I'd like to see the courtroom in which

9     we're going to be proceeding.

10          So, I mean, we'll all be in touch with each other over

11     the next four or five days and, obviously, be coordinating

12     about these things, but both sides will try to accommodate

13     requests.

14          MR. FASULO:  Judge, we would have our paralegal come

15     in to take a look and figure it out.

16          THE COURT:  That's what I'm saying, having all parties

17     have access to the courtroom and figure out how we're going

18     to -- where you're going to have your clients and how you're

19     going to deal with this social distancing issue.

20          MR. FASULO:  Yeah, that's an issue, Judge.

21          THE COURT:  I understand.

22          MS. MORTAZAVI:  Your Honor, I understand that we don't

23     know the precise courtroom.  Does the Court have a sense of

24     whether we will be in this courthouse for trial?

25          THE COURT:  Yes, I believe we're in this courthouse.

M1DCnavC

1    I did have a request from another judge to swap, but I said no

2    because we're a multi-defendant case.

3            MS. MORTAZAVI:  Thank you, your Honor.

4            THE COURT:  So we'll be in -- at least that's my

5    understanding, that we're in this courthouse.  I'll let you

6    know if it turns out that I'm wrong.

7            I'd also ask you, have you been talking to each other

8    about proposed fact stipulations to try to streamline things?

9    Nothing has been submitted to me in that regard.

10           MS. MORTAZAVI:  Yes, your Honor.  The parties have

11   been discussing stipulations for several weeks now.  We have

12   some signed stipulations and we are working on the language of

13   others.  We've been working cooperatively.

14           THE COURT:  So the only other thing I just really want

15   to note today, and I think that's probably all we can

16   accomplish today, is we've been allotted three weeks for this

17   trial.  That's what you all represented to me at the outset

18   that you needed.  Given the centralized scheduling system,

19   there is not a lot of room for play here.  So people need to

20   plan accordingly in terms of how you present your respective

21   cases.  You might want to talk to each other about some kind of

22   a protocol or a system for timekeeping and how we're going to

23   manage things.

24           MS. MORTAZAVI:  Simply because your Honor brings it up

25   now, it's something we planned to discuss with defense counsel,

M1DCnavC

1    but our hope is that we can receive any exhibits that the

2    defense wishes to show the witnesses in advance, in part so

3    that we can -- the government's plan is to have the witnesses

4    have binders of exhibits on the stand so there is no cross

5    contact in movement between counsel at the podium and the

6    witness.  We would ask that the witnesses have all the exhibits

7    that are going to be used during questioning available to them

8    at the beginning and, in addition, so that if we do have any

9    objections to any exhibits, we can deal with them at sidebar

10   without having to engage in those kinds of discussions in front

11   of the jury and sort of belabor the trial day and a witness's

12   testimony.

13           THE COURT:  Why don't you all talk to each other and,

14   on Tuesday, we can talk further about that.

15           But, in concept, is there an objection to that by the

16   defense?  I do think it makes sense to try to avoid people

17   moving around the courtroom to the extent we can and to have

18   people handing exhibits to my courtroom deputy or to the

19   witness directly.

20           MR. FASULO:  Judge, as you know, it's very difficult

21   for the defense at this point to make some decisions as to

22   exactly what documents we're going to use.

23           Also, in terms of strategy of the case and disclosure

24   of our strategy of the case, it's going to be involving during

25   the case.  So there is, obviously --

M1DCnavC

1          I understand the Court's concern.  So we will try to

2     accommodate it, but I don't want to be bound by that because

3     it's going to hamper our ability to effectively cross examine

4     witnesses when we didn't anticipate something that the

5     government, obviously, from prepping witnesses, knew what they

6     were going to say.

7          THE COURT:  Finally, the thing I wanted to raise with

8     you all, do people have reactions to the questions of jurors

9     taking notes during the trial?

10         MS. MORTAZAVI:  No issues from the government's

11    perspective.

12         THE COURT:  Defendants?

13         MR. FASULO:  Judge, I generally have no issues and in

14    this case, I have no issues.

15         MR. SERCARZ:  No objection, your Honor.

16         THE COURT:  If that's the view of all parties, we will

17    permit it then.

18         All right.  Is there anything else that anyone thinks

19    we should talk about today?

20         MS. MORTAZAVI:  Yes, your Honor.  Just a sense of the

21    hours that the Court intends to keep during trial so that we

22    can plan for witnesses who are out of state who may be

23    traveling in.  I know judges have done it differently during

24    COVID.

25         THE COURT:  I think, Ms. Mortazavi, the reason people

M1DCnavC

1    are doing it differently, I could be wrong, but I've been

2    trying to get clarity on this, but I think depending on what

3    courtroom we're instructed to use and all, I may be dictated to

4    by the powers that be, but I'm not 100 percent sure about that.

5         If I have complete flexibility, we would begin,

6    generally speaking, at 9:30 each day and go to 4:30, 5 o'clock

7    each day with a one-hour lunch break and breaks in the morning

8    and in the afternoon.

9         Any suggestions otherwise, or objections or comments?

10        MR. SERCARZ:  Not a suggestion, but a question.  Does

11   the Court work a five-day week on trial or four?

12        THE COURT:  Five days given what we're dealing with.

13        MR. FASULO:  We only have three weeks, so I assume

14   five days.

15        THE COURT:  Yes, five days given we have three weeks.

16   Yes.

17        MR. FASULO:  Judge, we're assigned on the case, so I

18   was going to request minutes on a daily basis from the Court.

19        THE COURT:  You mean a transcript?

20        MR. FASULO:  Transcripts.

21        THE COURT:  You make your arrangements with the court

22   reporters on that.

23        MR. FASULO:  We need an order for CJA.

24        THE COURT:  Oh, for CJA.  Yes.

25        MR. FASULO:  Yes, I plan on doing that.

M1DCnavC

1          I also talked to your deputy about a place for our

2     cart, a small cart.  There is so much materials.  A cart of

3     materials we have to bring in the courthouse, that would be the

4     second.

5          And third, there will be two seats at counsel table,

6     I'm assuming, for me and --

7          THE COURT:  I think so.  Once we know our courtroom,

8     we'll know better.  So hopefully on Tuesday I'll have an answer

9     to all of these things.

10          MR. FASULO:  I'm trying to get my head in place.

11          THE COURT:  It's confusing for me, too.  I really wish

12     we could do it here, but we just can't.

13          What you just said reminded me, though, of something,

14     and now it just went right out of my head.  Let me just look at

15     my notes.  I'm not remembering.  There was something you were

16     asking me that triggered --

17          MR. FERNICH:  It only gets worse, I can assure you.

18          THE COURT:  Thank you.  You may be a little bit

19     misjudging things, but --

20          MR. FERNICH:  I'm just speaking from my own

21     experience.

22          THE COURT:  You may be ignoring other people's

23     experiences, is my point.  You may be misjudging.

24          All right.  We will resume then on Tuesday.  I will

25     get further submissions from you all by the close of business

M1DCnavC

1    tomorrow.  Obviously, the Court will be working between now and

2    the start of trial or between now and Tuesday, as well.  So if

3    there are issues that come up, I'd ask you please work together

4    and confer with one another.  If there are things that come up

5    between now and Tuesday that you want to raise with us, feel

6    free to reach out and we will try to be responsive to you, and

7    I may remember whatever it was that I was going to raise with

8    you all and ask you all about.

9             MR. FERNICH:  Two minutes after we leave, you will.

10            MR. FASULO:  Judge, I think there is one thing

11   scheduled for us on Monday and something for us also to

12   respond?

13            THE COURT:  I think that's right.  The government is

14   going to give me, by Friday, the information about its position

15   on the Delaware investigation and the death of the horse and

16   you're going to respond by the close of business Monday.

17            MR. FASULO:  Right.

18            THE COURT:  On all these other things that we've been

19   talking about where you're going to try to work out, for

20   example, the introduction of the case to the jury and those

21   sorts of things, I asked you to try to do that by the close of

22   business tomorrow.

23            MR. FASULO:  Just wanted to make sure we were clear on

24   the other response.  That's all.  Thank you.

25            THE COURT:  Is there anything else from anyone?

M1DCnavC

1          MR. SERCARZ:  Your Honor, perhaps this is for the

2     purpose of advising you at the earliest possible date.  I have

3     a sentencing on February 7th in the afternoon before Judge

4     Donnelly in the Eastern District.  She has scheduled a whole

5     series of sentences and the date is going to be extremely

6     difficult to move.  I have spoken to the government about

7     having the time to go across the bridge and take care of that.

8     I understand — hope I'm not speaking out of turn — that they

9     have no objection to the request, but clearly the Court's

10    schedule is most important.  February 7th at 3 o'clock is the

11    scheduled time of the sentence, and it's Judge Donnelly.

12         THE COURT:  We'll make a note of that.  I assume you

13    would have to leave here by 2 o'clock?

14         MR. SERCARZ:  I assume, yes.

15         THE COURT:  So remind me again as we get closer.  I'll

16    try to make a note of it and remember it, but perhaps that day

17    we work straight through with just a morning break, no lunch

18    break, and we conclude for the day at 2 o'clock.

19         MR. SERCARZ:  Thank you, your Honor.

20         THE COURT:  Anything else?

21         MS. MORTAZAVI:  Nothing from the government.  Thank

22    you.

23         MR. FASULO:  Nothing on behalf of Ms. Giannelli.

24    Thank you.

25         MR. SERCARZ:  No.  Thank you, your Honor.

M1DCnavC

1           THE COURT:  We'll let you know as soon as we learn

2       anything about what courtroom we're in and when you can have

3       access to the courtroom, and you'll all reach out to coordinate

4       with AV people; right?

5           MS. MORTAZAVI:  We already have, your Honor, and we

6       plan to.

7           THE COURT:  The same for the defendants, obviously;

8       right?

9           MR. SERCARZ:  Yes, your Honor.

10          THE COURT:  Also, if you want daily transcripts, you

11      also need to make those arrangements with the court reporter.

12          MR. FASULO:  We will do that.  I know we need court

13      approval.

14          THE COURT:  That reminds me of one thing.  Are you

15      planning to make arrangements for realtime transcripts?

16          MS. MORTAZAVI:  The government does not plan to do

17      that.

18          MR. SERCARZ:  No, your Honor.  Your Honor, I'm going

19      to have to talk to my client about that.

20          THE COURT:  Mr. Fasulo, do you know, is that

21      something -- you're probably not contemplating; right?

22          MR. FASULO:  I wasn't going to, Judge, but seeing the

23      situation with counsel, in understanding the requests and

24      participation by cocounsel, so I may, Judge, and I take it that

25      would really help us to move forward.  So I'll make that

M1DCnavC

1  determination.

2          THE COURT:  Why don't you all talk about this, too,

3  see if you can work out the logistics.  If you want daily

4  transcripts, you need to coordinate that with the court

5  reporters.  If you want realtime, arrangements need to be made,

6  including having access for the Court to the realtime.

7          All right.  We are adjourned.  Thank you very much,

8  everybody.  Have a good rest of the day and I'll see everybody

9  on Tuesday.

10                          * * *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25