

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

January 29, 2022

**By ECF**
Hon. Mary Kay Vyskocil
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

                    Re:  *United States* v. *Fishman*, S6 20 Cr. 160 (MKV)

Dear Judge Vyskocil,

       The Government writes regarding the proposed conscious avoidance instruction included in the Government's proposed jury charge. A conscious avoidance charge is warranted where the defendant has asserted "the lack of some specific aspect of knowledge required for conviction" and there is "an appropriate factual predicate for the charge, *i.e.*, the evidence is such that a rational juror may reach the conclusion beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *United States v. Fofanah*, 765 F.3d 141, 144 (2d Cir. 2014) (internal quotation marks and ellipsis omitted). A defendant's "failure to question the suspicious circumstances [of his activity] establishes [his] purposeful contrivance to avoid guilty knowledge." *United States v. Lange*, 834 F.3d 58, 78 (2d Cir. 2016) (internal quotation marks omitted); *see also United States v. Wedd*, 993 F.3d 104, 118-19 (2d Cir. 2021) ("As our precedent shows, in sufficiently suspicious circumstances, a mere failure to ask questions—even absent more affirmative steps of avoidance—can demonstrate conscious avoidance."); *United States v. Ferguson*, 676 F.3d 260, 278 (2d Cir. 2011) ("Red flags about the legitimacy of a transaction can be used to show both actual knowledge and conscious avoidance." (citing *United States v. Nektalov*, 461 F.3d 309, 312, 317 (2d Cir. 2006))).

       Here, Fishman has plainly advanced a defense on the basis of a purported lack of knowledge as to certain important facts. Most significantly, Fishman has asserted, through cross-examination of the Government's witnesses, that he lacked knowledge that his clients were using his products to violate racing regulations – a fact that, were it true, would suggest that Fishman lacked any intent to deceive racing regulators through his drug manufacturing operation. He has done so through questions regarding the practice of "breezing," implying that Fishman understood only that his clients would be using his products at unregulated exercise sessions, rather than at regulated competitive events. *See, e.g.*, Tr. 868:14-25 (cross-examination of Adrienne Hall, asking "Do you know what breezing a horse means?"). More broadly, the defense

has repeatedly implied through its cross-examinations that Fishman entirely lacked knowledge of what his trainer-clients were doing with his drugs, including as to whether those trainer-clients were abusing his drugs in an effort to defraud and mislead racing regulators. *See* Tr. 275-76 (Cross-examination of Angela Jett: "Q: But your notes do not indicate, do they, whether Dr. Fishman *learned about the use of these drugs* at the time he gave them to David Brooks or after the fact; am I correct?" (emphasis added)); *see also* Tr. 697:4-5 (Cross-examination of Ross Cohen: "The trainer is the one who is ultimately responsible for the horses, is that correct?"); Tr. 848:18-23 (Cross-examination of Adrienne Hall: "Q. In any event, Ms. Hall, prior to this conversation, you didn't tell Dr. Fishman that you planned on administering VO2 [Max] to your horse on race day, did you? A. I don't remember if I did or not. Q. And when you look at Dr. Fishman's response, that took him by surprise, didn't it?"); Tr. 39:4-8 (Fishman opening statement: "[T]here are all too many horse owners and all to[o] many trainers who are willing to sacrifice the health and welfare of their animals in order to achieve a temporary and unlawful advantage in a horserace. . . . [F]or every person who comes to a veterinarian with a legitimate need for animal medicine, there may be somebody who requests that medicine for the sake of using it for nefarious purposes. And the government just asked you to use your common sense. Your common sense will tell you that *you can't always tell* who the people are that are wearing the white hats and the black hats." (emphasis added)); Tr. 43 (Fishman opening statement) ("And in attempting to prove that he defrauded regulators or racing authorities, I ask you again to consider the likelihood that not everyone who purchased product from Dr. Fishman told him in advance that they intended to use otherwise appropriate medical products to achieve an unlawful advantage in a horserace.").

To the extent that Fishman lacked actual knowledge of the illegality of his conduct,[1] there is ample evidence that he consciously avoided confirming relevant facts in the face of overwhelmingly suspicious circumstances. Indeed, the instruction is particularly appropriate in a case such as this where "a defendant's involvement in the criminal offense [is] so overwhelmingly suspicious that the defendant's failure to question the suspicious circumstances establishes the defendant's purposeful contrivance to avoid guilty knowledge." *United States v. Kozeny*, 667 F.3d 122, 134 (2d Cir. 2011); *see also Wedd*, 993 F.3d 104, 118-19 ("[I]n sufficiently suspicious circumstances, a mere failure to ask questions—even absent more affirmative steps of avoidance—can demonstrate conscious avoidance."). For roughly twenty years, Fishman sold dozens of products and thousands of vials of drugs that he declared to be "untestable" to trainer-clients in the racing industry. Assuming a lack of actual knowledge (precisely as Fishman has put at issue), the circumstances of Fishman's offenses are without question "overwhelmingly suspicious" so as to warrant the conscious avoidance charge.

---

[1] Fishman did, indeed, have actual knowledge of the particulars of his offenses, but the Government "need not choose between an 'actual knowledge' and a 'conscious avoidance' theory." *Ferguson*, 676 F.3d at 278. That is, a conscious avoidance instruction "is not inappropriate merely because the government has primarily attempted to prove that the defendant had actual knowledge, while urging in the alternative that if the defendant lacked such knowledge it was only because he had studiously sought to avoid knowing what was plain." *United States v. Hopkins*, 53 F.3d 533, 542 (2d Cir. 1995); *see United States v. Carlo*, 507 F.3d 799, 802 (2d Cir. 2007); *United States v. Kaplan*, 490 F.3d 110, 128 n.7 (2d Cir. 2007).

Moreover, the evidence at trial reflects certain affirmative efforts to avoid confirming certain facts that extends beyond the mere fact that Fishman's entire course of conduct was overwhelmingly suspicious. For example, Government Exhibit 113C-T reflects a conscious effort by Fishman to maintain a lack of knowledge: "You get the trainer that all of a sudden they get great and, you know, they use a lot of it [*i.e.*, Fishman's drugs] and they do things and you get owners that are annoyed and you know they call me and it's like 'how did you let my trainer fuck my horse up?' *I don't know* am I there with a gun over his head? How do I stop the trainer from fucking your horse up? That should be the question." (emphasis added). Similarly, Government Exhibit 109D-T reflects Fishman's facetious response to learning that his clients were likely abusing and/or redistributing the misbranded and adulterated drugs that he was sending them ("You know, I have people that have X horses but they buy product for 5X horses *so go figure that out*." (emphasis added)). These kinds of conversations, reflecting Fishman's studied effort to avoid a too-direct interaction with his trainer customers, are of the type that a "jury could construe as an active attempt to insulate himself from discussions which he knew would involve direct acknowledgement of the fraud." *Wedd*, 993 F.3d at 119.

Assuming *arguendo* that Fishman lacked actual knowledge, as his defense has advanced, he consciously avoided obtaining actual knowledge of incriminating facts. In the face of overwhelmingly suspicious circumstances, and even in the face of pressure from horse owners, the record evidence reflects certain instances in which Fishman actively maintained ignorance of the precise timing and extent of his client's doping activities. That is, at least in those certain instances, he remained willfully blind to certain important facts establishing his guilt. This combination of defense argument and record evidence supports the inclusion of the Government's proposed conscious avoidance charge.

                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney

By:     /s/ Andrew C. Adams
           Andrew C. Adams
           Sarah Mortazavi
           Anden Chow
           Assistant United States Attorneys