UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

UNITED STATES OF AMERICA,

          v.                    20 Cr. 160 (MKV)

SETH FISHMAN and
LISA GIANNELLI,

          Defendants.

                            Trial

------------------------------x

                            New York, N.Y.
                            January 24, 2022
                            10:12 a.m.

Before:

                HON. MARY KAY VYSKOCIL,

                            District Judge
                            –and a Jury–

                    APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  ANDREW C. ADAMS
     SARAH MORTAZAVI
     ANDEN F. CHOW
     Assistant United States Attorneys

SERCARZ & RIOPELLE, LLP
     Attorneys for Defendant Fishman
BY:  MAURICE H. SERCARZ
     –and–
LAW OFFICE OF MARC FERNICH
BY:  MARC A. FERNICH

FASULO, BRAVERMAN & DiMAGGIO, LLP
     Attorneys for Defendant Giannelli
BY:  LOUIS V. FASULO (Via videoconference)


ALSO PRESENT:  KARLINE JUNG, Paralegal Specialist
                 SEAN McCABE, Paralegal Specialist

M1OPFIS1

1          (Trial resumed; jury not present)

2          (Case called)

3          THE COURT:  Please be seated, everyone.  Good morning,

4    Ms. Dempsey.  Good morning.

5          All right.  Would you --

6          THE DEPUTY CLERK:  Counsel for the government, state

7    your name for the record.

8          MS. MORTAZAVI:  Good morning, your Honor.  Sarah

9    Mortazavi, Andrew Adams and Anden Chow for the government.

10          THE COURT:  Good morning.

11          MR. SERCARZ:  For the defendant Fishman, Maurice

12    Sercarz, Marc Fernich.  Good morning, Judge.

13          THE COURT:  Good morning.

14          And is Mr. Fasulo with us on Teams?

15          MR. FASULO:  Judge, it's Mr. Fasulo.  Judge, can you

16    hear me?

17          THE COURT:  Yes, I can, Mr. Fasulo.  Thank you.

18          MR. FASULO:  Yes, it's Mr. Fasulo.  I'm outside the

19    courthouse.

20          THE COURT:  All right.  And Ms. Giannelli is with us

21    in the courtroom.

22          So --

23          MR. FASULO:  And Mr. McCabe, my colleague, is there.

24          THE COURT:  I'm sorry?

25          MR. FASULO:  And Mr. McCabe should be in the courtroom

M1OPFIS1

1        as well.

2                THE COURT:  Yes, and Mr. McCabe, you told me, is not a

3        lawyer?

4                MR. FASULO:  That's right.

5                THE COURT:  That's why I asked you to dial in to

6        Teams, Mr. Fasulo.  I'm sorry to have you do that.

7                MR. FASULO:  No, no, this is fine, Judge.  I'm sorry.

8                THE COURT:  Are you comfortable, Mr. Fasulo, with me

9        sharing with people where we're at?

10               MR. FASULO:  Yes, your Honor.  Yeah.

11               THE COURT:  I don't have that much choice.

12               MR. FASULO:  Yeah, yeah, that's fine, Judge.  Just go

13       ahead.  It is what it is.  Yes, I'm comfortable.

14               THE COURT:  All right.  Thank you.  All right.

15       Everyone, so here's where we're at this morning.  You all saw

16       the order that I issued on Friday about the new protocol that,

17       anybody who wanted to unmask so they could question any witness

18       and any witness that is going to be taking the witness stand

19       have to test for Covid.  Mr. Fasulo has tested positive.  He

20       does not have co-counsel.

21               I don't see a lot of alternatives here.  Mr. Fasulo,

22       one thing that you could do is if you go somewhere and you get

23       a PCR lab test or a molecular test and it comes back negative,

24       we can resume the trial, but given that you've been tested

25       multiple times and you have some symptoms, I'm not optimistic.

1          MR. FASULO:  Yes, Judge.  Yesterday night -- just for

2     the record.  Last night I did take a rapid test at home.  It

3     did come up negative.  However, today in the courtroom, I had

4     two rapid PCR tests done, and I did have a starting of a tickle

5     in my throat; so I was a little concerned yesterday, as my wife

6     was.  But after the test, I thought I was going to be okay, and

7     now this is where we're at.

8          I will do another test, but I believe this is probably

9     the right prognosis based on how I'm feeling right now.  I will

10     get another test, but I'm not optimistic.

11          THE COURT:  Mr. Fasulo, did you speak to

12     Mr. Giannelli?

13          MR. FASULO:  I had to leave the courtroom very

14     quickly.  I had a brief conversation that I had to leave the

15     courtroom that I will talk to her later.  But I can speak with

16     her, but I think you're right, I don't know what we're going to

17     do, Judge.  I feel terrible about this.  It's a nightmare.

18          THE COURT:  All right.  Well, folks, the reason I

19     convened everyone is under rule 26.3, I can't declare a

20     mistrial without conferring with you all and telling you.  I

21     just don't see any other alternative because, under the

22     protocol, if Mr. Fasulo is positive for Covid, which it is

23     likely he is and has had two tests, he has no co-counsel,

24     Ms. Giannelli can't be unrepresented during the course of this

25     trial, I don't know what alternative we have.

1          The protocol says he can't return to the courthouse

2     for ten days.  I can ask the jury to wait until tomorrow, but I

3     can't have a jury on ice for then days.  Ms. Mortazavi?

4          MS. MORTAZAVI:  Your Honor, the government's proposal

5     is that we sever the defendants, declare a mistrial with

6     regards to Ms. Giannelli but continue as to Dr. Fishman.  As I

7     understand it, Mr. Sercarz has tested negative, as has

8     government's counsel, and the jury is impaneled.  We are

9     prepared to proceed, and this would at least provide some

10    progress and forward motion for the case, and it seems like a

11    good resolution.

12         THE COURT:  Mr. Sercarz?

13         MR. SERCARZ:  Your Honor, when I heard about

14    Mr. Fasulo --

15         THE COURT:  Speak into the microphone for the court

16    reporter's sake.  Thank you.

17         MR. SERCARZ:  When I heard about Mr. Fasulo's test

18    results, my immediate reaction was I wanted Mr. Fernich to take

19    a test, and I wanted my client tested.  It will be for naught

20    if it turns out that a day from now or two days from now, one

21    of us on the defense team tests positive.

22         I remind the Court that Ms. Giannelli is unvaccinated.

23         THE COURT:  You don't need to say that on the record.

24         MR. SERCARZ:  I'm sorry.  Your Honor, it seems to me

25    it would make sense if we at least get a test result on

1  Mr. Fernich and on Mr. Fishman before we decide whether or not

2  to proceed.

3  THE COURT:  I thought that Mr. Fernich did go down and

4  have a test.

5  MR. FERNICH:  Judge, while the Court asked us to

6  reconvene, I was down there about to get the test.

7  THE COURT:  Okay.

8  MR. FERNICH:  Let me just add one other consideration

9  to the mix here.  You know, if, God forbid, a witness, a

10  prospective witness on either side -- well, pertinent to what

11  I'm going to say -- on the government's side should test

12  positive, it's going to raise the concerns --

13  THE COURT:  Yes.

14  MR. FERNICH:  -- discussed in my letter of Friday

15  night.

16  THE COURT:  Yes, I understand, but my reaction to your

17  letter, similar letter I got from Mr. Fasulo, is that's all

18  speculative.  Right now, I presume the government is having its

19  witnesses tested.  Correct?

20  MS. MORTAZAVI:  That's right, and all the witnesses we

21  anticipate testing today have all tested negative.

22  THE COURT:  Right.  So if and when there's a problem

23  with a witness, we can deal with that, but right now, there is

24  no issue about the defendant's confrontation rights, none.

25  MR. FERNICH:  I agree with that, so long as everybody

1  tests negative and the witnesses are unmasked.

2         THE COURT:  Correct, and they will be.

3         MR. FERNICH:  Well, anyway, I agree in the first

4  instance with Mr. Sercarz, we should check me out.  I've tested

5  negative three times in the past month, but I'm hopeful.

6         THE COURT:  Yes, we should check you out, Mr. Fernich,

7  which is why I issued an order on Friday asking you to come to

8  the courthouse an hour ahead of time --

9         MR. FERNICH:  (Indiscernible).

10        THE COURT:  -- and why I issued another order over the

11 weekend because everyone --

12        MR. FERNICH:  Well --

13        THE COURT:  -- please stop muttering.  I issued

14 another order because everyone, except for your team, had been

15 in touch with district executives office, as I asked you to be

16 so that we wouldn't have these kinds of delays this morning.

17 So I agree with you, you should be tested, and if Dr. Fishman

18 wants to get tested, the district executive can facilitate

19 that.

20        MR. FERNICH:  Your Honor, I certainly will be tested.

21 The reason that I did not get tested prior to hearing the

22 unfortunate news about my friend, Mr. Fasulo, is because I

23 didn't intend to be in the witness box today; so no test was

24 necessary under the terms of the order, but clearly, the

25 situation has changed.

M1OPFIS1

1      THE COURT:  Correct.

2      MR. FERNICH:  So I'm happy to do that.  The reason I

3  mentioned the situation about the witness is the last thing any

4  of us want, and I say this sincerely, is for this to go on

5  further and we all invest more time in it.  And, of course, I'm

6  speculating now, but it's not beyond the realm of possibility

7  that the witness could test positive after we've all invested

8  greater resources, and then we'd have more of a conundrum.

9  That's the only reason I mention it.

10     THE COURT:  Correct, but I don't want to waste time on

11  speculating.  What's your position with respect to the

12  proposal, Mr. Sercarz?

13     MR. SERCARZ:  With regards to the severance?

14     THE COURT:  Yes.

15     MR. SERCARZ:  May I have one moment to consult?

16     THE COURT:  Sure.

17     MR. SERCARZ:  Thank you.

18     MR. FASULO:  Judge, if I could have a moment to get

19  off this phone and get on with Mr. McCabe, and he can talk to

20  Ms. Giannelli?  It will take me five minutes, but I would like

21  to have that conversation, to give the Court my position.

22     THE COURT:  Yes.  I would like to do the following, I

23  would like to recess briefly because I have a defendant that's

24  supposed to be coming in for an arraignment.  He was due here

25  at 9:00.

M1OPFIS1

1      Why don't I give you all time to confer about all of

2  this.  I suggest we let the jury go for today and ask them to

3  be back tomorrow morning because it's not really fair to the

4  jurors to have them sitting, waiting.

5      MS. MORTAZAVI:  Your Honor, I think that we would have

6  some resolution certainly by the afternoon session that we had

7  planned.  So the government's proposal is that we ask the

8  jurors to come back in the afternoon and if, in the interim, it

9  looks as if we cannot proceed and there's a mistrial as to both

10  defendants, then we can certainly alert the jurors that they

11  don't need to come back.

12      THE COURT:  All right.  Why don't we do this.  I won't

13  release the jurors.  Ms. Dempsey, are you able to go see them

14  and explain to them that we have some issues that we have to

15  deal with, and we appreciate their patience and will be back to

16  them as soon as we can?

17      THE DEPUTY CLERK:  Sure.

18      THE COURT:  It may be that we let them go until after

19  lunch, but the more you let people leave and then come back in,

20  the more we're introducing the possibility of a problem, which

21  is why we're providing lunch to the jurors.

22      So why don't we take a break until 11:00.  Everyone

23  can have time to confer.  Hopefully, Mr. Fernich, you can get

24  your test.  If Dr. Fishman wishes to get a test, I think can we

25  facilitate that?

1          THE COURT:  No, that test won't be good enough.  I'm

2     asking the district executive's office.  Can we facilitate a

3     test for the defendant?

4          MR. FRIEDLAND:  Yes.

5          THE COURT:  Okay.  So, Mr. Fernich, if you and

6     Dr. Fishman would see Mr. Friedland, or his colleagues, where

7     you were told to show up, I'm see everyone after 11:00.  In the

8     meantime, people, please confer and be prepared to address the

9     severance proposal.

10          MS. MORTAZAVI:  Thank you, your Honor.

11          MR. SERCARZ:  Thank you.

12          MR. FASULO:  Thank you, your Honor.

13          (Recess)

14          (In open court; jury not present)

15          THE COURT:  Please be seated, everyone.  All right.

16     Good morning still.  So, Mr. Sercarz, I think you had the

17     floor, right?

18          MR. SERCARZ:  I'm sorry, your Honor?

19          THE COURT:  I think you had the floor?

20          MR. SERCARZ:  I can report that Mr. Fernich is

21     negative, and Dr. Fishman is still waiting for his results.

22          MS. MORTAZAVI:  Your Honor, by way of update, we've

23     spoken with Mr. Fasulo regarding the government's proposal for

24     severance of the defendants and a mistrial as to Ms. Giannelli

25     only, and he has consented to that proposal.

1           THE COURT:  Okay.  Assuming --

2           MR. FASULO:  Judge, this is --

3           THE COURT:  Yes, Mr. Fasulo, go ahead.

4           MR. FASULO:  Just so the record is clear, I spoke with

5    my client.  I consulted with her, and based on the situation

6    right now, we will consent to the government's proposal.

7           THE COURT:  All right.  Assuming that Dr. Fishman

8    comes back negative, fingers crossed, anything from you,

9    Mr. Sercarz, on severance?

10          MR. SERCARZ:  Yes, your Honor.  Mr. Fernich will

11   argue.

12          MR. FERNICH:  Your Honor, we oppose the government's

13   proposal, and we embrace the Court's initial suggestion of

14   declaring a mistrial as to Dr. Fishman and here's why.

15   Mr. Sercarz and I had already been contemplating bringing a

16   motion based on the doctrine of retroactive misjoinder in that,

17   contrary to our initial belief, the defenses of each client, as

18   they have merged during the course of the trial, have become

19   increasingly antagonistic to the point where, in our view,

20   Dr. Fishman was facing trial by two sets of prosecutors, one

21   set of government prosecutors and -- through no fault of

22   Mr. Fasulo; he's, obviously, doing what he has to do to defend

23   his client -- a second set of prosecutors seated at the

24   co-defendant's table.

25          And this began during the opening and throughout the

1    trial, whereby Ms. Giannelli understandably, for tactical

2    purposes, basically claimed that she was a pawn of

3    Dr. Fishman's and was just, so to speak, a patsy, like the

4    witness Courtney Adams and was acting under the sole direction

5    of Dr. Fishman.

6           So this is already something that the defense for

7    Dr. Fishman had contemplated, and at this point, for us to

8    switch horses in midstream, when all of this has been dumped

9    upon Dr. Fishman, we don't think there's an adequate remedy in

10   terms of a limiting instruction or anything like that because,

11   as I wrote in my letter of yesterday, I believe it was in a

12   different context, they're not going to be un-ring this bell.

13          It started from the outset, from Mr. Fasulo's opening,

14   and continued throughout the tenor of the questioning of

15   Ms. Adams, and it's deprived us of a potential avenue of

16   defense in that Dr. Fishman would have otherwise been free to

17   argue that some, or all, of Ms. Giannelli's action were *ultra*

18   *vires*, and he didn't know what she was doing on the side.

19          And now, all of a sudden, Ms. Giannelli is going to

20   vanish, and we've been prosecuted by two prosecutors.  And your

21   Honor is, presumably, going to instruct the jury on:  Nothing

22   that happened here beforehand should factor into your decision,

23   and that's a legal fiction.

24          This is a situation where the presumption where jurors

25   will follow limiting instruction is rebutted.  It's not going

to be possible.  We're going to have a mistrial for, one, we

deserve to start the new trial with a clean slate.  Now that we

know where Ms. Giannelli is going, we can seek appropriate

relief from the Court with respect to that.

THE COURT:  When you say a clean slate, do you mean

two separate trials?

MR. FERNICH:  That's what I was just about to say.  I

don't know what we would do at this point about that, but it's

become clear, and the government referred in its letter I

believe it was yesterday, to a joint defense.  There are

aspects of the defense that are joint, and then there are

aspects of the defense that are quite at odds.

THE COURT:  All right.  Can I -- I'm sorry to

interrupt you.  You keep referring to the letters yesterday.  I

got two different sets of letters, one set from everybody

dealing with Covid-related testing issues and one on the in

limine issues.  Which are you referring to?

MR. FERNICH:  For present purposes, I'm referring to

my letter on the in limine issue.

THE COURT:  Okay.  Thank you.

MR. FERNICH:  It's a different context than I just

alluded to vis-a-vis the limiting instruction and vis-a-vis the

government's characterization in its third in limine letter as

a joint defense.  Obviously, your Honor sat here.  There are

aspects of it that overlap, and there are aspects where we are

1    going to be at loggerheads.

2           And if you factor all of these things that I've

3    identified into the mix, and I understand, your Honor's right,

4    that I'm speculating as to what may or may not happen in the

5    future.  That's all I can do.

6           THE COURT:  You're talking about the Covid part?

7           MR. FERNICH:  Yes.

8           THE COURT:  Let's not talk about Covid right now.

9    Okay?  Assuming Dr. Fishman's okay, Covid is not part of the

10   equation, other than the fact that Mr. Fasulo is unavailable,

11   and so there has to be a mistrial with respect to

12   Ms. Giannelli.

13          MR. FERNICH:  Right.

14          THE COURT:  All right.

15          MR. FERNICH:  So that's my application.  I don't want

16   to belabor it.

17          THE COURT:  All right.  Ms. Mortazavi?

18          MS. MORTAZAVI:  So, your Honor, I have several

19   thoughts on the motion.  The first of which is that the timing

20   of this request is hard to ignore.  This is not something that

21   defense counsel brought to the Court's attention over the

22   weekend because they felt prejudiced by the arguments that were

23   made in the day and a half of testimony that we've heard.

24          It's something that is coming solely because there is

25   a mistrial being declared for Ms. Giannelli on the basis of the

1    a positive Covid test.  And so through that lens, it's very

2    difficult to find merit to what defense counsel is arguing

3    because, essentially, what he is saying is there should be

4    severance between both defendants because now their defenses

5    have conflicts that, frankly, I think were easy to anticipate

6    but is now manifested.

7            And so that is no basis to oppose the government's

8    motion for severance here.  If anything, it should signal that

9    the defense is prepared for severance because it will

10   ultimately have to be two trials of this matter.

11           And I'm not conceding that point, but taking,

12   arguendo, that severance would be appropriate in any event,

13   regardless of what occurred this morning with Ms. Giannelli's

14   council, the question then shifts to whether Dr. Fishman has

15   been prejudiced by what we have heard so far, to the point that

16   we can no longer proceed and a mistrial must be declared.

17           And the standard there is manifest necessity, and I

18   don't believe that defense counsel has shown elements that rise

19   to that standard, in part, because he did not independently

20   raise that argument and, in part, because we are still at a

21   very early stage of trial.  We have only just heard opening

22   statements and a handful of witnesses.

23           Certainly all the arguments that defense counsel

24   wishes to make about Dr. Fishman and his ignorance of what

25   Ms. Giannelli specifically was doing under him, are still

1    arguments that can be raised in cross-examination and through

2    the closing.  There hasn't been such sufficient prejudice that

3    we cannot have this jury sit, and certainly as of 9:00 a.m.

4    this morning, that was not the position of defense counsel in

5    this case.

6         And so we still believe that the appropriate action

7    here is severance, a mistrial for Ms. Giannelli and moving

8    forward with Dr. Fishman because, frankly, they've not -- if

9    anything, their arguments are lending further support to the

10   government's position that severance would be appropriate.

11        MR. FERNICH:  Let's be very clear about this.  My

12   motion is prompted by the declaration of a mistrial as to the

13   co-defendant as a result of the unfortunate positive Covid

14   diagnosis.  I mean, the prosecutor and I are talking past each

15   other.

16        I never said we were irrevocably committed to making

17   this motion.  To the contrary.  I said, Mr. Sercarz and I had

18   already discussed the possibility of such a motion, should one

19   become necessary.  When you factor that into the mix of the

20   positive Covid diagnoses and the inability to un-ring that bell

21   in any meaningful sense, we cannot get a fair trial under the

22   circumstances presented here.

23        If we're going to do it again, this defendant has the

24   right to have a fresh trial on a clean slate, with a jury that

25   has not been tainted by the arguments that co-defense counsel

M1OPFIS1

1  has made, by the lines of examination pursued in a pivotal fact

2  witness, Courtney Adams.

3          We have a right to start this on fair standing, equal

4  footing with the government, without having already polluted

5  the record.  And this may or may not have been an appeal

6  argument to begin with, retroactive misjoinder.  The

7  prosecution --

8          THE COURT:  You consented to proceed.  You did

9  consent.  On numerous occasions before you joined the case,

10  maybe even before Mr. Sercarz joined the case, I asked the

11  parties to confer about trial groupings.

12          The government proposed from the get-go that group one

13  would include Ms. Giannelli, Dr. Fishman, and I believe Jordan

14  Fishman was originally part of the group.  He then resolved his

15  issues with the government.

16          I asked repeatedly if this was on consent, and it

17  never was an issue raised.  So that argument is not available

18  to you.

19          MR. FERNICH:  Yes.  The doctrine, your Honor, of

20  retroactive misjoinder entails an initial joinder that was

21  proper or even consented to.  But due to developments that

22  occurred during the course of the proceedings, the joint trial

23  becomes retroactively improper under rule 8 or rule 14, as

24  either improper in the first instance or too prejudicial.

25          THE COURT:  All right.

1        MR. FERNICH:  It's not a game.  I wouldn't have made

2    this motion but for Covid.  Right?

3        THE COURT:  You said that repeatedly, and there is not

4    a need to raise your voice.  I know everybody -- you know,

5    anxiety levels are running high today, including mine.

6        MR. FERNICH:  I appreciate that.

7        THE COURT:  So please keep it -- look, here's what I

8    want to do.  Let's get Dr. Fishman tested because this may all

9    be academic right now; although, we'll eventually have to deal

10   with this severance question.  I'm not going to decide this on

11   the spot.  I need you all to submit something in writing on the

12   subject.

13       If we were to resume, before we resume, I would need

14   to address your in limine motion.  The jurors have been

15   patiently waiting.  We've ordered lunch for them; so in any

16   event, they're going to have lunch.  So why don't we adjourn,

17   let Dr. Fishman get tested.

18       I propose that we are not going to proceed today

19   because, look, this is a serious question, and I need input in

20   writing and time to consider what is a fairly significant

21   issue.

22       I am declaring a mistrial with respect to

23   Ms. Giannelli, due to the positive Covid test of her counsel,

24   who has no co-counsel.  She has consented to that mistrial.

25   We'll deal with the issue of whether we can go forward with

M1OPFIS1

1    Dr. Fishman's trial or not.

2            In the meantime, you all ought to also be thinking

3    about a limiting instruction, if we are going forward, that

4    would be given to the jury with respect to Ms. Giannelli's

5    absence from a continued trial, if we do continue.

6            The other thing with respect to Ms. Giannelli that we

7    ought to talk about is the speedy trial clock.  I suppose we

8    should just --

9            MR. FASULO:  Judge, this is Mr. Fasulo.

10          THE COURT:  Hold on, Mr. Fasulo.  I think we ought

11    to --

12            MR. FASULO:  Judge, Judge?

13          THE COURT:  Go ahead.

14            MR. FASULO:  Judge, this is Mr. Fasulo.  We will

15    consent to the speedy trial adjournment, Judge.

16          THE COURT:  All right.  But what I was going to

17    propose is I think we should pick a date for a status

18    conference after we would be finished with Dr. Fishman's trial,

19    assuming we're going forward and without prejudging the issue,

20    and exclude all time until that date.  Does that make sense?

21          MS. MORTAZAVI:  Certainly, your Honor.

22          MR. FASULO:  Yes, Judge.  And just for Ms. Giannelli,

23    we would consent to that date and whatever trial date that is

24    going to be picked for us to continue, Judge, obviously.  We've

25    discussed this.

M1OPFIS1

1          THE COURT:  I can't pick a trial date.  All I can do

2     is --

3          MR. FASULO:  No, no, no, I know, but I did want the

4     record to show that we're not only consenting to the date for

5     the conference, but we, obviously, will consent until the date

6     that Court decides we can try this case.

7          THE COURT:  So you'll consent to exclude time until

8     then is what you're saying.  For the sake of the order --

9          MR. FASULO:  Yes, your Honor.

10          THE COURT:  Go ahead, Ms. Mortazavi.

11          MS. MORTAZAVI:  Your Honor, we did have a date in

12     March for the group two trial defendants.  Are we to assume

13     that Ms. Giannelli's trial will proceed on that date?

14          THE COURT:  I don't know, honestly.  I honestly don't

15     know.  So we can exclude time until that date, if you want to

16     do that.  Did we have a pretrial set for that?

17          MS. MORTAZAVI:  I believe we did.  I'd have to consult

18     my calendar, if I can do that?

19          THE COURT:  Sure.

20          MS. MORTAZAVI:  Thank you, your Honor.

21          THE COURT:  I'm only trying to take care of all of

22     this so that Ms. Giannelli and Mr. Fasulo can be excused when

23     we resume.

24          MS. MORTAZAVI:  Understood, your Honor.  I believe

25     trial was intended to begin on the 21st, and then I'm checking

M1OPFIS1

1    my calendar and I do not see a final pretrial conference

2    scheduled in advance of that date.

3         THE COURT:  All right.  So, Ms. Dempsey, do we have a

4    date in advance of the 21st when we can conference?  Did we

5    have a conference date for the entire case?

6         THE DEPUTY CLERK:  We do, on February 24th.

7         THE COURT:  Okay.  So why don't we keep February 24th

8    as the conference date for the entire case, including now you,

9    Ms. Giannelli and Mr. Fasulo, and we'll sort out everything.

10        I am going to exclude all time with respect to

11   Ms. Giannelli between today and February 24th under the Speedy

12   Trial Act.  I do find that the interests of justice are served

13   by the exclusion of such time, and that it will allow you and

14   Mr. Fasulo to consult with each other and talk about the trial

15   of the case against you, in light of all the developments that

16   we've had.  And I do find that the interests of you and the

17   public in a speedy trial are outweighed.  So time will be

18   excluded.

19        All right.  Why don't we -- lunch has been ordered for

20   the jurors for 12:15, 12:30; so they'll need until about 1:15.

21   They might have all had their lunch no matter what we're doing.

22        Dr. Fishman can get tested.  You all can talk further.

23   we'll resume at 1:30, but we're not going to take any testimony

24   today because this is a serious issue and it deserves you both,

25   each sides, articulating your position and me considering

1   fairly your positions.  So we'll resume at 1:30.  I'll thank

2   the jurors, tell them they're excused for today and that they

3   can -- we'll let them know whether they need to return

4   tomorrow.

5           MS. MORTAZAVI:  Thank you, your Honor.

6           THE COURT:  All right.

7           MR. FERNICH:  Thank you.

8           THE COURT:  Thank you, all.

9           (Recess)

10          (Continued on next page)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

M1OTFIS2

|    |    |
|----|----|
| 1  | (Jury not present, Mr. Fasulo not present, Defendant |
| 2  | Giannelli not present) |
| 3  | THE COURT:  All right.  Good afternoon, everyone. |
| 4  | So Mr. Sercarz, do you have any updates for me? |
| 5  | MR. SERCARZ:  Most importantly, your Honor, |
| 6  | Mr. Fishman's test came back negative. |
| 7  | THE COURT:  Glad to hear you're healthy, Dr. Fishman. |
| 8  | THE DEFENDANT:  Thank you. |
| 9  | THE COURT:  So where we're at is I said I would not |
| 10 | rule on your -- I don't know what to call it, potential motion, |
| 11 | your anticipatory motion. |
| 12 | MR. SERCARZ:  Motion for a mistrial, your Honor. |
| 13 | THE COURT:  You are moving? |
| 14 | MR. SERCARZ:  Absolutely. |
| 15 | THE COURT:  That's not the way it sounded this |
| 16 | morning.  I told you I am not going to rule on it on the spot, |
| 17 | but I think it's a significant enough issue that I will give |
| 18 | you the opportunity to be heard on the issue. |
| 19 | I received over the lunch break the government's |
| 20 | letter on what we all understood to be a potential motion at |
| 21 | that point.  I had done some research myself.  But I will give |
| 22 | you the opportunity to be heard. |
| 23 | So I would like to receive your submissions by |
| 24 | 6 o'clock this evening. |
| 25 | MR. SERCARZ:  Would the Court consider hearing me |

1    orally on this and having the time to digest my statements?

2           THE COURT:  If you don't want to submit something in

3    writing, that's your choice, sir, yeah.

4           MR. SERCARZ:  Your Honor, was it your intent to let

5    the jury go for the day?

6           THE COURT:  The jury is gone.

7           MR. SERCARZ:  Oh, okay.

8           THE COURT:  Because I told you earlier that I would

9    give you the opportunity to be heard and I thought you were

10   going to submit something in writing.

11          MR. SERCARZ:  Well, Mr. Fernich and I have discussed

12   it.  If the Court, after hearing me, feels that it wants

13   something in writing --

14          THE COURT:  No, no, no, this is your motion, you make

15   the decision.

16          MR. SERCARZ:  Fair enough.  I understand.

17          MR. FERNICH:  Before Mr. Sercarz begins, let me make

18   clear that I incorporate everything that I said on the record

19   this morning.  I thought that I -- forgive me if there's a

20   misunderstanding -- I said that we contemplated making a motion

21   for severance based on the concept of retroactive misjoinder,

22   but we were certainly moving for a mistrial.  That's what I

23   intended to say.  If that wasn't clear, that's on me.

24          THE COURT:  So you're moving for a mistrial on the

25   grounds that I granted a mistrial to Ms. Giannelli.

1      MR. FERNICH:  On all the grounds that I enumerated

2  this morning and that Mr. Sercarz will amplify right now.

3      Parenthetically, there's no dispute as to the

4  government's recitation of the law.  This is a discretionary

5  decision quite obviously within your Honor's purview.  I began

6  to outline the prejudice that we feel we suffered.  I began to

7  do that this morning and we're going to drill down on it right

8  now.  And for that reason, because there's no dispute as to the

9  applicable law, we don't feel that it needs any further written

10  elaboration, but we're happy to do it orally to further amplify

11  the prejudice that we feel we suffered in the peculiar

12  circumstances of this case thus far.

13      THE COURT:  I'm happy to hear from you.

14      MR. SERCARZ:  May I be heard?

15      THE COURT:  Sure.

16      MR. SERCARZ:  Your Honor, do you prefer me sitting

17  down?

18      THE COURT:  It's easier, I think, for the court

19  reporter to pick up, so yes.

20      MR. SERCARZ:  I think the best way for me to address

21  the motion is to begin with Ms. Mortazavi's argument, very

22  compelling on its face, as to why wasn't the motion made

23  earlier.

24      I'm aware of something that the Court is not yet aware

25  of, which is that the 3500 material in this case is replete

1    with statements by witnesses who are going to testify, if the

2    government chooses to call them, that Ms. Giannelli worked with

3    her van or her truck at the Mount Hope Training Center going

4    from barn to barn and selling products, many, if not most of

5    which, she obtained from Seth Fishman.

6        And the problem that we encountered was how best to

7    cope with that evidence.  And it was in the context of that

8    evidence that the decision was made that a joint trial might be

9    in the defendants' interest to provide some nuance to this,

10   some explanation for this, particularly given that the

11   government will argue and the witnesses will testify that these

12   items may have been sold without a prescription or a prior

13   examination of the horse.

14       We felt that information could be provided by

15   Ms. Giannelli regarding relationships with the customers of the

16   product, and that on balance a joint trial would have been in

17   many respects typical in that there would have been areas where

18   the defendants diverged in their view of the facts but areas

19   where one defendant's testimony, examination or arguments,

20   could have been helpful to the other.

21       What changed was what occurred during the course of

22   this trial thus far.  On his opening statement, Mr. Fasulo, in

23   the second line of his opening, said the following, and I

24   quote, "We sit here today after hearing the government's

25   opening statement thinking that Lisa Giannelli is a lone wolf

1    in a herd of sheep.  This case will prove that Lisa was a sheep

2    herded by the sheep master."  Clearly referencing my client.

3         Further quote on the same page -- page 44 of the

4    transcript, by the way -- "You will learn that for 18 years she

5    worked under the guise of who she thought was a good vet,

6    Dr. Fishman."

7         He then went on at page 45 of the transcript to

8    describe the contours of her defense and stated, "Lisa

9    Giannelli had no ability to create those products.  She had no

10   ability to label those products.  She took no responsibility as

11   to the products as they were presented to her other than they

12   were presented by a veterinarian who was licensed in the states

13   in which she was dealing."

14        He then explained that her pay plan called for her to

15   receive a percentage of what she collected.

16        She guaranteed, I believe was Mr. Fasulo's word --

17        THE COURT:  You have the transcript, right?

18        MR. SERCARZ:  -- that she will testify --

19        THE COURT:  You have the transcript, right?

20        MR. SERCARZ:  I'm sorry, your Honor?  Those were

21   selections from the transcript.

22        THE COURT:  I'm saying to say "I believe that was his

23   word," my point on that is you have a transcript.  Was it his

24   word or not?

25        MR. SERCARZ:  All right.  I'm sorry, I didn't

M1OTFIS2

1    understand what you were saying.

2           Her cross-examination of an important -- yes, he did

3    all but guarantee, he guaranteed that she would testify.  He

4    told the jury that on his opening statement that she would

5    testify.

6           THE COURT:  So what though?  That was in her own

7    defense.

8           MR. SERCARZ:  I understand.  But here's the prejudice,

9    your Honor, I was just going to continue that her

10   cross-examination of Courtney Adams was an elaboration of what

11   she began on her opening statement to describe as her defense

12   that Lisa Giannelli, like Courtney Adams, had no ability to

13   create products, no ability to label products, took no

14   responsibility for the products, and was simply, again, the

15   sheep guided by the sheep master.

16          The problem is that there is no effective way for us

17   to rebut the unsworn testimony of Mr. Fasulo on his opening

18   statement.

19          THE COURT:  It's not testimony, and I instructed that

20   to the jury from the get-go.  And you know in every trial the

21   opening statement is not evidence.

22          Frankly, I don't want to prejudge this, which is why I

23   gave you the opportunity to give me something in writing if you

24   want and make whatever record you want, but the reality is that

25   it can happen in the middle of a trial that a co-defendant

1  pleads, and that happens lots of times.

2          The fact that Ms. Giannelli isn't going to be here

3  frankly maybe makes it easier for you to point the finger at

4  Ms. Giannelli.  I don't know.  But these developments, Covid

5  maybe you couldn't have anticipated, but the fact that

6  Ms. Giannelli may have defended herself the way she did and/or

7  the fact that she might disappear were not unforeseen

8  possibilities, or they shouldn't have been.

9          MR. FERNICH:  The point, your Honor, is that a

10 limiting instruction in these circumstances, as in --

11         THE COURT:  We're going to have tag team arguing here

12 now?

13         MR. FERNICH:  I don't think there's a jury here and I

14 will take over the argument.  I'm happy to do it.

15         As in the *Jones* case that the government cited, a

16 limiting instruction would be wholly ineffective to cure the

17 prejudice from what at this point, not withstanding -- your

18 Honor is going to give the regular instruction that the opening

19 statement is not evidence --

20         THE COURT:  Correct.

21         MR. FERNICH:  -- the same instruction that's given in

22 every case.

23         THE COURT:  Right.  And I invited you to propose

24 language for a limiting instruction about the fact that

25 Ms. Giannelli will no longer be participating in this phase of

M1OTFIS2

1    the trial.

2          MR. FERNICH:  I'm not talking, though, about the

3    language of an instruction, I'm arguing that a limiting

4    instruction in the circumstances of this case will not be

5    sufficient to cure the prejudice from what amounts

6    functionally, functionally now, to unsworn testimony by

7    Mr. Fasulo.

8          And here's why it's functional unsworn testimony:  He

9    promised the jury that we were going to hear from his client,

10   Giannelli.  We would have had the opportunity to cross-examine

11   that client, because she's going to be a party adverse to us,

12   to establish, among other things, based in part on her own

13   defense, their own defense, which is now going to be taken out

14   of the case although the jury has heard the seeds of it, that

15   there was simply no conspiratorial meeting of the minds among

16   these two defendants.

17         They charged a conspiracy in Count Two.  That

18   requires -- they're alleging that these two were substantially

19   two principal spokes in the conspiracy and his client sat

20   here -- her lawyer sat here and said she was just a dumb bunny,

21   just like Courtney Adams.  She didn't know what was going on.

22   She just took whatever Fishman said to her as gospel.  That

23   laid the groundwork for us through cross-examining her in

24   person.  She's not here anymore.  They didn't make out this

25   conspiracy.  There's no meeting of the minds.  He had one

1    objective, he was duping her, according to you, and you had no

2    idea what was going on.  This is not a conspiracy.  This is not

3    the conspiracy charged in Count Two.  Can't do that anymore

4    because she's gone.

5            And furthermore, your Honor, furthermore, if there's

6    going to be -- if they're now severed permanently, which they

7    might be, we don't have the ability to put her on the stand and

8    put that testimony on under *Finkelstein*.

9            THE COURT:  Let's just suppose what happened this

10   morning didn't happen.  Notwithstanding what Mr. Fasulo said,

11   she could opt not to take the stand, just like Dr. Fishman

12   could opt not to take the stand.  Right?  You weren't

13   guaranteed she was going to take the stand.

14           MR. FERNICH:  But then we would have been able to

15   argue --

16           THE COURT:  No, you would not have been able to make

17   an argument about the fact that a defendant chose not to

18   testify.

19           MR. FERNICH:  Not based on her failure to testify.

20   Not based on her failure to testify, but we could have argued

21   as she sat here that she's wholly unworthy of belief and

22   there's no evidence that anything that Mr. Fasulo said was

23   true, that Fishman is the architect of this, and there's no

24   evidence that she wasn't acting of her own accord.  That was

25   the ultra vires.

1          THE COURT:  I would sustain an objection if you did

2     that.  An opening statement is not evidence.

3          MR. FERNICH:  It's beyond the opening statement.  He

4     elicited evidence from Courtney Adams to back his opening

5     statement and we don't have any opportunity now to refute that.

6          THE COURT:  You had Ms. Adams here and cross-examined

7     her.

8          MR. FERNICH:  I understand, but the point is we're a

9     day and a half into this trial, a day and a half into this

10    trial and we already faced trial by two sets of prosecutors.

11         The rationale, obviously, for a joint trial is

12    judicial and prosecutorial and defense efficiencies.  We're

13    only a day and a half into the trial and we have already been

14    dumped all over.  And I will tell you what, they referenced in

15    their letter strikes, that we collaborated on strikes.  Yeah,

16    we collaborated on strikes, and if we were here by ourselves --

17    I won't get into what happened -- we would have stricken

18    different people.

19         THE COURT:  So you made a bad strategy call.

20         MR. FERNICH:  We didn't make any bad strategy call.

21         THE COURT:  That's what you're arguing, basically.

22    You consented to a joint trial, you filed joint submissions.

23    Mr. Fasulo did most of the work, as best I could see, on some

24    of the pretrial submissions; but maybe not, maybe you worked

25    collaboratively, but you made a strategic decision to proceed

1 | with a joint defense.

2 |      MR. FERNICH: I didn't make any strategic decision to

3 | proceed with a joint defense when Covid intervenes and presents

4 | me, a day and a half into the trial, with a totally different

5 | set of circumstances than what arose prior. Because it is

6 | simply, simply out of my control. They say we're doing it

7 | tactically?

8 |      THE COURT: I accept that Covid is out of your

9 | control. I'm not crediting that, I assure you. I'm really

10 | not.

11 |      MR. FERNICH: We're trying to do the best we can.

12 | Something has happened. A major development has happened in

13 | the course of trial. We're being totally candid. Mr. Sercarz

14 | and I discussed the possibility, the possibility of raising a

15 | retroactive disjoinder claim. We didn't think we had gotten

16 | there yet, but now we got to what amounts to, through nobody's

17 | fault --

18 |      And they raise their hands like this. I'm just being

19 | honest.

20 |      THE COURT: What does that mean?

21 |      MR. FASULO: I don't know what it means either. They

22 | think because I'm telling the truth --

23 |      THE COURT: Who is the "they?"

24 |      MR. FERNICH: I don't know. They raised their hands

25 | because I'm telling you the truth.

1          THE COURT:  Who is "they?"

2          MR. FERNICH:  The prosecutors.

3          THE COURT:  I don't understand what you're talking

4     about.

5          MR. FERNICH:  Your Honor can't see, I can.  Things

6     changed.  The calculus changed.  Just because I wouldn't have

7     made the motion two days ago doesn't mean I wouldn't make it

8     now because a lawyer got sick with Covid and now we're saddled

9     with this day and a half of dumping that we can't adequately

10    meet.  Things have changed.

11         And you know what?  The world isn't going to end.  The

12    sky isn't going to fall after a couple of days of testimony

13    where we have two antagonists.  If we do this again on equal

14    footing, we haven't invested that much in it now, other things

15    will probably come up during the trial.  We didn't get --

16    through nobody's fault, we didn't engineer this, we didn't get

17    to exercise the strikes properly.  I'm just representing that.

18    There were differences.  It's not a bad strategic call.  I

19    didn't know that Covid was going to happen and take somebody

20    out.

21         We lost the opportunity to show there's no meeting of

22    the minds.  We lost the opportunity to argue that this is ultra

23    vires actions.  I recognize the Court is going to give an

24    instruction that the lawyers' arguments are not evidence,

25    pretend -- close your eyes and pretend that Lisa Giannelli was

M1OTFIS2

1    never here, even though the defense -- the other side spent

2    days telling them that he was the sheep herder, pretend all

3    that never happened and take it up and keep going.

4         We're essentially having a different trial now in the

5    same trial.  Is the game worth the candle?  No, it's not worth

6    the candle.  Let me obviate a potential appellate issue.  I'm

7    not saying the Court doesn't have the discretion, but your

8    Honor sat here.  These were bad, bad, bad co-defendant opening

9    statements for us and it was a bad examination of Adams for us.

10        We didn't think the motion would have worked at that

11   time.  We didn't think it would have risen to the level to

12   necessitate a severance, but now when you mix it together with

13   Covid, things have changed, it's a bait and switch, it's a

14   different trial, and the rug has been pulled out from under us

15   through nobody's fault.  I didn't plan this.  Neither did you,

16   neither did anybody else.  It's an act of God.

17        We're entitled to a trial with them on an equal

18   footing now without somebody having dumped all over us from the

19   other side.  I don't blame him for it.  It's his job.  I would

20   have done the same thing.  This is what happened.

21        THE COURT:  Okay.  Anything else?

22        All right.  If you wish, you can submit something in

23   writing by 6 o'clock tonight.

24        Is there anything further from the government?

25        MS. MORTAZAVI:  Your Honor, I would like to respond to

M1OTFIS2

1  several of the arguments just to make the record perfectly

2  clear, because, again, I think there is some confusion as to

3  what defense counsel is actually asking for.

4        On the one hand, they're arguing that they were

5  prejudiced by arguments that were raised by Ms. Giannelli,

6  including she was herded by a sheep master, who is Dr. Fishman.

7  On the other hand, Mr. Fernich just ended his remarks by

8  insisting that he's entitled to a trial with Ms. Giannelli on

9  equal footing.

10        MR. FERNICH:  I want a trial with you on equal

11  footing.

12        THE COURT:  Don't interrupt, please.  Nobody

13  interrupted you, Mr. Fernich.

14        MS. MORTAZAVI:  Mr. Fernich cannot, on the one hand,

15  argue that he has been prejudiced because he has been, quote,

16  dumped on by Ms. Giannelli's counsel and then on the other hand

17  argue that he is now prejudiced because Ms. Giannelli won't be

18  taking the stand so he can cross-examine her and elicit

19  whatever --

20        THE COURT:  That's not entirely what he's saying.  He

21  is saying circumstances changed on him midstream through no

22  fault of his own.

23        MS. MORTAZAVI:  Certainly, your Honor.  And that no

24  one factually disputes.  But I think Mr. Fernich is still far

25  afield of the evidence that has been presented so far, the

1    legal standard that is required for a mistrial, and the

2    arguments that were raised so far.

3            What Mr. Sercarz initially pointed out as the points

4    of contention here were that Ms. Giannelli worked under

5    Dr. Fishman, she thought he was a good vet, she had no ability

6    to create products that were distributed, and that she was akin

7    to Courtney Adams who worked under Dr. Fishman.  None of that

8    is inconsistent with Dr. Fishman's position as to the evidence.

9    That is simply what the evidence will show.  Eliciting that in

10   opening statements or in cross-examination is in no way

11   prejudicial to Dr. Fishman.  It is certainly not irreconcilable

12   with his defense.  In fact, if this case were to have proceeded

13   without Ms. Giannelli at all, I imagine all of those arguments

14   would have come out anyway because that is how the facts bear

15   out.

16           So he is certainly not prejudiced by the fact that the

17   jury has learned that there is someone who worked under him,

18   that was he a good vet, and that he was the one who created the

19   products, not Ms. Giannelli.  I don't expect any of that to be

20   contradicted.  It certainly cannot amount to prejudice.

21           And again, as your Honor pointed out, there are many

22   cases where mid-trial a defendant pleads or becomes a fugitive,

23   or there are other reasons where a co-defendant cannot proceed

24   and the trial still continues, and the jury can be instructed

25   accordingly.

1      We are relatively early in what was supposed to be a

2  potentially ten-day trial.  We have only heard from three

3  witnesses, in fact, not even concluded with our third witness.

4  We have only had a day and a half of the jury sitting before

5  this Court and listening to the evidence in this trial.

6      We're simply not at the point where the defense team

7  has shown that there is a basis for a mistrial here.  And I

8  find some of their arguments frankly confused as to the

9  strategy that has been presented, the thinking behind the joint

10  defense, and why that has so dramatically shifted now that

11  Ms. Giannelli is not here.

12      And as the Court pointed out -- and this is my final

13  point -- to the extent they take issue with the fact that the

14  jury was guaranteed that Ms. Giannelli would testify, your

15  Honor is absolutely right there was no guarantee whatsoever

16  Ms. Giannelli would take the stand, that they would be able to

17  elicit whatever they wanted to elicit on cross-examination,

18  that also is no basis for a mistrial and a subsequent trial

19  where Ms. Giannelli is joined with Seth Fishman and then

20  compelled to testify so that they could present their defense

21  of choice.  That's not their right.  That's not the standard.

22      MR. FERNICH:  The government is plainly confused, but

23  through no fault of mine.  They're just not understanding what

24  I'm saying.

25      We are not moving for a severance, so we don't have --

1        THE COURT:  There's nothing to sever anymore.

2        MR. FERNICH:  Correct, so we're not moving for a

3   severance.  I don't have to show purely antagonistic defenses.

4   I'm moving for a mistrial based on the manifest necessity that

5   the limiting instruction the Court would understandably have to

6   give cannot cure the prejudice of what has already happened in

7   the trial.  And they think that because we preview one defense

8   that we're foreclosed from arguing other defenses.  Trials are

9   fluid.  That's the whole point.  We have to adapt.

10       THE COURT:  Exactly, Mr. Fernich, trials are fluid.

11       MR. FERNICH:  I understand.  So the point is we don't

12   have a defense totally locked down, we have to react to what

13   happens and craft the defense, in part, accordingly.

14       She started raising some defense arguments that we

15   didn't anticipate that gave rise to a germ in our heads that

16   maybe there's no meeting of the minds here, and we're impaired

17   from pursuing that defense at this point.  We might have been

18   able to argue ultra vires.  They could say that would have

19   opened the door to a proffer statement.  Maybe it would have.

20   Go with God.  We'll present the evidence and we'll see what

21   happens.

22       All I know is things changed, she made arguments that

23   gave rise to potential additional or other defenses in our

24   head.  We now are hamstrung from pursuing the defenses and it's

25   half out there.  It's half out there that Seth Fishman is the

M1OTFIS2

1    sheep master and the leader and evil incarnate and she was a

2    dumb bunny playing along, and it that amounts to unsworn

3    testimony because --

4              THE COURT:  Mr. Fernich, you're repeating yourself

5    now.  You said all those exact same things and including "dumb

6    bunny," which is somewhat offensive.

7              MR. FERNICH:  Okay, I'm sorry.  If it's offensive then

8    pick another animal.  She was a babe in the woods.

9              THE COURT:  He said what he said.

10             MR. FERNICH:  I understand.

11             THE COURT:  And I instructed the jury already and I

12   will instruct them again that opening statements are not

13   evidence.

14             MR. FERNICH:  I understand.

15             THE COURT:  There is a presumption that juries follow

16   instructions from the Court.

17             MR. FERNICH:  I'm well aware of it.  I don't dispute

18   the presumption under *Jones*, under *McDermott*.  It's also

19   equally true that the presumption gives way when there's no --

20   and even in the *Bruton* context the presumption is not an

21   ironclad presumption, that's why it's a presumption.

22             What I'm suggesting is in the very particular

23   circumstances of this case -- of course people take off, I

24   understand stuff happens during a trial and the Court has to

25   tailor an appropriate remedy -- after a day and a half where we

have spent time dealing with a triangulated prosecution -- I'm

not saying what is going to happen in the future, if there's

going to be a joint trial in the future or a separate trial, I

don't know, all I know is that this trial as it's currently

proceeded is not going to be a fair one for Dr. Fishman.

THE COURT:  All right.  I hear your argument.  As I

say, I want to go back and read the cases a little more slowly,

a little more carefully.  We did quick research over the lunch

break which was not inconsistent with what the government said

in its letter to me, and you said you don't dispute that's the

law or the cases.

MR. FERNICH:  If your Honor reads *Zafiro* and *Hamilton*

and *Jones*, this is a discretionary call that your Honor has

based on the likelihood of prejudice.  We're all in agreement

about that.

I'm not going to -- I'm not a guy who gilds the lily.

It's a tough claim to raise on appeal, but this is not -- to be

clear, your Honor, it's not the garden variety -- and your

Honor recognized this earlier, it's not a garden variety

severance motion.  Something happened and we have to deal with

it.

THE COURT:  Correct.  As I say, you have until

6 o'clock tonight if you want to submit in writing.  I'm giving

you the opportunity --

MR. FERNICH:  I understand.

1          THE COURT:  Would you like me to finish?

2          MR. FERNICH:  Thank you, your Honor.

3          THE COURT:  I am giving you the opportunity, in the

4    event I rule against you, to submit to me a proposed limiting

5    instruction.  The government has already submitted what it

6    would propose, and I find it unacceptable in some respects.  So

7    you can submit something later tonight, if you wish to do so,

8    in the event I decide that we should go forward.  And we told

9    the jurors that they should return tomorrow and we'll have a

10   sense of what is going to happen.

11         The rule under the Court's protocol and under my order

12   is anybody who is going to be questioning a witness on

13   consecutive days has to be tested every other day.  So I guess

14   that means nobody would have to be tested tomorrow in any

15   event, Dr. Fishman, but the Court will assist you.  I know you

16   held up your box, but that, for Court purposes, is not an

17   acceptable test.

18         THE DEFENDANT:  I'm sorry, your Honor, that was the

19   box I received downstairs.

20         THE COURT:  Okay, terrific.

21         THE DEFENDANT:  I went back downstairs, they tested

22   and they misread my number, but I have the test now if you want

23   it.

24         THE COURT:  No, I don't need it.  I just thought you

25   were using like what you buy at Walgreen's.  Okay, terrific.

1     If you want to be tested, they are available to help

2 you with that if we're going forward.  Otherwise, I guess

3 certainly the government lawyers, if you're -- you have been

4 taking turns, so if you do that you don't have to be tested

5 every other day if we go forward, but otherwise if it's the

6 same lawyer, you got to keep being tested.  Sorry about this,

7 but, as you say, it's not anybody's creation here.

8     Okay.  Is there anything else we should talk about

9 before tomorrow morning, at which point I will be prepared to

10 rule?

11     MR. FERNICH:  Does your Honor want to talk about the

12 in limine motion or do you want to wait on that?

13     THE COURT:  I don't mind telling you, just so it's

14 clear to you, that I do carefully consider all the arguments.

15 It's somewhat academic because we may or may not be going

16 forward, but I will tell you I'm not persuaded by the

17 government's letter.

18     I find you are confusing -- I don't know if it's

19 deliberate or not, but you confuse two different concepts.  One

20 is an intent to injure or a reckless disregard for the

21 wellbeing of horses with the statutory language which says an

22 intent to defraud or mislead.  It is true that Dr. Fishman's

23 lawyers have tried to put on evidence that he -- and argued in

24 their opening statement, to the extent you think there's such a

25 thing as constructive evidence, you have argued that he's a

good vet, that he acted at all times out of what he believed to be in the best interests of the horses.  That may all be true, but it's irrelevant to the statutory requirement of an intent to defraud or mislead.  And you, the government, are free to say that in your closing arguments.

But by the same token, the fact that a horse died -- and we don't even have any evidence that the horse died as a result of the product.  The investigation, as I understand it, was inconclusive or closed without any findings against Dr. Fishman and Ms. Giannelli, and the suggestion that I saw was that it was because somebody at the track administered the test in a manner that it shouldn't have.  That does not equate with Dr. Fishman having an intent to hurt horses or reckless disregard for their wellbeing.  It just doesn't.  And even if it did, that's irrelevant to what you're required to prove to prevail.

So I'm not convinced by your motion, and I don't want seriatim motions on the same subject.  I understand that if evidence comes in and it changes the calculus it's not inappropriate for someone to renew an limine motion.  There were some that I said to you I couldn't rule on in a vacuum and I would deal with them as the evidence came in.  This wasn't one of them, and there's really nothing about what was in the government's letter that changes my mind.

So that's my ruling.  It may be moot.  Who knows?  I

M1OTFIS2

```
 1    will let you know tomorrow morning.  But if we go forward,

 2    that's my ruling.

 3              Anything else?

 4              MS. MORTAZAVI:  Nothing from the government, your

 5    Honor.  We will have our witnesses ready tomorrow in the event

 6    that we do proceed.

 7              THE COURT:  Right.  And you are having witnesses

 8    tested, right?

 9              MS. MORTAZAVI:  Of course, both witnesses -- actually

10    the four witnesses that we anticipated taking the stand today

11    were tested today.

12              THE COURT:  I guess for the sake of good order you

13    probably should be prepared to have them tested again tomorrow.

14              MS. MORTAZAVI:  We will do that.

15              THE COURT:  I just don't know what to make of all of

16    this, but it seems that people -- you may have all read the

17    headlines Sarah Palin tested positive, so her trial is off.

18    She did that at home last night.  But I don't think that's the

19    test they accept, they need to have approved tests.  So I just

20    think it would be prudent for the contingency that we're going

21    forward that we have the witnesses tested so we don't have a

22    delay going forward.

23              MS. MORTAZAVI:  We will plan for that.

24              THE COURT:  Anything else?

25              MR. SERCARZ:  Your Honor, while we're here, is the
```

M1OTFIS2

1    Court satisfied with the way the Court is receiving the

2    information regarding the tests?  What we're told is we go in,

3    we take a test, and we hear about it only if there's a problem.

4            THE COURT:  Yeah.

5            MR. SERCARZ:  And I want the Court to know that

6    they -- for example, in my case they have me now on the Monday,

7    Wednesday and Friday schedule because on any given day I may

8    have to examine a witness, so that's the way I'm --

9            THE COURT:  Correct.

10           MR. SERCARZ:  -- going to do it.  As long as the

11   administrator is making you sufficiently aware of what is going

12   on and the fact that I am being tested, I assume that that

13   satisfies your order.

14           THE COURT:  Yes, he made me aware, and I was made

15   aware all throughout the weekend, as I said.  So I think I knew

16   on Friday night that the government, as soon as I entered the

17   order, had made arrangements to be tested on Monday.  Then I

18   heard over the weekend Mr. Fasulo reached out to be tested, and

19   it was radio silence about your team, which is why I issued the

20   order on Saturday saying if someone doesn't comply with the

21   order you may be subjecting yourself to sanctions.

22           MR. SERCARZ:  The Court should know that I contacted

23   the executive.  Mr. Friedland booked an appointment for me

24   today at one o'clock to go upstairs and have my test, but in

25   the interim I had already written to the Assistant United

States Attorneys.  Mr. Adams responded and he told me that they would be administering the tests in Room 6A early in the morning.

THE COURT:  But if you read my order, the order said contact -- I think it's Covid Response at whatever.

MR. SERCARZ:  I did, I emailed --

THE COURT:  Over the weekend?

MR. SERCARZ:  While I was waiting to hear from them I also reached out to the assistants and said:  Have you heard anything about how this is going to work?

THE COURT:  You did that over the weekend, Mr. Sercarz?

MR. SERCARZ:  Yes.  In the interim I spoke with Mr. Adams, he will verify this, he told me about -- or we exchanged emails, he told me that there would be a testing location in Courtroom 6A, and I went this morning to have my test.

THE COURT:  I appreciate that.

And look, I will tell you, I don't think whoever is doing all of this administrative stuff with the Court has cloaked itself in glory here.  To schedule the Avenatti trial, our trial, the Palin trial and another trial all on the same day, you got to wonder what people could be thinking.

So I appreciate you telling me that.  I did keep checking all weekend long whether all of my participants were

M1OTFIS2

1    on board and whether we were good to go, and I was told that,

2    first, only the government had weighed in and then I was told

3    Mr. Fasulo had.  I didn't hear about you.  So I accept your

4    representation and I appreciate it.

5           MR. FERNICH:  What Mr. Sercarz meant is the

6    appointment today at 1:00 was set over the weekend.

7           THE COURT:  I understood that.  I understand English,

8    Mr. Fernich.  Why do you feel like you need to keep --

9           MR. FERNICH:  I didn't get it entirely.  So your Honor

10   understands, we interpreted the weekend orders as coming from

11   above, and --

12          THE COURT:  I'm not sure "above" is the right word.

13          MR. FERNICH:  But we could sense the Court's

14   frustration with factors that are also beyond its control.

15          THE COURT:  I appreciate it.

16          MR. FERNICH:  Yes.

17          THE COURT:  Anything else we can talk about or

18   accomplish?

19          MS. MORTAZAVI:  Nothing from the government.  Thank

20   you.

21          THE COURT:  Mr. Sercarz?

22          MR. SERCARZ:  Thanks for hearing me.

23          THE COURT:  The one thing I will tell you, you have

24   now another table behind you, so you could feel free to spread

25   out on the defense side, too, for whatever that's worth.

M1OTFIS2

1          But we'll see you in the morning.  I want to consider

2     this more carefully.  And I hope everyone has a productive

3     afternoon.  Please stay healthy.

4          MR. ADAMS:  What time in the morning?

5          THE COURT:  Let's get back at 9:15 so I could rule on

6     this issue and we'll see whether or not we're moving forward or

7     not moving forward.

8          MS. MORTAZAVI:  And your Honor, this may prove to be

9     unnecessary, but the government could be available this

10    evening.  If there are any particular questions that the Court

11    has following defense counsels' submission, we are available if

12    the Court would like further writing on this.

13         THE COURT:  Okay.

14         MS. MORTAZAVI:  Thank you.

15         THE COURT:  You chose to do it when you did it, so --

16         MR. ADAMS:  And your Honor, just to be clear, we did

17    choose to put something in over the lunch break.  The ground

18    that was articulated just now is that the Court's instructions

19    to the jury will not be sufficient to instruct the jury.

20    That's different than the ground that was proposed earlier

21    today.

22         THE COURT:  If you want to put something in, you can

23    put it in.

24         MS. MORTAZAVI:  Thank you, your Honor.

25         THE COURT:  All right.  Thank you all.  As I say,

M1OTFIS2

1    everyone, please stay safe.  Have a good afternoon.

2            (Adjourned to January 25, 2022 at 9:15 a.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25