M1VTFIS1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                                20 Cr. 160 (MKV)

SETH FISHMAN,

          Defendant.
                           Trial
------------------------------x
                           New York, N.Y.
                           January 31, 2022
                           9:20 a.m.
Before:

                  HON. MARY KAY VYSKOCIL,

                           District Judge
                           -and a Jury-

                      APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  ANDREW C. ADAMS
     SARAH MORTAZAVI
     ANDEN F. CHOW
     Assistant United States Attorneys

SERCARZ & RIOPELLE, LLP
     Attorneys for Defendant Fishman
BY:  MAURICE H. SERCARZ
     -and-
LAW OFFICE OF MARC FERNICH
BY:  MARC A. FERNICH

ALSO PRESENT:  KARLINE JUNG, Paralegal Specialist

M1VTFIS1

1          (Trial resumed; jury not present)

2          THE COURT:  Please state your appearances for the

3    record.

4          MR. ADAMS:  Andrew Adams, Sarah Mortazavi and Anden

5    Chow for the government.

6          MR. SERCARZ:  For the defendant Fishman, Maurice

7    Sercarz.  Mr. Fernich is here but he just ran out of the room

8    for a moment.

9          THE COURT:  Good morning.

10          It seems to me in light of the email that I received

11    this morning that we should convene in the robing room.

12          MR. SERCARZ:  Yes, your Honor, that would be my

13    application.

14          THE COURT:  There are just two things that I want to

15    talk about that we don't need to be in camera for, one is the

16    jurors.  They're not all here yet.  We told them 10 o'clock.  I

17    think at a minimum we're releasing them for the day, correct?

18          MR. ADAMS:  I think that's right, your Honor.

19          MR. SERCARZ:  Yes, your Honor.

20          THE COURT:  All right.  So at 10 o'clock we will break

21    and come back in here, and I'll let the jurors know that there

22    are some issues that I need to deal with with the lawyers.  And

23    so we talked about could we catch them in time, but it just

24    wasn't practical.  So we'll excuse them for the rest of the

25    day.

M1VTFIS1

1    So why don't we resume then in the robing room.

2    MR. ADAMS:  Thank you, your Honor.  As we're on the

3  way there, I think Mr. Chow is sending an email to chambers and

4  defense counsel right now that will also relate to what we're

5  going to discuss.

6    THE COURT:  All right.  So I will see you all inside

7  in a moment or two.

8    (Continued on next page)

9    (Pages 1091 through 1106 SEALED by Order of the Court)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (In open court; jury not present)

2          THE COURT:  All right.  Please be seated, everyone.

3    I'm told the jurors are on their way up.

4          (Pause)

5          (Jury present)

6          THE COURT:  All right.  Please be seated, everyone.

7    Good morning, ladies and gentlemen.  I hope everyone had a nice

8    weekend.  So I'm sorry that we've kept you waiting for a few

9    minutes this morning.  It develops that there are legal issues

10   that the Court needs to deal with with the lawyers this morning

11   and probably for a good bit of today.

12         So I'm sorry that we dragged you in, but we're going

13   to release you for the rest of the day today.  I just didn't

14   get notice of the issues in sufficient time to call you all and

15   tell you that you didn't have to show up.

16         We will be planning to resume tomorrow; so if you

17   would, please be here at 10:00 a.m. tomorrow morning.  All

18   right?  So you're released for the rest of the day.  Please

19   leave your notebooks in the jury assembly room.  Do not bring

20   them home with you, and I just remind you again we are

21   approaching the end of the trial.  It remains critically

22   important that you not discuss the case either among yourselves

23   or with anyone at all, family members, friends, anyone, and

24   please do not research the case.  Do not read anything about

25   the case, but enjoy the rest of your day.

M1VPFIS2

1          All right?  Thank you, all.

2          JURORS:  Thank you.

3          (Jury not present)

4          THE COURT:  All right.  Please be seated.  I have one

5    quick question I'd like to talk to the lawyers about in the

6    robing room, and then we'll resume at 11:00 to talk about the

7    jury instructions.  Okay?

8          (Pages 1109 through 1112 SEALED by order of the Court)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (Recess)

2    (In open court; jury not present)

3    THE COURT:  Please be seated, everyone.

4    MR. FERNICH:  Can I have one moment for Mr. Sercarz?

5    THE COURT:  Yes.  I see Mr. Sercarz is still here.

6  That's what I was pausing at.

7    (Pause)

8    MR. SERCARZ:  I'm en route to the hospital, your

9  Honor.  I was speaking with family.

10    THE COURT:  Mr. Sercarz, we're in open court.

11    MR. SERCARZ:  I'm sorry, your Honor.

12    THE COURT:  We are in open court.  Thank you.  Give me

13  one moment, please.

14    All right.  So we've given everyone a copy of the

15  current version of the jury instruction, and I want to just run

16  through with you whatever edits we have made to what was

17  submitted to us over the weekend.

18    Okay.  So the first is -- you all do have a black

19  line, right -- charge 5.  This is not so much an edit;

20  although, there is an edit I'll talk to you about in a one

21  moment, but just a general question that I want you all to

22  focus on.  Given the nature of the indictment in this case and

23  the fact that there are charges against multiple defendants,

24  it's not my intent to give the jury, at the outset, a copy of

25  the indictment, but if they ask for it, obviously, they're

1    entitled to have it.

2           But I would suggest that it should be redacted.  So if

3    you would all please focus on that and confer with one another

4    to agree upon a redacted version of the indictment that could

5    be given to the jurors, should they ask.

6           Is there any objection to not giving it in the first

7    instance?

8           MS. MORTAZAVI:  No objection to that, your Honor.

9           THE COURT:  All right.  With respect to that charge 5

10   on page 9, we did make one edit, which is to add to Count

11   Two -- let me just find my marked up -- the language five lines

12   down we added "with intent to defraud or mislead as to Count

13   Two."  It was in Count One but not in Count Two.

14          MS. MORTAZAVI:  No objection to that, your Honor.

15          THE COURT:  Mr. Fernich?

16          MR. FERNICH:  No objection.

17          THE COURT:  All right.  Thank you.

18          And then we added the sentence -- you added the

19   sentence about the post-arrest conduct; so that's fine.  We

20   added that?  All right.  The language about the post-offense

21   conduct, Count Two, is at the end of that first paragraph,

22   "Count Two also alleges that the defendant continued to commit

23   that offense after he was arrested and released on bail in this

24   case."

25          MS. MORTAZAVI:  No objection from the government.

1     THE COURT:  Mr. Fernich?

2     MR. FERNICH:  That's fine, Judge.

3     THE COURT:  Okay.  Charge 9, I will tell you, as I

4  think I said the other day, I find this a bit repetitive, but

5  it was my strong inclination this weekend not to start doing

6  line edits.  You all agreed to it; so while I find it

7  repetitive, I left it alone.

8     All right.  Charge 10 -- obviously, Two, in what you

9  have and what we give the jurors is we took out the

10  authorities.

11     Charge 10 on page 22.  When you come over to page 24,

12  I have a question for all of you.  The second full paragraph,

13  six lines down, the word "or" is underlined.  Are you all --

14  hold on, I think in what you gave me, you had "and."  No, I'm

15  sorry.  Give me one moment.  I'm in the wrong place.

16     If you come over to page 26, the first full paragraph,

17  one, two, three, four, five lines down, "prescription animal

18  drugs are misbranded if they are not administered by a licensed

19  veterinarian in the course of his professional practice, and

20  are not otherwise dispensed pursuant to a valid prescription."

21  Is it proper for it to be "and" or should it be "or"?  I will

22  tell you, in all candor, we have debated this round and around.

23     MS. MORTAZAVI:  I believe it should be "or," your

24  Honor and if the "and" was included, that was our error.  There

25  are two circumstances where a prescription drug could be

M1VPFIS2

1    lawfully distributed, it's either with a valid written or oral

2    prescription, or if the veterinarian actually administers the

3    drug him or herself.

4             THE COURT:  Yes.  So your argument is the same as what

5    caused me to say it should be "or" but it may be best for you

6    to simplify this and break it into two sentences.  The problem,

7    I think, with whether it should be conjunctive or disjunctive

8    is that you have "not," n-o-t, in here; so you have the

9    negative, and does that cause it to flip?

10            And I think it may be that best if you all simplified

11   it, without changing the intent but just broke it into two

12   concepts.  It could be misbranded this way, and it could be

13   misbranded that way.  The question is, do both of these

14   circumstances have to be present for the drug to be misbranded,

15   or only one of them?

16            MR. FERNICH:  Judge?

17            MS. MORTAZAVI:  Well, its --

18            MR. FERNICH:  Go ahead.

19            MS. MORTAZAVI:  I believe it's flipped, your Honor.

20   If either one of these circumstances are present, then the drug

21   is not misbranded.

22            THE COURT:  That's the problem I'm getting at.  You

23   have so many "nots" in here --

24            MS. MORTAZAVI:  I understand.

25            THE COURT:  -- I think I'm going to punt this one back

1  to you all to -- Mr. Fernich, do you want to be heard?

2  MR. FERNICH:  Yes, please, because with all the

3  redding and the bluing and the blacking, and in terms of the

4  fonts and what we submitted in the original joint request, I

5  just want to make sure that the record is clear what my

6  objections are.  On page 24 of the charge, and this is related

7  to what we're discussing now --

8  THE COURT:  Okay.

9  MR. FERNICH:  -- I specifically object to the clause

10  (iv).

11  THE COURT:  Okay.  When you say "clause (iv)," can you

12  tell me what paragraph?

13  MR. FERNICH:  I'm sorry.  Yes, as your Honor -- the

14  second full paragraph.

15  THE COURT:  Yes.

16  MR. FERNICH:  Okay.  There's a clause (iv) in there

17  that talks about being "dispensed without a valid

18  prescription."

19  And relatedly, on page 26, I object to the entire

20  paragraph we were just discussing because I don't think the

21  phrase "valid prescription" belongs in here, and as I indicated

22  in my objections originally, this language about the "valid

23  prescription" is being drawn from cases construing the

24  provision 21 U.S. Code 353(b)(1), which pertains to a human

25  doctor, human physicians.

M1VPFIS2

1     Whereas, the language at issue in our case, 21 U.S.C.

2     353(f), relating to dispensing drugs by veterinarians, the

3     provision that the government charged Fishman with violating,

4     is distinctly different, and it doesn't talk about a valid

5     prescription.  And it says that it shall be dispensed only by

6     or upon a lawful written or oral order by a licensed

7     veterinarian in the course of their limited professional

8     practice.

9          THE COURT:  Okay.

10         MR. FERNICH:  And then it goes on to define what is or

11    is not a lawful order; so that is my objection to -- in

12    particular, to both clause (iv) and the inclusion of a

13    paragraph defining valid prescription.

14         THE COURT:  Okay.  It seems to me it is not impossible

15    to edit this language to track "oral or written order" to

16    address the objection and still keep the context.  So I'm going

17    to ask you all -- particularly given this ambiguity of "and"

18    versus "or" -- to go back and look at these two paragraphs and

19    come back to me this afternoon.

20         MS. MORTAZAVI:  Your Honor, we will do that.  I want

21    to make clear of the record, because this was a paragraph that

22    we discussed with defense counsel last week, that the Court

23    does intend to include this instruction in some way, shape or

24    form, and now we're talking about the language.

25         Because I think Mr. Fernich is just renewing his

1  objection to including any of this language at all, and I want

2  to make clear that the Court has ruled that there will be some

3  instruction and that the parties are just directed to agree on

4  language.

5      THE COURT:  Some instructions about what, though?

6  Because that's the point about this, about when a drug is

7  misbranded?

8      MS. MORTAZAVI:  Yes.

9      THE COURT:  And specifically, clause (iv).

10      MS. MORTAZAVI:  Correct and --

11      THE COURT:  Yes.

12      MS. MORTAZAVI:  -- Mr. Fernich has objected to the

13  government's formulation of clause (iv) and believes that this

14  paragraph on page 26 that we're discussing should be removed

15  entirely.  I just want to make clear that the Court's directive

16  now is not that this paragraph will be removed entirely; only

17  that the parties should clarify the language within it.

18      THE COURT:  Well, but I'm also asking you to go back

19  and look at clause (iv), and if Mr. Fernich is right, that the

20  "valid prescription" language is contained in the human drug

21  part and not the animal drug part and, instead, the animal drug

22  part talks about a "valid oral or written order by a

23  veterinarian," could you substitute that?  Should that be

24  substituted for "without a valid prescription;" in other words,

25  should it say "dispensed without a valid or written order by a

1    veterinarian"?

2          MS. MORTAZAVI:  We will track the statutory language.

3    There is no objection to that from the government.

4          THE COURT:  Okay.

5          MS. MORTAZAVI:  Mr. Fernich wanted to insert the

6    phrase "unlawfully" for all of that.

7          THE COURT:  No.  "Unlawfully" is a shorthand for that.

8          MS. MORTAZAVI:  Correct.

9          MR. FERNICH:  That's right.

10         MS. MORTAZAVI:  And we noted that in our submission to

11   the Court in tracking.  That is his language.  I want to make

12   clear that not is what the Court --

13         THE COURT:  Correct.  I am not going to say

14   "unlawful."

15         MR. FERNICH:  That's fine.  That was an attempt to

16   harmonize the government's request with -- to track with the

17   statute.  I am fine with clause (iv) to track the language

18   statute.

19         The problem then arises is as follows.  What

20   constitutes a lawful written or oral order of a licensed

21   veterinarian in the course of the veterinarian's professional

22   practice is then defined in the statute, in 353(f)(1)(B), and

23   the track explains what a lawful written or oral order is.

24         If the government wants to define that term, then the

25   paragraph on 26 should go, and it should track the definitions

1   in B.  Alternatively, it can be left undefined.  I don't have a

2   position as to that.  That's up to the government, but like I

3   said the other day, if we're going to do this, I think we

4   should try to get it right.

5          THE COURT:  Right, of course we should try to get it

6   right.

7          MS. MORTAZAVI:  Your Honor, may I interject?  We have

8   had now two rounds of joint requests to charge, and we've

9   conferred with Mr. Fernich on each of those.  We have accepted

10  many of his proposals and many of his line edits.  I think if

11  Mr. Fernich would like to propose language on page 26 for us to

12  adopt, that is probably the most efficient way to go about it.

13         Frankly, for us to grasp at what is incorrect about

14  this paragraph and what should be included without knowing

15  exactly what Mr. Fernich's objection is, I don't think it's

16  very efficient.

17         MR. FERNICH:  Well, my objection, first of all, if it

18  were up to me, as I said from the outset, including on the

19  initial joint submission, I would strike it.  I would just

20  strike the paragraph out.

21         My objection is that we should not be defining the

22  phrase "valid prescription," which has nothing to do with this

23  statute.

24         THE COURT:  You just said it shouldn't be "valid

25  prescription"; so we're not going to say "valid prescription."

1    I think we just talked about we're going to change clause (iv).

2    You're going to talk, but the concept is that it's going to say

3    a valid written, oral -- I'm sorry, a valid oral or written

4    order of a licensed veterinarian.

5            And then when we come over on page 26, it should say a

6    valid oral or written order of the veterinarian is one issue in

7    the usual course of professional practice by a licensed

8    veterinarian for a legitimate medical purpose.  At the same

9    time --

10           MR. FERNICH:  That's what I object to.

11           THE COURT:  I know you do, but I don't know what your

12   objection is, based upon a bona fide

13   veterinarian-client/patient relationship.

14           MR. FERNICH:  My objection is that language is -- when

15   the government submitted the original request to charge, I

16   checked all the authorities submitted in support of it.  In

17   case law, to the extent it's marshaled in support of that

18   language, the all case law construing the different statutory

19   language in 353(b)(1) were adopted, and this is different from

20   what's in the face of the definitional section, 353(f).

21           It tells you for purposes of subparagraph (a), which

22   is the phrase lawful written or oral order of a licensed vet,

23   an oral -- an order, excuse me, is lawful if the order, one, is

24   a prescription or other order authorized by law; it is if an

25   oral order promptly reduced to writing by the person lawfully

1    filling the order and filled by that person, yadda, yadda.

2              So what this is doing, the phrase "other order

3    authorized by law" is a recognition that different states have

4    different regulations for veterinarians as to what constitutes

5    a lawful -- a way a vet can dispense drugs, whether by

6    prescription or otherwise.

7              So given that the phrase "valid prescription" is going

8    to be out of clause (iv) on page 24, we should -- if we're

9    going to embark on the task of defining the phrase, lawful

10   written or oral order of a licensed vet in the course of the

11   vet's professional practice, and assume that language on page

12   26 should track the statutory language defined or it should

13   just come out.  That's my objection.

14             THE COURT:  Your objection is noted.  So I want the

15   first paragraph to track the language about a "valid oral or

16   written order."  When you come down several lines -- one, two,

17   three, four, five, six lines -- "pursuant to a valid

18   prescription" take out the word "prescription" and say "order

19   of the veterinarian."

20             MR. FERNICH:  Wait.  I'm sorry, I lost you, Judge.

21             THE COURT:  Paragraph on page 26 to which you object,

22   I'm making the following edit.  The first line is not going to

23   say "prescription;" it's going to say "a valid oral or written

24   order of a veterinarian is," and pick up with what's there.

25             Coming down to the sixth line that begins "pursuant to

1   a valid prescription" that will be changed to read "pursuant to

2   a valid order of a veterinarian" as it's just been defined up

3   above.

4           MR. FERNICH:  Okay.

5           THE COURT:  "To dispense a prescription drug without a

6   valid order means" and then the next line "to administer to an

7   animal with no oral or written order at all, or pursuant to an

8   order that is invalid because it was not issued for a

9   legitimate medical purpose based upon a bona fide

10  veterinarian-client/patient relationship."  I do have to say

11  that that seems a little redundant, but it is --

12          MR. FERNICH:  It's redundant because the VCPR

13  requirement is applicable to 21 U.S.C. 360(b) about off --

14  extra-label use.  So that's how the VCPR context enters into

15  both the statute and the implementing regulations in the CFR.

16          The CFR provision 21 CFR 530, et seq, that Dr. Bowman

17  was testifying about, that deals with extra-label drug use

18  under what I said the other day, the AMDUCA.  The VCPR concept

19  does not pertain with respect to the charged 353(f) violation.

20  He's also charged with 360(b) violation, and certainly the VCPR

21  definition pertains with respect to that, but this language

22  here, what we're discussing in 24 and 26 -- and just to back up

23  a second.

24          The 360(b) violation is the adulteration charge.  The

25  353(f) charge is principally the misbranding charge, and that

1   doesn't fold in the concept of a VCPR.  It just talks about a

2   lawful or written -- excuse me, I'm so sorry -- to the lawful

3   written or oral order of a licensed vet.  And none of this

4   stuff about validity comes into play.  It's just a lawful

5   order, and it defines what the lawful order is.  It's either a

6   prescription or other order authorized by law.

7          So I'm not trying to be difficult about this at all.

8   It's just that the statutory is quite complicated, and both

9   prior to receiving the charge and in analyzing the request to

10  charge, I tried to do some hard looking.  And I just think

11  what's happening here, not purposefully, is that there's mixing

12  and matching going on from other charges, other cases.

13         And when you look at the vet cases that we cited in

14  the request to charge, which is the one that began with Sloan,

15  which is Hebert, H-e-b-e-r-t, from Louisiana, and which is

16  Rojas from PA, none of this stuff comes in there about a valid

17  prescription, at least not in a 353(f) context.  What they did

18  was they took the government --

19         THE COURT:  All right.  I don't need to hear what they

20  did in the other case.

21         MR. FERNICH:  No, no, no --

22         THE COURT:  Factually, Rojas is not this case.  It

23  just isn't, and you're agreeing with that.

24         MR. FERNICH:  Yes, I do understand that, but the point

25  is that when there's a charged 353(f) violation, that's

M1VPFIS2

1    distinct to veterinarians, and none of the cases that has

2    353(f) charge as applied to a vet, never used this kind of

3    language because this language is -- if your Honor were to look

4    at 353(b), right there, take a few minutes and look at the

5    difference of the statutory language.  353(b) for medical

6    doctors, the prescription is in.  Everything has to be done

7    under a prescription.

8              MS. MORTAZAVI:  Your Honor, may I interject on this

9    point?  I believe the Court has already ruled that we are

10   taking out the language "prescription" and replacing it.

11             THE COURT:  Yes.

12             MS. MORTAZAVI:  So maybe Mr. Fernich is comforted by

13   that ruling.

14             THE COURT:  It was an attempt to address your

15   objection; so you have my ruling.  That's where we're at.

16             MR. FERNICH:  I don't want to --

17             THE COURT:  These are definitions, and they do not

18   say, in the definitional section, this one applies to this

19   charge and this one applies to that charge.  They're simply

20   saying when these expressions or terms are used in the charges,

21   here's what they mean.  So that's where we're at on that one.

22             Let me just see.  You still need to look at the

23   question of "and/or" on page 26.

24             MR. FERNICH:  If we're past my objection --

25             THE COURT:  Yes.

M1VPFIS2

1          MR. FERNICH:  If you recall how this came about, first

2     of all "or" is right, and if you recall how this came about,

3     the government on Friday said, well, the SG wants us to put in

4     "administering" as well, which is the Rojas issue; so

5     ostensibly, it's because that's what the SG wanted.  There's no

6     claim in this case that Fishman administered anything.

7          THE COURT:  No, but there are claims, I think, that,

8     is it, Geoff or Vernon --

9          MS. MORTAZAVI:  Correct.

10          THE COURT:  -- administered and he's a veterinarian,

11     right?

12          MS. MORTAZAVI:  And there are other veterinarian

13     clients, your Honor, that we talked about over the course of

14     this.

15          THE COURT:  Right.

16          MR. FERNICH:  I don't have a problem --

17          THE COURT:  But you both agree it should be "or."

18          MS. MORTAZAVI:  Correct.

19          MR. FERNICH:  No.  I do.

20          THE COURT:  Okay.  Coming over to charge No. 11.

21     Okay.  I think I moved your good faith defense to the end here

22     saying "The defendant has argued that he acted in good faith,"

23     but I have made a substantial revision, which I do think,

24     frankly, is substantive to this.

25          I do not think it's correct to say -- it is correct to

M1VPFIS2

1    say the burden always stays on the government.  It is correct

2    to say that the government doesn't have to prove his good

3    faith, but I don't think it is correct to say that the

4    government has to prove bad faith.  I think the government has

5    to prove intent to defraud or mislead.  So I've made that edit.

6            MR. FERNICH:  Can I just have one second to finish

7    reading it?

8            THE COURT:  Sure.

9            (Pause)

10           MR. FERNICH:  That language seems unobjectionable to

11   me.

12           THE COURT:  Okay.

13           Coming over to No. 16, I told you when we were in

14   chambers that I was including the conscious avoidance charge,

15   and it's in what we've given you -- I'm sorry, I skipped No.

16   14, the lesser-included offense.  The beginning part of it --

17   I'm sorry, the second paragraph, line 2, to me when I read it

18   through, it reads a little bit confusing, and I'm going to make

19   the following edits:  "You must first consider whether the

20   government has satisfied its burden as to all elements of a

21   conspiracy to adulterate or misbrand drugs other than the

22   intent to defraud or mislead," and then the rest of it will

23   remain the same.

24           MS. MORTAZAVI:  No objection from the government.

25           MR. FERNICH:  None.

M1VPFIS2

1    THE COURT:  "None" meaning no objection?

2    MR. FERNICH:  No objection.

3    THE COURT:  Okay.  18 and 19, our chambers staff had a

4    question thinking these seemed a bit repetitive.  As I

5    understand what you're saying in 18 is the span of the

6    conspiracy itself, whereas in 19, you're talking about overt

7    acts that are laid out; is that correct?

8    MS. MORTAZAVI:  That's correct, your Honor.

9    THE COURT:  All right.  And these are consensual, 18

10   and 19?

11   MR. FERNICH:  You know, as a defense lawyer we don't

12   like these charges, but they are standard charges; so I can't

13   go against them.

14   THE COURT:  No. 24, credibility, we pulled in the

15   false-in-one aspect charge into the credibility charge, which

16   is where I firmly believe it belongs.  We left the concept

17   where you had stuck it at the back about cooperating witnesses,

18   but it seems to me it belongs in the witness credibility

19   section as well.  So if you look at the last two paragraphs,

20   we've added those.

21   MS. MORTAZAVI:  No objection from the government.

22   MR. FERNICH:  No objection, your Honor.

23   THE COURT:  Okay.  And then I'll point out to you

24   where the shorter version of it remains in the back, okay?

25   Charge No. 28 is where we added the reminder about

1  Ms. Giannelli not being here.

2          MS. MORTAZAVI:  No objection from the government.

3          MR. FERNICH:  No, no objection.

4          THE COURT:  No objection?  I'm sorry?

5          MR. FERNICH:  No objection.

6          THE COURT:  All right.  Thank you.

7          Next, 29 is where you had had the totality of the

8  false-in-one aspect charge; so we've left, you will see, the

9  last sentence -- actually, read the last full paragraph.  It's

10 slightly revised from the way you gave it to me, but the last

11 sentence captures that concept.

12         MS. MORTAZAVI:  No objection from the government.

13         MR. FERNICH:  In the penultimate sentence, where you

14 say "you should accept it as credible and act upon it

15 accordingly" --

16         THE COURT:  Yes.

17         MR. FERNICH:  I'd prefer, or be more comfortable with

18 "you may accept it as credible."

19         THE COURT:  Right.  Is the same not true of the first

20 sentence then?

21         MR. FERNICH:  This is an abridged -- am I correct that

22 this is a shorthand reiteration of false in one, false in all?

23         THE COURT:  Yes.  And you're suggesting what,

24 Mr. Fernich?  It says "may."

25         MR. FERNICH:  I take your point, Judge.  In the

M1VPFIS2

1    penultimate sentence, I prefer "you may accept it as credible

2    and act upon it accordingly," and to your Honor's point, the

3    cross of that is, "If you find that the testimony was false,

4    you may reject it."

5              THE COURT:  Ms. Mortazavi?

6              MS. MORTAZAVI:  So long as it's consistent, the

7    government has no objection.

8              THE COURT:  Okay.  So I will make the following edits.

9    First line:  "If you find that the testimony was false, you may

10   reject it.  If, however, after a cautious and careful

11   examination of the cooperating witness' testimony and demeanor

12   on the witness stand you're satisfied that the witness told the

13   truth, you may" -- not "should" -- "accept it as credible and

14   act upon it accordingly.  As with all witnesses, you may accept

15   some but not all of a witness' testimony and give it whatever

16   weight you deem appropriate."

17             MS. MORTAZAVI:  That's fine, your Honor.

18             MR. FERNICH:  Yes.

19             THE COURT:  Okay.  "Yes" means no objection?

20             MR. FERNICH:  No objection.

21             THE COURT:  All right.  Coming over next, I believe,

22   is that No. 37 is the charge about -- let me just find it.  I

23   think that's the foreperson charge.

24             MR. FERNICH:  Judge, just going back, I hate to do

25   that.  So in the intent to defraud or mislead, the way we --

M1VPFIS2

1          THE COURT:  Tell me a page or a charge, please?

2          MR. FERNICH:  I think it was 11.  This is about the

3    materiality.  The way we settled it is we were going to put

4    "material" in there and leave it undefined; do I have that

5    right?

6          THE COURT:  Yes.  I believe that's what we've done,

7    right?  Let me go back and look at that, but you're right, I

8    put that on the record in the robing room but not here.

9          MS. MORTAZAVI:  Your Honor, I believe it's page 30.

10          MR. FERNICH:  Yes.

11          MS. MORTAZAVI:  And I believe it's "concealing

12    material facts" listed here, if that's what Mr. Fernich is

13    looking to.

14          MR. FERNICH:  I'm trying to find it.  As long as it's

15    in there, that's fine.

16          MS. MORTAZAVI:  I think it's on 30.

17          MR. FERNICH:  I'm on 30.  What paragraph?

18          MS. MORTAZAVI:  "To act with 'intent to mislead'" is

19    the opening phrase.

20          MR. FERNICH:  Yup.  Thank you.

21          THE COURT:  Right?

22          MR. FERNICH:  Yes.

23          THE COURT:  By the way, on that one, I'm sorry I

24    didn't point this out as well.  On No. 11, "other federal drug

25    enforcement authority," this is in the second-to-last

M1VPFIS2

1    paragraph, before we get to good faith --

2            MR. FERNICH:  Yes.

3            THE COURT:  -- comma, "including U.S. Customs and

4    Board Protection, the FBI and the DEA."

5            MR. FERNICH:  Yes, that's consistent with the Court's

6    pretrial ruling.

7            THE COURT:  Right.  Addressing an objection that was

8    made by the government.

9            MR. ADAMS:  Just one moment, your Honor?

10           THE COURT:  Yes.

11           (Pause)

12           MS. MORTAZAVI:  Your Honor, do I understand that

13   Mr. Fernich does not object to that paragraph in the

14   construction?

15           THE COURT:  That's what I'm understanding him to say.

16           MS. MORTAZAVI:  All right.  And then nothing further

17   from the government on that.

18           THE COURT:  Mr. Fernich?

19           MR. FERNICH:  Right, without prejudice to the

20   objections raised in the motion to dismiss.

21           THE COURT:  Right.  Of course.

22           MR. FERNICH:  Yes.

23           THE COURT:  All right.  So we were up to charge No.

24   37, which, as I said to you, is the foreperson charge; so

25   that's new.  I told you I was going to add something, and I

1  also put it in a different place than where I think it was or

2  you had suggested it would be.

3       MS. MORTAZAVI:  Your Honor, just one thing that my

4  colleague has pointed out.

5       THE COURT:  Sure.

6       MS. MORTAZAVI:  There's a reference to the foreperson

7  that is contemplated by the Court and whether she's unable to

8  act in that capacity.  The sentence that follows, "In that

9  event, your first order of business will be to elect a

10  foreperson."

11       THE COURT:  Right.

12       MS. MORTAZAVI:  You may just want to include "a

13  different foreperson" just for the sake of clarity.

14       THE COURT:  Okay.  Any objection, Mr. Fernich?

15       MR. FERNICH:  No.

16       THE COURT:  All right.  We can do that.

17       Next, we added the charge about the verdict form.

18  That's No. 42.  I'll give you a minute to read it, and then I

19  have a question for you all about the verdict form itself.

20       (Pause)

21       Any comments or objections?

22       MR. FERNICH:  Not from the defense.

23       THE COURT:  Thank you.  I think the government is

24  still conferring.

25       MS. MORTAZAVI:  Nothing from the government.

1    THE COURT:  Okay.  So my question to you is the

2  following.  This charge, which seems to be a pretty standard

3  one, contemplates that each of the jurors will sign the verdict

4  sheet, but the verdict form that you gave me, which otherwise

5  looks fine and is acceptable to the Court and I will use that

6  on consent, right, the verdict form, Mr. Fernich?

7    MR. FERNICH:  Yes.  Is it possible for Ms. Popper or

8  somebody, if it's not too much of an inconvenience, to print

9  one of those out and distribute it?  It's just a lot easier for

10  me to look at.

11    THE COURT:  Yes.  I didn't make any changes; so I

12  didn't print a copy, but we'll try to do that.

13    MR. FERNICH:  Yes.

14    THE COURT:  My question to you is -- you don't really

15  need it in front of you -- don't we need signature lines?

16    MR. FERNICH:  Yes.

17    MS. MORTAZAVI:  Your Honor, our experience, just

18  speaking for the government, is that it's typically just the

19  foreperson that signs.

20    THE COURT:  Oh, it is, but that's why the charge

21  needed to be changed.

22    MS. MORTAZAVI:  We were discussing whether to point

23  that out.  If it makes it simpler for purposes of the verdict

24  form formatting and also the jurors' time, just to have the

25  foreperson to sign.  I think that's consistent with prior

M1VPFIS2

1    cases.  The government, obviously, does not object to that.

2            MR. FERNICH:  That's fine.  We're going to poll them

3    anyway.

4            THE COURT:  Yes, well, you're going to request that we

5    poll them, one side or the other.

6            All right.  So then I'll take the sentence out that

7    says "Each of you should sign the verdict form."  Okay?

8            MR. FERNICH:  Yes.

9            THE COURT:  I guess we have to say that the foreperson

10   should sign the verdict form?  It just says the foreperson

11   should fill it in and note the date and time, and I'll say "and

12   sign the verdict sheet," right?

13           MS. MORTAZAVI:  That's fine for the government, your

14   Honor.

15           MR. FERNICH:  That's fine.

16           THE COURT:  All right.  No. 43, the conclusion, I have

17   edited them a little bit from the version you previously saw.

18   I added the last full paragraph, the fifth paragraph, "As you

19   deliberate, please listen to the opinions of your fellow jurors

20   and ask for an opportunity to express your own views.  Every

21   juror should be heard.  No one juror should hold center stage

22   in the jury room, and no one juror should control or monopolize

23   the deliberations."

24           I also added the language "Finally, I say this not

25   because I think it's necessary" -- this is at the very end,

M1VPFIS2

1     sorry -- "but because it is the custom in this courthouse to

2     say this:  You should treat each other with courtesy and

3     respect during your deliberations."

4            And then the final paragraph asking them to just wait

5     while I hear from you at sidebar.

6            MR. FERNICH:  I'm sorry, what was the text of the last

7     paragraph that your Honor was giving?

8            THE COURT:  "Members of the jury, I ask your patience

9     for a few moments longer.  It is necessary for me to send a few

10    moments with counsel and the reporter at the sidebar.  I will

11    ask you to remain patiently in the jury box, without speaking

12    to each other, and we will return in just a moment to submit

13    the case to you.  Thank you."

14           MS. MORTAZAVI:  No objection from the government.

15           THE COURT:  Mr. Fernich?

16           MR. FERNICH:  Certainly no objection to the second

17    change to the last paragraph.

18           I'm not crazy about the paragraph that you inserted at

19    the bottom, that your Honor inserted at the bottom of 75.

20           THE COURT:  Which paragraph is that?

21           MR. FERNICH:  That is the one about as they

22    deliberate, please listen to the opinion of your fellow jurors.

23    That clause I have no problem with.  There is a line of cases,

24    and I can't remember where I'm getting this from, that deals

25    with jurors who are -- who don't articulate and express

themselves well, you know, have disagreements or tend to have

opinions but they may not be able to articulate them well and

they may not be able to speak.  I'm a little uncomfortable to

ask for an opportunity to express your own views and every

juror should be heard.

THE COURT:  Is it more palatable to you if I add the

word "ask for an opportunity to express your own views if you

wish to be heard"?

MR. FERNICH:  Yes, that's more palatable.

THE COURT:  Government?

MS. MORTAZAVI:  That's fine for the government, and

perhaps then you could strike "every juror should be heard,"

given Mr. Fernich's objection.

THE COURT:  Yes.  Is that acceptable, Mr. Fernich?

MR. FERNICH:  Yes.

THE COURT:  Does that address your concern?

MR. FERNICH:  Yes.

THE COURT:  And what about the last sentence?

MR. FERNICH:  I'd like to stop it right after what

your Honor just added.

THE COURT:  I'm fine with that.  Ms. Mortazavi?

MS. MORTAZAVI:  So is the government.

THE COURT:  Okay.  And then the other two additions,

Mr. Fernich, you're fine with them?

MR. FERNICH:  The one with the last paragraph,

M1VPFIS2

1    "Members of the jury," et cetera?

2            THE COURT:  "Finally, I say this not because it's

3    necessary," which I read into the --

4            MR. FERNICH:  That's fine.

5            THE COURT:  All right.  Then charge 44 about the

6    alternates is also new.  I told you I'd be proposing language.

7            (Pause)

8            MS. MORTAZAVI:  No objection from the government.

9            MR. FERNICH:  No objection either.

10           THE COURT:  All right.  The only question I'll ask you

11   all to just pause for the moment on the alternates is to make

12   sure -- we had an incredibly attentive jury.  They've been

13   fairly punctual every day.  They all seem engaged.  I have no

14   reason to anticipate any issues, but are you all comfortable

15   with letting all four alternates go and be on call, as opposed

16   to keeping two of them around?

17           MS. MORTAZAVI:  The government has no objection to

18   releasing all four alternates.

19           THE COURT:  Mr. Fernich?

20           MR. FERNICH:  No objection either.

21           THE COURT:  Okay.  That's what we'll do then.

22           So I think with the exception of charge No. 10, which

23   we're going to look at one more time, or you're going to talk

24   about and get me your versions -- and you better make sure

25   you're filing what you need to on ECF so that the record is

M1VPFIS2

 1    what it is.  If you can agree on 10 with my rulings, great.  If

 2    you can't, you can each note your comments and preserve them

 3    for the record.

 4             MR. FERNICH:  Well, I think your Honor has resolved

 5    adversely to me the objection to the inclusion of that

 6    paragraph on 26 defining, I think the phrase was, "valid

 7    prescription" so --

 8             THE COURT:  Yes, but it's not going to stay that way.

 9    I suggested you go back and you edit it to conform with what we

10    talked about on the record, but yes, a paragraph should remain

11    in.

12             MR. FERNICH:  Okay.  Let's see if we can put our heads

13    together and resolve it.  I think your Honor's ruling has

14    substantially narrowed the issue.

15             THE COURT:  I thought so.  Okay.  All right.  It's

16    noontime now.  Mr. Fernich, I don't know how Mr. Sercarz is

17    going to be communicating with you, but I --

18             MR. FERNICH:  I'll reach out to Mr. Sercarz.

19             THE COURT:  Should we tentatively say we'll resume at

20    1:30?

21             MR. FERNICH:  Oh, sure.

22             THE COURT:  You think you'll have feedback by then?

23             MR. FERNICH:  Whether he'll be back?

24             THE COURT:  No, "feedback" I said.

25             MR. FERNICH:  Oh, yes, I'm hopeful.

1          THE COURT:  Okay.  Does that work for the government?

2          MR. ADAMS:  Yes, your Honor.

3          THE COURT:  Is there anything else we should talk

4     about?

5          MR. FERNICH:  Oh, could I just have one second to just

6     look at the verdict form?

7          THE COURT:  Yes, of course.

8          MR. FERNICH:  Thanks.

9          THE COURT:  And then I do have one question.

10         (Pause)

11         MR. CHOW:  Your Honor, if I may bring up one question

12    for the Court?

13         THE COURT:  Yes.  Maybe just let him finish reading.

14    He hasn't had a chance.  "He" being Mr. Fernich.  I don't mean

15    to be disrespectful.

16         (Pause)

17         MR. FERNICH:  The verdict sheet is fine.

18         THE COURT:  Thank you.  All right.  And the

19    government, obviously, is fine with the verdict sheet, since

20    you sent it to me.

21         MS. MORTAZAVI:  Yes, your Honor.

22         THE COURT:  But I think that was after consultation,

23    right?

24         MR. FERNICH:  Yes.

25         MS. MORTAZAVI:  Correct.

M1VPFIS2

1          THE COURT:  Mr. Chow?

2          MR. CHOW:  Your Honor, I was just curious as to

3     whether the Court had any practice or intent with regard to

4     instructing the jurors with regard to their schedule of

5     deliberations?

6          THE COURT:  Get a little closer.

7          MR. CHOW:  I know that some courts tell the jurors,

8     jury, that they are permitted to perhaps stay late or whatever

9     with regard to their deliberation schedule.  I was just

10    wondering if the Court had an idea as to how it intended to

11    instruct the jury with regard to their workday.

12         THE COURT:  I hadn't thought about it, to be perfectly

13    honest.  I'm open to recommendations.  My instinct is to leave

14    them to their own preference.  We've had a pattern where we

15    break around 4:30 each day.  I would assume, based on that

16    pattern, that they will assume that that's how they're going to

17    proceed but, of course, I guess I should tell them, should they

18    wish to stay longer, that they may.

19         MR. CHOW:  The government's position is we're happy to

20    work as long as the jury is willing to work.  We are happy to

21    stick around.

22         THE COURT:  Yes, but I mean, I think that I, when they

23    are retiring, will say to them that they will let us know when

24    they are concluding their deliberations for the day and that

25    should they wish to stay past the 4:30 hour, which is when

1    we've been ending each day, they're free to do so.

2                MR. CHOW:  Great.

3                THE COURT:  They should just let us know.

4                MR. CHOW:  Thank you.

5                THE COURT:  Mr. Fernich?

6                MR. FERNICH:  No objection.

7                THE COURT:  Okay.  All right.  Mr. Adams, the question

8    I had for you is, is the order that I signed earlier filed

9    under seal?

10                MR. ADAMS:  Not normally, your Honor.  I don't think

11    there's anything on the face of that document that requires it

12    to be under seal.

13                THE COURT:  Mr. Fernich?

14                MR. FERNICH:  I agree with -- can we do this at the

15    sidebar for a minute?

16                THE COURT:  Sure.

17                (Pages 1144 through 1146 SEALED by order of the Court)

18

19

20

21

22

23

24

25

1   (In open court)

2   THE COURT:  All right.  So we stand in recess then

3   until 1:30, correct?

4   MR. ADAMS:  Correct.

5   MS. MORTAZAVI:  Yes, your Honor.

6   THE COURT:  All right.  Have a good lunch break,

7   everyone.  Thank you.

8   (Luncheon recess)

9   (Continued on next page)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

M1VTFIS3

AFTERNOON SESSION

(1:35 p.m.)

(In open court)

THE COURT:  I'm going to wrap up the jury instructions

before we adjourn inside for an update.

So I want to comment on one thing.  With respect to

the supplemental defense request to charge that were submitted

on the 28th, which I believe was Friday --

MR. FERNICH:  Yes.

THE COURT:  -- I just want to clarify with you,

Mr. Fernich, that Request No. 3 is withdrawn in light of our

adding the language about the need for the nexus.

MR. FERNICH:  Yes.

THE COURT:  And that Request No. 4 is withdrawn --

requested Request No. 4 is withdrawn in light of the inclusion

of the lesser included offense charge.

MR. FERNICH:  Yes.

THE COURT:  Okay.  So I want to just clarify or

supplement the record, I should say, a little bit with respect

to your second supplemental charge, which I have said I am not

going to give.

MR. FERNICH:  Judge, I don't mean to interrupt, before

we get there, which is totally fine, I understand your need to

make a record, I appreciate it, I just had one issue and I

appreciate the government's good work, in the letter that was

1   just filed, which is --

2           THE COURT:  Hold that, I will get to it.

3           MR. FERNICH:  All right.

4           THE COURT:  With regard to your second supplemental

5   request to charge from the 28th, as I understand it, I told you

6   I'm not giving that charge, but I want to be clear for the

7   record about why.

8           So as the Court understands it, the government's

9   theory of the case is that the intent to defraud or mislead

10  racing authorities goes hand in glove with the intent to

11  defraud the FDA because the custom drugs that Dr. Fishman

12  intended to enhance the performance of racehorses, drugs whose

13  purpose was only to gain a competitive advantage, as you put

14  it, would not and could not be approved or found to be

15  generally recognized as safe and effective.

16          So as I understand it, on the government's theory, for

17  which it has adduced some evidence, Dr. Fishman intended to

18  evade the scrutiny of both federal and state regulators.

19          The theory that you articulated to me, Mr. Fernich, on

20  Friday, is that Dr. Fishman did intend to defraud state racing

21  authorities but simply had no intentions or thoughts about the

22  FDA.  I don't find that that theory is supported by the record,

23  that Dr. Fishman had no thought or intention about the FDA

24  whatsoever because evidence has been received to the effect

25  that Dr. Fishman discussed the FDA and FDA approval status of

M1VTFIS3

1    another company.

2            Nevertheless, at the end of the day, it is obviously

3    for the jury to decide whether the evidence supports the

4    government theory or your theory or to find that Dr. Fishman's

5    state of mind was different from either of those two theories,

6    including that he had no intent to defraud anyone.  But I'm not

7    going to instruct the jury as a matter of law as you request

8    that I do, that an intent to defraud state racing authorities

9    is inherently distinct from an intent to defraud the FDA.

10           So now with respect to the government's letter --

11           MR. FERNICH:  Could I be heard on that one for second?

12           THE COURT:  Sure.

13           MR. FERNICH:  I understand the Court's position and I

14   understand the Court's ruling.  Just for the record, I am not

15   at all saying that's inherently distinct, I'm saying if the

16   charge says that if the jury found only, only that he intended

17   to defraud regulators for purposes of competitive advantage,

18   that would suffice.  That would compel an acquittal, not that

19   it's inherently distinct.

20           The government is free to make the argument that your

21   Honor just articulated, and it's a very plausible argument.

22   Nonetheless, there's a plausible reading of the record that

23   could suggest that all Dr. Fishman cared about was winning

24   races, that was uppermost in his mind, he didn't care one whit.

25   I'm not saying that the jury has to accept that claim, but it's

1  a claim that we could make and they could accept or reject.

2  That's all I wanted to do.  And there's evidence in the record

3  that supports that view as well.

4       And for that reason, given the complexity of the

5  charges here, I think the charge is supported in law and I

6  think there's an adequate record foundation for it, but I don't

7  want to belabor it.  We know where we each respectively stand

8  and I appreciate the Court's ruling.

9       THE COURT:  Fair enough.  You have your record.

10       Now the final open issue on jury charges -- and I'm

11  not reopening this for debate, I'm telling you where I'm come

12  coming out on it.

13       You appear to be telling me, Mr. Fernich, that the

14  letter from the government is not on consent, is that correct?

15       MR. FERNICH:  It is on consent, subject to exactly

16  what Mr. Chow faithfully wrote there, that I don't want that

17  paragraph at all.

18       THE COURT:  You made that clear.

19       MR. FERNICH:  If the Court is going to give that

20  paragraph, I think this is the accommodation that the parties

21  have reached.  My only -- and this only became clear to me when

22  the two clauses about administering and dispensing were broken

23  into separate sentences, if we're going to give a separate

24  sentence on administering after the word "by," I wanted "or

25  under the supervision of a licensed veterinarian," but other

1  than that, I think we do agree, yes.

2          THE COURT:  All right.  I will consider your "under

3  the supervision" language in a moment, but I do not find this

4  language acceptable because I think the first sentence is just

5  not right.  Prescription animal drugs are misbranded if they

6  are not administered by a licensed veterinarian in, you're

7  missing, the course of his professional practice.  That's just

8  not true because they might be administered by somebody other

9  than a licensed veterinarian pursuant to a valid written

10  prescription.

11          So here's what I'm going to charge -- and do we have a

12  copy or no?

13          LAW CLERK:  Yes, Judge, I handed out copies.

14          THE COURT:  If you look at page 26 --

15          MR. FERNICH:  This is on the charge that your Honor

16  handed out earlier in the day?

17          THE COURT:  No, what was just handed out by Ms. Popper

18  after the lunch break which reflects what I'm doing with your

19  proposal.

20          MR. FERNICH:  Okay.

21          THE COURT:  First full paragraph on page 26.

22          MS. MORTAZAVI:  Your Honor, the government is fine

23  with that language, and captures the two categories that the

24  government understands are carve outs from what would be a

25  misbranded prescription animal drug.

1    MR. FERNICH:  Sorry, I need just a little more time, I

2    apologize.

3    THE COURT:  No problem, Mr. Fernich, but I put in two

4    sentences.

5    MR. FERNICH:  I see that.

6    Yes, subject to that I didn't want any of this

7    paragraph, this language is fine.

8    MS. MORTAZAVI:  Your Honor, I apologize, I took

9    another look at this language, and it occurred to me that a

10   drug would still be misbranded if someone other than a

11   veterinarian administered it but not pursuant to a valid

12   prescription.

13   Now Mr. Fernich objected to the use of the term

14   "valid," and so in the sentence that precedes that category,

15   that is when a veterinarian directly administers a prescription

16   animal drug, we have included "not in the course of his

17   professional veterinary practice."  I think there has to be

18   some mention of that in the sentence that follows to show that

19   an invalid prescription, that is one not given to a client in

20   the course of a veterinarian's professional practice, would

21   still result in a drug being misbranded.

22   So in other words, if a vet --

23   THE COURT:  I understand what you're saying.  I

24   thought we captured that concept.

25   MS. MORTAZAVI:  And I believe because the term "valid"

M1VTFIS3

1   was removed, it becomes a little more ambiguous.

2          MR. FERNICH:  So you want to add, Sarah, at the end,

3   "not in the course of his professional veterinary practice."

4          MS. MORTAZAVI:  Correct.

5          MR. FERNICH:  I don't have a problem with that.

6          THE COURT:  Okay.  Let me just -- but not pursuant to

7   a prescription or other order authorized by law.

8          MR. FERNICH:  Issued in the course of his professional

9   veterinary -- of the veterinarian's veterinary practice.

10          THE COURT:  Ms. Mortazavi?

11          MS. MORTAZAVI:  That addition satisfies the

12   government's concern.  Thank you.

13          THE COURT:  We will put that in, and you have your

14   objection to the paragraph wholesale.

15          MR. FERNICH:  I appreciate that.

16          THE COURT:  The other edits from this morning are as

17   follows, page 61, we changed the May -- sorry, the "should" to

18   "may" in two places, as we discussed.

19          MR. FERNICH:  Yes.

20          THE COURT:  On the foreperson charge, No. 37 on page

21   69, I have made the following additional edit where you

22   proposed earlier that in the event Juror No. 1 doesn't want to

23   fulfill that role, their first order of business will be to

24   elect a different foreperson.  I changed it:  Will be to elect

25   a different juror as the foreperson.  Because if she doesn't

1    want to do it, she's not the foreperson.  Okay?

2         MR. FERNICH:  No objection.

3         MS. MORTAZAVI:  No objection.

4         THE COURT:  On page 74, the verdict form, as we

5    discussed and on consent I took out the language that all the

6    jurors needed to sign.

7         And in the conclusion, we edited that paragraph

8    pursuant to largely Mr. Fernich's request but some of it was on

9    consent of the government, so it now reads:  As you deliberate,

10   please listen to the opinion of your fellow jurors and ask for

11   an opportunity to express your own views if you wish to be

12   heard.

13        MR. FERNICH:  No objection.

14        MS. MORTAZAVI:  No objection.

15        THE COURT:  Okay.  So that is the final charge then.

16        All right.  Tomorrow we will resume at 10 o'clock with

17   the jury and we'll begin with the government's summation.

18        MS. MORTAZAVI:  Thank you, your Honor.

19        THE COURT:  Then we'll move to you, Mr. Sercarz, then

20   we move to -- well, probably at that point break for lunch and

21   do the rebuttal and the charges.

22        We have some matters we need to discuss in the robing

23   room.  Thank you everybody for all the hard work on this.

24        (Continued on next page)
     (Pages 1156 through 1188 SEALED by Order of the Court)
25        (Adjourned to February 1, 2022, at 9:15 a.m.)