UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___5/31/2022___

UNITED STATES OF AMERICA,

-against-

SETH FISHMAN,

                                Defendant.

20-cr-160 (MKV)

OPINION AND ORDER
DENYING RULE 29
MOTION FOR ACQUITTAL

MARY KAY VYSKOCIL, United States District Judge:

After a ten-day jury trial, the defendant, Seth Fishman, was convicted of two counts of conspiracy to commit drug adulteration and misbranding with intent to defraud.  The jury found that Fishman participated in two distinct conspiracies in which he manufactured and distributed untestable performance enhancing drugs ("PEDs") that would be used to "dope" racehorses and that would evade detection by racing authorities and drug regulators.  Count One charged Fishman with joining a conspiracy run by a prominent thoroughbred racehorse trainer named Jorge Navarro. Count Two charged Fishman with running his own longstanding conspiracy through his business Equestology.  Fishman now moves pursuant to Rule 29 of the Federal Rules of Criminal Procedure for acquittal on Count One, arguing that Count One is multiplicitous of Count Two.  That motion is DENIED because a rational trier of fact could find, based on the evidence at trial, that Fishman participated in two distinct conspiracies.

## I.      BACKGROUND

In November 2020, a grand jury returned a superseding indictment, S6, charging Seth Fishman in two counts of conspiracy to commit drug adulteration and misbranding with intent to defraud [ECF No. 283 ("Indictment")].  Both counts charged Fishman under the general federal conspiracy statute, 18 U.S.C. § 371, and alleged that Fishman agreed, with others, to distribute adulterated and misbranded drugs that were intended to enhance the performance of racehorses

and to evade detection by racing authorities and drug regulators, in violation of 21 U.S.C. §§ 331 and 333.   Each count charged a distinct conspiracy, with different leaders, conspirators, timeframes, and goals.

Count One charged Seth Fishman with agreeing to participate in "the Navarro Doping Program" from about 2016 through March 2020.  Indictment ¶¶ 5, 16, 20.  The Indictment alleged that the prominent thoroughbred racehorse trainer Jorge Navarro "orchestrated" a notorious scheme of obtaining "a wide variety" of "adulterated and misbranded PEDs" from various sources and administering them "to the racehorses under his control."  Indictment ¶¶ 5, 16.  Count One named as Navarro's co-conspirators Erica Garcia, Marcos Zulueta, Michael Tannuzzo, and Christopher Oakes, as well as Seth Fishman.  *Id*. ¶ 16.  Count One also described Navarro's efforts to dope a specific horse, XY Jet.  *Id*. ¶¶ 20–22.  The Indictment alleged, and evidence at trial demonstrated, that Navarro specifically credited Fishman as "a big part" of XY Jet's victory at a major race in Dubai.  *Id*. ¶ 22; GX 401K.  But the Indictment and the evidence also made clear that Navarro did not rely on Fishman alone.  *Id*. ¶¶ 20–22; *see* GX 131C-T; GX 199B-T.

Count Two charged Seth Fishman with leading his own conspiracy to manufacture and distribute misbranded and adulterated PEDs to "various racehorse trainers across the country and internationally," through his company Equestology, starting in about 2002.  Indictment ¶¶ 8, 31.  Count Two named as Seth Fishman's co-conspirators Lisa Giannelli, Jordan Fishman, and Rick Dane, Jr.  *Id*. ¶ 31.  It alleged that Seth Fishman had a longstanding partnership with Lisa Giannelli and that Seth Fishman gave Lisa Giannelli, who was not a veterinarian, use of his veterinary license for the purpose of ordering and distributing prescription drugs without a valid prescription.  *Id*. ¶¶ 38(b), 38(c), 38(m).  Count Two further alleged that Seth Fishman continued this conspiracy after he was arrested, when he was released on bail pending trial in this case.  *Id*. ¶ 38.

2

The defendant filed several pretrial motions, but he never argued that the Indictment was multiplicitous [ECF Nos. 202, 240, 327].  The defendant also never raised the issue of multiplicity in connection with any of the Court's instructions to the jury at the trial.  Indeed, the instructions relevant to this motion were jointly proposed by the defendant and the government.  For example, the Court preliminarily instructed the jury, using language to which Fishman had consented, that Count One concerned "Thoroughbred racehorses" only, while Count Two concerned "Standardbred and Thoroughbred racehorses."  Tr. at 13:10–14:1.

In charging the jury at the end of the case, the Court stressed that the Indictment contained two separate counts, that each count charged a "separate" conspiracy, and that the jury was required to consider each count "separately" and "return a separate verdict on each count."  Tr. at 1288:4–9.  The Court explained that while there might be "facts in common to different counts, each count must be considered separately."  Tr. 1288 at 6–7.  The Court further explained that while "[m]uch of the law" applied to both counts, the Court would point out differences and "provide specific instructions" about "particular elements or findings."  Tr. 1289:12–18.  The Court then instructed the jury that there were three overlapping objects of the conspiracies charged in Count One and Count Two and that there was a fourth object applicable to the conspiracy in Count One only.  Tr. at 1299:25–1300:10.  The Court also instructed the jury that the Indictment charged the defendant with continuing the conspiracy charged in Count Two while he was released on bail.  Tr. at 1293:2–4.  The Court stressed that whether the jury found Seth Fishman "guilty or not guilty" of one charged conspiracy "should not affect [the jury's] verdict" as to the other conspiracy charged in the Indictment.  Tr. 1289:24–1290:1.  The defense consented to all of these instructions in advance, never objected to them during the trial, and never otherwise raised the issue of multiplicity with respect to the jury charges.

The defense also jointly proposed the verdict form, submitting both Count One and Count Two to the jury.  The consensual verdict form directed the jury to make separate findings whether Seth Fishman was guilty or not guilty of each count, as well as whether he had intent to defraud or mislead with respect to each count.  The verdict form further directed the jury to make a finding with respect to Count Two only whether Fishman committed the offense, in part, after he was released on bail in this case.  The jury convicted Seth Fishman of both of the charged conspiracies, found that he had intent to defraud or mislead with respect to each conspiracy, and found that he continued the Count Two conspiracy after he was released on bail.

## II.      LEGAL STANDARD

On a Rule 29 motion for a judgment of acquittal made after a verdict has been reached, the evidence at trial must be viewed in the light most favorable to the government.  *United States v. Eppolito*, 543 F.3d 25, 45 (2d Cir. 2008).  "Viewing the evidence in the light most favorable to the government means 'crediting every inference that the jury might have drawn in favor of the government.'"  *Id*. (quoting *United States v. Temple*, 447 F.3d 130, 136 (2d Cir. 2006)).  The Court may enter a judgment of acquittal on a count of conviction only if "no rational trier of fact could have found the defendant guilty beyond a reasonable doubt."  *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003).

## III.      DISCUSSION

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V. Clear precedent holds that the Double Jeopardy Clause "protects against multiple punishments for the same offense." *United States v. Polouizzi*, 564 F.3d 142, 154 (2d Cir. 2009) (quoting *Schiro v. Farley*, 510 U.S. 222, 229 (1994)).  "An indictment is multiplicitous if it charges the same crime

in two counts," since "the jury can convict on both counts, resulting in two punishments for the same crime in violation of the Double Jeopardy Clause." *United States v. Ansaldi*, 372 F.3d 118, 124 (2d Cir. 2004). "If the jury convicts on more than one multiplicitous count," then "the district court should vacate the conviction on all but one" before sentencing. *United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006).

"A claim of multiplicity cannot succeed, however, 'unless the charged offenses are the same in fact and in law.'" *United States v. Jones*, 482 F.3d 60, 72 (2d Cir. 2006) (quoting *United States v. Estrada*, 320 F.3d 173, 180 (2d Cir. 2003)). "If the two offenses at issue are both conspiracies charged under the same statute, then the multiplicity inquiry turns on whether the two conspiracies are the same 'in fact,' meaning they involve the same agreement." *United States v. Maxwell*, No. 20-cr-330 (AJN), 2022 WL 1294433, at *3 (S.D.N.Y. Apr. 29, 2022) (quoting *United States v. Araujo*, No. 17-cr-438 (VEC), 2018 WL 3222527, at *3 (S.D.N.Y. July 2, 2018)). A defendant may be convicted of separate counts for "'overlapping' conspiracies," but not "where a smaller conspiracy is 'wholly contained' within a larger one." *United States v. Gaskin*, 364 F.3d 438, 454 (2d Cir. 2004) (quoting *United States v. Macchia*, 35 F.3d 662, 672 (2d Cir. 1994) (Newman, C.J., concurring)).

The parties disagree about how the Court's multiplicity analysis should proceed in this posture. The government asserts that the Court should follow a burden-shifting framework and apply the Second Circuit's *Korfant* factors to determine whether the offenses charged in Count One and Count Two of the Indictment are the same in fact. Gov. Opp. at 7–8 (citing, *inter alia*, *United States v. Basciano*, 599 F.3d 184, 197 (2d Cir. 2010), and *United States v. Korfant*, 771 F.2d 660, 662 (2d Cir. 1985)). The *Korfant* factors include:

> (1) the criminal offenses charged in successive indictments; (2) the overlap of participants; (3) the overlap of time; (4) similarity of operation; (5) the existence of

common overt acts; (6) the geographic scope of the alleged conspiracies or location where overt acts occurred; (7) common objectives; and (8) the degree of interdependence between alleged distinct conspiracies.

*United States v. Macchia*, 35 F.3d 662, 667 (2d Cir. 1994) (quoting *United States v. Korfant*, 771 F.2d at 662).  The government further asserts that, in distinguishing the conspiracies charged in Count One and Count Two for the purpose of opposing Fishman's motion, "the Government must necessarily rely upon the [allegations in] the Indictment," instead of only the evidence it presented at Fishman's trial, because "none of the charged co-conspirators . . . have yet been tried."  Gov. Opp. at 5 n.2.

The defense argues that, although the *Korfant* factors may inform the Court's multiplicity analysis, the key question is whether "the record as a whole" shows separate unlawful agreements. Def. Reply at 4–5 (quoting *United States v. Walsh*, 194 F.3d 37, 46 (2d Cir. 1999)).  The defense objects the government's extensive reliance on "a charging document of its own lawyers' making" to distinguish the counts of conviction.  Def. Reply at 3.  Indeed, while stressing that the focus should be on the "trial record," the defense concedes: "No one doubts that the indictment, on its face, purports to charge separate conspiracies."  Def. Reply at 2.

The Court agrees with the defense.  The Second Circuit has explained that in this posture, the Court's multiplicity analysis is limited to whether a rational, properly-instructed jury could convict the defendant of two distinct conspiracies. *See United States v. Jones*, 482 F.3d at 72.  That analysis is based on the "entire record," in contrast with focusing on the allegations in the Indictment, and *Korfant* merely offers factors that "might typically be relevant" to the analysis. *United States v. Maslin*, 356 F.3d 191, 196 (2d Cir. 2004).[1]  Seth Fishman never raised multiplicity

---

[1] The analysis in *United States v. Maxwell* was different because, in that case, the defendant had filed pretrial motions to dismiss counts of the indictment as multiplicitous, and "the parties agree[d]" that the posttrial multiplicity dispute should be resolved based on the *Korfant* factors.  2022 WL 1294433, at *2–3.

as an issue in his pretrial motions challenging the Indictment [ECF Nos. 202, 327], or in connection with the jury instructions, or at any other time before the jury convicted him of the two conspiracies charged in the Indictment. "Where, as here, separate counts of a single indictment allege that the defendant participated in more than one conspiracy in violation of the same statutory provision, but allege that the conspiracies existed for different—albeit overlapping—periods of time, and that the defendant, in each alleged conspiracy, had different groups of coconspirators, the question of whether one, or more than one, conspiracy has been proven is a question of fact for a properly instructed jury." *United States v. Jones*, 482 F.3d at 72.

As outlined above, the defendant agrees that the Indictment "on its face" alleges that Seth Fishman participated in two separate conspiracies. Def. Reply at 2; *see United States v. Jones*, 482 F.3d at 72. The defendant also agreed to all of the Court's jury instructions relevant to this motion and has never suggested that the jury was not "properly instructed" in this regard. *United States v. Jones*, 482 F.3d at 72; *see supra* at 2–3. The defendant further agreed to the verdict form that submitted both counts to the jury.

The defendant has chosen to raise his multiplicity claim for the first time in what he has styled a Rule 29(c) motion for acquittal on Count One. A defendant faces a heavy burden on a Rule 29 motion for acquittal after a jury verdict. Applying that standard, the question is not whether the Court believes that "the evidence adduced at trial" proved two distinct conspiracies beyond a reasonable doubt, "but whether *any rational trier of fact could so find*." *United States v. Eppolito*, 543 F.3d at 45–46 (quoting *United States v. Payton*, 159 F.3d 49, 56 (2d Cir. 1998) (emphasis in original)).

The gravamen of the defendant's argument is that Seth Fishman and Lisa Giannelli ran a longstanding conspiracy to manufacture and distribute adulterated and misbranded PEDs, through

their company Equestology, and Navarro was merely one of their clients for a time.  Def. Mem. at 7–8.  However, as the Second Circuit has explained, "there is no reason why people cannot enter into two separate criminal agreements more or less at the same time."  *United States v. Papadakis*, 510 F.2d 287, 296 (2d Cir. 1975).  Considering the entire record, in the light of the *Korfant* factors, the Court has no trouble concluding that a rational trier of fact could find that Seth Fishman both ran his own conspiracy and agreed to participate in Navarro's separate conspiracy.  *See United States v. Eppolito*, 543 F.3d at 45–46.

This is not a case in which an indictment "purport[ed] to charge factually different conspiracies" but the distinctions were "largely abandoned at trial."  *United States v. Maslin*, 356 F.3d at 196.  While the defense asserts that the government "framed the case as one involving 'a single'" conspiracy "'from the start of the prosecutor's opening' to 'summation,'" Def. Mem. at 5–6 (quoting *Haji v. Miller*, 584 F. Supp. 2d 498, 518 (E.D.N.Y. 2008), that assertion is incorrect.  In the government's opening statement, the prosecutor first stated that the evidence would show that "Seth Fishman and Lisa Gianelli . . . ran a black market drug company," Equestology, through which they "created, promoted and distributed . . . drugs for the purpose of secretly doping racehorses" across the country and abroad.  Tr. at 26:13-17.  Later in the opening, the prosecutor told the jury that the evidence would show that "Jorge Navarro" was "a successful thoroughbred trainer[]" who "ran" his own "doping program" and that Fishman participated in Navarro's conspiracy.  Tr. at 32:17-24.  The government made similar arguments in summations.  Tr. 1203:14–1204:15 (asking the jury to consider, for Count One, "whether the defendant participated in a conspiracy with a thoroughbred trainer called Jorge Navarro" whose goal was to "dope" Navarro's "thoroughbred horses" and, for Count Two, whether Seth Fishman conspired "with others, *apart from Navarro*" to distribute "the defendant's illegal performance enhancing drugs in

order to help people in the racehorse industry dope their Standardbred and Thoroughbred racehorses").

More importantly, a rational trier of fact could find that the evidence adduced at trial supported these arguments. "[C]rediting every inference that the jury might have drawn in favor of the government," the jury could find beyond a reasonable doubt that Navarro was running his own doping conspiracy, that Seth Fishman knew Navarro was running such a conspiracy, and that Seth Fishman agreed to participate in Navarro's conspiracy. *United States v. Eppolito*, 543 F.3d at 45. For example, the government introduced evidence at trial that Navarro obtained PEDs from sources other than Seth Fishman. *See* Tr. at 712:14-25. The government also introduced audio recordings of Fishman discussing Navarro's doping operation. *See, e.g.*, GX 131C-T (call between Fishman and Oakes discussing supplying Navarro); GX 199B-T (call between Fishman and Oakes discussing Oakes' supplying Navarro); GX 191A-T (call between Navarro and Fishman discussing Oakes supplying Navarro with Fishman product). Even when Navarro credited Fishman with being "a big part of" Navarro's success, the jury could have drawn the inference that Fishman understood that he was merely one "part" of Navarro's larger doping operation. GX 401K.

Similarly, a rational trier of fact could find that Seth Fishman separately ran a longstanding conspiracy with Lisa Giannelli, and others with no connection to Navarro, to distribute PEDs that would be used to dope standardbred and thoroughbred racehorses. The government introduced evidence that Equestology produced, marketed, and sold a vast array of adulterated and misbranded drugs, including products that Seth Fishman did not sell to Navarro. *See* GX 4000–4047; Tr. at 56:13–62:20, 289:9–23. The government also introduced evidence that Equestology had hundreds of clients. GX 506. Indeed, the evidence at trial showed that Equestology generated millions of dollars of revenue. *See* Tr. at 931:20–932:1.

This evidence supports the conclusion that there was no significant "interdependence" between the two charged conspiracies, one of the *Korfant* factors. *United States v. Korfant*, 771 F.2d at 662. Because Navarro obtained PEDs from various sources, the success of his doping operation was not "dependent" on the success of Seth Fishman's conspiracy to manufacture and distribute PEDs. *United States v. Estrada*, 320 F.3d at 184. Likewise, Seth Fishman ran a longstanding drug conspiracy that did not depend on Navarro. *See id.* In other words, a rational trier of fact could find that Navarro and Fishman ran separate, "overlapping" conspiracies. *United States v. Gaskin*, 364 F.3d at 454. Since Navarro's Count One conspiracy was not merely "a smaller conspiracy" that was "wholly contained" within Seth Fishman's Count Two conspiracy, Count One is not multiplicitous of Count Two. *Id.*

Turning to a related *Korfant* factor, apart from Seth Fishman, there was no overlap among the named co-conspirators charged in Count One and the named conspirators charged in Count Two. *Compare* Indictment ¶ 16, *with id.* ¶ 31. Based on the evidence at trial, a rational trier of fact could find a significant difference in the personnel involved in the two conspiracies. For example, there was no evidence to suggest that Lisa Giannelli, Jordan Fishman, who compounded drugs for Equestology, or anyone else who worked with Seth Fishman to manufacture and distribute adulterated and misbranded drugs through Equestology, knew Navarro. While not all members of a conspiracy must know each other, "a single common actor in what are allegedly two sets of conspiratorial activities does not establish the existence of a single conspiracy." *United States v. Estrada*, 320 F.3d at 181 (quoting *United States v. Korfant*, 771 F.2d at 663). While the evidence at trial suggested that standardbred trainer Christopher Oakes participated in both conspiracies, the Second Circuit has upheld finding two distinct conspiracies with "some overlapping personnel." *United States v. Gunn*, 366 F. App'x 215, 218 (2d Cir. 2010).

The defense makes much of the fact that certain witnesses, including standardbred trainer Ross Cohen, were "purported Count Two conspirators" but were used to introduce evidence of Seth Fishman's relationship with Jorge Navarro.  Def. Mem. at 9–10.  This argument entirely misses the mark.  As the defense is well aware, Ross Cohen both testified about his participation in the Count Two conspiracy and was used—without any objection from the defendant—to introduce a video of Navarro's big win in Dubai and other evidence of the Navarro conspiracy with which Cohen had no connection.  *See* Tr. at 689–693.  Cohen testified that he had no connection to the evidence of Seth Fishman's relationship with Navarro that Cohen read into the record and that Cohen "only met Mr. Navarro once in [his] life for a 30-second period."  Tr. at 703:19–20.  Nevertheless, the defense stipulated to the admission of this evidence and never objected at trial to the government's use of Cohen as a prop to introduce it.  *See* GX 9008, Tr. 689–693.  In any event, a witness could give evidence of more than one conspiracy, and even some "evidentiary overlap" would not raise a "double jeopardy problem."  *United States v. Estrada*, 320 F.3d at 180. A rational trier of fact could conclude that Cohen joined Seth Fishman's conspiracy only and that Cohen was used to introduce uncontested evidence showing that Seth Fishman joined the Navarro conspiracy.

Turning to another *Korfant* factor, while there was some "overlap of time," the conspiracies charged in Count One and Count Two had different timeframes.  *Korfant*, 771 F.2d at 662.  Count One charged Fishman with participating in the Navarro conspiracy from about 2016 through March 2020.  Indictment ¶ 16.  Count Two charged Seth Fishman with a conspiracy that began in about 2002 and that Seth Fishman continued even after he was arrested in 2019, while he was out on bail in this case.  Indictment ¶¶ 31, 38.  The Court instructed the jury—using language the defendant and the government jointly proposed—about the different timeframes charged in the

Indictment, and the Court provided the jury with a verdict form, which the defendant and the government also jointly proposed, that required a separate finding whether Seth Fishman continued the Count Two conspiracy while he was out on bail.  There is no question that a rational trier of fact could find, based on the evidence at trial, that the Count Two conspiracy long predated the Navarro conspiracy.  For example, the government introduced testimony about an early period of the Equestology business, before Seth Fishman had any agreement with Jorge Navarro, when Seth Fishman and an Equestology employee worked out of Seth Fishman's home and used a different drug manufacturer.  *See* Tr. at 58–61.

With respect to the goals of the conspiracy, another *Korfant* factor, a rational trier of fact could find that Count One and Count Two had different goals.  As noted above, the government argued at trial that the goal of Count One was to use adulterated and misbranded drugs to enhance the performance of Navarro's thoroughbreds, while the goal of Count Two was to manufacture and distribute untestable adulterated and misbranded PEDs that would be used on various standardbred and thoroughbred racehorses.  *See* Tr. 1203:14–1204:15.  The jury could have inferred that Fishman participated in Navarro's conspiracy to enhance the performance of his thoroughbreds based on the evidence of conversations in which Navarro requested certain drugs for his racehorses and, after the horse XY Jet won a big race in Dubai, Navarro credited Seth Fishman as "a big part" of the success.  GX 401K.  The jury also could have inferred that Seth Fishman was running his own, distinct conspiracy to manufacture and distribute adulterated and misbranded PEDs based on, among things, the evidence of Equestology's array of products and extensive client list.  *See* GX 506.  And, as noted above, the Court instructed the jury, on the defendant's consent, that while Count One and Count Two had three "common objectives," there

was a fourth objective that was applicable only to Count One.  *United States v. Korfant*, 771 F.2d at 662; Tr. at 1299:25-1300:10.

Seth Fishman was charged in two counts with participating in separate conspiracies that violated the same statutory provision.  The Indictment alleged that the "conspiracies existed for different—albeit overlapping—periods of time," and that Seth Fishman "had different groups of coconspirators," so "the question of whether one, or more than one, conspiracy [was] proven" was "a question of fact for a properly instructed jury."  *United States v. Jones*, 482 F.3d at 72.  The defense has not identified any problem with the jury instructions—indeed, the defense jointly proposed or consented to all relevant instructions, and the jury convicted Seth Fishman on both counts.  Thus, the Court rejects the defendant's multiplicity claim because a rational jury could conclude that Count One and Count Two were not the same in fact.

## IV.    CONCLUSION

For the reasons set forth above, Seth Fishman's Rule 29 motion for acquittal on Count One [ECF No. 800] is DENIED.  The Clerk of Court is respectfully requested to terminate the motion at docket entry 800.

**SO ORDERED.**

**Date:  May 31, 2022**
      **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**