# EXHIBIT C

UNITED STATES DISTRICT COURT IN AND FOR
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-mj-8437-DLB

Presidential Affairs Department:
Sector of Scientific Centers &
Presidential Camel Department,
Dubai Equine, and Dubai Camel

       Petitioners,

v.

United States of America,

       Respondent.

_____/

## REPLY IN FURTHER SUPPORT OF RULE 41(G) MOTION FOR RETURN OF PROPERTY

The government's Response in Opposition to Petitioners' Motion for Return of Drugs ("Opposition") spends a considerable amount of time dissecting the exhibits attached to Presidential Affairs Department: Sector of Scientific Centers & Presidential Camel Department, Dubai Equine, and Dubai Camel's (collectively "Petitioners'") Rule 41g Motion for Return of Property ("Motion") and questioning

Petitioners' relationship with Dr. Fishman[1].  With all due respect, the government's Opposition misses the point.  The Opposition fails to provide a valid reason why the government should be permitted to trample on Petitioners' rights and/or why Petitioners' should not receive their property.

**I.    Petitioners' have made more than a threshold showing that they own the property requested.**

The government here is well aware that, at least, some of the property illegally seized from Dr. Fishman belonged to Petitioners.  First, Petitioners' Motion attached a letter on United Arab Emirates Presidential letterhead, executed and with a Presidential seal detailing Petitioners' relationship with Dr. Fishman and attaching an inventory of requested property.  The letter clearly establishes ownership of the property seized by the government.  While the letter is not "certified," which presumably means notarized, and/or sworn, it is written on Presidential letterhead and attaches a special seal denoting the office of Presidential Affairs.  In most places, the Presidential seal is much more official and valuable than a notary stamp. Moreover, the world is in the middle of a pandemic.  Governments all over the world have ordered citizens to shelter in and only leave home for essential travel.  The pandemic has not escaped United Arab Emirates ("UAE").  Since March 26, 2020,

---

[1] The government's arguments are completely inconsistent with its knowledge of the relationship and statements made in litigation to the court in *United States v. Seth Fishman*, Case No.19 Mag 10120 (S.D.N.Y), which will be fully addressed *supra*.

the UAE has imposed restrictions on travel, curfews in order to disinfect the cities, termination of public transportation, and imposed other measures to protect citizens of UAE from COVID19. *See* https://www.aljazeera.com/news/2020/03/uae-imposes-curfew-deep-cleaning-coronavirus-cases-rise-200326192938826.html.

Due to these restrictions, securing a notarized letter and remitting it to the United States is not an easy task. Moreover, things are further complicated because notaries are not used in the ordinary course in UAE. Instead, the Presidential seal is well respected and accepted to "certify" any document.

To further support Petitioners' claim, and in direct response to the government's response, attached hereto as Composite Exhibit 1 are invoices Petitioners' were able to locate that reflect product purchased from Dr. Fishman. This product was purchased and Petitioners' were awaiting shipment when the property was illegally seized by the government. These are just a sample of invoices for product requested. Petitioners and Dr. Fishman have had a business relationship for years. Petitioners always requested product in advance of the breeding season. Dr. Fishman created the product and sold it to Petitioners.

Finally, the government's attempts to cast doubt on Petitioners' interest in the seized property is belied by the extensive litigation in *United States v. Seth Fishman* related to Dr. Fishman's attempts to travel to UAE to continue to work with Petitioners. Specifically, as early as December 2019, the government was well

aware that Dr. Fishman worked closely with Presidential Camels and was named Chief Research Officer. *See United States v. Fishman*, Case No. 19-mg-10120 (S.D.N.Y.), Motion to Travel attached hereto as Exhibit 2. The government was well informed that Dr. Fishman's work included creating product for the camel industry and camel breeding. *See id.* The motion to travel also included a letter from Bengawi A.A., Head of Services and Follow Up Section explaining Dr. Fishman's role in these projects. *See id* at 16. Bengawi A.A. also signed the letter attached as Exhibit 3 to Petitioner's Rule 41g Motion seeking return of its product. In response to Dr. Fishman's motion to travel, the government made clear to the court that it was aware that Dr. Fishman sold product to overseas, including to the UAE. *See United States v. Fishman*, 19-mg-10120 (S.D.N.Y.), Government Response to Motion to Travel at 3, attached hereto as Exhibit 3.

Given all the indicia of ownership presented by Petitioners coupled with the government's knowledge of the relationship, and all the information in the government's possession that was likely seized from Dr. Fishman establishing the relationship and the sales of the property at issue, there is no question that Petitioners' have established a possessory interest in the property and that the government cannot dispute such ownership.

## II.     The property requested is not contraband.

The government's opposition goes to great lengths to detail the allegations against Dr. Fishman and others.  However, these allegations all relate to conduct in the United States and specifically relate to horse racing.  The product sought here is for use overseas and for camels.  It is well established that it is not illegal to export unapproved new animal drugs to another country if they meet the foreign purchasers' specifications and the drug is not unlawful to possess or use in that country.  This is black letter law in the FDA veterinary world.  *See* 21 USC 381(e). Petitioners attached as Exhibit 2 to its Motion makes clear that the product sold to Petitioners meets the specification of Section 381(e).  As such, the government cannot rely on claims that the produce sought is "contraband" in order to continue to deprive Petitioners' of its property.

Moreover, the government does not require the product sought here as evidence in the case of *United States v. Navarro* because that case involves horse racing and has nothing to do with camels.

Finally, the government boldly refers to public policy and the need to protect the health of the people and animals as a reason for not releasing the property that belongs to Petitioners.  Property that Petitioners' are requesting.  Property that Petitioners' regularly use in the course of their treatment of camels.  Again, with all due respect, the United States Attorney's Office Southern District of New York and

the United States Attorney's Office in the Southern District of Florida are not tasked or responsible for maintaining the safety of camels owned by Presidential Affairs in UAE. That is a concern squarely in the purview of Presidential Affairs and UAE.

### III.   The Government's Response Fails to Address the Illegal Search and Seizure of Petitioner's Goods.

It is well established that a warrant seeking all property of a certain category, rather than only property for which there is probable cause, violates the Fourth Amendment's particularity requirement and is essentially a general warrant. *See United States v. Cook*, 657 F.2d 730, 733-34 (5th Cir. 1981) (holding that "cassettes onto which … copyrighted films … have been electronically transferred" was insufficient where place to be searched had many other cassettes, and warrant "supplied searching agents with little guidance"); *United States v. Fuccillo*, 808 F.2d 173, 175-78 (1st Cir. 1987) (warrants to search distributor, warehouse, and retail clothing store for "cartons of women's clothing" had insufficient description, because there was no explanation for executing agents to differentiate stolen clothing from other goods).

The Warrant here clearly runs afoul of these limits. The Warrant failed to provide any guidance whatsoever to the searching agents in determining what to seize, and failed to set forth with any specificity what records or products the government had probable cause to seize, on suspicion of being related to unapproved and/or misbranded drugs. *See Cook*, 657 F.2d at 733-34. The Warrant allowed the

government to seize "any … drugs," a generalized description that encompassed all drugs, even those that are perfectly lawful.  As such, the warrant on its face permitted the government to illegally seize everything at the warehouse, including items which were entirely lawful.  And even when the warrant was more specific, it still called for the agents to seize "any misbranded, adulterated or unapproved drugs" or "any …pharmaceutical ingredients and products."  These impermissible catch-all phrases allowed the agents unfettered discretion.  *See e.g., United States v. Morris*, 977 F.2d 677, 682 (1st Cir. 1992) ("the catch-all phrase authorizing seizure of 'any other object in violation of the law' is impermissibly broad").  The Warrant here was too broad, it lacked the requisite particularity, rendering it an unconstitutional general warrant.

Particularly, the evidence seized here was to be used to support the Government's case in *United States v. Navarro et al*., 20 Cr. 160 (MKV) (S.D.N.Y.).  By the government's own admissions, this case squarely involves product supplied to racehorse trainers in the United States.  *See* Opposition at 3.  However, the agents seized ALL the product at Dr. Fishman's warehouse, including product to be used for export for camels.  The agents should not have seized the product requested here because it would not have met a narrowly tailored request for product that supports the government's case in *Navarro*.  As such, the warrant ran afoul of general limits

under the Fourth Amendment and that is a enough basis to return Petitioners' property.

## IV. The Government's notice and timeliness arguments are disingenuous.

The government's claim that Petitioners' never requested their property and waited until the Indictment in *United States v. Navarro* to file Motion is disingenuous.  Shortly after the arrest of Dr. Fishman and contemporaneous seizure of the product requested here, Dr. Fishman informed agents that products in his warehouse was prepared for export to UAE.  *See* Declaration of Andrew Feldman, counsel for Dr. Fishman, attached hereto as Exhibit 4.   On November 15, 2019, Mr. Feldman requested an inventory of product seized in order to assess what product was meant for export.  See id.  After receipt of the inventories, Mr. Feldman notified the government that the product was meant for export, demanded return of the property, and notified that a Rule 41g motion would be forthcoming if product not returned.  *See id.*  Mr. Feldman and the government continued to have discussions regarding the inventory and Dr. Fishman's case through February 2020.  When it became clear the government would not return the property to Dr. Fishman in order for him to remit to Petitioners, Petitioners filed its Motion.

## V. Petitioner's have established irreparable harm.

A refund for the product purchased will not repair the harm caused by the government's improper seizure.  The animal drugs seized were tailor-made by Dr.

Fishman to the specifications of Petitioners' animals and cannot be created or obtained elsewhere. Petitioners, and their animals, will suffer irreparable harm if the items seized are not returned to them immediately. This is a harm that cannot be remedied in a monetary way as the animal drugs are customized and unique.

Dr. Fishman is the only veterinarian with enough knowledge, historical experience, and expertise with the Petitioners' animals to create the product required. Money will not buy more product. The product is required to breed more camels. The product spurs mating, similar to the invitro process. It is important the product be returned, so Petitioners' can capitalize on the breeding season[2].

Moreover, it is no secret that camel racing is a multimillion-dollar industry in UAE. A camel can be sold for upwards of $9.5 million. *See* https://www.cnn.com/2017/03/14/sport/camel-racing-robots-uae-thoroughbred-hussain-al-marzooqi/index.html. And it is no secret that camels are treated exceptionally well, especially to camels belonging to the Presidential Affairs. These camels have trainers, have special diets, take special animal drugs, and have special veterinarians, such as Dr. Fishman, caring for their every need. *See id.* Therefore,

---

[2] Government's opposition claims that its claim for the product is "spurious" because the breeding season has come and gone. Opposition at 12. Again, the government misses the point. The camels are breed yearly and "peak" breeding is in months January to March. However, that doesn't mean camels are not breed at other times of the year. Moreover, it doesn't mean that Petitioners' do not want to catch up on breeding missed January to March.

missing one breeding season can have long lasting impact on Petitioners' fleet of camel.

## CONCLUSION

For the foregoing reasons, the Court should exercise equitable jurisdiction over Petitioners' Motion, and schedule an expedited hearing on any factual issues in dispute, and order the government to return the property, with any conditions the Court deems necessary.  If the Court is inclined to hold a hearing, a representative from Presidential Affairs can be available by phone or video conference with the assistance of an interpreter.

Dated: April 16, 2020

Respectfully submitted,

TACHE, BRONIS, CHRISTIANSON AND DESCALZO, P.A.
150 S.E. 2 Avenue, Suite 600
Miami, Florida 33131
Telephone:  (305) 537-9565
Facsimile:   (305) 537-9567

By: */s/ Marissel Descalzo*
        Marissel Descalzo, Esq.
        Florida Bar No. 669318
        mdescalzo@tachebronis.com
        service@tachebronis.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was filed with the Clerk of Courts and served on all counsel of record by electronic correspondence.

By: */s/ Marissel Descalzo*
                    Marissel Descalzo, Esq.