

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 3, 2023

**BY ECF**
The Honorable Mary Kay Vyskocil
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

     Re:    *United States v. Seth Fishman*, 20 Cr. 160 (MKV)

Dear Judge Vyskocil:

The Government respectfully submits this letter in brief opposition to the motion for reconsideration or reargument filed by Seth Fishman ("Fishman" or the "defendant"), dated July 20, 2019, arguing that the Court "misapplies foundational jurisdictional issues, critical factual matters and controlling law and misconstrues the record in the criminal case," and consequently asks the Court to vacate the July 7, 2023 order imposing forfeiture on Fishman (the "Forfeiture Order") and deny forfeiture entirely. (ECF Nos. 1116, 1117 (the "Motion" or "Mot.")).

The defendant, having had ample time and numerous opportunities over the last year to air his legal claims, seeks limitless bites at the apple to contest forfeiture. The defendant's latest motion merely repackages arguments that were, or could have been, raised at any point since the defendant was sentenced in July 2022. As argued below, there is no basis to grant reconsideration absent an intervening change in controlling law or newly-discovered facts. Consequently, for the reasons raised herein, the Motion should be denied. To the extent the Court requires more expansive briefing or argument on a given issue, the Government respectfully requests the opportunity to supplement this letter.

## Discussion

The defendant's offense conduct and the procedural history were enumerated in this Court's Forfeiture Order, which overruled the defendant's legal objections to forfeiture and imposed a forfeiture money judgment in the amount of $10,312,627.40. *See generally* Forfeiture Order. Familiarity with the background of the forfeiture litigation is assumed, and is not repeated herein.

### A.  There Is No Legal Basis for Reconsideration Because the Defendant Raises No Change In Intervening Law and No Newly-Discovered Facts

"Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *United States v. Baldeo*, No. S1 13 Cr. 125 (PAC), 2015 WL 252414, at *1 (S.D.N.Y. Jan. 20, 2015) (quoting *Montanile v. Nat'l Broad. Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002)), *aff'd*, 615 F. App'x 26 (2d Cir. 2015). "Although the Federal Rules of Criminal Procedure do not provide for motions for reconsideration, Local Criminal Rule 49.1(d) permits such motions and provides that counsel should 'set[ ] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked.'" *United States v. Parrilla*, No. 13 Cr. 360 (AJN), 2014 WL 2200403, at *1 (S.D.N.Y. May 22, 2014) (quoting Local Criminal Rule 49.1(d)).

The standard of review for a motion for reconsideration in the criminal context is the same as it is in the civil context.[1] *United States v. Alvarez-Estevez*, No. 13 Cr. 380 (JFK), 2014 WL 12681364, at *1 and n.1 (S.D.N.Y. Nov. 6, 2014).  "The standard for granting motions for reconsideration is strict, and a court may grant reconsideration only where the moving party demonstrates an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.* (citations and internal quotation marks omitted); *see also Virgin Atl. Airways v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citations omitted) ("The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."). "[R]econsideration 'is not a vehicle for relitigating old issues, presenting the case under new theories . . . or otherwise taking a second bite at the apple.' " *United States v. Lisi*, No. 15 CR. 457 (KPF), 2020 WL 1331955, at *2 (S.D.N.Y. Mar. 23, 2020) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012))). "Such a motion likewise should not be made 'reflexively to reargue those issues already considered when a party does not like the way the original motion was resolved.' " *Id.* (quoting *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 387 (S.D.N.Y. 2011) (internal quotation marks omitted)). As the Second Circuit has noted, "[r]econsideration is not intended for . . . the party to reframe a failed motion." *Fan v. United States*, 710 F. App'x 23, 24 (2d Cir. 2018).

Relevant to a motion for reconsideration is whether the defendant found any *new* information. Here, the defendant raises no new basis to warrant revisiting the Court's opinion. The defendant's Motion raises no novel legal theories or arguments; he merely restates the faulty conclusions already enumerated in his filings with the Court and in his oral argument during the March 6, 2023 forfeiture hearing. There is no intervening change in law, and no new facts. The defendant's claim that the Court missed or misunderstood the defendant's arguments is plainly wrong. Likewise, although the defendant points to new support for his recycled arguments, none of the authority he cites qualifies as an "intervening change in controlling law," *Virgin Atl.*

---

[1] The defendant cites the local civil rules for the applicable standard on granting reconsideration motions. *See* Motion at 1-2. Given that this is a criminal matter, and the forfeiture money judgment imposed by the Court is a component of sentencing, the applicable rule is Local Criminal Rule 49.1. Nonetheless, and as stated above, the standards for reconsideration in the criminal and civil context are largely similar.

*Airways*, 956 F.2d at 1255, that would justify revisiting the Court's opinion. There is no acknowledgment, let alone explanation, of the defendant's failure to have raised these issues at any time between his sentencing in July 2022 and the issuance of the Forfeiture Order in July 2023. The Motion should be dismissed on this basis alone.

B.   The Defendant's Substantive Arguments Are Nonetheless Meritless

Notwithstanding that there is no legal basis to reconsider the Forfeiture Order, should the Court engage with the substance of the Motion, the defendant's arguments are baseless for the reasons explained below.

*1.   The Defendant Misreads CAFRA*

The defendant re-argues that "Congress specifically excluded [from forfeiture] violations of the Food, Drug and Cosmetic Act [FDCA]," and restates the mistaken premise that 21 U.S.C. § 334 is not a civil forfeiture statute. This time, however, the defendant points to 18 U.S.C. § 983 for support. The defendant claims in the Motion that because the definition of "civil forfeiture statute" in § 983 excludes the FDCA (among other statutes), 21 U.S.C. § 334 cannot be a civil forfeiture statute, and thus does not authorize forfeiture in this or any other case. The defendant's misreading of § 983 is specious for several reasons. Section 983 sets forth the "[g]eneral rules for civil forfeiture proceedings" in civil forfeiture actions, and has no bearing on this case. *See* 18 U.S.C. § 983(i)(2)(C). Setting aside the fact that this statute is not newly-enacted and was known to the defendant at the time of his initial filing, the defendant's reading of the statute is demonstrably wrong.

As an initial matter, § 983(i) does not purport to define all civil forfeiture statutes across the United States Code. Section 983 was passed as part of the Civil Asset Forfeiture Reform Act (CAFRA) of 2000, Pub. L. No. 106-185, 114 Stat. 202 (2000), to set forth reformed civil forfeiture procedures applicable to only a subset of civil forfeiture actions authorized by law. The defined term "civil forfeiture statute" in § 983(i) refers only to the subset of civil actions to which § 983's procedures apply. *See* 18 U.S.C. § 983(i). Any statute that does not fall under § 983(i)'s definition of "civil forfeiture statute" is thus governed by the pre-CAFRA civil forfeiture procedures that were already in place prior to CAFRA's passage. In other words, § 983 does not invalidate any pre-existing forfeiture statutes, nor does it limit the scope of which statutes are incorporated under § 2461(c). Section 983(i) is solely aimed at limiting the reach of CAFRA's civil procedure reforms to only some, not all, civil forfeiture actions. It is no mystery why the FDCA was excluded from § 983's procedures, given that 21 U.S.C. § 334 already contains robust provisions governing civil forfeiture actions. *See* 21 U.S.C. §§ 334(b) (setting forth procedures); 334(d) (governing disposition of condemned goods and claims for remission or mitigation of forfeitures); 334(g) (setting forth form of detention orders). The FDCA's exclusion from § 983(i) reflects the continued application of § 334's procedures post-CAFRA.[2]

---

[2] Indeed, the FDCA's inclusion among a list of statutes that purport to authorize civil forfeiture further underscores Congress's view that § 334 is a forfeiture statute, consistent with the Court's holding.

The plain language and structure of § 983, in conjunction with § 981 and 28 U.S.C. § 2461(c), supports this reading. The title of § 983 states its intended purpose to set forth procedures for civil forfeiture actions, procedures that are otherwise absent from many civil forfeiture statutes. *See, e.g.*, 18 U.S.C. § 981. The defined term "civil forfeiture statute" in § 981(i) does not appear in 28 U.S.C. § 2461(c).[3] Had Congress intended to narrowly restrict the type of civil forfeiture statutes that could be incorporated in criminal cases, the language of 28 U.S.C. § 2461(c) would have expressly limited its application to only the "civil forfeiture statute[s]" defined in § 983(i). Congress elected not to incorporate that phrase. The defined term is not used, and neither § 981 nor § 2461 contains a cross-reference to the other. There is thus no basis for the defendant to read into § 2461(c) a defined term (*i.e.*, "civil forfeiture statute") that Congress purposefully omitted. Reading such a limitation into § 2461(c) is unwarranted based on the statute's plain language, and the defendant invokes no authority that supports this incorrect and self-serving reading.

The defendant's citation to the Second Circuit's opinion in *United States v. Davis*, 648 F.3d 84, 94 (2d Cir. 2011), in support of his argument is profoundly misleading. *See* Mot. at 4. Far from bolstering the defense's position, *Davis* squarely contradicts the defendant's skewed interpretation of § 983. The *Davis* Court recognized that 18 U.S.C. § 983(i)(2) only limits the reach of the civil forfeiture procedures outlined in § 983; that subsection does not otherwise invalidate the pre-existing civil forfeiture statutes that are listed.

In *Davis*, the Government filed a civil forfeiture complaint seeking forfeiture of artwork on multiple grounds, including pursuant to 19 U.S.C. § 1595a (aiding unlawful importation), as well as 18 U.S.C. § 981. *Id.* at 87. Section 1595(a), like the FDCA, is one of the statutes excluded from § 983's definition of "civil forfeiture statute." *See* 18 U.S.C. § 983(i)(2)(A) (excluding "the Tariff Act of 1930 or any other provision of law codified in title 19"). At issue in *Davis* was whether the "innocent owner defense," which is a civil forfeiture procedure set forth in § 983(d), could be invoked by the claimant given that the forfeiture action was brought under an "excluded" statute, § 1595a. Consistent with the Government's reading of § 983, the *Davis* Court found that the "innocent owner defense" did not apply to a forfeiture action brought under § 1595a because it was excluded from § 983's procedures. *Id.* at 93-94. The Court did *not* find, as the defendant's argument suggests, that § 1595a forfeitures are unlawful.

The defendant selectively quotes *Davis* as having stated that § 983(i)'s exclusions reflect statutes that "are not 'civil forfeiture statutes.' " Mot. at 4. Read in its totality, the *Davis* Court instead recognized that the particular defense set forth in § 983(d) could not be applied in a forfeiture action brought under an excluded statute: "Because CAFRA's innocent-owner provision [*i.e.*, § 983(d)] applies only to forfeiture actions brought 'under any civil forfeiture statute,' and because Section 1595a is not a 'civil forfeiture statute' as defined in CAFRA, forfeiture actions brought pursuant to 19 U.S.C. § 1595a are not subject to CAFRA's innocent-owner provision." *Id.* at 94.[4]

---

[3] A prior version of 28 U.S.C. § 2461(c) was passed simultaneously with § 983 as part of CAFRA and likewise did not include that defined term.

[4] The Court noted that the legislative history of CAFRA indicated that the drafters "ultimately decided to exclude Title 19 from the scope of CAFRA's reforms in order to prevent the bill from

The Second Circuit proceeded to affirm the District Court's decision disallowing the innocent owner defense and upholding the forfeiture. *Id.* at 95. Indeed, the *Davis* Court went even further, and recognized that Congress "carefully avoid[ed] the 'civil forfeiture statute phrase' that it had specifically defined as a term of art" in other portions of CAFRA deliberately, citing as an example the fee shifting provision in 28 U.S.C. § 2465(b)(1). *Id.* at 95 ("CAFRA's fee-shifting provision applies to 'any civil proceeding to forfeit property under any provision of Federal law.' Congress's decision not to use the same broad language in providing for an innocent-owner defense [*i.e.*, the defined term 'civil forfeiture statute] as it did in defining the scope of CAFRA's fee-shifting provision further supports our conclusion . . . ."). That argument applies with equal force to the language used in 28 U.S.C. § 2461(c), which deliberately does not refer to a "civil forfeiture statute" but, rather, explicitly authorizes forfeiture for a "violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized."[5] If the

---

being 'bottled up in the unsympathetic House Ways and Means Committee, which has jurisdiction over bills affecting Customs.'" *Davis*, 648 F.3d at 94 (citing David B. Smith, *An Insider's View of the Civil Asset Forfeiture Reform Act of 2000*, Champion, June 2000, at 29 n. 10). In short, Congress did not intend to have § 983 constrain civil forfeiture under other statutes; to the contrary, Congress' intent was to exclude certain forfeiture statutes from CAFRA's civil forfeiture reforms. This intent is the exact opposite of that advanced by the defendant in the Motion.

[5] Subsequent case law has reaffirmed the *Davis* Court's finding that pre-CAFRA procedures, and not the procedures codified in § 983, apply in forfeiture actions brought pursuant to statutes excluded under § 983(i). *See, e.g.*, *United States v. Broadening-Info Enterprises, Inc.*, 578 F. App'x 10, 17 (2d Cir. 2014) (citing for the applicable legal standard "[i]n a customs forfeiture action under section 1595a . . . 19 U.S.C. § 1615 (establishing applicable '[b]urden[s] of proof in forfeiture proceedings' ")); *United States v. One Tyrannosaurus Bataar Skeleton*, No. 12 CIV. 4760 (PKC), 2012 WL 5834899, at *3 (S.D.N.Y. Nov. 14, 2012) ("CAFRA applies to the two forfeiture statutes invoked by the government that are found in Title 18, but not to 19 U.S.C. § 1595a, which is subject to a "customs carve out" from CAFRA. . . . . Thus, *the pre-CAFRA burden-shifting approach of 19 U.S.C. § 1615* applies under Section 1595a[.]" (internal citations omitted) (emphasis added); *see also United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 312 (4th Cir. 2018) ("Section 983(i)(2) of Title 18, however, excludes certain other statutory provisions from CAFRA's application, including all forfeiture proceedings conducted under Title 19, in which the CPIA has been codified. Forfeiture proceedings arising under the CPIA are thus governed by § 1615 of Title 19." (internal citations omitted)); *Omidi v. United States*, 851 F.3d 859, 861 n.1 (9th Cir. 2017) ("We limit our discussion to forfeitures governed by CAFRA; *some forfeitures are exempted from the Act's requirements*." (citing 18 U.S.C. § 983(i) (emphasis added))); *United States v. Bacon*, 546 F. App'x 496, 499 (5th Cir. 2013) ("The government thus sought to seize [the defendant]'s property pursuant to Title 19, rendering § 983 inapplicable to [the defendant]'s claim. In addition to comporting with the plain language of the statute, this conclusion finds support from the Second Circuit." (internal citations omitted) (citing *Davis*, 648 F.3d at 94)).

defense's reading of § 983 were correct, instead of holding (as it did) that § 983's procedures do not apply to § 1595a forfeiture actions, the Second Circuit would have instead held that § 1595a does not authorize forfeiture at all.

The defendant also argues, wrongly, that "the government has been unable to cite a single civil forfeiture case brought to forfeit the proceeds or instrumentalities of an FDCA violation." This argument merits little discussion. Forfeiture is authorized for the value of adulterated and misbranded drugs that the defendant dissipated, as this Court found. Forfeiture Order at 22-24. The Court cited a number of civil forfeiture cases predicated on § 334, *id.*, and the Government cited criminal cases in which forfeiture was ordered on the basis of § 334. *See* Gov't Opp'n at 15 (ECF No. 21) (citing *United States v. Synthes, Inc.*, No. 09-CR-403, 2010 WL 4977512, at *1 (E.D. Pa. Dec. 7, 2010); *United States v. Lytle*, No. 17-CR-50020 (RAL), 2018 WL 5268133, at *1 (D.S.D. Oct. 23, 2018); *United States v. Thaxter*, No. 20-CR-24 (W.Va. July 8, 2020)).

The defendant's misreading of the relevant statutes and Second Circuit case law in no way warrants reconsideration. These authorities only support the Court's conclusion that 21 U.S.C. § 334 is a civil forfeiture statute that can be applied in the criminal context through 28 U.S.C. § 2461(c).

> ### 2. *The Record Indicates that Seth Fishman Did Not Prescribe the Drugs He Sold Through Equestology*

The defendant's view that the prescription drugs Fishman distributed were properly prescribed pursuant to a valid veterinarian-client-patient relationship ("VCPR") is contradicted by the record.

This Court's calculation of the proper forfeiture amount may be predicated on all evidence in the record, including the evidence elicited at trial. Rule 32.2(b)(1)(B) provides, in pertinent part: "The court's determination may be based on evidence already in the record, . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B); *see also United States v. Capoccia*, 503 F.3d 103, 109-10 (2d Cir. 2007) (sentencing courts may consider both trial evidence and hearsay in determining forfeiture) (citing *United States v. Gaskin*, 364 F.3d 438, 462-63 (2d Cir. 2004)). *See also United States v. Reese*, 33 F.3d 166, 174 (2d Cir. 1994), *cert. denied*, 115 S. Ct. 756 (1995) ("[A] sentencing court is free to consider hearsay evidence, evidence of uncharged crimes, dropped counts of an indictment and criminal activity resulting in acquittal"); *United States v. Tracy*, 12 F.3d 1186, 1203 (2d Cir. 1993) ("sentencing court is entitled to rely on any type of information known to it, including testimony from a trial in which person to be sentenced was neither a defendant nor represented by counsel." (citing *United States v. Carmona*, 873 F.2d 569, 574 (2d Cir. 1989)).

The defendant's slanted and misleading defense that all prescription drugs Equestology sold were lawfully prescribed was already aired, considered, and rejected by the jury and now by this Court. At trial, a cornerstone of defense counsel's argument was that Fishman, as a

veterinarian, lawfully prescribed both approved and unapproved drugs, or that he otherwise lacked the requisite criminal intent because he was acting in good faith as a practicing veterinarian. *See* Fishman Trial Tr. at 1252:7-1253:8 (Defense closing) ("Dr. Bowman told you . . . that there are exemptions for compounding drugs and off-label usage when veterinarians are the ones that are dispensing or administering the drugs, and the concept of the veterinary relationship with the animal and caregiver, what they called VCPR [veterinarian-client-patient relationship], that's the subject of state regulations, and it was never fully defined for you in this courtroom. The parameters were never fully exposed to you in this courtroom, ladies and gentlemen of the jury. So I ask you to consider whether or not, from what you've learned about Seth Fishman, he was a veterinarian who devoted himself to performance . . . he attempted properly, in the context of a dirty business . . . to wean his customers off of the toxic drugs and to give them more benign substances, all in the effort to promote the health and well-being of animals[.]"); *id.* at 1253:24-1254:8 ("On cross-examination of Dr. [Cynthia] Cole, I had her describe the veterinarian's oath and, in particular, the prevention of animal's suffering, and she acknowledged that it can make for some hard choices."); *id.* at 1257:9-1260:80 (describing trainer Adrienne Hall's testimony as establishing that Fishman "cared for the health and safety" of Hall's horses; "Dr. Fishman counseled treating the animals with care, ladies and gentlemen of the jury"; "The owners and trainers who purchased from Dr. Fishman were knowledgeable about their horses and the products that they were buying. In the words of Adrienne Hall, [Fishman's clients] sought Dr. Fishman because he was reputable and reasonable."); *id.* at 1264:14-21 ("At the end of the day, Seth Fishman chose, improvidently chose to live in a rough neighborhood among racehorse owners and trainers who were desperate for a chemically-induced competitive advantage. I submit he made a good faith effort to wean them off of the more toxic drugs they were using, to provide them with a safer alternative, and thereby to adhere to his oath as a veterinarian to provide for the health and wellbeing of the animals.").

The Government presented testimony and records establishing that Fishman did not, in fact, prescribe drugs. *See, e.g.*, Trial Tr. at 62:18-20 (Courtney Adams's testimony stating her belief that between 2012 and 2016 Fishman treated animals "once or twice"); GX 912 (Fishman: "I haven't touched a horse in four years"); GX 108A-T (Fishman advised Hall that he was preparing "a half million dollars' worth of production for overseas" and that another trainer could "piggyback" on a large volume of drugs Fishman was manufacturing because "adding another hundred horses definitely makes it cheaper for him and anyone else. So if he wants to take advantage of that production, great, if not, you know, it's okay," indicating mass sale and distribution); GX 109D-T (Fishman discussing purchasers who buy 5 times the volume of drugs needed for their horses because they resell Fishman's drugs); GX 141D-T (Fishman alluding to having invested "millions of dollars to make" a particular drug).

The jury rejected the notion that Fishman, as a veterinarian, was operating lawfully in the manner in which he distributed drugs, or otherwise lacked the requisite intent, as evidenced through Fishman's convictions on each of the counts with which he was charged. The Court should reject this argument based on the ample record evidence.

### 3.  The Defendant Misrepresents the Court's Finding Regarding the Forfeitability of the Value of Drugs

The defendant further argues that the Court mistakenly forfeited Equestology's gross income, then deviates into a defense of the reliability of the defense's Avimark data. Mot. at 9-12. That argument misreads the Court's opinion, and the applicable legal standard for calculating forfeiture amounts.

The Court rejected the Government's argument that the deposits into Equestology's bank accounts could be the starting point for the forfeiture calculation, given that some of those deposits likely reflected payments for non-drug items that were not forfeitable. *See* Forfeiture Order at 29-30. The Court, instead, "scrupulously" and "painstakingly reviewed the Avimark data submitted by the defense" along with other evidence in the record, as the basis for the forfeiture calculation. Forfeiture Order at 30. This measured and careful approach to the forfeiture calculation included a line-item review of the sales of each type of drug and product based on the very records the defense submitted.[6] Thus, the defendant's assertions of the reliability of the Avimark data are misplaced.

The defendant's secondary argument that Equestology's costs ought to be deducted was appropriately rejected by this Court. The relevant statutes authorizing forfeiture in this case do not limit forfeiture to only the defendant's profits. The interaction of the applicable statutes authorize forfeiture of the value of the adulterated and misbranded drugs that were dissipated, with no mention of deductions for costs. *See* 21 U.S.C. §§ 334, 853(p); 28 U.S.C. § 2461(c). Moreover, as the Second Circuit has held in the context of forfeiture under 18 U.S.C. § 982, gross proceeds—not net profits—are typically forfeited for drug crimes because forfeiture is a punishment, and returning a defendant to the same economic position he occupied prior to the offense would not achieve that aim. *See United States v. Peters*, 732 F.3d 93, 101 (2nd Cir. 2013) (citing *United States v. Awad*, 598 F.3d 76 (2d Cir. 2010) (discussing the punitive purpose of 21 U.S.C. § 853)).

The lone case the defendant cites for support, Mot. at 9-10 (citing *United States v. Bodouva*, 853 F.3d 76, 78 (2d Cir. 2017)), further establishes why forfeiture of gross proceeds is warranted. The Second Circuit in *Bodouva* interpreted statutory language in § 981, a separate forfeiture statute that is not applicable here. *See* 853 F.3d at 79 (citing 18 U.S.C. § 981(a)(2)(B)'s definition of proceeds ("In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term 'proceeds' means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services.")). Because § 981 and, more specifically, the defined term "proceeds," has no bearing on forfeiture here, the very concept of deducting costs from the forfeiture amount is

---

[6] A precise calculation of the value of forfeitable property is not necessarily required, *see United States v. Lizza Industries*, 775 F.2d 492, 498 (2d Cir. 1985); *United States v. Basciano*, Dkt. No. 03-CR-929, 2007 WL 29439, at *2 (E.D.N.Y. Jan. 4, 2007) (Garaufis, J.) (the forfeitable amount may be conservatively estimated, so long as such estimates are not "overly speculative."), though the Court, in any event, undertook that analysis, *see* Forfeiture Order at 29.

misguided.[7] This is yet another instance of the defendant's imprecise conflation of two different forfeiture statutes.

As with the defendant's misreading of § 983, he is simply mistaken in his attempt to concoct a basis for reconsideration.

### 4. The Court Correctly Disregarded the Value of Seized Drugs in Calculating Forfeiture

The defendant further argues in the Motion that deductions should have been made from the forfeiture total for the value of the drugs seized by the Government. This contention misunderstands what the Avimark data (the foundation for the Court's calculation) represents. As the Court found, the Avimark data reflected Giannelli's sales, not inventory. Forfeiture Order at 30 & n.2 (noting that Avimark data reflects "total sales" and that Giannelli "facilitated and logged [sales] into the Avimark system"). During searches and seizures in the course of the investigation, the Government seized inventory; the defense proffered no basis to believe that the inventory would be reflected in the Avimark *sales* data that Giannelli maintained. This is particularly true for seizures of drug inventory from Florida, given that Fishman stored and shipped drugs that were not sold through Giannelli, and would not be reflected on the Avimark system. As but one example, sales to Jorge Navarro were not logged in Giannelli's Avimark system. As yet another example, Fishman, in Florida, held and shipped drugs intended for foreign purchasers. Because this Court did not award the Government forfeiture based on foreign sales, Forfeiture Order at 37-41, this is a wholly separate basis to dismiss the defendant's assertions on this score.

### 5. The Court Correctly Applied Honeycutt

The defendant misreads *Honeycutt* in arguing that the opinion disallows joint and several liability in circumstances such as those present here, where the "mastermind" of a conspiracy is

---

[7] Because 18 U.S.C. § 981 is not invoked in this case to support forfeiture, the Court can disregard this argument entirely. Even if this statute were applicable, the defendant overlooks two significant points. First, the defendant did not provide "lawful goods or lawful services that are sold or provided in an illegal manner," as the defendant contends. Drugs that require a prescription are *per se* adulterated and misbranded—and thereby unlawful—absent a prescription. *See* 21 U.S.C. § 353(f)(1)(A), (C) (veterinary prescription drugs "shall be dispensed only by or upon the lawful written or oral order of a licensed veterinarian in the course of the veterinarian's professional practice . . . . The act of dispensing a drug contrary to the provisions of this paragraph shall be deemed to be an act which results in the drug being misbranded while held for sale".). Thus, by distributing unprescribed prescription drugs the defendant *was* disseminating illegal, misbranded drugs, no different than the new animal drugs he manufactured and sold under his own label. Second, the statute states that the deducted costs "shall not include any part of the overhead expenses of the entity providing the goods or services," yet Fishman seeks to deduct precisely the types of "overhead costs" that are non-deductible. As stated above, the Court need not address this argument because the statutory language in § 981 is beside the point.

held joint and severally liable for what co-conspirators may have possessed. The Supreme Court in *Honeycutt* held that courts cannot order a defendant in a conspiracy to forfeit property "that his co-conspirator derived from the crime but that the defendant himself did not acquire." *United States v. Honeycutt*, 137 S.Ct. 1626, 1630 (2017). *Honeycutt* did not hold that joint and several liability is inappropriate in all cases. The Second Circuit recently noted: " 'While we have not yet fully defined the parameters of *Honeycutt*,' we have clarified that the 'bar against joint and several forfeiture for co-conspirators applies only to co-conspirators who *never possessed the tainted proceeds of their crimes*.' " *United States v. Pastore*, No. 18-2482, 2022 WL 2068434, at *6 (2d Cir. June 8, 2022) (emphasis added) (citing *United States v. Tanner*, 942 F.3d 60, 67–68 (2d Cir. 2019)).

Several courts have since concluded that joint and several liability is appropriate where one of the co-conspirators is the "mastermind" of the conspiracy, a point which the Government briefed in its opposition to the defendant's forfeiture challenge. *See* Gov't Opp'n to Fishman Forfeiture Mot. at 24-25 (citing, among others, *U.S. Sec. & Exch. Comm'n v. Metter*, 706 F. App'x 699, 702 n.2 (2d Cir. 2017); *United States v. Bergstein*, 788 F. App'x 742, 748 (2d Cir. 2019)).[8]

Given Fishman's and Giannelli's respective roles in the conspiracy, as this Court recognized, *see* Forfeiture Order at 30 n.2, the defendant's request for a reduction on the basis of *Honeycutt* is meritless given that he helmed the Equestology conspiracy.

### 6. The Court Acted Well Within Its Discretion in Admitting the Government's Supplemental Submission

The defendant's objection to the Court's consideration of supplemental Government evidence offered in response to the defense's voluminous production of exhibits remains an utter distraction.[9]

The Court, as the factfinder at sentencing, has broad discretion to extend, reopen, and close the hearing record. *See United States v. Duverge Perez*, 295 F.3d 249, 254 (2d Cir. 2002) ("A district judge has broad discretion 'as to what types of procedure are needed' at a sentencing proceeding for determination of relevant disputed facts. The discretion of a sentencing court is similarly broad 'either as to the kind of information [it] may consider, or the source from which

---

[8] *See also United States v. Kenner*, 443 F. Supp. 3d 354, 363 n.8 (E.D.N.Y. 2020) (collecting cases and noting that "the mastermind of the wire fraud conspiracy" was "jointly and severally liable for all the proceeds of that offense," as was another individual who "had substantial control and supervision of the specific portions of the fraud schemes that are the bases of the forfeiture money judgment against him . . . and thus is jointly and severally liable under § 981(a)(1)(C) for the wire fraud proceeds resulting from those frauds.").

[9] The defendant separately complains of the Court's reference to "numerous delays" in scheduling the forfeiture hearing, Mot. at 15, even though the Court specifically stated in its opinion that the adjournments the Court granted did "not figure[] into the Court's decision to admit the government's supplemental evidence[.]" Forfeiture Order at 28. This contention is, therefore, baseless.

it may come.' " (citing *United States v. Slevin*, 106 F.3d 1086, 1091 (2d Cir. 1996); *United States v. Carmona*, 873 F.2d 569, 574 (2d Cir. 1989))); *see also United States v. Lucas*, 428 F. App'x 57, 59 (2d Cir. 2011) (quoting *Perez* for the proposition that "a district court 'has broad discretion as to what types of procedures are needed . . . for determination of relevant disputed facts' at sentencing"); *United States v. Gilleo*, 683 F. App'x 85, 89 (2d Cir. 2017) (same).

      This Court acted well within its discretion in admitting the Government's supplemental exhibits—which were the subject of a colloquy with the Court during the hearing, and reasonably submitted within a few weeks of the hearing—given the defense's strategic decision to withhold those records until four days before the hearing. Defense counsel received a disk from Giannelli containing Avimark data that the defense never produced to the Government in its entirety. Based on the dates of Avimark reports that Giannelli created on the defendant's behalf, it appears that the defense was aware of, and/or reviewing, the Giannelli-provided Avimark data as of at least on or about August 4, 2022, *see* Defense Exhibit 214 (listing "Date of Report" as "08-04-22"), and possessed all the data as of in or about January 2023, approximately two months before the scheduled hearing. Forfeiture Hearing Tr. at 42:13-44:4.[10] Despite numerous conversations in which the Government requested discovery from the defense and sought the opportunity to narrow points of disagreement, *see, e.g.*, Forfeiture Order at 27, the defendant first disclosed the existence of this trove of records four days before the hearing. Forfeiture Opinion at 14. The Government never possessed the disk that Giannelli provided to the defense, nor was the Government alerted to the existence of the disk until shortly before the hearing. Forfeiture Hearing Tr. at 41:2-8.

      Notwithstanding the defense's late disclosure, the Court acted within its discretion in considering the Government's proffered supplemental exhibits.

      [Continued]

---

[10] The defendant makes much of the fact that the Government already had the Avimark data in its possession because it was apparently saved locally on a computer seized from Giannelli. That argument is a distraction: defense counsel possessed – yet never turned over – the disk of searchable Avimark records the defense had received directly from Giannelli. The Government was entitled to receive that data set from the defense, given that the defense's exhibits were drawn from those records.

## **Conclusion**

At its core, the Motion for Reconsideration is nothing more than an effort by the defendant to re-air his disagreements with (and mischaracterizations of) the Court's opinion, applicable law, and the record. For the reasons set forth above, the Motion should be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: /s/
Sarah Mortazavi
Assistant United States Attorney
(212) 637-2520

cc:     Steven Kessler, Esq. (by ECF)