UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  8/23/2023
```

UNITED STATES OF AMERICA,

-against-

SETH FISHMAN,

Defendant.

20-cr-160-7 (MKV)

OPINION & ORDER DENYING
DEFENDANT'S
MOTION FOR RECONSIDERATION

MARY KAY VYSKOCIL, United States District Judge:

Following extensive delays at the behest of the defense, and the Court's thorough review of voluminous evidence that the defense disclosed for the first time more than seven months after the defendant's sentencing, the Court issued a detailed Opinion & Order on the forfeiture in this case [ECF No. 1108]. Now before the Court is Defendant's motion for reconsideration [ECF Nos. 1116, 1117, 1135]. Repeating arguments the defense previously made and the Court rejected, the defense asks the Court to vacate its Opinion & Order and deny forfeiture entirely. The defense has no basis to seek the extraordinary remedy of reconsideration, consume further judicial resources, and flout the imperative of reaching finality in the trial-level proceedings in this case. The motion for reconsideration is DENIED.

## I.    BACKGROUND

The relevant facts and procedural history are set forth in detail in the Court's July 7, 2023 Opinion & Order [ECF No. 1108 ("Op.")]. The defendant, Seth Fishman, was a veterinarian who made and distributed custom drugs that he had designed to enhance the performance of racehorses and to evade detection by racing-industry tests for performance enhancing drugs ("PEDs"). On February 2, 2022, Dr. Fishman was convicted by a jury of two counts of conspiracy to commit drug adulteration and misbranding with the intent to defraud or mislead, in violation of 18 U.S.C.

§ 371 and 21 U.S.C. §§ 331 and 333, as well as continued commission of one of the conspiracies while he was on pretrial release in violation of 18 U.S.C. § 3147.

After two adjournments at the request of his counsel at that time, the Court sentenced Dr. Fishman on July 11, 2022.  At the sentencing, on the express consent of both parties, the Court issued a Preliminary Order of Forfeiture/Money Judgment in the amount of $13,503,176.20 [ECF No. 887 ("POF")] and gave the parties thirty days to confer about the correct ***amount*** of the forfeiture in this case.

Dr. Fishman then hired new counsel, and extensive delays ensued.  New counsel (the third set of lawyers) argued for the first time, in mid-September 2022, two months after Dr. Fishman's sentencing, that the statutes of conviction do not authorize forfeiture [ECF Nos. 932, 945].  In the briefs it filed in September and October 2022, defense counsel failed to offer any arguments or evidence about the correct amount of any forfeiture.  As the Court explained in detail in its prior Opinion & Order, the Court promptly scheduled a hearing to take place on October 24, 2022 to resolve the forfeiture issues [ECF No. 947], but thereafter repeatedly adjourned the hearing at the behest of the defense until March 6, 2023 [ECF Nos. 950, 951, 960, 971, 979, 980, 993, 1013, 1016, 1017, 1025].  *See* Op. at 10–12.

In the days before the March 6, 2023 hearing, the defense for the first time: (1) filed briefing setting forth its arguments about the appropriate amount of any forfeiture [ECF No. 1064]; and (2) produced to the government and the Court thousands of pages of records, together with curated "summary" charts, purporting to show that, during the relevant period, the vast majority of sales by Dr. Fishman's company, Equestology, were not adulterated or misbranded drugs (the "Avimark data").  Several weeks after the hearing, on March 31, 2023, the government submitted additional

evidence to show that the sales documented in the Avimark data overwhelmingly were, indeed, adulterated and misbranded drugs [ECF No. 1079].

After careful consideration of the parties' arguments and a granular review of the extensive evidence bearing on the forfeiture in this case, the Court issued an Opinion & Order dated July 7, 2023 [ECF No. 1108 ("Op.")].  The Court ruled that, under the governing law, the government has authority to forfeit adulterated and misbranded drugs, and the Court has authority to impose a money judgment representing the approximate value of the adulterated and misbranded drugs Dr. Fishman sold or otherwise caused to be dissipated during the two conspiracies of which he was convicted.  Based on the trial record and all of the relevant and reliable evidence submitted in connection with the forfeiture hearing, the Court found that that the government had carried its burden to obtain forfeiture and a money judgment in the amount of $10,312,627.40.  The Court therefore vacated the POF and entered a Final Order of Forfeiture/Money Judgment in the amount of $10,312,627.40 [ECF No. 1109].

On July 20, 2019, the defense filed a motion for reconsideration [ECF Nos. 1116, 1117 ("Def. Mem.")].  The defense asserts that the Court's previous Opinion & Order "overlooks and/or misapplies foundational jurisdictional issues, critical factual matters and controlling law and misconstrues the record in the criminal case."  Def. Mem. at 1.  The defense once again insists that the Court should deny forfeiture entirely.  Def. Mem. at 1.  The government filed a letter in opposition, arguing that there is no basis for reconsideration [ECF No. 1128 ("Gov. Mem.")].  The defense filed a reply brief [ECF No. 1135].

## I.      LEGAL STANDARD

The Federal Rules of Criminal Procedure do not provide for motions for reconsideration, but such motions are sometimes submitted pursuant to this District's Local Rules.  *See* Local Crim.

R. 49.1(d); *see also* Local Civ. R. 6.3.  The standard for reconsideration in a criminal case is the same as the standard for reconsideration in a civil case.  *See United States v. Alvarez-Estevez*, No. 13-cr-380 (JFK), 2014 WL 12681364, at *1 & n.1 (S.D.N.Y. Nov. 6, 2014).  "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995).  Indeed, "[r]econsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'"  *United States v. Baldeo*, No. S1 13-cr-125 (PAC), 2015 WL 252414, at *1 (S.D.N.Y. Jan. 20, 2015) (quoting *Montanile v. National Broad. Co*., 216 F. Supp. 2d 341, 342 (S.D.N .Y. 2002)), *aff'd*, 615 F. App'x 26 (2d Cir. 2015).  "The Second Circuit has made clear that a motion for reconsideration 'is not a vehicle for relitigating old issues, presenting the case under new theories . . . or otherwise taking a second bite at the apple.'"  *United States v. Lisi*, No. 15-cr-457 (KPF), 2020 WL 1331955, at *2 (S.D.N.Y. Mar. 23, 2020) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)).

## II.    DISCUSSION

The defendant's motion flouts the Second Circuit's instruction not to use reconsideration to relitigate old arguments and otherwise seek another bite at the apple.  *See Analytical Surveys*, 684 F.3d at 52.  In its motion, the defense: (1) reiterates its exhaustively-argued position that there is no statutory authority for forfeiture in this case; (2) superfluously comments that the jury did not make a finding that Dr. Fishman could not write a valid prescription, even though the Court clearly made that finding in its previous Opinion & Order; (3) attempts to link the Court's ruling on the evidence required to reach a reasonable estimate of the value of the adulterated and

4

misbranded drugs that Dr. Fishman caused to be dissipated with Defendant's own previously-argued, unsupported theory that any forfeiture should be limited to his net profits; (4) incorrectly asserts that the Court "forgot" to deduct the value of seized drugs from the forfeiture calculation; (5) disagrees with the Court's interpretation of *Honeycutt v. United States*, 581 U.S. 443 (2017); and (6) quarrels with the Court's decision to admit the government's supplemental evidence in response to the Avimark data.  None of the defense arguments comes close to meeting the "strict" standard for reconsideration.  *Shrader*, 70 F.3d at 257.  Indeed, the defense repeatedly admits the Court previously heard and addressed the very issues the defense now, insincerely, asserts that the Court "overlooked."  *Id*.

### A.  The Court Did Not Overlook the Defendant's Principal Argument.

The defense claims the Court "overlooked" that, according to the defense, there is no statutory authority for forfeiture in this case.  Def. Mem. at 3.  But, in the same breath, the defense points out that it extensively litigated this issue in its papers and orally at the forfeiture hearing. *See* Def. Mem. at 5 ("Dr. Fishman made this argument both in his previous submissions and during oral argument.").  The Court did not overlook the defendant's arguments.  Indeed, the Court noted in its previous Opinion & Order that the defense sometimes pressed these arguments at the expense of addressing the correct amount of forfeiture, notwithstanding that the correct ***amount*** of the final forfeiture order was the only objection the defense preserved at the sentencing.  *See* Op. at 9–11 (explaining that the defense's concern was only that "the numbers 'don't quite add up'"), 11–12 (Mr. Kessler "submitted a brief that did not address the correct amount of any forfeiture but, instead, argued only that any forfeiture is unlawful in this case"); *see also* Op. at 16 (explaining that, at the forfeiture hearing, "Mr. Kessler principally argued that no forfeiture is permissible in

this case.").  The Court simply rejected the defendant's interpretation of the governing law and concluded that forfeiture is authorized.  *See* Op. at 22–25.

The defense tries two gambits to justify reconsideration.  First, the defense asserts that the Court lacks jurisdiction to order any forfeiture.  Def. Mem. at 3.  However, the defense merely attempts to cast its statutory interpretation argument as a jurisdictional issue.  *See* Def. Mem. at 3 ("28 U.S.C. § 2461(c) is a jurisdictional forfeiture provision"); *see Green v. Dep't of Education of City of New York*, 16 F.4th 1070, 1076 (2d Cir. 2021) (cautioning courts to distinguish "statutory limitations that are not strictly jurisdictional").  The defense admits that it "previously" made this same argument.  Def. Mem. at 3.  In any event, in its previous Opinion & Order, the Court ruled that it does have authority under Section 2461 to order forfeiture.  *See* Op. at 22–25.

Second, the defense tries a new argument based on an old statute, 18 U.S.C. § 983, which the defense could have cited in any of the briefing it submitted before the Court issued its previous Opinion & Order and which, in any event, does not change the outcome in this case.  Def. Mem. at 4–5.  The defense now asserts that Section 983(i)(2)(C) of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub. L. No. 106-185, 114 Stat. 202 (2000), provides that the Federal Food, Drug, and Cosmetic Act (FDCA) does not meet the definition of a civil forfeiture statute.  Def. Mem. at 4.  The FDCA may not be a civil forfeiture statute for purposes of CAFRA, but CAFRA did not invalidate all other pre-existing forfeiture statutes.  *See United States v. Davis*, 648 F.3d 84, 94 (2d Cir. 2011); Gov. Mem. at 3–6.  As the Court explained in its previous Opinion & Order, 21 U.S.C. § 334 authorizes forfeiture, and 28 U.S.C. § 2461(c) therefore authorizes the Court to impose forfeiture as part of this criminal case.  *See* Op. at 25.  The defense suggests the Court was

unable to grasp its sophisticated statutory arguments.  In reality, the Court rejected Defendant's

sophistry.  Forfeiture is authorized.

### B. The Court Made its Own Finding that the Defendant Illegally Sold Prescription Drugs.

Second, Defendant attempts to dissect the Court's finding in its prior Opinion & Order that

all of the prescription drugs Dr. Fishman dispensed were adulterated and misbranded because Dr.

Fishman, though licensed, did not actually practice veterinary medicine during the period of the

conspiracies.  According to the defense, the Court "overlooked" that the jury never made a specific

finding that Dr. Fishman could not write a valid prescription.  Def. Mem. at 6, 7 (stressing that the

"jury was never specifically asked" to make such a finding).  However, the defense concedes, as

it must, that the Court can make that finding on its own, for purposes of the forfeiture, based on

"the evidence adduced at Dr. Fishman's trial."  Def. Mem. at 9; *see* Fed. R. Crim. P. 32.2(b)(2).

That is exactly what the Court did.

In its prior Opinion & Order, the Court found: "The evidence at trial . . . demonstrated that

Dr. Fishman distributed adulterated and misbranded drugs when he dispensed prescription animal

drugs."  Op. at 4 (citing 21 U.S.C. § 353(f)).  The Court explained:

> The evidence at trial clearly demonstrated that Dr. Fishman did not have any *bona fide* veterinarian-client/patient relationships during the relevant period.  He was not in the practice of examining or treating animals at that point in his career.  For example, the government introduced a recording of an intercepted phone call in which Dr. Fishman boasted that he "doesn't . . . touch horses" [GX 912-T].  Similarly, a witness at the trial, Adrienne Hall, testified that she sought to have Dr. Fishman examine one of her horses but she was informed that "he doesn't do that type of work anymore." Fishman Trial Tr. [ECF No. 753] at 793:10–19 . . . . [A trainer named] Mr. Cohen also testified that Dr. Fishman came to his barn once but did not examine any horses.  Fishman Trial Tr. [ECF No. 751] at 673:9–15.

Op. at 4–5.  The Court also explained in its prior Opinion & Order that prescription animal drugs

that are dispensed without a valid prescription violate the adulteration and misbranding laws and

that a veterinarian cannot issue a valid prescription in the absence of a bona fide veterinarian-client/patient relationship.  Op. at 31 (citing 21 U.S.C. § 353(f)).

The defense acknowledges that the Court "cited . . . [the] testimony of . . . witnesses Ross Cohen and Adrienne Hall" demonstrating that Dr. Fishman did not examine horses or maintain *bona fide* veterinarian-client/patient relationships during the relevant period.  Def. Mem. at 7.  But the defense, nevertheless, pretends that the Court overlooked a factual issue "that might reasonably be expected to alter the conclusion reached by the court."  *Shrader*, 70 F.3d 255, 257 (2d Cir. 1995).  There is no factual issue for reconsideration.  In its previous Opinion & Order, the Court clearly stated and explained its findings, based on the evidence at trial, that Dr. Fishman was not practicing veterinary medicine and, as such, the prescription drugs that he sold and otherwise caused to be dispensed were adulterated or misbranded within the meaning of 21 U.S.C. § 353(f). The Court therefore found "that all of Equestology's sales of prescription animal drugs are a basis for forfeiture."  Op. at 32.

**C.  The Defense Misunderstands the Court's Ruling on Gross Income.**

In its motion for reconsideration, the defense contends that the Court reached the legally correct conclusion that the government was not entitled to forfeit Equestology's gross income but then erroneously failed to apply that conclusion.  Def. Mem. at 9–10.  The defense goes on to argue that the Court should have deducted from the total forfeiture amount "Equestology's 'direct costs incurred in providing [its] goods or services' – *i.e.*, the amounts the company paid to pharmacies and other wholesalers . . . ."  Def. Mem. at 11.  The defense either totally misunderstands or totally misrepresents the import of the Court's conclusion that the government was not entitled to forfeit Equestology's gross income.

As the defense recognizes, the Court concluded that Equestology's "gross income" was not a "reasonable estimate" of the value of the adulterated and misbranded drugs that Dr. Fishman sold, or otherwise caused to be dissipated, because there was concrete evidence that "Equestology derived some of its income from sales of products other than adulterated and misbranded drugs," such as needles and syringes.  Def. Mem. at 10 (quoting Op. at 28–30).  Thus, faced with evidence that Equestology sold at least some products that did not meet any definition of adulterated and misbranded drugs, the Court ruled that it could not simply accept the government's assertion that the total value of deposits into Equestology's bank accounts during the conspiracies was a reasonable approximation of the total value of forfeitable property.  Instead, the Court conducted a particularized review of all relevant and reliable evidence of adulterated and misbranded drugs that Dr. Fishman caused to be dissipated.  *See* Op. at 29–34.  However, as the Court explained in its Opinion & Order, the Court's granular review revealed that "the overwhelming majority" of Equestology's sales were adulterated and misbranded drugs.  Op. at 31.

Nothing in the Court's previous Opinion & Order supports Defendant's argument that the Court should have deducted the costs of running his business from the forfeiture amount.  On the contrary, the Court explicitly stated that the governing statutes authorize forfeiture and a money judgment in the amount of "the approximate value of adulterated and misbranded drugs that Dr. Fishman caused to be sold or otherwise dissipated."  Op. at 18; *accord* Op. at 29; *see* 21 U.S.C. §§ 334, 853(p); 28 U.S.C. § 2461(c).  Thus, in calculating the forfeiture, the Court sought to estimate the value of the dissipated drugs, not Dr. Fishman's net profits from those drugs.  *See* Op. at 29–34; *cf. United States v. Peters*, 732 F.3d 93, 101 (2nd Cir. 2013); *United States v. Awad*, 598 F.3d 76 (2d Cir. 2010) (discussing 21 U.S.C. § 853).

9

The defense has not identified any change in the law, clear error, or controlling precedent that the Court overlooked. It simply reiterates a theory that, as the defense admits it unsuccessfully raised before. *See* Def. Mem. at 9 (citing the brief the defense submitted on the eve of the forfeiture hearing, ECF No. 1064, which the Court carefully considered before issuing its previous Opinion & Order). That the Court declined to adopt the defendant's incorrect theory and instead adhered to statutory language is not a basis for reconsideration.

### D. The Court Did Not Forget To Deduct the Value of Seized Drugs.

The Court based the forfeiture amount on sales recorded in the Avimark data and sales to co-conspirator Jorge Navarro. Such drugs had been dissipated before the government seized any drugs. Thus, seized drugs were never included in the forfeiture calculation in the first place. As such, no deduction is warranted.

### E. The Court Correctly Applied *Honeycutt*.

In its motion for reconsideration, the defense argues that "the Court misread and misapplied the Supreme Court's decision in *Honeycutt v. United States*, 581 U.S. 443 (2017)." Def. Mem. at 12. The defense incorrectly asserts that this Court "acknowledged" that there can never be "joint and several liability with regard to forfeiture" and thus, the defense asserts, the Court should have subtracted from Dr. Fishman's forfeiture the "amount charged to Ms. Giannelli." Def. Mem. at 12, 13. These assertions are wrong, and the Court addressed this precise issue in its previous Opinion & Order. *See* Op. at 30 n. 2.

The Court explained that, under *Honeycutt*, a defendant is required "to forfeit only 'his interest in' the enterprise" and, as such, a low-level salesperson cannot be held jointly and severally liable for sales from which she "did not stand to benefit personally." *Honeycutt*, 581 U.S. at 450 (quoting 21 U.S.C. § 853(a)(3)). The Court further explained that Equestology was Dr. Fishman's

10

enterprise, while Ms. Giannelli was merely a salesperson who earned "only a percentage of her own sales." Op. at 30 n. 2. Thus, in its previous Opinion & Order, the Court ruled that "it is appropriate for purposes of the forfeiture calculation to hold Dr. Fishman responsible for all of Equestology's sales of misbranded and adulterated drugs, including the sales that Ms. Giannelli facilitated and logged into the Avimark system, even though it was not appropriate to hold Ms. Giannelli responsible for sales Dr. Fishman arranged with the assistance of other Equestology staff." Op. at 30 n.2.

In at least two unpublished decisions, the Second Circuit has rejected the proposition that *Honeycutt* means there can never be joint and several liability with regard to forfeiture. *See United States v. Bergstein*, 788 F. App'x 742, 748 (2d Cir. 2019); *U.S. Sec. & Exch. Comm'n v. Metter*, 706 F. App'x 699, 702 (2d Cir. 2017). The defense disagrees. That is not a basis for a motion for reconsideration of this Court's previous Opinion & Order.

**F. The Court Acted within its Discretion To Admit the Supplemental Evidence.**

The defense asserts that the Court overlooked facts regarding the history and availability of the Avimark data, but, in reality, the defense simply seeks to quarrel with the Court's decision to admit the government's supplemental evidence in response to the Avimark data. Def. Mem. at 14–17. The defense improperly suggests that the Court admitted the supplemental evidence to "balance" (or punish) Defendant's "delays of the proceedings." Def. Mem. at 14–15. But the Court specifically noted in its previous Opinion & Order that the numerous adjournments and allowances the Court made for the defense did not figure into the Court's decision to admit the government's supplemental evidence. Op. at 28. Rather, the Court admitted the supplemental evidence that the government submitted after the hearing because (1) whatever the justification, the defense did not produce the Avimark data until a few days before the hearing, and (2) the Court

11

concluded that the evidence was a necessary supplement to enable the Court to evaluate and rely

on the Avimark data.  Op. at 27–29.  The Court acted within its broad discretion.  *See United States*

*v. Duverge Perez*, 295 F.3d 249, 254 (2d Cir. 2002).

### III.    CONCLUSION

The Court has carefully considered and rejected all of the arguments in the defendant's

motion for reconsideration, whether or not specifically addressed herein.  For the reasons set forth

above, as well as reasons stated in the Court's previous Opinion & Order, reasons stated in the

government's opposition, and reasons neither the Court nor the government thought bore reciting,

the defendant's motion for reconsideration [ECF Nos. 1116, 1117] is DENIED.

**SO ORDERED.**

**Date:  August 23, 2023**
          **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**